1  Arman Gabaee
   Fed. Reg. No.: 76335-112
2  FCC Lompoc Camp
   3705 West Farm Road
3  Lompoc, CA 93436



4
5
6
7                 UNITED STATES DISTRICT COURT
8                CENTRAL DISTRICT OF CALIFORNIA
9                       WESTERN DIVISION
10
11 COUNTY OF LOS ANGELES,        )  CASE NO:
   STATE OF CALIFORNIA, AND      )  19-CV-01773-CJC-MAAx
12 UNITED STATES OF AMERICA,     )
   EX REL. KAREN GLUCK,          )  DEFENDANT ARMAN GABAEE'S
13                               )  MOTION TO DISMISS COMPLAINT
        Plaintiff.               )  OR IN THE ALTERNATIVE, FOR
14                               )  SUMMARY JUDGMENT; AFFIDAVIT
   v.                            )  OF ARMAN GABAEE
15                               )  [FED. R. CIV. P. 12(b)(6)
   THOMAS SHEPOS, ARMAN GABAEE (2) )  & 56(a)]
16                               )
        Defendants.              )  THE HON. CARMAC J. CARNEY
17                               )  TRIAL DATE:  NONE SET
                                 )
18 _____)
19
20      Defendant Arman Gabaee, ("A. Gabaee") a federal prisoner

21 without counsel, moves this Honorable Court to dismiss the

22 Complaint pursuant to Rule 12 of the Federal Rules of Civil

23 Procedure, or, in the alternative, to grant Summary Judgment to

24 the Defendant pursuant to Rule 56 of the Federal Rules of Civil

25 Procedure and to render judgment that plaintiff take nothing by

26 this action.

27 //

28 //

                            -1-

For the reasons set forth in the accompanying Memorandum of Points and Authorities, Defendant A. Gabaee asks the Court to dismiss the Complaint, without leave to amend, on the grounds that the Complaint fails to state a claim on which relief may be granted against this Defendant.

In the alternative, Defendant contends that his affidavit accompanying this motion will show that the Complaint purports to assert a claim that belongs to the County of Los Angeles and not that of the qui tam plaintiff Karen Gluck. The attached exhibits show irrefutable evidence that the material facts are false and support an Order granting dismissal of the Complaint, or in the alternative Summary Judgment in favor of Defendant on the grounds that no genuine issue as to any material fact exists. Defendant is therefore entitled to judgment as a matter of law.

This motion is based on the pleadings and records on file in this action, the attached Memorandum of Points and Authorities, and the attached Affidavit of Arman Gabaee, and any additional evidence that may be introduced at any hearing of this motion.

Respectfully submitted,

Dated: 2/28/2024



Arman Gabaee,
Defendant.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ACTION

Karen Gluck has filed a False Claims Act action as a qui tam plaintiff on behalf of the State of California, and the United States.   This action involves her now ex-husband Thomas Shepos and a group of real estate developers who leased space to the County.

Gluck claims that this decades long bribery and kickback scheme defrauded the plaintiff's out of hundreds of millions of dollars in commercial real estate leases and other significant financial opportunities.

According to Gluck, "[T]his long-running and lucrative scheme would not have been discovered had it not been for the original source of all information related to the fraudulent scheme who took it upon herself to work with the FBI investigators and the U.S. Attorney's Office to turn over evidence of the bribes received by her now ex-husband."

This action fails for several reasons.   Gluck does not qualify under the False Claims Act as a qui tam plaintiff: (1) Gluck has no Article III standing; (2) Public Disclosure Bar; (3) knowing false allegations; and, (4) participant in the Shepos fraud scheme, among others set forth herein.

## II.    BACKGROUND OF THE ACTION

### A.    Original Complaint

On March 11, 2019, Karen Gluck ("Gluck") a "Qui Tam" Plaintiff brought this civil action pursuant to the False Claims Act under 31 U.S.C. § 3729.   The Original Complaint filed under

-3-

seal named thirty-two (32) defendants comprised of a group of commercial real estate developers, one of which is Defendant A. Gabaee and a former Los Angeles County employee, Thomas Shepos ("Shepos"). The Court unsealed the Qui Yam Complaint on October 10, 2023.

This Complaint alleges that Shepos engaged in a decades long bribery and kickback scheme to defraud the County of Los Angeles, State of California, and the United States of America, and that this "long-running and lucrative scheme would not have been discovered had it not been for the original source of all the information related to the fraudulent scheme, Karen Gluck, who took it upon herself, with FBI investigators and the U.S. Attorney's Office, to turn over evidence of the bribes received by her now ex-husband Thomas Shepos." [See Dkt. 1, at ¶1].

Gluck alleges that these defendants provided Shepos with: (a) cash and bank deposits on a monthly basis; (b) pre-paid credit cards and gift cards; (c) hundreds of thousands of dollars in free home construction; (d) valuable tickets to concerts and sporting events; (e) plane tickets, hotel stays and trips to various destinations paid for by these commercial real estate developers ("Developers"); and, (f) property management contracts for Shepos' side business. In exchange: (1) Developers minimized risk by getting assurances of future leases from Shepos before purchasing property to develop; (2) developers secured above-market leases, often on no-bid basis; (3) developers avoided paying for repairs for which they were contractually obligated; and, (4) developers were paid on fraudulent invoices to the County for inflated utility costs and improvements that were

-4-

never made. Id., at ¶2.

Gluck further alleged: "efforts to expose this scheme have resulted in the indictment of one developer with over $60 million in County leases,[2] the initiation of a County investigation into Shepos and his deals" which resulted in indictment of "Shepos,[3] who admits that the indicted developer alone provided him with hundreds of thousands of dollars since 2010. But no other developers have thus far avoided detection." Id., at ¶ 3.

Lastly, Gluck seeks to help the County, the State and the federal government recover the money fraudulently obtained through the developers illegal scheme. Id., at ¶ 4.

On February 9, 2024, Defendant A, Gabaee was served with the Original Complaint at FCC Lompoc Camp.

**B.   Complaint In Intervention**

On November 9, 2023, the County of Los Angeles brought its "Complaint In Intervention" alleging eleven (11) causes of action. [See Dkt. 49].

The County named Thomas Shepos, Arman Gabaee and others in the "Original" Complaint and added more real estate developer defendants, now forty-five (45) in total, all landlords to the County (also referred collectively as "Landlords").

This second Complaint alleges much of the same as Gluck; "bribery and kickback scheme involving Shepos, claiming he was a "high-level" public official and County employee and together

---

[2] United States v. Gabaee, No. 2:18-CR-00331-GW (DC Cal 2018) Hon. G. Wu.   See also 2:23-CV-10627-GW.

[3] United States v. Thomas Shepos, No. 2:10-CR-00569-GW (D.C. Cal 2018) Hon. G. Wu.

with defendants they provided Shepos with (i.e., gifts, including thousands of dollars in cash and gift certificates, travel, tickets to sporting events, and stays at expensive resorts.) "One of the Landlord Defendants [A. Gabaee] went so far as offering, and attempting, to buy Shepos a house in Northern California valued at more than $1 million ..." Id., at p3 ¶3.

Defendant A. Gabaee was served with this Complaint on January 19, 2024, at FCC Lompoc Camp.

## C.   Recent Filings

On or about February 7, 2024, A. Gabaee filed a motion to change judge, relating the matter back to Judge George Wu because he is familiar with the facts alleged in this case.  This matter is currently pending.

## D.   Judicial Notice

Defendant requests the Court to take "Judicial Notice" of the various pleadings, exhibits and facts he has cited in various proceedings. See Fed. R. Evid. 201(c)(2)("The court ... must take judicial notice if a party requests it and the courts supplied with the necessary information."); e.g. Island's Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2nd Cir. 2005)(in deciding summary judgment motion, district court permitted to take judicial notice); Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1273 (11th Cir. 2014)(Court has "wide discretion" to take judicial notice of appropriate adjudicated facts at any stage in proceeding, including at summary judgment stage).

//

//

## III. GROUNDS FOR RELIEF

### A. Gluck has no Qui Tam Standing

Gluck does not have standing under the False Claims Act ("FCA") to be the qui tam plaintiff on behalf of the State of California ("State") and the United States.  The Complaint purports to assert a claim that belongs solely to the State and/or federal government, of which both have chosen not to intervene.

Gluck complains that she uncovered a "decades" long bribery and kickback scheme to defraud Los Angeles County, State of California and the federal government through hundreds of millions of dollars in commercial real estate leases and other significant financial opportunities." [Dkt. 1 ¶1].

This long-running and lucrative scheme involved her now ex-husband Thomas Shepos, and "would not have been discovered had it not been for the original source of all information related to the fraudulent scheme, who took it upon herself to work with the FBI investigators and the U.S. Attorney's Office to turn over evidence of the bribes received by her now ex-husband."  Id.

This action is brought by an ex-spouse who went on a hate driven crusade wanting to take back her half from the Shepos scheme.  Gluck knowingly and willfully participated in the fraud scheme, living a lavish lifestyle in a Bel Air estate.  She hosted extravagant parties at the estate while enjoying the fruits of Shepos fraud.

What Gluck is intentionally withholding is that in addition to being the recipient of these illegal gains, she received 100 percent of the proceeds from the sale of the Bel Air estate, a

-7-

collection of gold and silver coins, among many other things. These fruits not only lined Shepos pockets, but Gluck's as well. This information is intentionally being withheld from the Court and available in the public record in the Gluck-Shepos divorce filings. See <u>In re Marriage of Shepos</u>, Case No. L.A.S.C. BD 547 347.

Gluck cannot and should not be allowed to, on one hand, participate in the County fraud scheme and then on the other, be able to cry foul, wanting to collect another share of the proceeds as the qui tam plaintiff.

Gluck does not have standing under Article III of the Constitution, and the Complaint must therefore be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

The Complaint does not allege a direct injury pertaining to this Defendant. Gluck's personal stake in this action is her participation in the shakedown of the Defendants, while her only vested interest is to collect money she believes she missed out on during her tenure in the Shepos fraud scheme.

Because the State and federal government gave notice not to intervene in this action under §3730(b)(4)(B), Gluck seeks to receive 30 percent of the amount recovered. She's banking on collecting millions. See § 3730(d)(2).

Gluck's share of the take during Shepos' fraud scheme provided her with money, gifts, gift cards, gold and silver coins, and travel among other things, as previously stated. All these proceeds show her participation in the fraud scheme, during the False Claims Act timeline set forth in the Complaint.

//

The qui tam provisions of the False Claims Act explicitly does not allow for a qui tam plaintiff to claim standing because she may have suffered embarrassment due to her now ex-husband's publicly known fraud on the County of Los Angeles. Congress has established that anyone with personal knowledge concerning a fraud on the government has a real stake in stopping that fraud. 31 U.S.C. § 3730(e)(1)(A).

The Gluck Complaint does not meet the Article III standing requirements which are expressed in a familiar three-part algorithms where a would-be plaintiff must demonstrate a concrete and particularized injury in fact, a casual connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury. Me Peoples Alliance & Natural Res. Def. Counsel v. Mailinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Article III standing is only available if an individual would have standing to sue in their own right. Id.

Simply put, Gluck cannot play both sides of the fence to receive a windfall and does not qualify as a qui tam plaintiff in this action. The False Claims Act discourages so-called "opportunistic" qui tam actions. See United States ex rel. Campbell v. Redding Med. Ctr., 421 F.3d 817, 822-23 (9th Cir. 2005) (jurisdictional limitations precludes "parasitical suits"); See also 31 U.S.C. § 3730(e)(4)(A).

//

//

//

B.    **The Action Must Be Dismissed Under The Public Disclosure Bar**

On its face, one would think Gluck has qui tam standing because she claims to be the original source of information underlying the allegations.

However, Gluck has been alleging Shepos of wrongdoing since the filing of their divorce, in the Superior Court of California, County of Los Angeles.   Though the disclosure need not specifically identify the potential wrongdoing it is tied to relatively specific allegations of Shepos' wrongdoing.

In United States ex rel. Harshman v. Alcan Electrical and Engineering, Inc., 197 F.3d 1014, 1018-19 (9th Cir. 1999), the Ninth Circuit affirmed a dismissal of FCA claims brought against the defendant because the qui tam plaintiff, before filing the FCA action, had himself lodged documents in the public record that disclosed the existence of the claims described in the FCA action.   Plaintiff argued that the prior disclosure did not specifically name the FCA defendant, and that did not qualify as a "public disclosure" within the meaning of the statute's public disclosure bar.   The Court rejected that argument noting that the prior disclosure described the same claims, though vague, in the FCA complaint.

Gluck's State court filings began in July 2011, in the divorce action.   There she stated "Shepos received substantial cash payments from County clients as kickbacks for contracts and engaged in other fraudulent conduct for money."   [See Exhibit 1, L.A.S.C. Case No. BD 547 347 "Declaration of Karen Gluck, P.5 ¶22].   She further declared: "During our divorce proceedings, I discovered a safe at the bottom of a tall box found in storage

-10-

labeled 'rug,' I was able to open the safe and discovered it was full of hundreds of collectable [gold and silver] coins, and over 30 gift cards." Id., ¶23. "I obtained numerous receipts from Shepos indicating hundreds of dollars of merchandise was paid for with dozens of gift cards and/or predominantly with cash." Id., ¶24. What Gluck conveniently left out is how many gift cards and other loot she took. Gluck's divorce judgment, dated October 1, 2013, awards Gluck with much of the proceeds obtained during the decade's long Shepos fraud. [See Exhibit 2 Judgment Dissolution].

The United States indicted Shepos in early 2018. He pled guilt in September 2018. A. Gabaee was indicted in May 2018. Gluck filed this FCA complaint on March 11, 2019. These federal actions all alleged various wrongdoing later made by Gluck and the County.

The Los Angeles Times reported "... when interviewed by federal agents in November 2016, Shepos lied about the bribery schemes, falsely claiming that he had never received anything of value from anyone doing business with the County...."

According to court records, these allegations have been in the public long before the FCA action commenced on March 11, 2019. Specifically, Gluck filed for divorce in 2011, alleging Shepos was committing wrongdoing and fraud, as previously discussed. In 2016, the United States began its investigation and in 2018, indicted Shepos and A. Gabaee. There are numerous news article setting out the precise same claims set forth in the FCA complaint. The "allegation or transaction" that has been disclosed need not necessarily contain an explicit allegation of

-11-

fraud, but must, as here, contain the material elements of an allegedly fraudulent transaction. See Catholic Healthcare, 445 F.3d at 1152. As the D.C. Circuit observed:

The term "allegation" connotes a conclusory statement implying the existence of probable supporting facts. The term "transaction" suggests an exchange between two parties or things that reciprocally affect or influence one another. We illustrate the meaning of these terms in [United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 304 U.S. app. D.C. 347, 14 F.3d 645, 654 (D.C. Cir. 1994)], with the following equation: X (misrepresented state of facts) + Y (true state of facts) = Z (fraud). X and Y represent the material elements of fraud; a qui tam action cannot be sustained where all of the material elements of the fraudulent transaction are already in the public domain ... When the publicity disclosed the transaction is sufficient to raise the inference of fraud (X+Y are in the public domain), there is little need for qui tam actions, which tend to be suits that the government presumably has chosen not to pursue. Findley, 105 F.3d at 687 (internal quotation marks and citations omitted). The Ninth Circuit, which has adopted this formula, has further explained that, "to disclose the fraudulent listeners may infer Z, i.e., the conclusion that fraud has been committed." Catholic Healthcare, 445 F.3d at 1152. Moreover, as noted above, Section 3730(e)(4)(A) strips the court of jurisdiction only where the disclosed transaction is substantially similar to the fraud alleged in the Fact Complaint. Findley, 105 F.3d at 682. In short, the public disclosure only applies where the publicly disclosed information describes the defendant's involvement in

-12-

1 | the kind of wrongdoing that is alleged in the FCA complaint.

2 |     For these reasons the public disclosure bar applies and

3 | precludes Gluck as the qui tam plaintiff from pursuing an FCA

4 | claim against Defendant A. Gabaee.

5 | **C.**   **The Complaint Fails On The Particularly Requirements As To**

6 |   **Arman Gabaee**

7 |     The Complaint fails to meet the particularly requirements

8 | set forth under Rule 9(b) of the Federal Rules of Civil

9 | Procedure. The Complaint lacks particularity regarding the

10 | actual submission of any false claim claim or a conspiracy to

11 | violate the FCA. The Complaint should be dismissed on those

12 | grounds alone. The Relator not only fails to allege the

13 | presentment of a scheme with particularity, meaning the predicate

14 | bribery and kickback is also not adequately plead. For both

15 | reasons, the court should dismiss all FCA claims.

16 | **1.**   **Rules 12(b)(6) and 9(B) Dismissal**

17 |     To survive a Rule 12(b)(6) motion, "a complaint must contain

18 | sufficient factual matter, accepted as true, to 'state a claim to

19 | relief that is plausible on its face.'" _Ashcroft v. Lgbal_, 556

20 | U.S. 662, 678 (2009) (quoting _Bell Atl. Corp. v. Twombly_, 550

21 | U.S. 544, 570 (2007)). A claim is plausible on its face if "the

22 | plaintiff pleads factual content that allows the court to draw

23 | the reasonable inference that the defendant is laible" and

24 | demonstrates "more than a sheer possibility that a defendant has

25 | acted unlawfully." _Igbal_, 556 U.S. at 678 (citing _Twombly_, 550

26 | U.S. at 555-57). When ruling on a motion to dismiss, the court

27 | generally accepts the complaint's factual allegations as true.

28 | _Igbal_, 556 U.S. at 678. Further, the court liberally construes

"the complaint, including all reasonable inferences therefrom in plaintiff's favor." Estate of Williams-Moore v. All One Receivables Mgmt., Inc., 335 F. Supp 2d 636, 646 (M.D. N.C. 2004) (citation omitted). Defendant urges the court not to accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory elements, do not suffice." Iqbal, 556 U.S. at 678.

In addition to the normal pleading requirements of Rule 12(b)(6), claims must satisfy Rule 9(b)'s heightened pleading standard. United States ex rel. Grant v. United Airlines, Inc., 912 F.3d 190, 194 (4th Cir. 2018). In alleging fraud or mistake, a party must "state with particularly the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. P. 9(b). Qui tam actions under the FCA involve allegations of fraud, meaning they must meet both Rule 8(a)'s plausibility requirements and Rule 9(b)'s more demanding particularity requirement. United States v. Corinthian Colls, 665 F.3d 984, 992 (9th Cir. 2011). Conclusory allegations of fraud are therefore insufficient, Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001), as are "[b]road allegations that include no particularized supporting detail." United States v. United Healthcare Ins. Co., ("Swoben, 848 F.3d 1161, 1180 (9th Cir. 2016). To satisfy Rule 9(b), a relator-plaintiff must "identify the who, what, when, where and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." United States ex rel. Anita Silingo v. Wellpoint, Inc., 904 F.3d 667,

-14-

677 (9th Cir. 2018) (cleaned up); See also <u>Neurbronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity.").

Rule 9(b)'s heightened pleading standard serves two purposes. First, the rule ensures that allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Bly-Magee</u>, 236 F.3d at 1019 (cleaned up). The Ninth Circuit has accordingly suggested that the "most basic consideration" in judging a complaint under Rule 9 "is the determination of how much detail is necessary to give adequate notice" to the defendant "and enable that party to prepare a responsive pleading." <u>Swoben</u>, 848 F.3d at 1180 (internal quotation marks omitted) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed. 2016)). Second, the rule serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs," shield defendants "from harm that comes from being subject to fraud charges," and "prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." <u>Bly-Magee</u>, 236 F.3d at 1018 (cleaned-up).

Gluck's FCA claims fails due to the absence of materiality and specificity together. The complaint must be dismissed pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

//

D.   **The Complaint Makes False and Misleading Allegations and Must Be Dismissed Under Rule 11**

The Gluck Complaint and the County in their Complaint In Intervention make false and misleading allegations of material facts which require dismissal with prejudice, under Rule 11, (Fed R. Civ. P. 11).

The Complaints recite the identical issues set forth by the United States in their 2018 indictments against Shepos and this Defendant among others.

The combined allegations state as material facts the following:  (1) Shepos was a "high-level" public official for the County; (2) Shepos position allowed him authority to bind the County; (3) Shepos received cash, gifts and other items of value as bribes and/or kickbacks; (4) Shepos awarded above-market rents to defendants; (5) Shepos provided non-public information to defendants; (6) Shepos facilitated resolution disputes in favor of defendants; and, (7) Shepos approved inflated expenses and invoices submitted by defendants.

It must be noted that no new lease contracts were awarded to A. Gabaee from 2000 to 2016.  The only issue regarding a lease was the "renewal" for the Hawthorne Mall property which the County continued up to early 2023, and Shepos was not instrumental in negotiating the lease contract.  Upon the County's relocation, the records show the County now pays nearly double the rent they use to pay occupying the Hawthorne Mall property.

//

//

-16-

## 1.   Rule 11 Dismissal

The material facts are false under Rule 11 of the Federal Rules of Civil Procedure and requires dismissal. Rule 11 requires that an attorney or party certify, to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legal sufficient basis, and that the allegations and other factual contentions have evidentiary support." ArmanJimenez v. Madison Area Technical College, 321 F.3d 652, 656 (7th Cir. 2003) (citing Fed. R. Civ. P. 11(b)). One of the basic purposes of Rule 11 is to deter baseless filings in the district court. Id., at 656 (citing Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 393 (1990)). Courts may impose sanctions on a party or a party's counsel for failing to comply with Rule 11. Id. (citing Fed. R. Civ. P. 11(c)). These sanctions may include attorney's fees and costs and dismissal of a lawsuit.

### (a)   Shepos Employment

First, the Complaint sets forth as a material fact that Shepos was a high-level County employee with authority to bind the County in lease contracts. This is false.

Actually Shepos was a "low-level" County employee at the bottom of the County's Real Estate Division who had no authority to bind the County to any lease contract involving Defendant A. Gabaee. At all times this fact was known to Gluck and the County.

The only control Shepos had was the ability to hire various

subcontractors and promote various vendors for County occupied buildings he managed. A. Gabaee was a landlord, not a trade contractor. Shepos had no influence over A. Gabaee or who performed work for the County on Gabaee's own property. According to an interview[4] of Chris Montana, Director of the Real Estate Division, who was Shepos' direct supervisor from early 2015, Montana confirmed "that Shepos had no authority to bind the County and no real influence over the leases." [See Exhibit 3, Montana Interview].

In fact, Montana reiterated that Shepos was very hard on landlords and did not give up anything. He could not have increased and did not increase any rents in connection with A. Gabaee leases. _Id._

The Complaint fails to present exactly what it was that Shepos provided in the way of "non-public" County information to A. Gabaee, who always followed the County's bid procedures.

There is no specifics as to what "issues" were "resolved" by Shepos in favor of A. Gabaee, or that the "lease terms were favorable" to A. Gabaee.

The facts reveal just the opposite as true. Maurice Salama worked for the County Department of Real Estate from 1984 to 2011. Salama's boss was Cheryl Fuerth. Salama never saw any unethical issues relating to A. Gabaee. "He always felt they [A. Gabaee] performed under the agreements and never offered anything in return." [See Exhibit 4, Salama Interview].

---

[4]    Interviews noted herein were all conducted by Peter Norell, Norell Consulting, Inc., an investigation company hired by A. Gabaee's attorneys. Interviews took place between November 2017 and January 2019.

-18-

According to Salama Shepos worked on County lease projects which already had approved budgets. Shepos found space and negotiated lease terms. Lease pricing was determined by looking at comparisons and the County was one of the lowest paying tenants. Id.

Salama, at one point became concerned about Shepos and the number of leases going to A. Gabaee's company. Salama knew Fuerth directed Shepos to deal with A. Gabaee whenever possible because they had the lowest rents and their space was a premium. Id.

Cheryl Fuerth-Marx worked for the County in the Real Estate Division, retiring in 2005. [See Exhibit 5 Fuerth-Marx Interview]. She was Shepos direct supervisor and reviewed all the leasing contracts the County entered into and never noticed anything unusual about any contract, including those being processed by Shepos. Id. After Fuerth-Marx left, Shepos reported to Carlos Marquez.

Chuck West worked for the County Real Estate Division in March 2011. [See Exhibit 6, West Interview]. West was Fuerth's boss and Shepos did not report to him. They did socialize together with Shepos and Gluck outside their respective job duties. Id.

West was aware A. Gabaee was a landlord for the County and stated: "He never saw anything inappropriate with respect to A. Gabaee or being awarded contracts." West reviewed all the lease contracts the County entered into and would have noticed if someone received a deal too good for the landlord. Id.

//

-19-

The County requires that all lease contracts have attached area rental comparisons to each lease to determine the proper rate being charged to the County as being the lowest.

Another County employee who Shepos reported to was Carlos Marquez, Manager Lease Acquisitions.  He too stated he never saw anything inappropriate with respect to Shepos and A. Gabaee.  "No specific advantages were provided by Shepos to Gabaee and he never saw any inside information given to the Gabaee's on what upcoming requirements were expressed.  The Gabaee's also received below market rent for their deals with the County.  [See Exhibit 7, Marquez Interview].

All these County employees confirm the opposite to be true about A. Gabaee and the material facts in the Complaint are false.

Further, the County knew or should have known these facts are false, as did Gluck.  However, the plaintiffs knowingly and willfully made the decision not to submit the truth and to follow these known falsehoods set forth in the United States indictments, which are the subject of prosecutorial misconduct and perjury.  See United States v. Gabaee, Case No: CR-18-331-GW (C.D. Cal. 2018) and Case No: 23-CV-10627-GW.

To elaborate more on this misconduct is the fact that Gluck and the County relied on the federal government's misconduct as to their claims that A. Gabaee bribed Shepos with monthly payments and the purchase of a million dollar home.  Yet, Shepos was not charged with bribery.

//

//

**B.    Bribery**

The allegations of a quid pro quo bribery scheme involving monthly payments to Shepos and the purchase of a million dollar home is false and made to mislead, based on perjured FBI statements.

As Gluck and the County are aware, in 2011, Shepos gambled away half-a-million dollars in one night, which was purported to be Gluck's money.  This event triggered the divorce proceeding. It also put Shepos out on the street, homeless, to live in his car.

With nowhere to go, Shepos went to his long time friend, A. Gabaee.  He begged for money, promising he would pay him back, needing money to live.  A. Gabaee agreed, giving him approximately $1,000 per month in cash as living assistance.

Shepos throughout the years often spoke to his friend A. Gabaee about retiring to Northern California.  Shepos was concerned about his credit being ruined from the divorce and would never be able to buy a home.  Shepos wanted A. Gabaee to buy a home for him to live in.  After months of coaxing and unbeknownst to A. Gabaee that Shepos was under investigation, cooperating with the FBI.  A. Gabaee looked into buying a home in Northern California.  He made a low-ball offer, which was not accepted, and then changed his mind, deciding not to purchase the property.

However, the federal government submitted false and perjured statements to the court that there was a quid pro quo when the evidence proves there was not one and there was no bribery.  See United States v. Gabaee, Case No. 23-CV-10627-GW (C.D. Cal. 2023)

§ 2255 motion.

This civil filing is before the Honorable George Wu, clearly reveals prosecutorial misconduct by the federal government and wrongful prosecution.

The FBI agent Atkins, in his affidavit for probable cause in the criminal complaint, admitted that the money given to Shepos by A. Gabaee was made in friendship. Specifically, Atkins carefully stated that their relationship changed on or about April 11, 2017, from "a friendship to an improper business relationship." See United States v. Gabaee, Case No. CR-18-331-GW (C.D. Cal. 2018) Dkt. 1, p.6 ¶10 at 5-9.

According to the government this "improper business relationship" began on April 11, 2017, and ended on April 24, 2017. For 13-days this supposed bribery took place where Shepos: (a) provided non-public County information to A. Gabaee; (b) Shepos performed official acts for A. Gabaee; (c) running interference between the County and A. Gabaee on issues that arose." Id. ¶11.

There was no "new" business between the County and A. Gabaee during this 13-day period of time. The only matter pending was the lease renewal with the County pertaining to the Hawthorne Mall property. The County continued to occupy the Hawthorne Mall property up to early 2023, paying below market rents.

Public records show that when the County relocated, they are now paying nearly double the rent as they were paying while leasing the Hawthorne Mall. Additionally, the County, out of spite, spent approximately $20 million of taxpayer dollars to relocate.

Here, the Plaintiffs followed the federal government down the poisonous path using known perjured and false statements against Defendant A. Gabaee.

Under Federal Rule of Civil Procedure 11, dismissal is required.

Not only are these material facts proven false, the plaintiff's conspiracy theory is absurd.

In order for the Complaint to be true, Shepos had to be in a position of ultimate authority to approve and award lease contracts on behalf of the County, circumventing the County's system of checks and balances, and their own by-laws.

If Shepos was the mastermind of this vast conspiracy to swindle the County out of millions in taxpayer dollars, and for this to have occurred involving all these defendants, Shepos would have had to recruit, at a minimum, eight (8) County Real Estate Division heads, a totally independent Real Estate Advisory Board, made up of at least five (5) non-County individuals, and then the majority of the County Supervisors, who must each vote to approve and award the lease contracts. [See Exhibit 9, County Real Estate Division chart]. What an elaborate scheme that would need to be.

Gluck's six (6) claims for relief and the County's eleven (11) claims all must fail because they are predicate on Shepos having authority to bind the County, which he clearly did not have.

What is clear here is that Gluck, the County and the private attorney's are attempting to shakedown the Defendant's for their own gain, at the expense of the County taxpayers.

IV.    **CONCLUSION**

For all the foregoing reasons and conclusions of law, Defendant Arman Gabaee's motion to dismiss complaint or in the alternative, for summary judgment, should be granted.

Respectfully submitted,

Dated: 2/28/2024

Arman Gabaee,
Defendant.

//

//

//

-24-

<u>CERTIFICATE OF SERVICE</u>

I, James Graf am over the age of 18 years and I am not a party to this action.  I hereby certify that on this 28th day of February 2024, that I sent the foregoing via first-class postage, prepaid, or other delivery charges prepaid, by depositing said documents herein-listed with prison authorities at the Mail Room of the Lompoc Federal Correctional Complex Satellite Camp, for mailing through the United States Postal Service, mailing copies of the foregoing:

DEFENDANT ARMAN GABAEE'S MOTION TO DISMISS COMPLAINT
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT;
AFFIDAVIT OF ARMAN GABAEE
[FED. R. CIV. P. 12(b)(6) and 56(a)]

to the following individual(s), party(s) and/or entity(s):

Attorney's for Plaintiff:
Miller Barondess, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067

Office of the Los Angeles County Counsel
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite 648
Los Angeles, CA 90012

Defendants:
See Attached

I certify under the penalty of perjury that the foregoing is true and correct.

James Graf

**(To: (*Defendants' name and address*))**

| | |
|---|---|
| Thomas Shepos | 4319 Bethpage Dr, Palmdale, CA 93551 |
| Arman Gabaee | 1468 Donhill Dr, Beverly Hills, CA 90210 |
| Mark Gabaee | 1474 Donhill Dr, Beverly Hills, CA 90210 |
| The Charles Company, Inc. | C/O Carla Manto<br>9034 W Sunset Blvd<br>West Hollywood, Ca 90069 |
| Excel Property Management Services, Inc. | C/O Nicholas F Klein<br>12301 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 |
| Oakshire, LLC | C/O Nicholas F Klein<br>12301 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 |
| Wilhurst, Inc. | C/O Nicholas F Klein<br>12301 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 |
| Town Investments, LLC | C/O Sancam Inc.<br>Mark Gabay<br>9034 W Sunset Blvd<br>West Hollywood, CA 90069 |
| Sancam Inc. | C/O Mark Gabay<br>9034 W Sunset Blvd<br>West Hollywood, CA 90069 |
| M&A Gabaee, LP | C/O Mark Gabay<br>9034 W Sunset Blvd<br>West Hollywood, CA, 90069 |
| Greenoak Investments, LLC | C/O Nicholas F Klein<br>12301 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 |
| Maple19, LP | C/O Nicholas F Klein<br>12301 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 |
| Urban Grove19, LLC | C/O Nicholas F Klein<br>12301 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 |
| Oppidan, LLC | C/O Nicholas F Klein<br>12301 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 |
| Frank Visco | 301 Mission Ave, Unit 606, Oceanside, CA |
| David Schaeffer | 103 NW 3rd St, Dimmitt, TX, 79027 |
| Visco Financial Inc. | C/O Frank Anthony Visco<br>44824 Cedar Ave<br>Lancaster, CA 93534 |
| Castaic FCG Properties, LLC | C/O David Schaeffer |

| | 103 NW 3rd St, Dimmitt, TX 79027 |
|---|---|
| Fraber Properties II, LLC | C/O Frank Anthony Visco<br>44824 Cedar Ave<br>Lancaster, CA 93534 |
| Donald Abbey | 172 Bliss Canyon Rd, Unit 300, Bradbury, CA 91008 |
| AP-Sierra LLC | C/O Donald G Abbey<br>12447 Lewis Street Suite 203<br>Garden Grove, CA 92840 |
| AP-Palmdale LLC | C/O Donald G Abbey<br>12447 Lewis Street Suite 203<br>Garden Grove, CA 92840 |
| DGA-Properties LLC | C/O Donald G Abbey<br>12447 Lewis Street Suite 203<br>Garden Grove, CA 92840 |
| DGA-Properties II, LLC | C/O Donald G Abbey<br>14770 E. Firestone Blvd, Suite 206<br>La Mirada, CA 90638 |
| Abbey-Properties II LLC | C/O Donald G Abbey<br>12447 Lewis Street Suite 203<br>Garden Grove, CA 92840 |
| CDCF III Pacific Commerce Plaza, LLC | 515 S. Flower Street, 44th Floor<br>Los Angeles, CA 90071 |
| Nittany Lion Landscaping, Inc. | C/O Tracey R. Bard<br>12447 Lewis Street Suite 203<br>Garden Grove, CA 92840 |
| Alexander Moradi | 1734 N Doheny Dr, Los Angeles, CA 90069 |
| Isaac Moradi | 1859 N Hillcrest Dr, Beverly Hills, CA 90210 |
| Imperial Hawthorne LP | C/O Isaac Moradi<br>9301 Wilshire Boulevard, Suite 315<br>Beverly Hills, CA 90210 |
| ICO Investment Group, Inc. | C/O Alexander Moradi<br>10780 Santa Monica Blvd, Suite 140<br>Los Angeles, CA 90025 |
| Gage Plaza Associates | C/O Alexander Moradi<br>888 W 6th Street Suite #1200<br>Los Angeles, CA 90017 |
| Leon Neman | 803 Foothill Rd, Beverly Hills, CA 90210 |
| Yoel Neman | 802 N Alpine Dr, Beverly Hills, CA 90210 |
| John Neman | 971 N Alpine Dr, Beverly Hills, CA 90210 |
| Neman Brothers and Associates, Inc. | 1525 South Broadway Street, Los Angeles, CA 90015 |
| Vertigo Real Estate Holdings, LP | C/O Leon Neman<br>1525 S. Broadway<br>Los Angeles, CA 90015 |
| Legend Real Estate Management, Inc. | C/O Leon Neman |

|  | 1525 S. Broadway<br>Los Angeles, CA 90015 |
|---|---|
| Gregory Hanes | 43903 Division Street, Lancaster, CA 93535 |
| 300 K-6, LLC | C/O Gregory F Hanes<br>43903 Division Street<br>Lancaster, CA 93535 |
| 43917 Division Street, LLC | C/O Gregory F Hanes<br>43903 Division Street<br>Lancaster, CA 93535 |
| Homer Harvey | 10490 Wilshire Blvd Ph 1, Los Angeles, Ca 90024 |
| William Tatum | 2102 Century Park Ln, Apt 402, Los Angeles, CA 90067 |
| Harvey Capital Corp. | C/O Ruth Zommick<br>2333 Cotner Avenue<br>Los Angeles, CA 90064 |
| Ball & East, Ltd. | C/O William Tatum<br>11835 W. Olympic Blvd., Suite 300<br>Los Angeles, CA 90064 |

# AFFIDAVIT OF ARMAN GABAEE

I, Arman Gabaee, being duly sworn, deposes and states:

1.    I am the Defendant in this action and submit this Affidavit in support of my Motion To Dismiss Complaint Or In The Alternative, For Summary Judgment, pursuant to Rule 12(b)(6) and 56(a).

2.    I am a federal prisoner incarcerated at FCC Lompoc Camp in Lompoc, California and am proceeding without counsel.

3.    I became aware that Plaintiff Karen Gluck, the ex-wife of Defendant Thomas Shepos, had filed a civil Complaint in this matter on March 11, 2019, as the qui tam plaintiff.

4.    I was served with service of process in the Gluck original Complaint on February 9, 2024, at FCC Lompoc Camp.

5.    I became aware that on November 9, 2023, the County of Los Angels had filed a Complaint In Intervention.

6.    I was served with service of process in the County's Complaint on January 19, 2024, at FCC Lompoc Camp.

7.    On or about February 7, 2024, I filed a motion to change judge, relating back to the Honorable George Wu because he is familiar with the facts alleged in this case, and I am aware there are two criminal cases and one civil case with similar or identical issues before Judge Wu.

8.    I currently have a civil motion § 2255 before the Wu Court addressing many of the issues I have brought in this motion for Summary Judgment.

//

//

-1-

9.    I ask the Court to take Judicial Notice of the pleadings, exhibits and filing in the matter before the Wu Court in the following cases:

(a)    United States v. Shepos, No. 2:18-CR-00569-GW (C.D. Cal.);

(b)    United States v. Gabaee, No. 2:18-CR-00331-GW (C.D. Cal.);

(c)    United States v. Gabaee, No. 23-CV-10627-GW (C.D. Cal.);

10.    I have read the Gluck qui tam Complaint filed under the False Claims Act.  I do not believe for the reasons stated in my motion for Summary Judgment that the Complaint meets the standing requirements  under Article III.

11.    I believe that Gluck participated in the fruits of Shepos' scheme and Gluck cannot qualify herself as a qui tam plaintiff.

12.    I have read the Gluck Complaint and various documents involving the Gluck/Shepos divorce and believe that Gluck received many of the ill gotten gains from the Shepos fraud, (i.e. cash, gift cards, gold and silver coins), as settlement from the divorce judgment, noted in In re Marriage of Shepos, No. LASC BD 547 347.

13.    I do not believe Gluck has Article III standing because of her participation with Shepos during the decades long fraud scheme in which she received benefit.

14.    I believe the action must be dismissed under the Public Disclosure Bar.

15.    The Complaint recites claims made before the original Complaint was filed in the public record in the 2011 divorce, and 2018 federal indictments, including newspaper articles which discussed the investigation.

//

16.  The exhibits supplied herein consist of interviews obtained through my previous attorney in the criminal case and prove the allegations in the Complaint are false and misleading.

17.  These interviews are from actual high-level Los Angeles County employees, which all state independently that Shepos was a low-level County employee with no authority to bind the County in any lease contract; he did not provide me with non-public information; he did not resolve issues favorable to me involving the County; and, Shepos did not secure County lease contracts that were beneficial to me.

18.  I had no new lease contracts with the County from 2000 to 2016.  There was only a renewal of the Hawthorne Mall lease.  In 2017, I entered in to a property lease contract with the County on North Broadway, which today is still occupied.

19.  I believe at all times Shepos and I were friends.

20.  In 2011, Shepos came to me distraught about the break-up of his marriage.  He begged and pleaded for money because he was living out of his car, promising to repay me.

21.  As a longtime friend, I agreed to help him with living expenses, giving him approximately $1,000 per month.

22.  Once Shepos' divorce was finalized, he continued to claim he had no money because all his money was going to his ex-wife, Gluck.

23.  When Shepos and I would meet, he often spoke about retiring from the County to Northern California.

24.  Our conversations often circled back to Shepos' credit being ruined from his divorce and he would never be able to purchase a home.

-3-

25. Shepos wanted me to buy him a home to live in once he was retired from the County. I often told him I would consider such a purchase because I own many properties and I consider him a friend.

26. Shepos wanted me to purchase a home for him. I made a low-ball offer, not expecting for it to be accepted. It was not accepted.

27. I then became interested in another property, but then changed my mind about the purchase. The following day, because I did not buy the property, the FBI came to visit me. They had wire tapped my phone and knew I was not buying the home.

28. The Complaint makes similar or identical allegation which are now being proven false in my criminal case in the Judge Wu Court.

29. The exhibits in my criminal case and some of those submitted herein also prove the allegations are false and made to mislead the court.

30. I became aware that FBI agent Atkins had committed perjury as to a quid pro quo when the facts prove there was not one and no bribery took place.

31. Further, FBI agent Atkins admitted in his affidavit in the criminal Complaint that my friendship with Shepos may have turned into an improper business relationship, which is not criminal.

I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

//

//

-4-

Executed this _____ day of February, 2024, at Lompoc, California.


_____
Arman Gabaee,
Affiant.

//

//

//

# Exhibit #1

Exhibit #1

In re Marriage of SHEPOS                                    L.A.S.C. Case No.  BD 547 347

## DECLARATION OF KAREN GLUCK

I, Karen Gluck, hereby declare:

1.      I am a party to this case and have information that is pertinent to the issues under consideration by the court in the divorce of Karen Gluck vs. Thomas Shepos ("Shepos").

2.      I respectfully submit this Declaration in support of my Order to Show Cause and Affidavit re Contempt.

3.      Shepos stopped paying in accordance with our Judgment of Dissolution, and subsequent Order After Hearing from an April 10, 2014 hearing date, commencing in October 2018, as set forth in Attachment 1a and 1b to Form FL-411 filed concurrently herewith.  Specifically, Shepos began paying less than the full sum of spousal support ordered, and completely stopped payment of my mortgage, HOA and utilities as Order.

4.      A true and correct copy of our Judgment of Dissolution is attached hereto as **Exhibit "A."**

5.      A true and correct copy of the Order After Hearing entered in connection with an April 10, 2014 hearing date in this matter is attached as **Exhibit "B."**

6.      The terms of the Judgment of Dissolution, and subsequent Order After Hearing, ordering Respondent to pay the entirety of my mortgage payment, Homeowners Association Dues, and utilities (as well as all other expenses and costs associated with my Montana Ave. residence, including but not limited to a second mortgage on the residence held by Wells Fargo) arose from Respondent's theft, embezzlement, and other bad acts during the course of our marriage, as detailed in part herein.  We entered into a Post Marital Agreement as a result thereof on June 15, 2010, which terms were incorporated into our Judgment of Dissolution, but only after Respondent caused me to incur over $150,000 in attorney fees and costs to enforce the terms of that Agreement.  Respondent fraudulently filed bankruptcy in an effort to avoid his obligations and delay the proceedings, and contested the validity and enforceability of the Post Marital Agreement until the time of the Mandatory Settlement Conference before trial.  I am filing a separate Request for Order re determination of the Attorney's Fees and Costs still owing to me as a result of Respondent's challenges to the validity and enforceability of the Post Marital Agreement, and for other relief not

DECLARATION OF KAREN GLUCK                                         1

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

resolved by the Judgment of Dissolution.

7.      Attached hereto collectively as **Exhibit "C"** are true and correct copies of checks which Shepos paid to me in October, November and December 2018, in sum(s) in breach of Court Order(s).

8.      Attached hereto collectively as **Exhibit "D"** are true and correct copies of checks which Shepos paid to me in 2019, in sum(s) in breach of Court Order(s).

9.      My utilities are constantly under threat of being shut off as a result of Shepos' nonpayment of utilities. For example, attached hereto as **Exhibit "E"** is a true and correct copy of a Southern California Gas bill dated 01/22/19 showing a past due amount of $307.33 and a threat of disconnection. Attached hereto as **Exhibit "F"** is a true and correct copy of a Southern California Edison bill dated 01/03/19 showing a past due amount of $203.73 and a threat of disconnection.

10.      In October and November 2018, Shepos sent me two letters, true and correct copies of which are attached as **Exhibit "G"** stating he could no longer afford to pay his Court Ordered obligations in accordance with the court order. I do not believe this to be true. Shepos has been lying, cheating, and stealing for decades, and I believe has hid a substantial sum of money with which he can satisfy his obligations. However, in continuation of his scams, Shepos is pretending to have no money with which to satisfy his obligations because he is currently under a microscope as a result being indicted on or about September 5, 2018 by the United States Department of Justice Case No. 2:18-cr-00569-RGK and reached a plea agreement admitting to filing false tax returns, fraud, and making false statements and is part of an ongoing criminal investigation by the Federal Bureau of Investigation and the County of Los Angeles. A true and correct copy of the indictment of Shepos is attached as **Exhibit "H."** Shepos was accused of and admitted to being involved in a kickback scheme with regard to leases, contracts, and insider deals handled on behalf of his employer, Los Angeles County. I am informed and believe that Shepos is facing imminent sentencing for his crimes, which is currently scheduled for May 11, 2020, and is potentially facing a sentence of up to eight (8) years. The crimes for which he was under investigation and indicted were just one part of his criminal life, as based on information and belief he also embezzled and stole several millions of dollars from me, my father, and the community during our marriage.

DECLARATION OF KAREN GLUCK                                    2

F:\laActive\1709-1\Pleadings\012220DCAclientcontempt.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No.  BD 547 347

11.     Due to Shepos' criminal behavior, my life and my daughter's life have been turned upside down financially and emotionally.

12.     I suffer from several disabling auto-immune disorders that sometimes render me unable to leave my home due to the pain.

13.     I am self-employed, have put effort into future projects, I have several film, television shows I am pitching, and a men's wear line that I have created, however, am currently out of money and living on credit cards, there is no other immediate source of income and the mortgage payments, HOA dues and utilities are due.

14.     Due to the arrearages accumulating as a direct result of Shepos' breach of his court-ordered payments, I have had to apply for a cash-out refinance my home so that I do not lose my home and so that I may have sufficient funds with which to pay expenses while Shepos remains in breach of Court Orders.  The refinance has proven to be very difficult to close as a result of Shepos' breach of Court Orders, and fraudulent bankruptcy filing.

15.     I am solely supporting our 19-year old daughter, who is a full-time community college student.

16.     Because of Shepos' nonpayment of his court-ordered financial obligations, I have been forced to withdraw money from the retirement account assigned to me in the Judgment of Dissolution, resulting in income tax obligations for 2018 totaling $7,180.00 for Internal Revenue Service and $1,979.00 to the California Franchise Tax Board totaling $9,159.00, not including the penalties and interest that are now accruing.

17.     I have also had to incur interest charges on credit cards that would not have been necessary if Shepos' had paid his court-ordered obligations.

18.     I am desperate to have the Court hold Shepos in contempt, including but not limited to ordering his imprisonment, until and unless he pays the total sum of monies which he owes to me, for which he is legally responsible, as set forth in the subject Order to Show Cause and Affidavit for Contempt.  In my separately filed Request for Order I am seeking remedies to enforce Shepos' other, and continuing, financial obligations pursuant to our Judgment.  Shepos must be held accountable for the massive financial destruction he has created for his daughter and myself.

3

**DECLARATION OF KAREN GLUCK**

F:\InActive\1709-1\Pleadings\012220DCActiencontempt.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

19.     On 05/11/15, Judge Bruce G. Iwasaki found, "It is clear that Respondent misappropriated community property during the marriage ...... in a manner that can only be described as outright theft." A true and correct copy of Judge Iwasaki's Minute Order in this regard is attached as **Exhibit "I."** At the time, Shepos had not paid to me the sum of $54,754.93 which Judge Iwasaki ordered at an April 10, 2014 hearing. Judge Iwasaki's order was in connection with a February 11, 2015 RFO I filed asking for the Court to award to me an unequal amount of the community interest in Shepos' LACERA Plan pursuant to Family Code section 2602. His LACERA plan was the one remaining community asset to be divided. In my February 11, 2015 Request for Order, I also requested that the Court quantify the sum of attorneys' fees for which Shepos was obligated to pay, which I incurred to enforce, defend and assert the validity and enforceability of our Post Nuptial Agreement. I also requested that the Court order that I be the custodian of our daughter's college fund. During the pendency of my February 11, 2015 Request for Order, before hearing, Shepos fraudulently filed for bankruptcy for the second time, on April 9, 2015, and the Court was thus unable to, in connection with that hearing, grant the relief I was requesting other than an unequal division of Shepos' LACERA account.

20.     Due to Shepos' criminal behavior, and need for protection of myself and my daughter that followed, I had to hire several attorneys and financial/criminal professionals to defend and compel the terms of the Post-Marital Agreement, preserve my assets and protect myself from tax liabilities arising from Shepos' criminal and wrongful acts. Specifically, I had to hire:

a.      Harris-Ginsberg LLP. I incurred attorney's fees and costs in the sum of $82,666 from inception to the entry of Judgment, and an additional $39,414.59 post judgment through December 31, 2019 to enforce Respondent's compliance with the terms of our Post Marital Agreement incorporated into our Judgment of Dissolution. Shepos paid only $7,500 of this amount. Attached hereto as **Exhibit "J"** are true and correct copies of Harris-Ginsberg's billing redacted invoices.

b.      I incurred legal fees to criminal attorney Don Etra, before his passing, in the amount of $500 to defend and compel the terms of the Post-Marital Agreement.

4

DECLARATION OF KAREN GLUCK
P:\JonActive\1709-1\Pleadings\012220DCAclientcontempt.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

1      c.  I sought advice from criminal attorney David Fleck and retired IRS agent

2    Alan Lipkin to defend and compel the terms of the Post-Marital Agreement. I paid Mr. Fleck $2,500

3    but I no longer have proof of that payment. I paid Mr. Lipkin $7,625. Attached hereto as **Exhibit**

4    **"K"** is a true and correct copy of my proof of payment to Mr. Lipkin.

5      d.  I incurred legal fees and costs with Bankruptcy Attorney David Tilem to

6    defend and compel the terms of the Post-Marital Agreement in Shepos' fraudulent bankruptcy

7    filing(s) in the total sum of $22,959.50. Attached hereto as **Exhibit "L"** are true and correct copies

8    of the billing statements from the Law Office of David Tilem.

9      e.  I retained Brager Tax Law Group, a tax counselor, to assist me in defending

10   myself against the potential tax liabilities from Shepos' criminal activity. Attached hereto as **Exhibit**

11   **"M"** are true and correct copies of the billing statements from Brager Tax Law Group totaling

12   $4,639.

13     f.  To defend and compel compliance with the terms of the Post-Marital

14   Agreement, I hired an asset protection specialist, Jacob Stein of Klueger & Stein, LLP. I paid Stein

15   $13,700.00 for his services, $10,000 was refunded. Attached hereto as **Exhibit "N"** is a true and

16   correct copy of my Bank of America statement and the canceled check reflecting payment to

17   Klueger & Stein, LLP in the amount of $13,700.00 dated March 8, 2011.

18     21.  I have reason to believe Shepos has the ability to pay in money and assets to take care

19   of his financial responsibilities.

20     22.  The federal indictment indicates Shepos received substantial cash payments from

21   county clients as kickbacks for contracts and engaged in other fraudulent conduct for money.

22     23.  During our divorce proceedings, I discovered a safe at the bottom of a tall box found

23   in storage labeled "rug," was able to open the safe and discovered it was full of hundreds of

24   collectible coins and over 30 gift cards.

25     24.  I obtained numerous receipts from Shepos indicating hundreds of dollars of

26   merchandise was paid for with dozens of gift cards and/or predominately with cash.

27

28

5

**DECLARATION OF KAREN GLUCK**

F:\InActive\1709-1\Pleadings\012220DAClientcontempt.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

25.    I still receive emails to our family email address addressed to Shepos, which include timeshare companies offering to sell a timeshare, from various sports memorabilia companies confirming purchases or announcing auctions, from various hotels confirming Shepos stayed, and from travel-related businesses.

26.    I continue to receive in the mail annual reports or prospectus from various investment companies.

27.    Either through Shepos' bankruptcy or in the boxes from storage, I found statements for bank accounts in Shepos name for which I had no knowledge.

28.    Attached hereto as **Exhibit "O"** is a true and correct copy of an email dated August 12, 2017, stating "Timeshare Buyer May Be Available." This leads me to believe that Shepos has an interest in timeshare(s).

29.    In boxes from our shared storage, I obtained official documents confirming Shepos owns and/or has owned about 25 life insurance policies. Attached hereto as **Exhibit "P"** is a true and correct copy of a list of Shepos' life insurance policies believed to be in effect as of October 2018. I believe Shepos makes large monthly payments as a way to hide and launder the cash.

30.    Attached hereto as **Exhibit "Q"** is a copy of CitiBusiness / AAdvantage credit card statement dated November 10, 2008 reflecting that Shepos overpaid on his credit card to leave positive balance of $9,197.33, as a way to stash his cash. He may continue this practice.

31.    Shepos had accounts at various casinos, where he may be continuing to hide money. Attached hereto as **Exhibit "R"** are true and correct copies of various letters and/or statements from the MGM Mirage, Chumash Casino, The Venetian/The Palazzo, Harrah's, and Las Vegas Hilton, to name a few.

32.    Internet searches indicate Shepos is also known as Donald F. Sabatino and sometimes uses the middle initial "M" instead of "J." I believe Shepos may be hiding assets under that alias. Attached hereto as **Exhibit "S"** is a true and correct copy of a Fast People Search printout showing Shepos also known as Donald F. Sabatino. Attached hereto as **Exhibit "T"** is a true and correct copy of a Fast People Search printout showing Donald F. Sabatino also known as Shepos.

///

6

DECLARATION OF KAREN GLUCK
F:\UnActive\1709-1\Pleadings\012220DCAclientcontempt.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

33.     In September 2016, Shepos mailed me a cashier's check for $25,000 to purchase a car for his daughter. The cashier's check was drawn off of a US Bank account which Shepos has never disclosed. A true and correct copy of the cashier's check is attached hereto as **Exhibit "U."**

34.     Shepos has developed multiple ways to receive and hide the cash payments explaining why Shepos always carries and spends large amounts of cash, all to launder and preserve the cash he received from his criminal activity.

35.     Attached hereto as **Exhibit "V"** is a statement from Interinsurance Exchange of the Auto Club indicating that Shepos was paying insurance on two vehicles, a Mercedes Benz and a Honda.

36.     Shepos has participated in auctions with Steiner Sports as shown by emails attached collectively as **Exhibit "W."** One says, "Thank you for participating in our auction and being patient." Another says, "there is nothing better than a loyal customer like you ....."

37.     It appears Shepos has traveled on private jets as shown in an email he received from Jets.com, a true and correct copy of which is attached as **Exhibit "X."**

38.     It appears that as of last year Shepos continued to stay in high price hotels, such as the Westin St. Francis in San Francisco, and Alexander's Inn Group Lodging and Spa, as documented by emails attached hereto as **Exhibit "Y."**

39.     I receive in the mail annual reports and summary prospectus either through the email or the mail an indication Shepos has investments with different companies including BlackRock Capital Appreciation Portfolio, Deutsche Asset Management and MFS Growth Series, such as those attached hereto as **Exhibit "Z."**

40.     On October 21, 2019, I received a letter from MML Investors Services, which appears to indicate Shepos has an investment with them. A true and correct copy of this letter is attached hereto as **Exhibit "AA."**

41.     I have received emails to our "family account" from U.S. Mint, Touchdown Treasures, Barry's Tickets, Pay it Forward Auctions SM, Set Break Auctions, BST Auctions, Collectibles Central, Fusco Auctions, Regency Superior Auctions, SIG Auctions, National Sports Collectors Convention, and Funk's Art.

DECLARATION OF KAREN GLUCK                            7

F:\In Active\1709-1\Pleadings\012220DCAcii\contempt.wpd

In re Marriage of SHEPOS                         L.A.S.C. Case No. BD 547 347

42.     Based on an email dated January 31, 2015, a true and correct copy of which is attached as **Exhibit "BB,"** I believe Shepos may have an undisclosed account at the Navy Federal Credit Union.

43.     Additional evidence seems to support a suggestion that Shepos may be using his Father's identity is a notice I received in the family email regarding VA benefits. Shepos was never in the military. Attached hereto as **Exhibit "CC"** is a true and correct copy of an email dated May 13, 2018, which states, "Tom, your VA housing benefit is now available." Further, I received a letter dated January 5, 2020 from Covered California, questioning my eligibility for coverage due to the assertion that I "may have an offer of other health insurance from an employer or the government, such as Medicare or Veteran's Health..." A true and correct copy of this letter is attached as **Exhibit "DD."**

44.     Shepos has perjured himself time and time again in bankruptcy and family court, on employment applications, on several marriage licenses containing false entries, on loan applications, on 1099's with false information, and on tax returns. There is no reason for anyone, including this Court, to believe anything that Shepos says, now or ever.

45.     With Shepos now accepting a plea agreement with a recommended two-year sentence or facing 8 years in prison if the plea agreement is not met, as well as Shepos' agreement to pay the IRS $110,000 in unpaid income taxes, Shepos' financial ability to continue paying his court ordered obligations is at risk.

46.     Therefore, I am asking the court to hold Respondent in contempt, including imprisonment, until he pays to me the sums which he owes, and which continue to accrue, as set forth in the subject Order to Show Cause and Affidavit for Contempt.

///
///
///
///
///
///
///

DECLARATION OF KAREN GLUCK

P:\In Active\1709-1\Pleadings\012220OCAclientcontempt.wpd

In re Marriage of SHEPOS                              L.A.S.C. Case No. BD 547 347

47.    On March 15, 2010, Shepos wrote me a letter where he promised and initialed the paragraph that he will "always take financial responsibility to get you back on financial stability and rebuild your financial stability into the future…" A true and correct copy of this letter is attached as Exhibit "EE." It is time Shepos kept his promise to me and his daughter.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 27th day of January 2020 at Los Angeles, California.

ELECTRONIC SIGNATURE
ATTACHED

KAREN GLUCK

DECLARATION OF KAREN GLUCK
F:\InActive\1709-1\Pleadings\012220DCAclientcontempt.wpd

DocuSign Envelope ID: 5064FE76-7CFB-4BF1-87E6-65BCF454ECE6

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

1       47.    On March 15, 2010, Shepos wrote me a letter where he promised and initialed the

2   paragraph that he will "always take financial responsibility to get you back on financial stability and

3   rebuild your financial stability into the future..." A true and correct copy of this letter is attached as

4   Exhibit "EE."  It is time Shepos kept his promise to me and his daughter.

5

6       I declare under penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct.  Executed this 27th day of January 2020 at Los Angeles, California.

8

9   KAREN GLUCK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KAREN GLUCK

9

F:\InActive\1709-1\Pleadings\012220DCActiontcontempt.wpd

# Exhibit #2

Exhibit #2

FL-190

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
LARRY A. GINSBERG, ESQ. (SBN 125556)
JESSICA M. SPIKER, ESQ. (SBN 251421)
HARRIS-GINSBERG LLP
6500 WILSHIRE BLVD., STE. 1800 16th Floor
LOS ANGELES, CA 90048
TELEPHONE NO.: 310-444-6333    FAX NO. (Optional): 310-444-6330
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): KAREN GLUCK SHEPOS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: same as above
CITY AND ZIP CODE: LOS ANGELES 90012
BRANCH NAME: CENTRAL DISTRICT

PETITIONER: KAREN GLUCK SHEPOS

RESPONDENT: THOMAS SHEPOS

**NOTICE OF ENTRY OF JUDGMENT**

FOR COURT USE ONLY

**CONFORMED COPY**
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 01 2013

John A. Clarke, Executive Officer/Clerk
By _M. Ferrera_ , Dep.
M. Ferrera

CASE NUMBER: BD 547 347    Dept. 63

You are notified that the following judgment was entered on (date): OCT 0 1 2013

1. [X] Dissolution
2. [ ] Dissolution—status only
3. [ ] Dissolution—reserving jurisdiction over termination of marital status or domestic partnership
4. [ ] Legal separation
5. [ ] Nullity
6. [ ] Parent-child relationship
7. [ ] Judgment on reserved issues
8. [ ] Other (specify):

Date: OCT 0 1 2013

Clerk, by _M. Ferrera_ , Deputy

— NOTICE TO ATTORNEY OF RECORD OR PARTY WITHOUT ATTORNEY —
Under the provisions of Code of Civil Procedure section 1952, if no appeal is filed the court may order the exhibits destroyed or otherwise disposed of after 60 days from the expiration of the appeal time.

STATEMENT IN THIS BOX APPLIES ONLY TO JUDGMENT OF DISSOLUTION
Effective date of termination of marital or domestic partnership status (specify): OCT 0 1 2013
WARNING: Neither party may remarry or enter into a new domestic partnership until the effective date of the termination of marital or domestic partnership status, as shown in this box.

CLERK'S CERTIFICATE OF MAILING
I certify that I am not a party to this cause and that a true copy of the Notice of Entry of Judgment was mailed first class, postage fully prepaid, in a sealed envelope addressed as shown below, and that the notice was mailed
at (place): Los Angeles , California, on (date): OCT 0 1 2013

Date: OCT 0 1 2013    Clerk, by _M. Ferrera_ , Deputy

Name and address of petitioner or petitioner's attorney
Karen Gluck Shepos
c/o Harris Ginsberg
Jessica M. Spiker, Esq.
6500 Wilshire Blvd., Suite 1800
Los Angeles, CA 90048

Name and address of respondent or respondent's attorney
Thomas Shepos
In Pro Per
1663 Veteran Avenue, #310
Los Angeles, CA 90024

Form Adopted for Mandatory Use
Judicial Council of California
FL-190 [Rev. January 1, 2005]    **NOTICE OF ENTRY OF JUDGMENT**
(Family Law—Uniform Parentage—Custody and Support)    Family Code, §§ 2338, 7636, 7637
Page 1 of 1
Legal Solutions Plus

Exhibit A

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
LARRY A. GINSBERG, ESQ. (SBN 125556)
JESSICA M. SPIKER, ESQ. (SBN 251421)
HARRIS-GINSBERG LLP
9250 WILSHIRE BLVD., SIXTEENTH FLOOR
LOS ANGELES, CA 90048
TELEPHONE NO.: 310-444-6333    FAX NO. (Optional): 310-444-6330
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): KAREN GLUCK SHEPOS

**FOR COURT USE ONLY**

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 01 2013

John A. Clarke, Executive Officer/Clerk
By _____, Dep.
M. Ferrera

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: same as above
CITY AND ZIP CODE: LOS ANGELES 90012
BRANCH NAME: CENTRAL DISTRICT

MARRIAGE OR PARTNERSHIP OF
PETITIONER: KAREN GLUCK SHEPOS

RESPONDENT: THOMAS SHEPOS

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] DISSOLUTION  [ ] LEGAL SEPARATION  [ ] NULLITY | BD 547 347  Dept. 63 |

[ ] Status only
[ ] Reserving jurisdiction over termination of marital or domestic partnership status
[ ] Judgment on reserved issues
Date marital or domestic partnership status ends: OCT 01 2013

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders. The restraining orders are contained on page(s) _____ of the attachment. They expire on (date):

2. This proceeding was heard as follows: [X] Default or uncontested [ ] By declaration under Family Code section 2336
   [X] Contested  [ ] Agreement in court to be entered pursuant to CCP § 664.6 heard on
   a. Date:                        Dept.:                        Room:   9/20/13 in
   b. Judicial officer (name): xxxxxxxxxxxxxxxxxxxxxxxx [ ] Temporary judge   Dept. 63
   c. [X] Petitioner present in court   [X] Attorney present in court (name): Jessica M. Spiker
   d. [X] Respondent present in court   [ ] Attorney present in court (name):
   e. [ ] Claimant present in court (name):   [ ] Attorney present in court (name):
   f. [ ] Other (specify name):

3. The court acquired jurisdiction of the respondent on (date): 7/18/2011.
   a. [X] The respondent was served with process.
   b. [ ] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons.
      (1) [X] on (specify date): OCT 01 2013
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of (specify):

   d. [ ] This judgment will be entered nunc pro tunc as of (date):
   e. [ ] Judgment on reserved issues.
   f. The [X] petitioner's [ ] respondent's    former name is restored to (specify): Karen Gluck
   g. [X] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [X] This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

JUDGMENT
(Family Law)

Legal
Solutions
& Plus

Page 1 of 2
Family Code, §§ 2024, 2340, 2343, 3048

F

CASE NAME (Last name, first name of each party): MARRIAGE OF SHEPOS

FL-180

CASE NUMBER
BD 547 347   Dept. 6

4. I. [X] The children of this marriage or domestic partnership are:

(1) [X] Name
Hannah Rose Shepos

Birthdate
October 12, 2000

(2) [ ] Parentage is established for children of this relationship born prior to the marriage or domestic partnership

J. [X] Child custody and visitation (parenting time) are ordered as set forth in the attached

(1) [X] Settlement agreement, stipulation for judgment, or other written agreement which contains the information required by Family Code section 3048(a). *Judgment (continuation of)*

(2) [ ] *Child Custody and Visitation Order Attachment* (form FL-341).

(3) [ ] *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).

(4) [ ] Previously established in another case. Case number: _____ Court:

k. [ ] Child support is ordered as set forth in the attached

(1) [ ] Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations required by Family Code section 4065(a).

(2) [ ] *Child Support Information and Order Attachment* (form FL-342).

(3) [ ] *Stipulation to Establish or Modify Child Support and Order* (form FL-350).

(4) [ ] Previously established in another case. Case number: _____ Court:

l. [X] Spousal, domestic partner, or family support is ordered:

(1) [ ] Reserved for future determination as relates to [X] petitioner [ ] respondent

(2) [X] Jurisdiction terminated to order spousal or partner support to [ ] petitioner [X] respondent

(3) [ ] As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).

(4) [ ] As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.

(5) [X] Other (specify): *As set given in the attached continuation of judgment*

m. [X] Property division is ordered as set forth in the attached

(1) [X] Settlement agreement, stipulation for judgment, or other written agreement.

(2) [ ] *Property Order Attachment to Judgment* (form FL-345).

(3) [X] Other (specify): *Judgment (continuation of)*

n. [X] Attorney fees and costs are ordered as set forth in the attached

(1) [X] Settlement agreement, stipulation for judgment, or other written agreement.

(2) [ ] *Attorney Fees and Costs Order* (form FL-346).

(3) [X] Other (specify): *Judgment (continuation of)*

o. [X] Other (specify): The issues of spousal support and child support shall be reserved for Judgment, and all current orders regarding same shall remain in full force and effect. Further issues are reserved as set forth in the attached Stipulated Judgment.

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: XXXXXXXXXXXXX

JUDICIAL OFFICER

5. Number of pages attached: 14

XXXXXXXXXXXXXXXXXXXXXX
SIGNATURE FOLLOWS LAST ATTACHMENT

NOTICE

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-180 [Rev. July 1, 2012]

JUDGMENT
(Family Law)

Page 3 of 3



FL-192

# NOTICE OF RIGHTS AND RESPONSIBILITIES
## Health-Care Costs and Reimbursement Procedures

**IF YOU HAVE A CHILD SUPPORT ORDER THAT INCLUDES A PROVISION FOR THE REIMBURSEMENT OF A PORTION OF THE CHILD'S OR CHILDREN'S HEALTH-CARE COSTS AND THOSE COSTS ARE NOT PAID BY INSURANCE, THE LAW SAYS:**

**1. Notice.** You must give the other parent an itemized statement of the charges that have been billed for any health-care costs not paid by insurance. You must give this statement to the other parent within a reasonable time, but no more than 30 days after those costs were given to you.

**2. Proof of full payment.** If you have already paid all of the uninsured costs, you must (1) give the other parent proof that you paid them and (2) ask for reimbursement for the other parent's court-ordered share of those costs.

**3. Proof of partial payment.** If you have paid only your share of the uninsured costs, you must (1) give the other parent proof that you paid your share, (2) ask that the other parent pay his or her share of the costs directly to the health-care provider, and (3) give the other parent the information necessary for that parent to be able to pay the bill.

**4. Payment by notified parent.** If you receive notice from a parent that an uninsured health-care cost has been incurred, you must pay your share of that cost within the time the court orders; or if the court has not specified a period of time, you must make payment (1) within 30 days from the time you were given notice of the amount due, (2) according to any payment schedule set by the health-care provider, (3) according to a schedule agreed to in writing by you and the other parent, or (4) according to a schedule adopted by the court.

**5. Disputed charges.** If you dispute a charge, you may file a motion in court to resolve the dispute, but only if you pay that charge before filing your motion.

If you claim that the other party has failed to reimburse you for a payment, or the other party has failed to make a payment to the provider after proper notice has been given, you may file a motion in court to resolve the dispute. The court will presume that if uninsured costs have been paid, those costs were reasonable. The court may award attorney fees and costs against a party who has been unreasonable.

**6. Court-ordered insurance coverage.** If a parent provides health-care insurance as ordered by the court, that insurance must be used at all times to the extent that it is available for health-care costs.

a. **Burden to prove.** The party claiming that the coverage is inadequate to meet the child's needs has the burden of proving that to the court.

b. **Cost of additional coverage.** If a parent purchases health-care insurance in addition to that ordered by the court, that parent must pay all the costs of the additional coverage. In addition, if a parent uses alternative coverage that costs more than the coverage provided by court order, that parent must pay the difference.

**7. Preferred health providers.** If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs.

Form Approved for Optional Use
Judicial Council of California
FL-192 [Rev. July 1, 2007]

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
Health-Care Costs and Reimbursement Procedures

Legal
Solutions
Plus

Page 1 of 2
Family Code, §§ 4062, 4063

# INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER

FL-192

**General Information**

The court has just made a child support order in your case. This order will remain the same unless a party to the action requests that the support be changed (modified). An order for child support can be modified only by filing a motion to change child support and serving each party involved in your case. If both parents and the local child support agency (if it is involved) agree on a new child support amount, you can complete, have all parties sign, and file with the court a *Stipulation to Establish or Modify Child Support and Order* (form FL-350) or *Stipulation and Order (Governmental)* (form FL-625).

**When a Child Support Order May Be Modified**

The court takes several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net incomes of both parents are determined, along with the percentage of time each parent has physical custody of the children. The court considers both parties' tax filing status and may consider hardship, such as a child of another relationship. An existing order for child support may be modified when the net income of one of the parents changes significantly, the parenting schedule changes significantly, or a new child is born.

**Examples**

- You have been ordered to pay $500 per month in child support. You lose your job. You will continue to owe $500 per month, plus 10 percent interest on any unpaid support, unless you file a motion to modify your child support to a lower amount and the court orders a reduction.
- You are currently receiving $300 per month in child support from the other parent, whose net income has just increased substantially. You will continue to receive $300 per month unless you file a motion to modify your child support to a higher amount and the court orders an increase.
- You are paying child support based upon having physical custody of your children 30 percent of the time. After several months it turns out that you actually have physical custody of the children 50 percent of the time. You may file a motion to modify child support to a lower amount.

**How to Change a Child Support Order**

To change a child support order, you must file papers with the court. *Remember:* You must follow the order you have now.

**What forms do I need?**

If you are asking to change a child support order open with the local child support agency, you must fill out one of these forms:

- FL-680, *Notice of Motion (Governmental)* or FL-683 *Order to Show Cause (Governmental) and*
- FL-684, *Request for Order and Supporting Declaration (Governmental)*

If you are asking to change a child support order that is not open with the local child support agency, you must fill out one of these forms:

- FL-301, *Notice of Motion or FL-300, Order to Show Cause and*
- FL-310, *Application for Order and Supporting Declaration or*
- FL-390, *Notice of Motion and Motion for Simplified Modification of Order for Child, Spousal, or Family Support*

You must also fill out one of these forms:

- FL-150, *Income and Expense Declaration or FL-155, Financial Statement (Simplified)*

**What if I am not sure which forms to fill out?**

Talk to the family law facilitator at your court.

After you fill out the forms, file them with the court clerk and ask for a hearing date. Write the hearing date on the form. The clerk will ask you to pay a filing fee. If you cannot afford the fee, fill out these forms, too:

- Form FW-001, *Application for Waiver of Court Fees and Costs*
- Form FW-003, *Order on Application for Waiver of Court Fees and Costs*

You must serve the other parent. If the local child support agency is involved, serve it too. This means someone 18 or over—not you—must serve the other parent copies of your filed court forms at least 16 court days before the hearing. Add 5 calendar days if you serve by mail within California (see Code of Civil Procedure section 1005 for other situations). Court days are weekdays when the court is open for business (Monday through Friday except court holidays). Calendar days include all days of the month, including weekends and holidays. To determine court and calendar days, go to *www.courtinfo.ca.gov/selfhelp/courtcalendars/*.

The server must also serve blank copies of these forms:

- FL-320, *Responsive Declaration to Order to Show Cause or Notice of Motion and FL-150, Income and Expense Declaration, or*
- FL-155, *Financial Statement (Simplified)*

Then the server fills out and signs a *Proof of Service* (form FL-330 or FL-335). Take this form to the clerk and file it.

Go to your hearing and ask the judge to change the support. Bring your tax returns from the last two years and your last two months' pay stubs. The judge will look at your information, listen to both parents, and make an order. After the hearing, fill out:

- FL-340, *Findings and Order After Hearing and*
- FL-342, *Child Support Information and Order Attachment*

**Need help?**

Contact the family law facilitator in your county or call your county's bar association and ask for an experienced family lawyer.

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
Health-Care Costs and Reimbursement Procedures

In re Marriage of SHEPOS                                    L.A.S.C. Case No.  BD 547 347

## CONTINUATION OF JUDGMENT

**I.**    **GENERAL INFORMATION**

1.1    Agreement to Separate.  The Court finds that the Parties have agreed to separate and live permanently apart.  The purpose of this Judgment is to make a final and complete settlement of rights and obligations arising out of the Parties' marriage, including their respective property rights and support rights on such matters as are included herein, and except as to those issues for which the Court shall retain jurisdiction as provided herein.  The Parties were married on August 11, 1996.  The Court finds that the Parties separated on June 16, 2011 ("Separation Date").

1.2    Proceedings.  This proceeding for dissolution of marriage between the Parties was filed in the Superior Court of the State of California, County of Los Angeles, Case Number BD547347.  The Petition was filed by Petitioner on July 6, 2011.  The Court acquired jurisdiction over Respondent on August 17, 2011.  The Court finds that the Parties have one (1) minor child, a daughter, Hanna Rose Shepos, date of birth October 12, 2000.

1.3    Post Marital Agreement.  The Court finds that the Parties made and entered into a POST MARITAL AGREEMENT (the "Agreement"), attached hereto as Exhibit "A" and incorporated by reference herein as though set forth verbatim, effective  the 15th day of June, 2010 ("Post Marital Agreement Effective Date"), at Los Angeles, California.  The Court finds that the Parties agree that the Agreement is valid and enforceable.  The Court finds that the signatures on the Agreement are those of the parties in this case.  The Court finds that the parties did in fact sign the Agreement on June 15, 2010.  The Court finds that both parties read the Agreement before they signed it.   The Court finds that both parties understood the Agreement before they signed it.  The Court finds that both parties signed the Agreement freely and voluntary, that no threats were made to get the other party to sign the Agreement, and that other than what is stated in the Agreement, no promises were made to get the other party to sign the Agreement.  The Court finds that both parties agree that no fraud or undue influence was used to get the other party to sign the Agreement.

CONTINUATION OF JUDGMENT                                    1

F:\1709\Pleadings\072113JOGA.wpd

In re Marriage of SHEPOS                          L.A.S.C. Case No. BD 547 347

1    The Court finds that the Agreement, which terms are incorporated into this Judgment,

2    was and is intended by the Parties, in part, to transmute certain property and assets from joint

3    tenancy or community property to the sole and separate property of Petitioner, and to assign

4    certain debts and obligations to Respondent as his sole and separate obligation as a result of

5    Respondent having engaged in excessive gambling activities, spending and borrowing during the

6    marriage that were unknown and unauthorized by Petitioner; having made misrepresentations to

7    Petitioner about the Parties' financial circumstances; and, having improperly expended

8    community property and separate property of Petitioner without Petitioner's knowledge or

9    consent to the detriment of the community and Petitioner.

10

11   **II.    DIVISION OF PROPERTY**

12       2.1.    Property Specified. The following community, mixed or separate property of

13   Petitioner is awarded/confirmed to Petitioner, and Respondent disclaims any and all interest in

14   thereto. Respondent shall sign, acknowledge and deliver at the request of Petitioner or her heirs

15   and/or assigns, any and all such deeds, releases, assignments, releases, or other instruments as

16   may be reasonably required or requested to effect or evidence his release, waiver, and

17   relinquishment of Respondent's rights in the property, income or estate of Petitioner under the

18   provisions of this Judgment, and to assure that Petitioner shall have sole and exclusive

19   management and control of her separate property.

20           1. The real property located at 1925 Montana Avenue, Unit 5, Santa

21   Monica, CA 90403 (the Montana Avenue Residence). The legal description of the Montana

22   Avenue Residence subject to this Judgment is:

23           A CONDOMINIUM COMPOSED OF:

24           PARCEL 1:

25           A) AN UNDIVIDED 1 n INTEREST IN AND TO LOT 1 OF

26           TRACT NO. 50714, IN THE CITY OF SANTA MONICA, IN THE

27           COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER

28           MAP FILED IN BOOK 1193 PAGES 15 TO 17 INCLUSIVE OF MAPS,

2

CONTINUATION OF JUDGMENT
FA1705FVIsaEng0072117DOA.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

1      AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1

2   ABOVE, FOR ALL USES AND PURPOSES OF A "BALCONY OR

3   PATIO" OVER AND ACROSS THAT PORTION OF LOT 1 OF SAID

4   TRACT NO. 50714 DEFINED AND DELINEATED AS THE

5   "EXCLUSIVE USE COMMON AREA" WHICH BEARS THE SAME

6   NUMBER AS THE UNIT REFERRED TO IN PARCEL 1" ABOVE

7   FOLLOWED BY THE LETTER "C" ON THE ABOVE REFERRED TO

8   CONDOMINIUM PLAN.

9      PARCEL 3:

10      AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1

11   ABOVE, FOR ALL USES AND PURPOSES OF A "PARKING SPACE"

12   OVER AND ACROSS THAT PORTION OF LOT 1 OF SAID TRACT

13   NO. 50714 DEFINED AND DELINEATED AS "EXCLUSIVE USE

14   COMMON AREA"3P (AND) 9P ON THE ABOVE REFERRED TO

15   CONDOMINIUM PLAN.

16   Respondent shall execute any and all documents, including but not limited to an

17   interspousal transfer deed, grant deed, or quitclaim deed, necessary or convenient to transmute,

18   transfer and release any interest he had or does have, or may have, in the Montana Avenue

19   Residence to Petitioner as her sole and separate property.

20      2.      All prior payments received, or due to the parties, if any, from

21   Laurence Brown and Kawanna Brown arising out of the sale by the Parties or their Trust of the

22   property located at 1330 Roscomare Road, Los Angeles, CA 90077.  The right to seek

23   enforcement of the aforementioned payments, and the right to receive any and all interest

24   payments made by Laurence Brown and Kawanna Brown or their successors in interest, if any, to

25   the Parties and/or the Shepos Family Trust, and all interest paid by them at any time, shall also be

26   the sole and separate property of Petitioner.

27   ///

28   ///

4

CONTINUATION OF JUDGMENT

P:\1709\Pleadings\0722\SJDOA.wpd

In re Marriage of SHEPOS                              L.A.S.C. Case No.  BD 547 347

1          3.    Respondent acknowledges that Petitioner received, or was to

2   receive, inherited funds during their marriage, and that he borrowed funds from Petitioner's

3   father, some of which were wrongfully used by him without Petitioner's knowledge or consent or

4   as a result of misrepresentations by Respondent as to the parties' financial circumstances.

5   Respondent further acknowledges that Petitioner has received and retained a portion of the

6   previously paid proceeds from the sale of the real property located at 1330 Roscomare Road, Los

7   Angeles, CA 90077, with his knowledge and consent, as partial repayment for his

8   misrepresentations and improper use of her inherited, separate property funds.  Respondent

9   expressly waives any and all claims regarding Petitioner's disposition, receipt and retention of

10  such proceeds, and such proceeds and the rents, issues and profits therefrom shall be and remain

11  Petitioner's separate property.

12          4.    All amounts on deposit in any financial institution in any and all

13  accounts standing in the name of Petitioner or any Trust of Petitioner's, or on Petitioner's behalf,

14  including but not limited to Petitioner's account at First Federal Bank.

15          5.    All gold and silver coins that were in the possession of the Parties

16  as of the Post Marital Agreement Effective Date, June 15, 2010.  The Court finds that

17  Respondent made a handwritten list of the gold and silver coins and delivered that list to

18  Petitioner, which list shall be admissible in evidence in any dispute between the Parties

19  concerning the gold and silver coins.

20          6.    The earnings and income of Petitioner, from whatever source, and

21  no matter when earned or received, shall be and remain Petitioner's sole and separate property.

22  Any and all income earned by Petitioner and the ownership, value and income from any and all

23  intellectual property, syndication or producing or other projects, books, creative works, and the

24  businesses known as Perfect Product Placement, Hannah's Halos, Gluck Management, Material

25  Girl Pictures, the Karen Gluck Trust, and all other businesses, enterprises, proprietorships and

26  interests formed or engaged in by Petitioner during the parties' marriage and/or after the date of

27  separation shall be and remain Petitioner's separate property.  Respondent shall have no right,

28  title, interest, claim, or lien with regard to the intellectual properties, creative works, businesses,

CONTINUATION OF JUDGMENT                         5
FA1705\Pleadings\072213JDOA.wpd

In re Marriage of SHEPOS                          L.A.S.C. Case No. BD 547 347

1   earnings and income of Petitioner, past, present or future and hereby expressly and forever

2   waives any and all rights to seek or claim any interest in such property and Petitioner's earnings

3   and income.

4              7.    The Parties specifically intend, and the Court finds, that with

5   respect to income Petitioner has received or may receive in the future for all personal services

6   and efforts made by Petitioner shall be Petitioner's sole and separate property, and that any

7   income from Petitioner's separate property, whether as a result of the management by her of such

8   property or otherwise, shall be and remain Petitioner's sole and separate property.

9              8.    Respondent expressly warrants and represents that he fully

10  acknowledges, understands and agrees that except for the Post Marital Agreement, all of

11  Petitioner's income and assets which resulted from the personal services, skill, effort and work of

12  Petitioner throughout their marriage would otherwise be community property, Respondent

13  expressly warrants and agrees, and the Court orders, that Petitioner's earnings and income,

14  intellectual property, businesses, and other interests described herein shall be her sole and

15  separate property to be enjoyed by her and subject to her disposition as her separate property in

16  the same manner as though their marriage had never been entered into.

17             9.    One half of the community interest in Respondent's earnings and

18  income which resulted from his personal services, skill, effort and work during the parties'

19  marriage.

20             10.   All investment opportunities presented to Petitioner during the

21  marriage or arising from the marriage of which she became aware during the marriage, if any,

22  and/or after the date of separation. Petitioner shall not be required to disclose to Respondent any

23  past, present or future investment opportunity which has been, or which is, presented to

24  Petitioner. Any investments made by Petitioner shall remain Petitioner's separate property, even

25  if the Parties discussed the investment between themselves and the community had an ability to

26  make such investment(s).

27             11.   The total sum of Respondent's County of Los Angeles 457

28  Deferred Compensation and Thrift Plan ("Horizons Plan"), Plan Number 98996-01 as of April

6

CONTINUATION OF JUDGMENT
F:\1709\Pleadings\072313\DGA.wpd

In re Marriage of SHEPOS'                                    L.A.S.C. Case No. BD 547 347

1  10, 2013, which sum shall be distributed pursuant to a Qualified Domestic Relations Order

2  (QDRO), which shall be prepared by Linda Morra. The parties shall equally share the cost

3  thereof, and the parties shall perform all acts, execute all documents, and produce all documents

4  necessary for the preparation of the QDRO and release of information relating to this account.

5  Respondent acknowledges and understands that the retirement account would be or is community

6  property except for the Post Marital Agreement, and that he knowingly and freely gave up and

7  transferred to Petitioner as her separate property his fifty percent (50%) community property

8  interest in the account as of the date of the Post Marital Agreement.  The transfer of his fifty

9  percent (50%) community property interest in the account as of the date of the Post Marital

10  Agreement was made by Respondent at his request and insistence. In consideration for

11  Respondent assigning the entire sum held in the Horizon's Plan account as of April 10, 2013,

12  Petitioner has agreed to waive Respondent's obligation pursuant to the Post Marital Agreement

13  to pay her the sum of $55,000, as set forth below in paragraph 2.7 below.

14        The Court retains jurisdiction to order the joinder of any retirement, pension, or deferred

15  compensation plan in which the parties have an interest and/or which is covered by this

16  Judgment.

17        2.3.    The parties agree, and the Court finds, that although each Party may have devoted

18  a considerable amount of personal time, skills, service, industry and effort during their marriage

19  to the management of the Montana Ave. Residence or to any separate property of Petitioner, no

20  community interest, income or asset was created thereby, and any income, profits, accumulations,

21  appreciation and increase in value of the separate property of Petitioner shall be and remain

22  Petitioner's separate property.  Respondent expressly waives any and all rights to claim any

23  compensation in connection with any personal time expended by him with respect to the

24  management of the Montana Ave. Residence or any separate property of Petitioner, and agrees

25  that he shall not, and has not, acquire any ownership interest in any of Petitioner's separate

26  property as a result of personal efforts by him during the parties' marriage.

27        2.4    LACERA Plan. The Court shall reserve jurisdiction to divide benefits relating to

28  Respondent's LACERA Plan with the County of Los Angeles.

CONTINUATION OF JUDGMENT                                    7
PH1709\Pleadings\072213JDGA.wpd

In re Marriage of SHIPOS                              L.A.S.C. Case No. BD 547 347

2.6    **Tax Basis.** The Court finds that the Parties agree that under Internal Revenue Code section 1041, or the tax principles regarding interspousal division of community property, the allocation of property between the Parties under this Judgment is not taxable; and the tax basis of each asset allocated under these provisions has not changed, and will not change, by reason of this division. Each Party is Ordered not to seek a new tax basis for any asset grounded on any such change even though the transaction may otherwise appear to be a bona fide sale.

2.7    The following debts, obligations, and liabilities shall be assigned to Respondent as his sole and separate obligation, and Respondent shall indemnify and hold Petitioner harmless therefrom:

(a.) Mastercard account ending in 9534, and any interest or other charges made on this account, no matter when incurred or by whom.

(b.) Visa Signature account ending in 6175, and any interest or other charges made on this account, no matter when incurred or by whom.

(c.) All debts incurred by him after June 15, 2010, including but not limited to any loans to him from a parent, family member or friend, and any reasonable attorney's fees and costs that may be incurred by Petitioner in connection with such debts.

(d) The existing mortgage obligations as of June 15, 2010; and any and all other future mortgage obligations, on the Montana Ave. Residence, no matter when or by whom incurred (except any subsequent mortgage taken out solely by Petitioner.)

2.8    **Additional Payment.** This Court finds that Petitioner was to receive inheritance during the Parties' marriage which would have been Petitioner's separate property. This Court finds that Respondent misappropriated funds from Petitioner's father without Petitioner's consent and/or as a result of misrepresentations made by Respondent to Petitioner relating thereto, depriving Petitioner of the right to receive such funds as inheritance. In connection therewith, Respondent agreed in the Post Marital Agreement that he shall pay Petitioner the sum of $55,000.00, without interest, on or before June 15, 2017. The Court finds that the Parties agree that this obligation is discharged upon Petitioner's receipt of funds from Respondent's Horizon's Plan pursuant paragraph 2.1(7) above.

8

CONTINUATION OF JUDGMENT
FA1709/Pleadings/072213/DQA.wpd

In re Marriage of SHEPOS                                L.A.S.C. Case No. BD 547 347

III.    ADDITIONAL OBLIGATIONS OF RESPONDENT

1

2       3.1     Additional Obligations of Respondent.  Commencing upon the effective date of

3  the Post Marital Agreement (June 15, 2010), the following additional obligations shall be

4  assigned to Respondent as his sole and separate obligation, and Respondent shall indemnify and

5  hold Petitioner harmless therefrom.

6              1.     Respondent shall be solely responsible for and timely pay for all costs

7  relating to the Montana Avenue residence, including but not limited to mortgages (principal and

8  interest), insurance, property taxes, homeowner's association dues, maintenance; utilities, repairs,

9  and necessary improvements, and Respondent shall indemnify and hold Petitioner harmless from

10 any and all liabilities, claims, demands as to such obligations.  The Parties further agree and the

11 Court finds, that neither Respondent nor the community shall gain, or has gained, any ownership

12 or other interest in the Montana Ave. Residence by virtue of the payment of such costs regardless

13 of the source of the payments, or otherwise for any reason, nor shall there be any right of

14 Respondent or the community to any reimbursement for payments made on such costs and

15 expenses related to the Montana Ave. Residence. This paragraph shall constitute an express

16 waiver by Respondent of any and all rights to reimbursement for all payments by him for the

17 costs and expenses relating to the Montana Ave. Residence paid by him or the community, at any

18 time, past, present and future, and including but not limited to reimbursements permitted by

19 Family Code Section 2640.  Respondent acknowledges that he shall continue to be responsible

20 for payment of the mortgage on the Montana Ave. Residence after the separation of the parties,

21 even though does not reside there. Respondent agrees, and the Court finds, that Respondent shall

22 not obtain or ever claim any ownership interest in the Montana Ave. Residence by virtue of his or

23 the community making, having to make or having made mortgage, property tax, improvements or

24 any other payments relating to the Montana Ave. Residence beyond the existing mortgage

25 obligations, and shall not permit any liens to be placed against said property.

26 ///

27 ///

28 ///

9

CONTINUATION OF JUDGMENT
F:\1709\Pleadings\072213\DGA.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

## IV.    SPOUSAL SUPPORT

4.1.    **Respondent's Waiver of Support.**  The Court finds that Respondent waives any right to spousal support.  No court shall have jurisdiction to order any spousal support for Respondent at any time.  Notwithstanding any other Sections in this Judgment, no court shall have the ability to make a future award of spousal support to Respondent, as provided above, regardless of when Respondent may bring a motion to do so and irrespective of any change in economic or other circumstances of the Parties.  The Court finds that Respondent understands that when a court has no jurisdiction over support, no support can be ordered regardless of the hardship that this might cause.  The Court finds that the Parties have carefully bargained for the termination of jurisdiction over support for Respondent as provided in this Judgment, and the provisions of this Section 3.2 are intended to comply with the requirements of In re Marriage of Vomacka (1984) 36 Cal.3d 459, and In re Marriage of Brown (1995) 35 Cal.App.4th 785, to make clear that no court shall have authority to provide for support for Respondent of any amount at any time.  In the event that a Court finds that the waiver by Respondent of spousal support is void or otherwise unenforceable, then this section shall be severed and the remainder of this Judgment shall remain in full force and effect.

4.2.    **Spousal Support for Petitioner.**  The court shall reserve jurisdiction to make further orders regarding the sum of spousal support which shall be ordered payable by Respondent to Petitioner by Judgment as the parties have been unable to reach an agreement concerning the appropriate sum of spousal support to be provided in this Judgment.  The current *pendente lite* spousal support order of $2,097 per month, payable one-half on the first and one-half on the fifteenth of each and every month, shall remain in full force and effect until further Court order or agreement of the Parties.

## V.    CHILD SUPPORT.

The court shall reserve jurisdiction to make further orders regarding the sum of child support which shall be ordered payable by Respondent to Petitioner by Judgment as the parties have been unable to reach an agreement concerning the appropriate sum of child support to be provided in this Judgment.  The current *pendente lite* child support order of

10

CONTINUATION OF JUDGMENT
PA1709\Plead\ngs\072213JDGA.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

1  $1,497 per month, payable one-half on the first and one-half on the fifteenth of each month, shall

2  remain in full force and effect until further Court order or agreement of the Parties.

3

4  **VI.    CHILD CUSTODY**

5      The Parties have one minor child, Hannah Rose Shepos (born October 12, 2000).  The

6  child's country of habitual residence is the United States.

7      6.1.    Legal Custody.  Legal custody of the minor child is Ordered to be with Petitioner

8  under Fam. Code §3006.  Petitioner shall have the right and the responsibility to make the

9  decisions relating to the health, education, and welfare of the Parties' minor child.  Petitioner

10  must confer with Respondent before making any such decisions, except in the case of emergency

11  medical treatment.

12      6.2    Physical Custody.  Physical custody of the minor child of the Parties is Ordered

13  to be with Petitioner under Fam. Code §3007.  The provisions of this Section regarding the

14  custody of the child are intended as a final judicial custody determination, and shall be subject to

15  modification only upon a showing of a significant change of circumstances.  Petitioner shall have

16  physical custody of the child at all times not otherwise designated to Respondent herein.

17      6.2.1.  Visitation.  Respondent shall have visitation with the minor child each

18  Tuesday from 6:15 p.m. until 7:30 p.m., and each Thursday from 5:00 p.m. until 6:30 p.m. and at

19  any other days and times mutually agreed upon between the parties.  Respondent shall have the

20  option of one week of custodial time during the summer, subject to the minor child's approval.

21  Respondent may travel with the minor child to Pennsylvania, also subject to the minor child's

22  approval. Respondent shall also have quarterly weekend visitation with the minor child from

23  Friday to Sunday or extended to Monday if Monday is a holiday for travel to Northern California,

24  subject to the minor child's approval.

25  ///

26  ///

27  ///

28  ///

11

**CONTINUATION OF JUDGMENT**
F:\1709\Pleadings\6072213\DGA.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 542 347

1      6.3    Guardian of the Estate of Hannah During her Minority.  In the event of

2  Petitioner's death or incapacity during the minor child's minority, a third party Guardian of the

3  Estate of Hannah Rose Shepos shall be appointed and serve, without bond, and Petitioner may in

4  her sole discretion and at any time designate or change the designation of who shall be so

5  appointed and serve.

6      6.4.    Respondent shall not have or seek access to or control over any funds or property

7  of Hannah Rose Shepos or inherited by Hannah Rose Shepos in the event of Petitioner's death or

8  incapacity.

9

10  **VII.**    **HEALTH INSURANCE AND LIFE INSURANCE**

11      7.1    Health Insurance Maintained by Respondent for Petitioner.  Respondent shall

12  maintain health insurance for Petitioner's benefit so long as he is legally able to do so.

13  Respondent further agrees that he shall pay for the cost of health insurance for Petitioner in the

14  event he is no longer able to maintain health insurance for her through his employment.

15

16  **VIII.**    **INCOME TAX AND OTHER LIABILITIES RELATING TO GAMBLING.**

17       **SPENDING AND BORROWING ACTIVITIES**

18      8.1    Assignment of Liability.  Respondent shall be solely responsible for the payment

19  of any and all taxes, including penalties and interest, due or hereafter imposed by any taxing

20  authorities in connection with any income, deductions, failure to declare income, and all

21  liabilities and debts in any way arising out of Respondent's gambling, spending and borrowing

22  activities prior to and after April 1, 2010, and Respondent shall indemnify and hold Petitioner

23  free and harmless for any and all tax and other liabilities, assessments, penalties or interest

24  attributable to such activities.  In the event Petitioner is required to retain or employ tax

25  counselor an accountant in connection with Respondent's tax and other liabilities as set forth in

26  this Paragraph, Respondent shall be responsible for and pay the costs of such counselor

27  accountants forthwith upon presentation of invoices for the same.

28  ///

CONTINUATION OF JUDGMENT
PA\1705\Pleadings\07221NJDGA.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547 347

1        8.2    Respondent shall forthwith upon receipt notify and provide Petitioner with a copy

2 of any and all notices, invoices, and communications received by him from any tax authorities

3 relating to the parties' joint income tax returns through 2009 and/or with respect to his gambling

4 activities.

5        8.3    Petitioner shall not be required to file joint income tax returns with Respondent

6 for any year commencing with the year 2009. Respondent shall provide Petitioner with a copy of

7 his income tax returns, and all documents used in the preparation of such returns, each year

8 within thirty (30) days of the filing of such returns.

9        8.4    **Mortgage and Property Interest Tax Deduction.** Respondent shall be entitled

10 to deductions for his payment of the mortgage interest and property tax payments made by him

11 toward the Montana Ave. Residence provided and to the extent he has made such payments.

12

13  IX.   **RELEASES, WARRANTIES, WAIVERS**

14        9.1.   Respondent specifically disclaims any and all ownership interest he had or may

15 have had in the Montana Avenue residence by virtue of his or the community making, having to

16 make or having made mortgage, property tax, improvements, or any other payments relating to

17 the Montana Avenue Residence.

18        9.2.   There shall be no right to reimbursement for payment by the community or

19 Respondent's separate property for payment of costs relating to the Montana Ave. Residence, nor

20 shall Respondent or the community acquire or ever have any ownership, equitable or other

21 interest in the Montana Ave. Residence as a result of the payment of such costs, or otherwise.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

13

**CONTINUATION OF JUDGMENT**
PA1709\Pleadings\072213JDGA.wpd

In re Marriage of SHEPOS         L.A.S.C. Case No. BD 542 347

1    9.3.    Respondent expressly waives, to the maximum extent possible under California

2 law, all fiduciary obligations which might have otherwise been imposed upon Petitioner by law

3 or pursuant to Sections 1100 or 1102 of the California Family Code or any similar or successor

4 statute, and all remedies provided by California Family Code Section 1100 or any similar or

5 successor statute. Respondent intended that Petitioner shall have exclusive management and

6 control of her separate property and of the parties' community property, as a result of his prior

7 breaches of fiduciary duties owned by him to Petitioner, and that she need not have accounted to

8 him or the community for her management and control of such property.

9    9.4.    In consideration of the terms of the Post Marital Agreement which the Court finds

10 have been incorporated into this Judgment, Petitioner waives, relinquishes and releases any and

11 all rights to reimbursement from Respondent or the community for all gambling-related

12 activities, borrowings and spending of Respondent that occurred prior to April 1, 2010. There

13 has been no waiver, relinquishment, or release by Petitioner of her rights to seek reimbursement,

14 damages, and other relief from Respondent for any actions taken by him after April 1, 2010.

15    9.5.    Respondent shall not incur any liabilities whatsoever for which Petitioner may be

16 held responsible by any third person(s) or entity(ies), and hereby indemnifies and holds Petitioner

17 harmless from all such liabilities, including any reasonable attorney's fees and costs incurred by

18 Petitioner in connection with such liabilities.

19    9.6.    Respondent waives and relinquishes, to the fullest extent lawfully possible, all

20 right, title, claim, lien or interest, whether actual, inchoate, vested or contingent, in law and in

21 equity, under the laws of any state or under federal law, in Petitioner's separate property income

22 and separate property estate by reason of the parties' marriage, including but not limited to;

23       a.      All community property, quasi-community property, and quasi-marital

24            rights;

25       b.      The right to seek or obtain a probate family allowance;

26       c.      The right to a probate homestead;

27 /// 

28 ///

14

CONTINUATION OF JUDGMENT

F:\1707\Pleadings\072213JDGA.wpd

In re Marriage of SHEPOS                                    L.A.S.C. Case No.  BD 547 347

1          d.     The right to inherit separate property from Petitioner by intestate

2         succession or by, through, or under any Will or Trust executed prior to this

3         Judgment;

4         e.     The right of election to take against the will of Petitioner;

5         f.     The right to take the statutory share of an omitted spouse;

6         g.     The right to be appointed as a personal representative, temporary or

7         otherwise, of Petitioner's estate; and

8         h.     Any right, title, claim or interest in or to the separate property, separate

9         income or separate property estate of Petitioner.

10    9.7.     Each party waives the psychotherapist-patient privilege as to all conjoint therapy

11  sessions that took place between both parties and Richard Brightman, Ph.D.; but not as to any

12  individual sessions by either party with Dr. Brightman.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

15

CONTINUATION OF JUDGMENT

P:\1709\Pleadings\072213JDGA.wpd

In re Marriage of SHEPOS                              L.A.S.C. Case No.  BD 547 347

**X.   ATTORNEY'S FEES AND COSTS**

      Respondent shall be responsible for and pay all of Petitioner's attorney fees and costs incurred by her in connection with his attempts, in any way, to invalidate the Post Marital Agreement or to challenge, assert or otherwise claim the validity or enforceability of any of its terms in any Court of competent jurisdiction, and the legal action which she has taken and/or must take to enforce the Post Marital Agreement, defend or assert its validity or to compel Respondent to comply with its terms.  The Court shall reserve jurisdiction to determine the sum of attorney fees for which Respondent is liable pursuant to the Post Marital Agreement.

AGREED AS TO FORM AND CONTENT:

DATED: _____, 2013            KAREN GLUCK SHEPOS
                                          Petitioner

DATED: _____, 2013            THOMAS SHEPOS
                                          Respondent

AGREED AS TO FORM ONLY:

DATED: 8/6 , 2013                         HARRIS · GINSBERG LLP

                                          By: _____
                                          JESSICA M. MANDELBERG
                                          Attorneys for Petitioner

**ORDER**

IT IS SO ORDERED.

DATED: _see_ _next_ _page_ _____       JUDGE OF THE SUPERIOR COURT

CONTINUATION OF JUDGMENT
F:\1709\Pleadings\072213JDGA.wpd

16

Aug. 02. 2013    11:24 AM

In re Marriage of SHEPOS                                    L.A.S.C. Case No. BD 547-347

**X.    ATTORNEY'S FEES AND COSTS**

1

2           Respondent shall be responsible for and pay all of Petitioner's attorney fees and costs

3    incurred by her in connection with his attempts, in any way, to invalidate the Post Marital

4    Agreement or to challenge, assert or otherwise claim the validity or enforceability of any of its

5    terms in any Court of competent jurisdiction, and the legal action which she has taken and/or

6    must take to enforce the Post Marital Agreement, defend or assert its validity or to compel

7    Respondent to comply with its terms. The Court shall reserve jurisdiction to determine the sum

8    of attorney fees for which Respondent is liable pursuant to the Post Marital Agreement.

9

10   **AGREED AS TO FORM AND CONTENT:**

11

12   DATED: _____ 2013       _____

13                                        KAREN GLUCK SHEPOS
                                          Petitioner
14

15   DATED: _____ 2013       _____

16                                        THOMAS SHEPOS
                                          Respondent
17

18   **AGREED AS TO FORM ONLY:**

19   DATED: _____ 2013       HARRIS -GINSBERG LLP

20

21                                        By: _____

22                                             JESSICA M. MANDELBERG
                                               Attorneys for Petitioner
23

24                         **O R D E R**

25        IT IS SO ORDERED.

26   DATED:  OCT 0 1 2013                  **BRUCE G. IWASAKI**

27                                         JUDGE OF THE SUPERIOR COURT

28

**CONTINUATION OF JUDGMENT**                        16

FA\1709\Pleadings\0723 13JDGA.wpd

Shops

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of __Los Angeles__

On __6/15/10__ before me, __A. G. Fyffe    Notary Public__
(Here insert name and title of the officer)

personally appeared __Thomas Shopos and Karen Shopos__

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(Notary Seal)

A. G. FYFFE
Commission # 1810171
Notary Public - California
Los Angeles County
My Comm. Expires Aug 19, 2012

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

__Post-Marital Agreement__
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages __22__   Document Date __4/15/10__

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☐ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.

• State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
• Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
• The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
• Print the name(s) of document signer(s) who personally appear at the time of notarization.
• Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
• The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
• Signature of the notary public must match the signature on file with the office of the county clerk.
   ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
   ❖ Indicate title or type of attached document, number of pages and date.
   ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
• Securely attach this document to the signed document

# Exhibit #3

Exhibit #3

## NORELL CONSULTING, INC.

NORELL CONSULTING, INC – FINANCIAL, LITIGATION DUE DILIGENCE, INVESTIGATIVE
PRIVILEGED & CONFIDENTIAL

Chris Montana, mobile telephone (562) 754-5341, was interviewed at his residence, 2545 Roycroft Avenue, Long Beach, California, on 01/27/2019.  Montana was advised of the identity of the interviewer and the purpose of the interview.  Montana then voluntarily provided the following information:

Montana has never been contacted by the government or anyone associated with the County audit.  Montana lost his job over the Tom Shepos matter and he has heard the County has adopted some changes as a result of the Tom Shepos matter.  Montana was Shepos' direct supervisor from early 2015 (when Carlos Marquez left) until Shepos left.  He had little social interaction with the guy outside of an occasional breakfast.  He was unaware of any of Shepos' acceptance of bribes or money.

Montana confirmed that Shepos had no authority to bind the County and no real influence over the leases.  In fact, he reiterated that Shepos was very hard on landlords and did not give up anything.  He could not have increased and did not increase any rents in connection with any Gabay leases.

Montana agreed to be contacted again if necessary.

# Exhibit #4

Exhibit #4

## NORELL CONSULTING, INC.

NORELL CONSULTING, INC – FINANCIAL, LITIGATION DUE DILIGENCE, INVESTIGATIVE
PRIVILEGED & CONFIDENTIAL

Maurice Salama, home address 584 N. Irving, Los Angeles, California, home telephone (323) 467-6744, mobile telephone (323) 353-6915, was interviewed at his residence on 11/03/2017. Also present was Tom O'Brien of Paul Hastings. Salama was advised of the identity of the interviewer and the purpose of the interview. Salama then voluntarily provided the following information:

Salama worked in the Los Angeles County Department of Real Estate from 1984 to 2011. Salama was Tom Shepos' boss when Shepos was first hired as a consultant with the real estate department sometime in the early 2000s. Salama's boss was Cheryl Fuerth. Shepos worked on county lease projects. Shepos would receive a leasing assignment from his boss which already had an approved budget. Shepos' job was to find space and negotiate lease terms. Lease pricing was determined by looking at comps and Los Angeles County was one of the lowest paying tenants.

Salama was not involved in the Hawthorne property. Salama did one deal for the county with Armen Gabay. Salama believes it may have been a property in El Monte, but could not be certain. Salama recalled that any authority on executing a deal did not lie with Armen Gabay, but with his brother (Marc) and his father. Salama would tell Armen if we agree on something I don't want you coming back to me and saying your brother or father did not agree.

Salama never saw any ethical issues relating to the Gabays. He always felt like they performed under the agreements and never offered anything in return.

Salama did become concerned with how close Shepos was with the Gabays. A lot of leases were going to them. Salama knew Fuerth directed Shepos to deal with the Gabays whenever possible. When Fuerth left, she was replaced by Carlos Marquez who also told Shepos to deal with the Gabays whenever possible. Salama asked Shepos why so many deals were going to the Gabays, and Shepos said because they were able to pay the lowest prices and provide space which was a premium.

# Exhibit #5

Exhibit #5

# NORELL CONSULTING, INC.

NORELL CONSULTING, INC – FINANCIAL, LITIGATION DUE DILIGENCE, INVESTIGATIVE
PRIVILEGED & CONFIDENTIAL

Cheryl Fuerth-Marx, mobile telephone (562) 438-1320, home address 968 Palo Verde Avenue, Long Beach, California, was interviewed telephonically on 01/31/2018, after an attempt was made to reach her at her residence.  Fuerth-Marx was advised of the identity of the interviewer and the purpose of the interview.   Fuerth-Marx then voluntarily provided the following information:

Fuerth-Marx previously worked for the County of Los Angeles in the Real Estate Division, retiring in 2005.

Fuerth-Marx was asked if she recognized the name Tom Shepos.  She said she had not heard that name in years but recalled Shepos worked directly for her in the real estate division. Fuerth-Marx recalled Shepos worked for her for the five (5) years proceeding her retirement in 2005.  She described Shepos as knowledgeable about the Los Angeles real estate market. Fuerth-Marx socialized with Shepos on two (2) occasions at Shepos' residence in Santa Monica, both for holiday parties.  Fuerth-Marx had no other social interaction with Shepos.

Shepos was a direct report to Fuerth-Marx and after she left Shepos reported to Carlos Marquez.

Fuerth-Marx recalled Shepos was hard working.  She never saw anything inappropriate with respect to Shepos.  Fuerth-Marx was not aware of the Gabays.  Fuerth-Marx reviewed all of the leasing contracts the County entered into and never noticed anything unusual about any contracts, including those being processed by Shepos.

Fuerth-Marx has not been interviewed by anyone with respect to Shepos.  She was contacted last November from another former Real Estate Division employee but never spoke with that person.  She is willing to cooperate with any further questions.

Fuerth-Marx is married to Claus Marx who also worked for the County of Los Angeles. Claus would not have had any professional interaction with Shepos.

# Exhibit #6

Exhibit #6

# NORELL CONSULTING, INC.

NORELL CONSULTING, INC – FINANCIAL, LITIGATION DUE DILIGENCE, INVESTIGATIVE
PRIVILEGED & CONFIDENTIAL

Chuck West, mobile telephone (307)331-9636, was interviewed telephonically on 12/11/2017, after several attempts were made to reach him and eventually coordinated through text messaging. West was advised of the identity of the interviewer and the purpose of the interview. West then voluntarily provided the following information:

West previously worked for the County of Los Angeles in the Real Estate Division, retiring in March 2011.

West recalled Tom Shepos working in the real estate section. West described Shepos as very knowledgeable about the Los Angeles real estate market. He was personable and West socialized with both Shepos and his then-wife outside of their respective job duties. West was unaware Shepos and his wife divorced.

Shepos was not a direct report to West. He reported to Cheryl Fuerth at one point and maybe later to Carlos Marquez. Fuerth and Marquez were direct reports to West.

West recalled Shepos was more financially well-off than others. West was not sure if it was because Shepos' wife had money or because of Shepos' personal investments. West was aware Shepos and his wife were involving in the remodel of a nice home – the exact location West could not recall.

West never saw anything inappropriate with respect to Shepos. West was aware of the Gabays as landlords for the County. He never saw anything inappropriate with respect to the Gabays or them being awarded contracts. West reviewed all of the leasing contracts the County entered into and would have noticed if someone received a deal too good for the landlord. 

West has not been interviewed by anyone with respect to Shepos or the Gabays. He is willing to cooperate with any further questions. West resides in Wyoming.

# Exhibit #7

Exhibit #7

# NORELL CONSULTING, INC.

NORELL CONSULTING, INC – FINANCIAL, LITIGATION DUE DILIGENCE, INVESTIGATIVE
PRIVILEGED & CONFIDENTIAL

Carlos Marquez, mobile telephone (626) 260-3562, was interviewed in downtown Covina on 11/03/2017. Also present was Tom O'Brien of Paul Hastings. Salama was advised of the identity of the interviewer and the purpose of the interview. Marquez then voluntarily provided the following information:

Marquez began working of the County of Los Angeles in the early 1980s. He started in the real estate section. He then went to work for the County Recorder's Office in the late 1980s. He was the building manager at the Hall of Records. He then was at the District Attorney's office for a brief stint until returning to the real estate section as a senior real property agent. He was there from 1997-1999.

Marquez recalled Tom Shepos was hired initially as a contractor at the County in the real estate section. At the time and up until about 2002 or 2003, Marquez and Shepos reported to Cheryl Fuerth. Fuerth was arrested at one point for not declaring on her 200 Form her relationship with Klaus Marx. Fuerth was later moved to the Chief Accounting Office at Los Angeles County. After Fuerth left, Chuck West became the Acting Real Estate Section Chief.

In 2005, Marquez was promoted to Section Manager of the Lease and Acquisition and directly supervised Shepos. Shepos was a hard worker and top producer on his evaluations. He always went above and beyond and was the best negotiator for leases for the County. He was creative in getting deals done but was a terrible writer.

Marquez recalled a meeting in Bill Dawson's (Director of Real Estate) office in 2010 or 2011 with Shepos and Dawson. Shepos appeared distraught and Marquez recalled asking him if he was on the take. Shepos assured him he was not on the take but said he just confessed to Karen (his wife) that he had gambled away a significant amount of money that was to be used to refurbish a house inside the gate in Bel Air. Shepos went on to say Karen had re-financed her condominium on Santa Monica - taking out a second loan – and these were the funds that Shepos said he gambled away. Karen threw him out of the house.

Despite this admission, Shepos never lost his work ethic. He did a lot of deals for the County with Armen and Marc Gabay. Marquez was concerned about how close Shepos was getting to the Gabays. The Gabays were considered "B" landlords in terms of property management and tenant improvements. Marquez recalled an Encino location for Child Support Services they were the landlord on.

# NORELL CONSULTING, INC.

Marquez never saw anything inappropriate with respect to Shepos and the Gabays. No specific advantages were provided by Shepos to the Gabays and he never saw any inside information given to the Gabays on what upcoming requirements were expected. The Gabays also received below market value for their deals with the County.

On one occasion, Armen Gabay asked Marquez he wanted to build a building in El Monte and wanted a lease from the County. Marquez told him the County does not "sole source" any of their projects and he would have to go through the normal process once the building was completed. Gabay did not take issue with this result.

Shepos also did a lot of deals with Frank Visco out of Palmdale. Marquez recalled Shepos liked to go to Palmdale because he could make money on mileage. Shepos shopped at second hand stores and had his shoes refinished several times.

Shepos was also close with a furniture leasing guy out of Pasadena. The guy rode a motorcycle and visited Shepos a lot at the office. Marquez could not recall any additional information about the furniture guy except he sold Hayworth. Shepos was also close with a couple of the sale women who did the County's furniture leasing contracts.

Marquez recalled that Shepos had a property management business he owned which he did work on the weekends. One of his clients was actor Victor Mature.

Shepos was handling the Hawthorne project for the County with the Gabays. Marquez believes the property and original lease went back to the early 2000s. In 2008, Armen Gabay showed Marquez plans to build townhomes and convert the mall into usable space. However, the recession hit and scraped those plans. Marquez recalled the Gabays received less than market value for the lease on the Hawthorne property.

Marquez has not been interviewed by anyone in connection with Shepos or relating to County leases.

Marquez was recently informed by the Auditor-Controller that Shepos was walked out of the County offices. The Auditor-Controller told him it was in relation to a forensic audit of real estate transactions and tenant improvements. Two (2) days after Shepos was walked out, Marquez received a phone call from one of the executive secretaries saying Chris Montana was also walked out.

# Exhibit #8

Exhibit #8

**LOS ANGELES COUNTY
REAL ESTATE DIVISION**





Arman Gabaee
Fed. Reg. No.: 76335-112
FCC Lompoc Camp
3705 West Farm Road
Lompoc, CA 93436

SHIP
TO:
255 E TEMPLE ST
LOS ANGELES CA 90012-3332

C032

USPS GROUND ADVANTAGE™

Retail

US POSTAGE PAID
$0.00

Origin: 93436
03/01/24
0544640436-03

0 Lb 14.30 Oz

RDC 01

USPS TRACKING® #

9500 1133 7233 4061 1079 98

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
255 EAST TEMPLE STREET
ROOM 180
LOS ANGELES, CA 90012

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR - 8 2024

CENTRAL DISTRICT OF CALIFORNIA
BY