SUSMAN GODFREY LLP
Amanda Bonn (Bar No. 270891)
  *abonn@susmangodfrey.com*
Argie Mina (Bar No. 331617)
  *amina@susmangodfrey.com*
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: +1.310.789.3100
Facsimile: +1.310.789.3150

Rocco Magni (pro hac vice)
  *rmagni@susmangodfrey.com*
David Peterson (pro hac vice)
  *dpeterson@susmangodfrey.com*
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: +1.713.651.9366
Facsimile: +1.713.654.6666

*Attorneys for Relator and Qui Tam Plaintiff Karen Gluck*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THE COUNTY OF LOS ANGELES, THE STATE OF CALIFORNIA and THE UNITED STATES OF AMERICA *ex rel.* KAREN GLUCK,<br><br>    Plaintiffs,<br><br>  v.<br><br>THOMAS SHEPOS et al.,<br><br>    Defendant[s]. | CASE NO. 2:19-cv-01773-CJC-MAAx<br><br>**RELATOR'S OPPOSITION TO DEFENDANT ARMAN GABAEE'S MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. 206]**<br><br>Date: April 8, 2024<br>Time: 1:30 PM<br>Place: Ronald Reagan Federal Building<br>   & U.S. Courthouse, Courtroom 9B<br>Judge: Hon. Cormac J. Carney |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL HISTORY .................................................................................... 1

III.  LEGAL STANDARD ..................................................................................... 2

IV.   ARGUMENT .................................................................................................. 3

    A.   To the Extent Gabaee's Motion Challenges Relator's Original
        Complaint, It Is Moot in Light of the Amended Complaint. ....................... 3

    B.   Relator's Amended Complaint States a Claim upon which Relief Can
        Be Granted. ................................................................................................. 4

        1.   Relator's Claims Are Sufficiently Pled to Survive a Motion to
            Dismiss. ........................................................................................... 4

            i)    Gabaee's Guilty Plea Establishes FCA and CFCA
                Liability as a Matter of Law. ...................................................... 5

            ii)   Relator's Allegations Satisfy the Pleading Standards
                Under Rule 8 and Rule 9. .......................................................... 6

            iii)  Gabaee's Own Evidentiary Submission – which is
                improper on a Motion to Dismiss – Shows He Is On-
                Notice of the Allegations Against Him. ..................................... 9

        2.   Relator's Claims Are Not Subject to Dismissal Based on Prior
            Public Disclosures for which She Was an Original Source. ............. 11

        3.   Relator's Claims Are Not Subject to Dismissal Based on
            Gabaee's Speculation that Relator Benefited from Shepos's
            Scheme. ......................................................................................... 15

            i)    Relator's Well-Pleaded Allegations Make Clear She Did
                 Not Benefit from Shepos's Scheme. ......................................... 16

            ii)   Regardless, even a Relator Who Participated in an
                 Illegal Scheme May Bring a Qui Tam Claim. ........................... 17

    C.   Gabaee's Request to Treat His Motion to Dismiss as a Motion for
        Summary Judgment in the Alternative Should Be Denied. ....................... 17

        1.   Gabaee's Motion for Summary Judgment Should Be Denied
            Outright Because His Guilty Plea Alone Shows There Is a Fact
            Issue ............................................................................................... 18

2.      Alternatively, Gabaee's Motion for Summary Judgment
        Should Be Denied Without Prejudice as Premature Because No
        Discovery Has Yet Occurred. ..........................................................19

V.    CONCLUSION.................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................17

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) .................................................................8

*Campbell v. Redding Med. Ctr.*,
    421 F.3d 817 (9th Cir. 2005) ...................................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................18

*Dehart v. Wells Fargo & Co.*,
    No. 06CV1086, 2006 WL 8455602 (S.D. Cal. Aug. 30, 2006) ..........................3

*Falck N. California Corp. v. Scott Griffith Collaborative Sols., LLC*,
    25 F.4th 763 (9th Cir. 2022) ...................................................................3

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) ..........................................................2, 11

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
    520 U.S. 939, 117 S. Ct. 1871 (1997)...............................................11, 12

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
    520 U.S. 939, 117 S. Ct. 1871 (1997)...............................................11

*Jimenez v. Madison Area Technical College*,
    321 F.3d 652 (7th Cir. 2003) .................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...........................................................9, 16

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) (en banc) ..................................................3

*Magadia v. Wal-Mart Assocs., Inc.*,
    999 F.3d 668 (9th Cir. 2021) ...................................................................4

*Maine People's All. And Nat. Res. Def. Council v. Mallinckrodt, Inc.*,
   471 F.3d 277 (1st Cir. 2006) .................................................................4

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) .................................................................9

*Ramirez v. Cnty. of San Bernardino*,
   806 F.3d 1002 (9th Cir. 2015) .........................................................3

*Scott v. Harris*,
   550 U.S. 372 (2007).........................................................................17

*State ex rel. Edelweiss Fund, LLC v.
   JPMorgan Chase & Co.*, 90 Cal. App. 5th 1119, 307 Cal. Rptr. 3d 750
   (2023) ...............................................................................................2

*U.S. ex rel. Findley v. FPC-Boron Employees' Club*,
   105 F.3d 675 (D.C. Cir. 1997).........................................................14

*U.S. ex rel. Mateski v. Raytheon Co.*,
   816 F.3d 565 (9th Cir. 2016) .........................................................12

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
   904 F.3d 667 (9th Cir. 2018) ...........................................................9

*United States ex rel. Campie v. Gilead Scis., Inc.*,
   862 F.3d 890 (9th Cir. 2017) .......................................................2, 5

*United States ex. rel. Dresser v. Qualium Corp.*,
   No. 5:12-CV-01745, 2016 WL 3880763 (N.D. Cal. July 18, 2016)...................3

*United States ex rel. Grant v. United Airlines Inc.*,
   912 F.3d 190 (4th Cir. 2018) ...........................................................9

*United States ex rel. Harshman v. Alcan Electrical and Engineering, Inc.*,
   197 F.3d 1014 (9th Cir. 1999) .......................................................13

*United States ex rel Hooper v. Lockheed Martin Corp.*,
   No. CV0800561, 2014 WL 12561070 (C.D. Cal. Jan. 17, 2014), *aff'd
   sub nom. Hooper v. Lockheed Martin Corp.*, 640 F. App'x 633 (9th Cir.
   2016) ....................................................................................17, 18, 19

*United States ex rel. Ji v. Pac. Chem. Int'l*,
   No. CV147203, 2018 WL 6137602 (C.D. Cal. Aug. 10, 2018)........................19

*United States ex rel. Turner v. Dynamic Med. Sys., LLC,*
    No. 117CV01757, 2022 WL 20804350 (E.D. Cal. Jan. 24, 2022)......................2

*United States v. Cath. Healthcare W.,*
    445 F.3d 1147 (9th Cir. 2006), *abrogated by Schindler Elevator Corp. v.*
    *U.S. ex rel. Kirk*, 563 U.S. 401 (2011)..................................................15

*United States v. Corinthian Colleges,*
    655 F.3d 984 (9th Cir. 2011) ...................................................................9

*United States v. Hughes Aircraft Co.,*
    162 F.3d 1027 (9th Cir. 1998) ................................................................11

*United States v. United Healthcare Ins. Co.,*
    848 F.3d 1161 (9th Cir. 2016) ..................................................................9

**Statutes**

18 U.S.C. § 666(a)(2)....................................................................*passim*

31 U.S.C. § 3730................................................................4, 11, 12, 17

31 U.S.C. § 3731(e) ..............................................................5, 10, 18

Cal. Gov't Code § 12652 et seq...................................................*passim*

FOIA ...............................................................................................15

**Rules**

Fed. R. Civ. P. 8 ..........................................................................1, 6

Fed. R. Civ. P. 9 ..........................................................................1, 6

Fed. R. Civ. P. 11 ...........................................................................18

Fed. R. Civ. P. 12(b)(6)....................................................................9

Fed. R. Civ. P. 56 ............................................................................17

**Other Authorities**

6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1476
    & n.1 (3d ed. 2005) .......................................................................3

## I.    <u>INTRODUCTION</u>

Defendant Arman Gabaee's ("Gabaee") motion should be denied as moot because it targets Relator and qui tam Plaintiff ("Relator") Karen Gluck's original complaint, which is no longer operative and was superseded by her First Amended Complaint ("FAC"). Even if Gabaee's motion targeted the FAC, it would still fail because, at the very least, Gabaee's admissions in his criminal guilty plea establish the basis of Relator's claims against him, and he is legally estopped from denying them. In addition to Gabaee's indisputable admissions, Relator's FAC further details Gabaee's involvement in Thomas Shepos's ("Shepos") scheme and exceeds the pleading requirements of Rule 8 and Rule 9 to state a claim against Gabaee.

Gabaee's alternative request for summary judgment is also defective and should be denied outright because he has failed to establish there is no genuine issue of any material fact. In the alternative, his request should be denied without prejudice until adequate discovery is had in this case.

For the reasons below, his motion should be denied.

## II.   <u>FACTUAL HISTORY</u>

Relator is an original source of information that led to the unraveling and exposure of her ex-husband Shepos's decade-long criminal bribery scheme, which tainted hundreds of millions of dollars in County contracts. Relator reported the scheme to federal authorities beginning in 2014 and continued providing assistance through 2016, leading to the criminal indictment and guilty plea of Shepos in 2018 and subsequent indictments and guilty pleas from some of those who bribed him, including Arman Gabaee.

Relator promptly filed this case under seal in March 2019 on behalf of the federal government, State, and County under the federal False Claims Act ("FCA") and California False Claims Act ("CFCA"), alleging the essential facts of Shepos's "decades long bribery and kickback scheme to defraud" these government agencies "through hundreds of millions of dollars in commercial real estate leases and other significant financial opportunities." Compl. (Dkt. 1) ¶ 1.

1

On April 26, 2019, Arman Gabaee entered into a Plea Agreement and pled guilty to federal program bribery in violation of 18 U.S.C. § 666(a)(2). Gabaee Plea (Dkt. 149-2) at 3.

Relator's complaint was unsealed on October 10, 2023. Dkt. 47. Relator amended her complaint on January 10, 2024, partially under seal pursuant to the FCA and CFCA. Dkt. 149. Relator's FAC remains partially under seal as of the date of this filing.

On March 4, 2024, Arman Gabaee filed the instant motion to dismiss Relator's complaint or in the alternative, for summary judgment. Dkt. 206.

## III.    <u>LEGAL STANDARD</u>

When deciding a motion to dismiss a claim brought under the False Claims Act ("FCA"), courts "assume that the facts as alleged are true and examine only whether the relator's allegations support a cause of action under the FCA, under the theories presented." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).

Courts construe both the FCA and CFCA broadly, as they are "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Campie*, 862 F.3d at 899; *State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.*, 90 Cal. App. 5th 1119, 1127, 307 Cal. Rptr. 3d 750, 759 (2023), *as modified on denial of reh'g* (May 30, 2023), *review denied* (Aug. 9, 2023) ("The CFCA was designed to prevent fraud on the public treasury, and thus it must be construed broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides.") (internal quotations omitted). Claims under the FCA and CFA require a showing of "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017); *United States ex rel. Turner v. Dynamic Med. Sys., LLC*, No. 117CV01757, 2022 WL 20804350, at *16 (E.D. Cal. Jan. 24, 2022) (citing *Judicial Council of California Civil Jury Instructions* No. 4800 ("False Claims Act—Essential Factual Elements") (2021) (identifying the same elements for a CFCA claim)).

## IV.  **ARGUMENT**

### A.  **To the Extent Gabaee's Motion Challenges Relator's Original Complaint, It Is Moot in Light of the Amended Complaint.**

Gabaee's motion is moot. Relator's First Amended Complaint ("FAC") superseded her original complaint, which is no longer operative. *Falck N. California Corp. v. Scott Griffith Collaborative Sols., LLC*, 25 F.4th 763, 765 (9th Cir. 2022) ("The amended complaint made the First Amended Complaint no longer operative.") (citing *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) ("[T]he general rule is that an amended complaint super[s]edes the original complaint and renders it without legal effect."); 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1476 & n.1 (3d ed. 2005) (an amended pleading "supersedes the pleading it modifies" and "becomes the operative complaint," and "the original pleading no longer performs any function in the case")).

Gabaee's motion, therefore, should be denied as moot to the extent it targets the original complaint. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("Because the Defendants' motion to dismiss targeted the Plaintiff's First Amended Complaint, which was no longer in effect, we conclude that the motion to dismiss should have been deemed moot before the district court granted it."); *Falck*, 25 F.4th at 765 (dismissing appeal as moot "because we can no longer grant any effective relief on the First Amended Complaint").[1]

And indeed, Gabaee's motion appears limited to the original complaint for various reasons. *First*, Gabaee states that he was served only with the original complaint on February 9, 2024 at FCC Lompoc Camp. Mot. (Dkt. 206) at 5. *Second*, Gabaee's citations

---

[1] *See also, e.g.*, *United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-CV-01745, 2016 WL 3880763, at *4 (N.D. Cal. July 18, 2016) (denying motion to dismiss original complaint as moot in light of amended complaint); *Dehart v. Wells Fargo & Co.*, No. 06CV1086, 2006 WL 8455602, at *1 (S.D. Cal. Aug. 30, 2006) ("Because Plaintiff's original complaint is no longer the operative complaint, Defendant Wells Fargo Bank's motion to dismiss is **DENIED** as moot.") (emphasis in original)

to Relator's complaint are to her original complaint, not her FAC. *See, e.g.*, Mot. (Dkt. 206) at 5 (citing language from paragraph 3 of the original complaint that does not exist in paragraph 3 of the FAC (*compare* Compl. (Dkt. 1) ¶ 3 *with* FAC (Dkt. 149) ¶ 3)). *Third*, Relator concedes that pursuant to the FCA and CFCA, she has not yet served Gabaee with the FAC because it remains under seal. *See* 31 U.S.C. § 3730(b)(2) ("The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."); Cal. Gov't Code 12652(c)(2) ("No service shall be made on the defendant until after the complaint is unsealed.").

Thus, Gabaee's motion is targeted toward Gluck's inoperative original complaint and should be denied as moot.

**B.    Relator's Amended Complaint States a Claim upon which Relief Can Be Granted.**

To the extent Gabaee's motion can be read to challenge Relator's First Amended Complaint, it should also be denied. As a threshold matter, both the FCA and CFCA confer standing to Relator to pursue a qui tam action.[2] *See Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021). Moreover, the FAC sufficiently pleads a claim under both the FCA and CFCA.

**1.    Relator's Claims Are Sufficiently Pled to Survive a Motion to Dismiss.**

Relator's allegations plausibly plead claims against Gabaee under the FCA and CFCA with particularity.

---

[2] Gabaee's cited case law is inapposite: *Maine People's All. And Nat. Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277 (1st Cir. 2006) did not involve qui tam actions or standing under the FCA or CFCA. And in *Campbell v. Redding Med. Ctr.*, 421 F.3d 817 (9th Cir. 2005), the court did not analyze standing issues. In fact, the court acknowledged that "[a] private party, referred to as the 'relator,' may bring a civil action in the name of the government to recover damages against a person who has defrauded the government." *Id.* at 820.

       i)   <u>Gabaee's Guilty Plea Establishes FCA and CFCA Liability as a Matter of Law.</u>

Gabaee's guilty plea—which Relator incorporated by reference into the FAC[3]—establishes liability as a matter of law. Under both the FCA and CFCA, a guilty verdict "in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon ***a plea of guilty*** or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding" and which is brought under the FCA or CFCA. 31 U.S.C. § 3731(e); Cal. Gov't Code § 12654(d) (emphasis added). On April 26, 2019, Arman Gabaee entered into a Plea Agreement and pled guilty to federal program bribery in violation of 18 U.S.C. § 666(a)(2). Gabaee Plea (Dkt. 149-2) at 3.

Here, Gabaee's guilty plea establishes all the requisite elements for claims under the FCA and CFCA—he engaged in a fraudulent course of conduct with scienter and materially caused the government to pay out money, *Campie*, 862 F.3d at 899. Gabaee admitted that between December 2016 and April 25, 2017, he attempted to bribe and did bribe Shepos with "(a) the monthly cash bribe payments and (b) the purchase of a residential property in Northern California" for Shepos' use. Gabaee Plea (Dkt. 149-2) at 10. In exchange for these bribes, Shepos performed various official acts—such as exerting pressure on subordinate employees, using his influence over County Departments, and pretending to engage in the normal bidding process but promising Gabaee favorable treatment—to secure for Gabaee a contract wherein the County of Los Angeles would lease the Hawthorne Mall property from Gabaee and pay Gabaee "in the form of rent and tenant improvements reimbursable by the County, in excess of $45 million." *Id.* at 9–10. Gabaee's affidavit attempting to dispute these admissions (Dkt. 206 at 29–33) is of no moment because he is estopped from denying that to which he has already pleaded guilty. *See* 31 U.S.C. § 3731(e); Cal. Gov't Code § 12654(d).

---

[3] *See* FAC ¶¶ 3, 163, 190, 193; *see also* Dkt. 149-2 (Gabaee Plea).

Gabaee's admissions establish a claim under the False Claims Act that is both plausible under Rule 8 and meets the heightened pleading standard of Rule 9(b) because they establish the who (Gabaee and Shepos), what (bribes in exchange for the Hawthorne Mall lease), when (December 2016 to April 25, 2017), where (Los Angeles County, Hawthorne Mall), and how (Gabaee's bribes and Shepos' official acts) of the fraudulent scheme.

ii)    <u>Relator's Allegations Satisfy the Pleading Standards Under Rule 8 and Rule 9.</u>

In addition to Gabaee's admissions, which alone satisfy the plausibility standard under Rule 8 and heightened pleading standards under Rule 9, the unsealed portions of Relator's FAC go even further.

*First*, the FAC alleges in extensive detail how Gabaee (1) conspired with other Defendants, including his brother Mark Gabaee, various Gabaee-controlled entities, and his cousins and their businesses, the Moradi Defendants and (2) bribed Shepos over the course of many years, including by paying for Shepos's home construction and renovations (FAC ¶¶ 89(b), 90(c), 204, 240), paying for Shepos's attendance to Las Vegas conferences (*id.* ¶¶ 89(d), 143–46), using his associate to funnel bribes to Shepos (*id.* ¶ 90(a)), paying for Shepos's membership at the House of Blues (*id.* ¶¶ 90(c), 239–40), and "offering Shepos a $1.1 million residential property as a bribe for a no-bid contract," (*id.* ¶ 193(a) (emphasis in original). Relator's FAC also alleges "(1) Gabaee had made payments to Shepos of 5,000 per month, and (2) an associate of Gabaee named John Carroll had also been serving as a conduit for funds to get to Shepos from Gabay, funneling bribe money to an acquaintance of Shepos's named Jeff Kurtz." *Id.* ¶ 117 (internal quotations omitted); *see also id.*, ¶¶ 76–77, 90, 193. Relator alleged these bribes began as early as 1999. *Id.* ¶ 142.

*Second*, the FAC alleges, in great detail, specific evidence that supports Relator's allegations as to Gabaee's bribery and corruption, including the following:

a) Based on the evidence provided to the FBI by Ms. Gluck, Arman Gabaee has been indicted by the federal government. Arman Gabaee was recorded offering Shepos a $1.1 million residential property as a bribe for a no-bid contract. Shepos pleaded guilty to receiving bribes from Arman Gabaee, and Gabaee pleaded guilty to bribing Shepos.

b) Plane tickets for Shepos and Arman Gabaee to Las Vegas.

c) An email from a Gabaee associate to Shepos seeking W-9 information for Shepos' roommate Jeff Kurtz in order to hide Gabaee's bribes.

d) A PO Box jointly held by Shepos and Arman Gabaee.

e) An email from Mark Gabaee to Shepos' personal email account intended to reduce Gabaee's financial risk by asking for Shepos' "thoughts" on a property before Gabaee committed to purchasing it.

f) An employee of Gabaee's Charles Company emailed Shepos' family email address to notify him that Shepos and Arman's House of Blues membership cards had arrived.

g) Shepos used a Southwest Airlines account registered under Arman Gabaee's name.

h) An invoice for construction material used on Shepos and Gluck's home that was paid by Arman and Mark Gabaee's company, M & A Gabaee. Ms. Gluck has no record of Shepos repaying the Gabaees for the work done for their home construction (the same is true for other developers).

i) An engineering report for Shepos and Ms. Gluck's home prepared and submitted by Gabaee's construction engineer.

j) A Las Vegas convention registration form listing Shepos as an employee of the Charles Company. The registration form was attached to a receipt from Arman Gabaee showing Shepos' registration fee had been paid by Gabaee.

k) Numerous emails involving Shepos providing County information to the Gabaees using his personal email address.

l)     The Gabaees—along with the Donald G. Abbey and others—paid for and executed the construction of Shepos's and Ms. Gluck's home.

FAC ¶ 193.

*Third*, the FAC alleges these bribes were intended to induce Shepos to provide illicit benefits to Gabaee and other defendants. FAC ¶¶ 195, 240, 241. Example of illicit benefits Shepos provided to Gabaee included funneling hundreds of transactions to him on a no-bid basis, above-market leases worth hundreds of millions of dollars, fraudulent reimbursements, phantom improvement charges, and inflated maintenance fees and utility costs. FAC ¶¶ 21, 191.

*Fourth*, the FAC also alleges Gabaee's bribery scheme materially caused the government to pay out money to Gabaee and his associates. Specifically, the FAC alleges "[t]he County entered into several lease agreements with the Gabaee Defendants in order to house County departments and programs. While these leases were paid for by the County, the money the County used originated from a mixture of federal, state, and/or County grant funds." FAC ¶ 196. As one example, Gabaee's alter ego entity, M&A Gabaee, entered into a lease agreement with the County on or about May 5, 1998 for property located at 3220 Rosemead Boulevard, Building A in El Monte, California (Lease No. 71378), which the County used to house the Department of Public Social Services. *Id.* ¶ 197. Under the lease, the County agreed to pay rent "totaling $2,452,200 over its ten-year term," and the lease was renewed on or about August 5, 2008, at Shepos's recommendation, for five more years, totaling approximately an additional $1.6 million. *Id.* ¶¶ 197–99. As another example, Gabaee submitted false claims to the County seeking reimbursement for work supposedly performed on the Hawthorne Mall—property which Gabaee leased to the County—when in fact, the work was actually performed on Shepos's residential property. *Id.* ¶¶ 147–57.

The details of the FAC are detailed and fulsome, and thus go far beyond the deficient allegations involved in the cases Gabaee cites. *Cf. Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (involving "broad allegations" that "included no particularized

supporting detail"); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (allegations against defendants lacked a "factual basis"); *United States v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011) (plaintiff failed to plead defendants made a false statement and acted with scienter); *Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993) (plaintiff failed to plead defendant's role in the wrongful conduct and the factual basis of defendant's misrepresentations).

Similarly inapplicable to Relator's FAC is *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 198 (4th Cir. 2018), where the court found the plaintiff did not sufficiently allege that false claims were actually submitted to the governments. Here, Relator has alleged at least two specific instances—the fraudulently obtained lease, FAC ¶¶ 197–99, and the fraudulent reimbursement request, FAC ¶¶ 147–57—where Gabaee submitted false claims to the government for payment. These, of course, are in addition to her allegations of a much broader bribery and kickback scheme, the exact transactions of which discovery will uncover.

And Gabaee's citation to *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 681 (9th Cir. 2018), actually supports Relator's position, because the court there found plaintiff's allegations were sufficiently pled, reversing the district court's dismissal.

> iii)    <u>Gabaee's Own Evidentiary Submission – which Is Improper on a Motion to Dismiss – Shows He Is On-Notice of the Allegations Against Him.</u>

Gabaee's motion heavily relies on his own evidentiary submission, improperly attempting to dispute the truth of Relator's allegations, not their sufficiency. This is improper on a motion to dismiss. As an initial matter, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Even if his evidence were somehow considered, it fails to demonstrate that Gabaee is entitled to dismissal or summary judgment on

9

Relator's FAC for several reasons.

*First*, as discussed above, Gabaee's guilty plea estops him "from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding" which is brought under the FCA or CFCA. 31 U.S.C. § 3731(e); Cal. Gov't Code § 12654(d). On that basis alone, he is not entitled to dismissal or summary judgment on Relator's FAC.

*Second*, Gabaee's disputes demonstrate that the allegations in the FAC are sufficient to put him on notice of the claims brought against him under the FCA and CFCA. For example, in his affidavit, Gabaee submits interviews from County employees, which he claims state "Shepos was a low-level County employee with no authority to bind the County in any lease contract; he did not provide me with non-public information; he did not resolve issues favorable to me involving the County; and, Shepos did not secure County lease contracts that were beneficial to me." Gabaee Affidavit (Dkt. 206 at 31). The corollary, of course, is that Gabaee understands that the allegations against him are that Shepos was a high-level employee who provided Gabaee with non-public information, resolved issues favorably to him, and secured County lease contracts beneficial to him.

As another example, Gabaee also personally declares that "I had no new lease contracts with the County from 2000 to 2016. There was only a renewal of the Hawthorne Mall lease," that "[a]s a longtime friend, I agreed to help [Shepos] with living expenses, giving him approximately $1,000 per month," and that "Shepos wanted me to buy him a home to live in once he was retired from the County. I often told him I would consider such a purchase because I own many properties and I consider him a friend." Gabaee Affidavit (Dkt. 206 at 31). Setting aside that Gabaee's affidavit cannot supersede, or even dispute, his guilty plea, *see* 31 U.S.C. § 3731(e); Cal. Gov't Code § 12654(d), these explanations again demonstrate that Gabaee understands the underlying premise of the allegations against him, which involve fraudulently obtained leases and the bribes Gabaee provided to Shepos in order to secure them.

Thus, Relator's FAC has done its job and provided Gabaee sufficient notice "of the

particular misconduct so that [he] can defend against the charge," *Godecke*, 937 F.3d at 1208, which he has already attempted to do, albeit improperly.

### 2. Relator's Claims Are Not Subject to Dismissal Based on Prior Public Disclosures for which She Was an Original Source.

Gabaee's motion suggests that Relator's claims are barred because of allegations Relator previously made in her divorce-related filings and the federal criminal proceedings that came about because of her cooperation with the FBI over many years. Mot. (Dkt. 206) at 10–13.

But Relator's claims are not barred by public disclosures for which she was an original source. While the FCA and CFCA contain a "public disclosure bar," which normally bars suits based on information that was publicly disclosed, both statutes also contain an "original source" exception that allows qui tam claims to proceed if the qui tam plaintiff was "an original source" of the publicly disclosed information. *See* 31 U.S.C. § 3730 (e)(4)(A); Cal. Gov't Code § 12652(d)(3); *see also United States v. Hughes Aircraft Co.*, 162 F.3d 1027, 1032 (9th Cir. 1998) ("Thus, as the Supreme court noted in Schumer, the 1986 amendments allow 'qui tam suits based on information in the Government's possession, except where the suit was based on information that had been publicly disclosed and was not brought by an original source of the information.'" (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S. Ct. 1871, 1876 (1997)). Thus, the Court's analysis of the public disclosure bar proceeds in two steps: 1) whether information constitutes a "public disclosure" that underlies a qui tam action, and if so, 2) whether the qui tam plaintiff is an "original source" of that information. *See Hughes Aircraft Co.*, 162 F.3d at 1032.

The FCA defines an "original source" as "an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the

Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). The CFCA contains a nearly identical definition. Cal. Gov't Code § 12652(d)(3)(C). "To qualify as an original source, 'a relator must show that he or she has "direct and independent knowledge of the information on which the allegations are based," "voluntarily provided the information to the government before filing his or her qui tam action," and "had a hand in the public disclosure of allegations that are a part of ... [the] suit."'" *Hughes Aircraft Co.*, 162 F.3d at 1033 (9th Cir. 1998). Relator is an original source for all the public disclosures Gabaee incorrectly asserts bar her claims.

*First*, Gabaee erroneously asserts Relator's January 27, 2020 affidavit, Mot. Ex. 1 (Dkt. 206 at 34, 44), in her divorce proceedings constitutes a public disclosure that bars her claims now. Not so. The public disclosure bar applies only to information disclosed prior to the filing of the case. *See* 31 U.S.C. § 3730(e)(4)(A) (public disclosure bar applies to allegations and transactions that "***were*** publicly disclosed"); Cal. Gov't Code § 12652(d)(3) (same); *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016) ("The FCA's public disclosure bar deprives federal courts of subject matter jurisdiction when a relator alleges fraud ***that has already been publicly disclosed***, unless the relator qualifies as an 'original source.'") (emphasis added). Relator filed her original complaint on March 11, 2019, almost one year before her affidavit in her divorce proceedings. *Compare* Compl. (Dkt. 1) *with* Gluck Affidavit (Dkt. 206) at 43. As a matter of logic and law, Relator's 2019 original complaint could not be barred based on information that was disclosed in her 2020 affidavit, one year ***after*** she filed this case. In any event, Relator is unquestionably an original source of her own affidavit.

*Second*, Gabaee wrongly claims that the criminal proceedings against him and Shepos—and the indictments and pleas resulting therefrom—are also public disclosures that bar Relator's claims. Again, not so. Indeed, Relator alleges facts demonstrating her direct and independent knowledge of the information on which her allegations are based and that before filing her qui tam suit, she voluntarily disclosed to the Government and had a hand in the public disclosure of the information on which her claims are based and

which led to the criminal indictments, charges, and verdicts against Shepos and Gabaee. FAC ¶¶ 31–125, 127–60.

Relator has detailed her direct and independent knowledge of the information underlying her FCA and CFCA claims which "materially adds to" the information previously disclosed in Shepos's and Gabaee's guilty pleas. Relator's allegations show that (1) Gabaee's bribery of Shepos began in the 1990s (rather than in 2011, as Shepos falsely claimed in his plea agreement); (2) Gabaee's bribery not only benefited himself, but also various companies he controls, his brother Mark Gabaee, and his cousins Isaac and Alex Moradi and their companies (the Moradi Defendants); and (3) Gabaee's bribery scheme was part of Shepos's overarching fraud, which also involved numerous developers. *Id.* ¶¶ 2–3, 89, 142–60, 193–99, 239–47. The detailed evidence that Relator's complaint describes—including invoices, emails, conversations she had with Shepos, conversations she overheard between Shepos and Frank Visco (another developer and a key organizer of the scheme)—goes far beyond and materially adds to what had been disclosed in Shepos and Gabaee's guilty pleas. *Id.* ¶¶ 37–99, 121–25, 142–60, 272–78.

Gabaee's reliance on *United States ex rel. Harshman v. Alcan Electrical and Engineering, Inc.*, 197 F.3d 1014, 1018-19 (9th Cir. 1999) is misplaced. In *Harshman*, the court held the plaintiff did not qualify as an original source because he did not have direct knowledge of the publicly disclosed information. The plaintiff's only explanation for how he learned of the alleged fraud was through his status as a member of his worker's union, which the court held did "not explain how he became aware" of the fraud, and was "insufficiently specific to determine that [relator] learned of the allegations first-hand." *Harshman*, 197 F.3d at 1020–21. Here, Relator alleged in a sufficiently specific manner how she learned of fraud first-hand. For example, Relator alleges when she first began to notice Shepos's suspicious behavior, including that Shepos was increasingly stressed, that he "seemed to spend an inordinate amount of time with a man named Frank Visco," a man to whom Shepos referred as a "County client," that Visco would pay for expensive meals, that Shepos would "frequently make disturbing comments about Visco being

'connected,'" and that Shepos kissed Visco's ring and labeled an envelope containing important documents, "Visco – newspaper godfather." FAC ¶¶ 37–41. Relator further detailed how she discovered evidence of Shepos's inappropriate relationship with developers beginning in 2010, when during cleaning and organizing her condominium, "she discovered multiple alarming documents in a box under Shepos's bedside table." *Id.* ¶ 42. Relator further alleged the details of her confrontation and discussions with Shepos regarding what she had found, and how she discovered even more aspects of his illicit scheme while their divorce was pending by painstakingly searching through documents that Shepos left behind. *Id.* ¶¶ 43–99. There can be no doubt that Relator had direct and independent knowledge of the basis for her claims, which materially adds to the public disclosures in the Shepos and Gabaee plea agreements.

Furthermore, Relator has also alleged in detail the steps she took starting in 2014 to disclose this information to the Government before filing her qui tam complaint and how she was involved in the disclosing the information that forms the basis of her suit. FAC ¶¶ 100–25, 127–38. Specifically, Relator detailed that she cooperated with and assisted (1) Ranee Katzenstein, an Assistant United States Attorney at the Department of Justice, (2) Lawrence Middleton, (then-Assistant United States Attorney); (3) Brandon Fox (then-head of the criminal division of the U.S. Attorneys' Office in Los Angeles); (4) multiple FBI agents including Bryan Adkins, an agent responsible for investigating Shepos and Gabaee; (5) as well as multiple County and State Investigators, including by meeting with them and providing these entities with boxes of key pieces of evidence, which led to the criminal indictments and plea agreements of Shepos and those who bribed him, including Gabaee. *Id.*

Gabaee's citation to *U.S. ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675 (D.C. Cir. 1997), further supports Relator's position that she is an original source. In *Findley*, the court held the plaintiff could not qualify as an original source because the essential elements of the fraudulent transaction were publicly disclosed before he even became aware of them. *Id.* at 691. Here, the opposite is true. The information disclosed in

14

the criminal proceedings against Shepos and Gabaee occurred after, and only because, Relator had discovered the fraud and voluntarily shared that information with the government when asked to do so.

Also inapposite is Gabaee's citation to *United States v. Cath. Healthcare W.*, 445 F.3d 1147, 1152 (9th Cir. 2006), *abrogated by Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401 (2011), where the Court held information disclosed FOIA request did not constitute a public disclosure. Relator is therefore an original source of the information that led to the criminal proceedings against Shepos and Gabaee, and her qui tam action is thus not barred by them.

### 3.    Relator's Claims Are Not Subject to Dismissal Based on Gabaee's Speculation that Relator Benefited from Shepos's Scheme.

That Gabaee "believe[s]" that Relator participated in the scheme is not grounds to dismiss her claims. Gabaee's unfounded attacks on Ms. Gluck are directly in conflict with Relator's detailed allegations in the FAC, setting forth that (FAC ¶¶ 37–125, 127–60):

- Relator was unaware of Shepos's illicit activity, which he went to great lengths to conceal from her;

- Once she began discovering *some* of his illicit activity, Relator promptly (a) refused to file joint tax returns with him again, (b) obtained a post-nuptial agreement to protect herself and her young daughter; and (c) filed for divorce within approximately one year;

- Relator only began to piece together a fuller picture of Shepos's criminal activity by painstakingly piecing together documents in boxes Shepos left behind while their divorce was pending;

- Relator was forced to pore over Shepos's documents and financial records because he had misappropriated money and assets from her without her knowledge, leaving Relator and her daughter in dire financial straights; and

- After a chance encounter with Ms. Katzenstein, who urged her to "do the right thing," Relator voluntarily provided documents and information regarding Shepos's activity to the U.S. Attorneys' Office,

the FBI, the County, and the State, when asked to do so, without asking for anything in return.[4]

Gabaee's contrary affidavit may not be considered on a motion to dismiss. *Khoja*, 899 F.3d at 998. In any event, even if Gabaee's affidavit were taken as true (it is not), that *still* would not support dismissal because the FCA and CFCA permit suits by Relators who participated in the alleged misconduct.

        i)    <u>Relator's Well-Pleaded Allegations Make Clear She Did Not Benefit from Shepos's Scheme.</u>

Relator's allegations demonstrate that Shepos's scheme did not benefit her. The opposite is true. For example, as detailed in the FAC, Shepos's scheme negatively impacted Relator and Shepos's family (FAC ¶¶ 37, 58) and their marriage (*Id.* ¶¶ 58–82). The FAC also details the steps that led to her shocking and disturbing discovery of Shepos's far-reaching corruption. *Id.* ¶¶ 37–99. Moreover, the FAC further details that during the course of their divorce proceedings, Relator discovered bank accounts, credit cards, and storage units filled with boxes of documents and checks that Shepos hid from her during the course of their marriage. *Id.* ¶¶ 83–92. Indeed, at the time Relator first met with Ms. Katzenstein, her only goals were to "(1) finalize her divorce-related proceedings from Mr. Shepos and (2) identify her funds that Shepos had misappropriated and which should rightfully be used for their daughter's care and education." *Id.* ¶ 104. The only effect Shepos's scheme has had on Relator is to make the past 15 years difficult to bear.

---

[4] Relator did not ask to have counsel present in any of her discussions with the Government, save for an initial meeting that took place at her divorce attorney's office where some of her documents were maintained. FAC ¶¶ 100–25, 127–38. Relator did not ask for a cooperation agreement for herself. Relator, instead, answered the Government's questions and provided them with the documents and information they requested. *Id.* These factual allegations are inconsistent with Gabaee's "belief" that Relator was a participant in Shepos's criminal and fraudulent scheme.

ii)    <u>Regardless, even a Relator Who Participated in an Illegal Scheme May Bring a Qui Tam Claim.</u>

Nevertheless, even if Gabaee's attacks on Relator were legally proper (they are not) and true (they are not), Relator's claims would still not be barred. The FCA and CFCA state that "if the court finds that the action was brought by a person who planned and initiated the violation . . . upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive under paragraph (1) or (2) of this subsection, taking into account the role of that person in advancing the case to litigation and any relevant circumstances pertaining to the violation." 31 U.S.C. § 3730(d)(3); Cal. Gov't Code § 12652(g)(5). Thus, even if Relator were involved in Shepos's scheme (she was not), the result would be a reduction in her share of the proceeds, not an outright bar of her claims.

## C.    Gabaee's Request to Treat His Motion to Dismiss as a Motion for Summary Judgment in the Alternative Should Be Denied.

Gabaee's alternative request for summary judgment is fatally insufficient.

"Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *United States ex rel Hooper v. Lockheed Martin Corp.*, No. CV0800561, 2014 WL 12561070, at *3 (C.D. Cal. Jan. 17, 2014), *aff'd sub nom. Hooper v. Lockheed Martin Corp.*, 640 F. App'x 633 (9th Cir. 2016) (citing Fed. R. Civ. P. 56). "A disputed fact is material where its resolution might affect the outcome of the suit under the governing law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Id.* "A court may consider the pleadings, discovery and disclosure materials, and any affidavits on file." *Id.* (citing Fed. R. Civ. P. 56(c)(2)). "Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 378

17

(2007)). "The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.*

Gabaee has not met his burden. Summary judgment should be denied.

### 1.    Gabaee's Motion for Summary Judgment Should Be Denied Outright Because His Guilty Plea Alone Shows There Is a Fact Issue.

Gabaee fails to establish that there is no genuine issue of any material fact. In fact, his summary judgment request is supported by no more than a conclusory statement in his penultimate paragraph stating "The attached exhibits show irrefutable evidence that the material facts are false and support an Order granting dismissal of the Complaint, or in the alternative Summary Judgment in favor of Defendant on the grounds that no genuine issue as to any material fact exists." Mot. (Dkt. 206) at 2.

There are at least three fatal flaws with Gabaee's request. *First*, in the same sentence in which he requests summary judgment, he initially claims that the "material facts are false," which facially demonstrates a dispute over them. Mot. (Dkt. 206) at 2. *Second*, because Gabaee has already pled guilty and been convicted of a criminal offense involving the same transaction as the claims at issue in this case, he is estopped from disputing the facts to which he admitted in his plea agreement. 31 U.S.C. § 3731(e); Cal. Gov't Code § 12654(d). *Third*, even if Gabaee were legally permitted to dispute those admissions (he cannot), that would nevertheless amount to a mere dispute over the material facts, which does not come close to meeting the "no genuine issue" standard required for summary judgment.[5]

---

[5] Gabaee's request for sanctions under Rule 11 is, ironically, baseless and frivolous. The case he cites is wholly inapposite and involves falsified documents used in a discrimination case. *See Jimenez v. Madison Area Technical College*, 321 F.3d 652, 656 (7th Cir. 2003).

2. **Alternatively, Gabaee's Motion for Summary Judgment Should Be Denied Without Prejudice as Premature Because No Discovery Has Yet Occurred.**

Alternatively, Gabaee's summary judgment request should be denied without prejudice because discovery has not yet occurred. Given the complexity of the claims at issue, there has not been "adequate discovery" to determine whether there is any material fact of which there is no genuine issue. *See Hooper*, 2014 WL 12561070, at *3 (noting summary judgment is appropriate after "adequate discovery"); *see also United States ex rel. Ji v. Pac. Chem. Int'l*, No. CV147203, 2018 WL 6137602, at *6 (C.D. Cal. Aug. 10, 2018) (denying summary judgment motion as "premature").

V.    **CONCLUSION**

Gabaee's motion should be denied.

Dated:   March 18, 2024

Respectfully submitted,

SUSMAN GODFREY L.L.P.

Amanda Bonn (270891)
abonn@susmangodfrey.com
Argie Mina (331617)
amina@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100

Rocco Magni (pro hac vice)
rmagni@susmangodfrey.com
David Peterson (pro hac vice)
dpeterson@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366

Attorneys for Relator and Qui Tam Plaintiff
KAREN GLUCK

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Relator and Qui Tam Plaintiff Karen Gluck, certifies that this brief contains 6,385 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 18, 2024                    */s/ Amanda K. Bonn*