DAWYN R. HARRISON (State Bar No. 173855)
dharrison@counsel.lacounty.gov
THOMAS J. FAUGHNAN (State Bar No. 155238)
tfaughnan@counsel.lacounty.gov
TIFFANI L. SHIN (State Bar No. 235806)
tshin@counsel.lacounty.gov
OFFICE OF LOS ANGELES COUNTY COUNSEL
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite 648
Los Angeles, California 90012
Tel.: (213) 974-1811 | Fax: (213) 626-7446

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
CASEY B. SYPEK (State Bar No. 291214)
csypek@millerbarondess.com
LAUREN M. BRODY (State Bar No. 337858)
lbrody@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Plaintiff
COUNTY OF LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| LOS ANGELES COUNTY, THE STATE OF CALIFORNIA AND THE UNITED STATES OF AMERICA *ex rel*. KAREN GLUCK,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS SHEPOS; ARMAN GABAEE; MARK GABAEE; THE CHARLES COMPANY, INC.; EXCEL PROPERTY MANAGEMENT SERVICES, INC.; OAKSHIRE, LLC; WILHURST, INC.; TOWN INVESTMENTS, LLC; SANCAM INC.; M&A GABAEE, LP; GREENOAK INVESTMENTS, LLC; MAPLE19, LP; URBAN GROVE19, LLC; OPPIDAN, LLC; FRANK A. VISCO; VISCO FINANCIAL INC.; | **CASE NO. 2:19-cv-01773-JFW-MAAx**<br><br>**FIRST AMENDED COMPLAINT-IN-INTERVENTION FOR:**<br><br>**(1) VIOLATION OF CAL. GOV'T CODE §§ 1090 & 1092;**<br>**(2) VIOLATION OF CAL. GOV'T CODE §§ 87100 & 91003;**<br>**(3) VIOLATION OF CAL. GOV'T CODE § 12651(a)(1);**<br>**(4) VIOLATION OF CAL. GOV'T CODE § 12651(a)(2);**<br>**(5) VIOLATION OF CAL. GOV'T CODE § 12651(a)(3);**<br>**(6) VIOLATION OF CAL. GOV'T CODE § 12651(a)(8);** |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

FRABER PROPERTIES II, LLC; DONALD G. ABBEY; AP-SIERRA LLC; DGA-PROPERTIES LLC; DGA-PROPERTIES II, LLC; ABBEY-PROPERTIES LLC; ABBEY-PROPERTIES II LLC; AP-PALMDALE LLC; AP-PALMDALE PLACE LLC; CDCF III PACIFIC COMMERCE PLAZA, LLC; NITTANY LION LANDSCAPING, INC.; LEON NEMAN; YOEL NEMAN; JOHN NEMAN; NEMAN BROTHERS AND ASSOCIATES, INC.; VERTIGO REAL ESTATE HOLDINGS, LP; LEGEND REAL ESTATE MANAGEMENT, INC.; GREGORY HANES; 300 K-6, LLC; 43917 DIVISION STREET, LLC; and DOES 1-150,

Defendants.

(7) **UNFAIR COMPETITION;**

(8) **FRAUD;**

(9) **UNJUST ENRICHMENT / RESTITUTION;**

(10) **BREACH OF FIDUCIARY DUTY; AND**

(11) **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

**[DEMAND FOR JURY TRIAL]**

Assigned to the Hon. John F, Walter, Ctrm. 7A and Magistrate Judge Maria A. Audero, Ctrm. 880

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

703136.13

FIRST AMENDED COMPLAINT-IN-INTERVENTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................... 6

LAW ........................................................................................................... 10

PARTIES .................................................................................................... 11

PROCEDURAL HISTORY ......................................................................... 13

JURISDICTION AND VENUE .................................................................. 15

FACTUAL ALLEGATIONS ....................................................................... 15

    I.    Thomas Shepos ................................................................................. 15

    II.   The Gabaee Defendants' Scheme ................................................... 17

        A.    The Gabaee Defendants .................................................... 17

        B.    Shepos' Improper Relationship with Arman and Mark Gabaee ............................................................................... 20

        C.    The Gabaees Funded Construction of Shepos' Home ................ 22

        D.    Arman Gabaee Made Direct Cash Payments to Shepos ............. 23

        E.    Arman Gabaee Tried to Purchase a House for Shepos .............. 24

        F.    Shepos and Arman Gabaee Plead Guilty to Federal Crimes Related to the Gabaee Defendants' Bribery Scheme ................. 25

        G.    The Tainted Gabaee Contracts ................................................. 26

            (i)    3220 Rosemead Boulevard, Building A, Suite No. 2A ..................................................................................... 26

            (ii)   3220 Rosemead Boulevard, Building G ........................... 28

            (iii)  3220 Rosemead Boulevard, Building A ........................... 30

            (iv)  3216 Rosemead Boulevard ............................................. 32

            (v)   9107 Wilshire Boulevard ................................................. 34

            (vi)  12000 Hawthorne Boulevard .......................................... 35

            (vii)  532 E. Colorado Boulevard .............................................. 36

            (viii) 15531 Ventura Boulevard ................................................ 39

            (ix)  2910 West Beverly Boulevard ........................................ 40

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

703136.13

3

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

(x)    3303 North Broadway Street ............................................ 41

H.    Shepos and the Gabaee Defendants Conceal the Bribery Scheme ........................................................................... 43

III.    The Visco Defendants' Scheme ................................................ 44

A.    The Visco Defendants ........................................................ 44

B.    Shepos' Improper Relationship with Visco .............................. 46

C.    Shepos' Romantic Relationship with Visco's Longtime Associate, Michele Lantz ................................................. 48

D.    Visco Gave Shepos Cash Payments and Gifts in Exchange for Preferential Treatment on County Leases and Projects ........ 49

E.    The Tainted Visco Contracts ................................................ 50

(i)    335 & 349 East Avenue K-6 ...................................... 50

(ii)    251 East Avenue K-6 ............................................... 51

(iii)    335-337 East Avenue K-10 ....................................... 52

(iv)    The Castaic Library ................................................. 54

(v)    43423 Division Street ............................................. 56

F.    Shepos and the Visco Defendants Conceal the Bribery Scheme ........................................................................... 58

IV.    The Hanes Defendants' Scheme ................................................ 59

A.    The Hanes Defendants ........................................................ 59

B.    Shepos Had a Close Personal Relationship with Hanes ............. 60

C.    Hanes Helped Shepos Launder Money to Conceal His Bribery Schemes in Exchange for Preferential Treatment on Lucrative County Leases ............................................. 61

D.    The Tainted Hanes Contracts ............................................... 62

(i)    300 East Avenue K-6 ............................................... 63

(ii)    43917 North Division Street ...................................... 69

E.    Shepos and the Hanes Defendants Conceal Their Bribery Scheme and Money Laundering from The County .................... 71

V.    The Abbey Defendants' Scheme ............................................... 72

A.    The Abbey Defendants ........................................................ 72

703136.13

4

FIRST AMENDED COMPLAINT-IN-INTERVENTION

B. The Abbey Defendants Provide Shepos with Free Home Renovations in Exchange for County Business.........................75

C. The Tainted Abbey Contracts.......................................................77

(i) 39959 Sierra Highway.......................................................77

(ii) 2323 East Palmdale Boulevard .......................................79

(iii) 5701 South Eastern Avenue ............................................80

D. Shepos and the Abbey Defendants Conceal the Bribery Scheme..........................................................................................82

VI. The Neman Defendants' Scheme..........................................................83

A. The Neman Defendants ...............................................................83

B. The Neman Defendants Bribe Shepos with Cash and Checks..........................................................................................85

C. The Tainted Neman Lease: 1529 East Palmdale Boulevard ......86

D. Shepos and The Neman Defendants Conceal the Bribery Scheme..........................................................................................88

FIRST CLAIM FOR RELIEF ................................................................................89

SECOND CLAIM FOR RELIEF ...........................................................................95

THIRD CLAIM FOR RELIEF .............................................................................102

FOURTH CLAIM FOR RELIEF .........................................................................112

FIFTH CLAIM FOR RELIEF ..............................................................................123

SIXTH CLAIM FOR RELIEF .............................................................................127

SEVENTH CLAIM FOR RELIEF .......................................................................130

EIGHTH CLAIM FOR RELIEF ..........................................................................136

NINTH CLAIM FOR RELIEF .............................................................................146

TENTH CLAIM FOR RELIEF ............................................................................149

ELEVENTH CLAIM FOR RELIEF .....................................................................150

PRAYER FOR RELIEF .......................................................................................154

DEMAND FOR JURY TRIAL ............................................................................156

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

FIRST AMENDED COMPLAINT-IN-INTERVENTION

Plaintiff County of Los Angeles (the "County" or "Plaintiff"), for its First Amended Complaint-in-Intervention against the above-captioned Defendants (collectively, "Defendants"), alleges as follows:

**INTRODUCTION**

1.     This is an important case to the County and its taxpayer constituents.  It involves criminal wrongdoing that came to light in connection with guilty pleas to multiple federal felonies.  As a result of this wrongdoing, the County and taxpayers were cheated out of hundreds of millions of dollars.  The Defendants in this case cannot be allowed to get away with their theft of public funds.

2.     For years, a high-level former County official—Defendant Thomas Shepos ("Shepos")—took bribes and accepted gifts in exchange for giving favorable treatment to private landlords clamoring for valuable, long-term leases with the County.  Among other misconduct, Shepos steered leases to these landlords, made their unlawful bids appear legitimate to obtain County approval, approved above-contract payments for tenant improvements, and concealed his self-interest.  For example, Shepos would provide these landlords with inside information about the County's leasing needs and locations so the Defendant landlords would have an advantage over innocent landlords, creating an uneven playing field for these County leases.

3.     Leases for County departments are uniquely valuable to private landlords.  The County serves as an "anchor tenant" for landlords.  County departments employ hundreds or thousands of people, requiring substantial square footage and resulting in significant monthly lease payments.  In addition, County leases have long terms and are repeatedly renewed, resulting in decades of reliable monthly rent payments.  And they often involve expensive tenant improvements paid for by the County.  In exchange for bribes, gifts, and kickbacks, Shepos ensured his cronies obtained these leases over innocent businesspersons.  The

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Defendant landlords herein, along with Shepos, profited substantially from their wrongdoing.

4. Having the County as a tenant in their buildings significantly increased the value of the properties owned by the Defendant landlords, and it allowed them to benefit financially through loans and other financial arrangements. This significant financial benefit was the reason they paid bribes to Shepos. It was worth the money paid to Shepos to get the County into their buildings.

5. The Defendants named herein are Shepos, the landlords who paid the bribes and engaged in other illicit acts—Arman Gabaee, Mark Gabaee, Frank Visco, Gregory Hanes, Donald Abbey, Leon Neman, Yoel Neman, and John Neman—and their corporate entities which facilitated the bribes and entered into the tainted leases with the County.

6. Shepos and the Defendant landlords concealed these bribes from the County. Nothing was put in writing. The landlords used their companies and employees to funnel bribes to Shepos. Shepos used one landlord to launder hundreds of thousands of dollars in bribes. And for obvious reasons, Shepos did not report any of these bribes to the County.

7. The Defendant landlords further concealed their fraudulent and illegal conduct by expressly representing and affirming in the County leases that Shepos had no financial interest in the leases and was not receiving anything in exchange for favorable treatment. These were lies.

8. Over the years, the County has paid these landlords hundreds of millions of dollars to house departments providing crucial services to the County's constituents, including the Department of Public Social Services, the Department of Mental Health, the Department of Children and Family Services, Military and Veterans Affairs, the Probation Department, and others.

9. These landlords and their companies must be brought to justice, not only in the criminal system but also in the civil courts by way of paying damages in

this lawsuit. The County is entitled to its day in court to restore to the public coffers the money Defendants wrongly secured through bribery, concealment, and other wrongdoing.

10. The County's claims herein all are based on state laws. They were filed in federal court, in intervention, because the Relator, Karen Gluck ("Gluck" or the "Relator"), filed her lawsuit first in federal court based on overlapping federal claims and similar facts.

11. The County has read the Court's order granting the Defendants' motions to dismiss with leave to amend and, by way of this First Amended Complaint-in-Intervention, addresses each and every point therein. The County is also streamlining the case by dismissing without prejudice certain defendants who were named in the original Complaint-in-Intervention (the "CII").

12. It has taken substantial time and effort to investigate and marshal the facts of this case. That work is ongoing and will be pursued further through discovery. The wrongdoers here have concealed, stonewalled, and obfuscated at every turn. The County needs recourse through the legal system.

13. This case is about five separate bribery schemes—each with Shepos at the helm—set forth in detail later herein. The schemes are summarized below:

(a) **The Gabaee Defendants' Scheme.** For decades, brothers Arman Gabaee (who has already pleaded guilty to federal crimes in connection with this scheme and sentenced to 48 months in federal prison) and Mark Gabaee bribed Shepos with trips to Las Vegas, gifts, spa treatments, and monthly payments of thousands of dollars in cash. They also funded construction and renovations on Shepos' private residence in Bel Air. In exchange, Shepos gave the Gabaee Defendants non-public information about the County's leasing needs and helped them secure ten valuable, long-term County leases, including amendments and renewals thereto. These contracts and the payments made thereunder are all tainted by the bribery scheme and are void from inception. Shepos and the Gabaee

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

8

Defendants concealed this scheme from the County, defrauding it of over $150 million paid pursuant to these tainted contracts.

(b)      **The Visco Defendants' Scheme.**  Frank Visco and his companies bribed Shepos in exchange for his improper assistance with County leases.  Visco is a wealthy developer in Lancaster who had a close friendship with Shepos.  He took Shepos on vacations and gambling trips and paid him tens of thousands of dollars in cash.  In exchange, Shepos funneled over $15 million in County business to the Visco Defendants—long-term leases (including amendments) on four properties, and a valuable tenant improvement contract on another property.  As part of the scheme, which the Visco Defendants and Shepos concealed from the County, Shepos also approved inflated invoices submitted by Visco for tenant improvements.  These contracts and the payments made thereunder are all tainted by the scheme and void as a matter of law.

(c)      **The Hanes Defendants' Scheme.**  Gregory Hanes is another wealthy land owner in Lancaster.  Hanes acted as a bank for Shepos—storing hundreds of thousands of dollars in cash in his safe, and laundering money for Shepos, to help conceal the bribes Shepos took.  In exchange, Shepos secured two valuable County leases (and amendments) for Hanes and his companies.  Shepos also approved millions of dollars in renovations and tenant improvements on these properties, which were reimbursed by the County.  These contracts and the payments made thereunder are all tainted by the bribery scheme and are void from inception.  Shepos and the Hanes Defendants concealed this scheme from the County, defrauding it of over $17 million paid pursuant to these tainted contracts.

(d)      **The Abbey Defendants' Scheme.**  Donald Abbey, another real estate tycoon, worked with his companies to perform over $475,000 in free renovations to Shepos' Bel Air home as bribes for receiving County business.  He also gave Shepos a Home Depot credit card for his personal use.  In exchange, Shepos secured three long-term, valuable County leases for the Abbey Defendants

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

(including amendments)—totaling over $40 million in payments by the County. Shepos and the Abbey Defendants concealed this scheme from the County, including by issuing phony invoices for the renovations. These contracts and the payments made thereunder are all tainted by the scheme and void from inception.

(e) **The Neman Defendants' Scheme.** For over a decade, brothers Leon, Yoel, and John Neman and their real estate companies bribed Shepos with tens of thousands of dollars in cash and checks. The Neman Defendants and Shepos concealed these bribes and kickbacks from the County, including by paying them to a property management company owned by Shepos. In exchange for these payments, Shepos secured a lucrative County lease for the Nemans in Palmdale (including multiple renewals)—totaling over $3.5 million in payments by the County. The lease and payments thereunder are tainted by the fraudulent scheme and void as a matter of law.

14. These Defendant landlords and Shepos acted with the intent to defraud—and did defraud—the County out of hundreds of millions of dollars. Each of their schemes is detailed separately below.

## LAW

15. Under established law, the Defendants herein have absolute and strict liability for their wrongdoing; and the County, as a public entity, is entitled to recover all the money it paid under the contracts (leases) in issue, without restoring any of the benefits received. *Thomson v. Call*, 38 Cal. 3d 633, 647 (1985).

16. By law, courts are not to entertain any rights arising from a contract tainted by a financial interest nor permit any recovery thereunder. A defendant who violates these conflict-of-interest statutes forfeits all rights and interests flowing from an illegal contract and must return all consideration paid thereunder.

17. Here, the County is entitled to recover all consideration it paid under the leases with the Defendants. No actual fraud is required, nor must there be an actual loss—just that a public official have a prohibited financial interest, as is

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

10

certainly the case for Shepos. *See Carson Redevelopment Agency v. Padilla*, 140 Cal. App. 4th 1323, 1330 (2006).

18.    Once the financial interest is shown, the leases cannot be sustained by showing that they are fair, just and equitable to the County, nor does the fact that the lease would be more advantageous have any bearing on the lease's validity, the forfeiture of all rights, and the return of all consideration paid thereunder. *Thomson*, 38 Cal. 3d at 648-50.

## PARTIES

19.    Plaintiff is the County of Los Angeles, a political subdivision of the State of California (the "State"), established pursuant to California law, with the power to sue and be sued.

20.    The County is the most populous county in the United States of America. Its departments, such as the Department of Children and Family Services, Department of Mental Health, Department of Public Social Services, and others, provide critical services to more than 10 million residents.

21.    Given the County's size and the importance of these services, the County often leases space spanning tens of thousands of square feet for its departments for significant periods of time—sometimes more than a decade.

22.    The County is a public body governed by a five-member Board of Supervisors (the "Board"). To ensure the effective, efficient, and lawful use of public funds and the delivery of critical public services to its residents, the County depends on the honesty and integrity of its employees and those with whom it does business. Defendants violated that trust, negotiating and forming contracts with the County procured by fraud, deception, and self-interest—diverting hundreds of millions of dollars from the County's coffers to themselves.

23.    Defendant Shepos is, and at all times relevant hereto was, an individual residing in the County. From about February 1998 until about August 2017, Shepos

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

703136.13

11

FIRST AMENDED COMPLAINT-IN-INTERVENTION

was a high-level public official employed by the County's Chief Executive Office - Real Estate Division ("CEO-RED").

24. Shepos was a real estate executive who dealt with landlords in an illegal way. Shepos solicited and accepted bribes from wealthy landlords in the form of cash, checks, real estate, vacations, spa treatments, and in-kind benefits such as home renovations. He even used one landlord—Gregory Hanes—to store and launder cash.

25. In exchange, Shepos used his authority at CEO-RED to benefit these landlords. He gave them non-public County information and previews of the County's leasing needs; authored Board letters advocating for their proposals; exercised his influence to ensure their proposals were approved over those of innocent businesspersons; "ran interference" to ensure each of his schemes did not come to light; facilitated favorable resolutions to contract disputes to the detriment of the County; and agreed, mutually with the landlords who were bribing him, to take steps (and did take steps) to conceal the bribery schemes. Shepos also approved inflated expenses and invoices submitted by one landlord, Frank Visco.

26. The identities of each of the landlords, as well as the facts concerning their bribery schemes with Shepos, their respective roles, the actions they took to participate in and further the schemes, and their efforts to conceal the schemes from the County, are alleged in detail below. (*See infra* Sections II-VI.)

27. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or otherwise, of Defendants sued herein as DOES 1 through 150, inclusive, but is informed and believes, and thereon alleges, that they are individually or collectively responsible for the events, happenings, and damages herein alleged in their capacities as County officials (DOES 1-50), other contracting parties (DOES 51-100) and third parties (DOES 101-150) involved in the wrongdoing herein alleged. Plaintiff will amend this First Amended Complaint-in-Intervention to allege their true names and capacities if and when ascertained.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

12

# PROCEDURAL HISTORY

28. On March 11, 2019, Gluck, the Relator and Shepos' ex-wife, filed this action as a qui tam plaintiff pursuant to the False Claims Act, 31 U.S.C. § 3729, and the California False Claims Act (the "CFCA"), Government Code sections 12650-12655, seeking to recover damages and civil penalties arising from Defendants' actions in presenting, or causing to be presented, false claims, false records, and false statements in connection with the contracts involving Shepos.

29. Pursuant to Federal Rule of Civil Procedure 24(a)(2), the County may intervene as of right in any federal action in which it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

30. Pursuant to California Government Code section 12652, the County, by and through the Office of County Counsel, may elect to intervene and proceed with an action brought by a private person under the CFCA, Government Code sections 12652(c)(8)(D)(i) and (E), for violations of the CFCA, and seek damages and penalties as provided in section 12651(a).

31. On October 6, 2023, the United States of America gave notice that it did not intend to intervene in the action.

32. On October 6, 2023, the State of California gave notice that it did not intend to intervene in the action.

33. On October 6, 2023, pursuant to Federal Rule of Civil Procedure 24 and Government Code section 12652(c)(8)(E), the County gave notice that it intended to intervene and proceed with the action.

34. On October 10, 2023, the Court issued an order unsealing the Relator's qui tam complaint.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

35.     On November 9, 2023, the County filed its original CII, intervening in the Relator's CFCA claims on behalf of itself and the State and alleging additional state-law claims against Defendants under California Government Code sections 1090, 1092, 87001, and 91003, as well as for unfair competition, fraud, unjust enrichment, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

36.     On January 10, 2024, the Relator filed a First Amended Complaint ("FAC").  The County moved to dismiss and strike certain allegations in Relator's FAC.  On August 8, 2024, the Court granted the County's motion and ordered the Relator to file a Second Amended Complaint omitting the challenged allegations.

37.     On August 19, 2024, the Relator filed a Second Amended Complaint ("SAC"), which contains additional facts and details of Defendants' various bribery schemes previously unknown to the County.

38.     On September 25, 2024, the Defendants filed motions to dismiss the County's CII pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

39.     On November 1, 2024, the Court granted the Defendants' motions to dismiss with leave to amend.  Since filing its initial CII, the County has learned more and investigated the bribery schemes further, and it is adding more detail to address every issue in the Court's November 1, 2024 Order.[2]

_____

[1] On August 26, 2024, the County filed a notice of voluntary dismissal as to the CII's claims against Alexander Moradi, Isaac Moradi, ICO Investment Group, Inc., Imperial Hawthorne L.P., and Gage Plaza Associates, LLC (the "Moradi Defendants").  On September 17, 2024, the County filed a motion to voluntarily dismiss the Moradi Defendants.  On October 9, 2024, the Court granted the County's motion.  This First Amended CII, therefore, does not contain any claims against the Moradi Defendants.

[2] In its original CII, the County asserted claims against David Schaeffer and Castaic Properties LLC (together, the "Schaeffer Defendants"), and William Tatum, Homer Harvey, Harvey Capital Corp., and Ball & East Ltd. (collectively, the "Harvey-Tatum Defendants").  On September 25, 2024, the Schaeffer Defendants and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

14

## JURISDICTION AND VENUE

40. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

41. This Court has personal jurisdiction over each Defendant in this matter because each Defendant resides in the State of California and/or expressly consented to exercise of jurisdiction by this Court by virtue of the contracts at issue herein.

42. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3).

## FACTUAL ALLEGATIONS

43. Plaintiff incorporates by reference the factual allegations in Gluck's original qui tam complaint filed under seal pursuant to 31 U.S.C. § 3730(b)(2) (filed Mar. 11, 2019).

### I.   Thomas Shepos

44. For years, Shepos was employed by the County as the Lease Acquisition Section Chief for CEO-RED.  In that role, Shepos was responsible for identifying and acquiring real property to house County departments and programs, negotiating leases with private building and property owners, and managing tenant improvement projects.

45. Shepos was vested with significant and wide-ranging authority to, among other things: request and receive proposals from private real estate developers for County departments' leasing needs; negotiate and draft lease and other contract terms; recommend proposals for adoption by the Board; and approve

---

Harvey-Tatum Defendants filed motions to dismiss the CII, which were granted with leave to amend in the Court's November 1, 2024 Order.  Since the Court's ruling, the County has decided not to pursue claims against the Schaeffer Defendants or Harvey-Tatum Defendants at this time.  The County plans to file notices of voluntary dismissal pursuant to tolling agreements with these parties.

703136.13

15

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

and arrange for payment of expenses and invoices for construction and other improvements for County-leased properties.

46.     Shepos' recommendations were afforded significant weight such that the Board adopted lease agreements that came with, and because of, Shepos' input and approval.

47.     During his employment by the County, Shepos participated in the negotiation, drafting, and approval of contracts with real estate developers and property owners, binding the County into contractual obligations to the tune of hundreds of millions of dollars.

48.     As a government official, Shepos was prohibited from having a financial interest stemming from any public contract made by him or in which he participated.  This prohibition is set forth in California Government Code sections 1090, 1092, 87100, 87103 and 91003, as well as Los Angeles County Code section 2.160.120, the Los Angeles County Employee Handbook, the Los Angeles County Purchasing Policy and Procedural Manual, and the Los Angeles County Board of Supervisors Policy Manual.

49.     Nevertheless, unbeknownst to the County, and as alleged in detail below, Shepos engaged in willful and unlawful schemes whereby, in exchange for bribes, kickbacks gifts, and assistance laundering and concealing illicit payments, he: (i) provided developers and property owners with non-public County information relating to the County's leasing needs and bids; (ii) used his influence to ensure that contract proposals from firms who paid him bribes prevailed over their competitors and that the Board adopted such proposals; (iii) imposed lease terms that were beneficial to certain developers; (iv) approved exorbitant and unwarranted expenses and invoices to the County's detriment; and (v) intervened to ensure that disputes with the County or its agencies were resolved on terms favorable to landlords who were bribing him.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

50.     Because of these schemes and Shepos' improper financial interest in these contracts, the contracts are unlawful and, by law, void in their entirety from their inception.  And every payment made thereunder was secured via a false claim in violation of the CFCA.

## II.     The Gabaee Defendants' Scheme

### A.     The Gabaee Defendants

51.     Defendant Arman Gabaee, also known as "Arman Gabay," is, and at all times relevant hereto was, an individual residing in the County.

52.     Defendant Mark Gabaee, also known as "Mark Gabay," is, and at all times relevant hereto was, an individual residing in the County.  Mark Gabaee is the older brother of Arman Gabaee.

53.     Mark and Arman Gabaee are real estate developers who work hand-in-hand and have conducted millions of dollars of business with the County over many years.

54.     Defendant The Charles Company, Inc. ("Charles Company") is a California corporation with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069.  Mark and Arman Gabaee are the co-managing partners and co-founders of the Charles Company, a real estate development firm that developed and maintained commercial and residential real estate projects.

55.     Defendant Excel Property Management Services, Inc. ("Excel Property Management") is a California corporation with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069.  Mark Gabaee is Chief Executive Officer ("CEO"), Secretary, and Chief Financial Officer ("CFO") of Excel Property Management.

56.     Defendant Oakshire, LLC ("Oakshire") was a Delaware corporation with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069.

703136.13

17

FIRST AMENDED COMPLAINT-IN-INTERVENTION

57. Defendant Wilhurst, Inc. ("Wilhurst") is a Delaware corporation with its principal place of business at 11726 San Vicente Boulevard, Suite 235, Los Angeles, CA 90049. Wilhurst is Oakshire's managing member and Oakshire's successor-in-interest. Mark Gabaee is Wilhurst's CEO and President. Arman Gabaee is Wilhurst's Vice President.

58. Defendant Sancam Inc. ("Sancam") is a California corporation with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069. Mark Gabaee is Sancam's CEO.

59. Defendant Town Investments, LLC ("Town Investments") is a California limited liability company with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069. Sancam, whose CEO is Mark Gabaee, is Town Investments' managing member.

60. Defendant M&A Gabaee, LP ("M&A Gabaee") is a limited partnership organized under the laws of California with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069. Sancam, whose CEO is Mark Gabaee, is M&A Gabaee's general partner.

61. Defendant Greenoak Investments, LLC ("Greenoak") is a California limited liability corporation with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069. Greenoak's managing member is Sancam, whose CEO is Mark Gabaee.

62. Defendant Urban Grove19, LLC ("Urban Grove19") is a Delaware limited liability corporation with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069. Mark Gabaee is the manager of Urban Grove19.

63. Defendant Maple19 LP ("Maple19") is a limited partnership organized under the laws of Delaware, with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069. Urban Grove19, whose manager is Mark Gabaee, is the general partner of Maple19.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

64.    Defendant Oppidan, LLC ("Oppidan") was a California limited liability corporation with its principal place of business at 9034 W. Sunset Boulevard, West Hollywood, CA 90069.  Its managing member was Sancam, whose CEO is Mark Gabaee.

65.    Where applicable, Arman Gabaee, Mark Gabaee, Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19, and Oppidan are referred to collectively herein as the "Gabaee Defendants."

66.    Based on their roles as executives and/or managers of the entity Gabaee Defendants, as detailed above, and the fact that Mark Gabaee signed leases with the County on behalf of the entity Gabaee Defendants, Mark and Arman Gabaee own, control, and/or direct the actions of Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19, and Oppidan who, in doing the acts alleged herein, acted at their direction and/or with their permission, knowledge, consent, or ratification.

67.    In the alternative, based on their roles as executives and/or managers of the entity Gabaee Defendants, as detailed above, and the fact that Mark Gabaee signed leases with the County on behalf of the entity Gabaee Defendants, Mark and Arman Gabaee were alter egos of Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19, and Oppidan; Mark and Arman Gabaee dominated and controlled Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19, and Oppidan; a unity of interest and ownership existed between Mark and Arman Gabaee and Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19, and Oppidan; Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

and Oppidan were inadequately capitalized; the Gabaee Defendants failed to abide by the formalities of corporate existence; and Mark and Arman Gabaee used Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19, and Oppidan assets as their own and, in doing the things alleged herein, acted with such a unity of interest that the separate personalities of these corporate entities do not in reality exist and honoring their separate identities would bring about an inequitable result.

68.    The Gabaee Defendants, who own and operate various buildings throughout the County, participated in and profited from bribes to Shepos, as alleged in detail below.

**B.    Shepos' Improper Relationship with Arman and Mark Gabaee**

69.    From the beginning of Shepos' tenure with the County, Arman Gabaee sought improper assistance from Shepos in conducting the Gabaee Defendants' real estate business with the County, in exchange for cash, gifts, and other things of value.

70.    Arman Gabaee sought this assistance on behalf of himself, his brother Mark Gabaee, and the other Gabaee Defendants.  Although Arman Gabaee was the primary person interacting with Shepos and making improper payments to him on behalf of the Gabaee Defendants, Mark Gabaee was both aware of his brother's arrangement with Shepos and also directly participated in it.  Mark Gabaee was also responsible for the Gabaee Defendants' finances and expenses.  Mark Gabaee directed the conduct of Charles Company, Excel Property Management, Oakshire, Wilhurst, Town Investments, Sancam, M&A Gabaee, Greenoak, Maple19, Urban Grove19, and Oppidan, and he directly benefitted from the conduct of each of these entities.  As previously alleged, because of Arman and Mark Gabaee's roles as executives and managers of the entity Gabaee Defendants (which share a principal place of business), and the fact that Mark Gabaee signed the County leases on behalf

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

of the entity Gabaee Defendants and controlled their finances, Mark and Arman Gabaee were working in concert and were alter egos of the entity Gabaee Defendants.

71.    Arman and Mark Gabaee were both aware that Shepos was a high-ranking County employee with influence over County leasing decisions.  That is precisely why they bribed him—so that he could exert his influence over County decisions and leases to benefit the Gabaee Defendants.

72.    The Gabaee Defendants' bribes began as early as 1999 and continued until at least 2017.

73.    Based on records discovered by Gluck dating as far back as 1999, Arman Gabaee and Shepos shared an account with Southwest Airlines and traveled to Las Vegas together on a regular basis.  During one trip in May 1999, Shepos attended a shopping center convention, which was paid for by Arman Gabaee.  Based on Gluck's records, Shepos held himself out as an executive from the Charles Company, and Arman Gabaee paid the $400 fee for Shepos' attendance.

74.    Multiple times, Arman Gabaee and Shepos traveled together to Las Vegas to look at properties, get spa treatments at Caesars' Palace, and dine at expensive restaurants—all paid for by Arman Gabaee.

75.    In addition to travel, Arman Gabaee also provided Shepos with in-kind gifts and other valuable items as a means of influencing Shepos.  For example, in or around January 2006, the Charles Company reimbursed Shepos for approximately $15,000 worth of Los Angeles Dodgers tickets Shepos had purchased.  In or around January 2010, Arman Gabaee also bought Shepos an extravagant watch valued between $20,000 and $25,000.

76.    The Charles Company and its employees served as intermediaries for Arman and Mark Gabaee to funnel bribes to Shepos, even going so far as registering Shepos as a Charles Company employee so that Shepos' trips to Las Vegas could be deemed a business expense for the Gabaee brothers and their company.

703136.13

21

FIRST AMENDED COMPLAINT-IN-INTERVENTION

## C.      The Gabaees Funded Construction of Shepos' Home

77.      Arman and Mark Gabaee also funneled bribes to Shepos by paying for construction on the Bel Air property Shepos and Gluck owned at 1330 Roscomare Road, Los Angeles, CA 90077.

78.      At Arman and Mark Gabaee's direction, Excel Property Management performed work on Shepos' personal property at no charge to Shepos.  Worse, they submitted false invoices recording the work as improvements on certain County-leased properties when, in reality, the work was purely for Shepos' personal benefit.

79.      For example, based on records found by Gluck, in or around July 2003 Shepos hired a contractor named Center Line Construction to perform work on his Roscomare property.  Per the contracts between Center Line Construction and Shepos, Center Line Construction directed invoices for its work to Excel Property Management, which made the payments.  The contracts falsely indicated that the work was being done at the Hawthorne Mall, a property the County was leasing from the Gabaees.  Under this arrangement, Arman and Mark Gabaee conspired with Shepos to have Excel Property Management pay for work on Shepos' property, and then have it reimbursed by the County as work ostensibly performed at the Hawthorne Mall.

80.      Similarly, during a period between 2004 and 2007, Gluck and Shepos hired a stonemason named Cirilo Rubalcava to perform work on their Bel Air property.  Based on invoices found years later by Gluck, Rubalcava would list his time and fees, explain what portion had already been paid by Excel Property Management, and advise Shepos what balance was owed, if any.  Rubalcava also provided Shepos with copies of the checks he had already received from Excel Property Management for work performed on the Roscomare house.

81.      For example, in one invoice, Rubalcava explained that his total bill was $5,730, that he received two checks from Excel Property Management on January 22, 2007 for $3,000 and $500, that he had also received a check from

703136.13

22

Shepos for $2,500, and that he therefore "owe[d] money balance to Tom" of $270. Gluck found enclosed with this invoice copies of the two checks from Excel Property Management to Rubalcava, dated January 22, 2007, in the amounts of $3,000 and $500. The checks also had a note that said "Hawthorne," indicating that Arman and Mark Gabaee intended to seek reimbursement from the County by falsely claiming the work was performed on the County's leased Hawthorne Mall building, when in fact it was performed on Shepos' home in Bel Air.

82. Gluck uncovered a similar check from Excel Property Management to Rubalcava from 2004 in the amount of $5,000.

83. There were more records uncovered by Gluck indicating that Arman and Mark Gabaee were funding renovations to Shepos' Roscomare property. Specifically, in April 2006, M&A Gabaee bought over $4,000 of construction materials from Nichol's Hardware to be used on the property. Additionally, one of Arman and Mark Gabaee's employees, Kang Lee, did structural engineering work for the property. All of this at no cost to Shepos.

**D.    Arman Gabaee Made Direct Cash Payments to Shepos**

84. Beginning in or about 2010 or 2011, and continuing until approximately April 11, 2017, Arman Gabaee also made cash payments to Shepos on a monthly basis. Initially, the payments were $5,000 per month for approximately six months. From that point on, Arman Gabaee gave Shepos monthly cash payments of approximately $1,000.

85. As set forth in more detail below, Arman Gabaee and Shepos admitted in federal plea agreements to specific cash payments made on specific dates. On behalf of himself, his brother Mark, and the other Gabaee Defendants, Arman Gabaee made the following cash payments to Shepos: (i) $1,500 on December 20, 2016; (ii) $1,500 on December 3, 2016; (iii) $1,000 on January 27, 2017; (iv) $1,000 on March 1, 2017; (v) $900 on March 31, 2017; and (vi) $100 on April 11, 2017.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

86. As alleged more specifically below, in exchange for these bribes, Shepos: (i) exerted pressure on County departments to complete official requests for office space that would have allowed Shepos to begin more formal lease negotiations with the Gabaee Defendants; (ii) pretended to publicly engage in the normal County bidding process for County leases while, in reality, promising the Gabaee Defendants favorable treatment to ensure they prevailed on bids for County leases that other businesspersons were competing for without the benefit of an inside man; (iii) exerted pressure on subordinate employees to draft leases for the Gabaee Defendants; (iv) used his influence to make sure the tainted leases "looked good on paper" in order to avoid raising suspicion; (v) used his influence to pressure the County to agree to terms in leases favorable to the Gabaee Defendants, including above-market rates; (vi) ultimately secured the leases for the Gabaee Defendants; and (vii) "ran interference" for the Gabaee Defendants with respect to maintenance and other issues that arose relating to those leases, negotiating resolutions that were favorable to the Gabaee Defendants and detrimental to the County.

87. For instance, on one occasion in 2011, Shepos "ran interference" with regard to maintenance issues that had arisen in some of the properties being leased by the County. The County departments leasing space in the properties were upset with maintenance issues, such as broken elevators and leaking roofs. Arman and Mark Gabaee relied on Shepos to address the issues with the departments by improperly deflecting blame away from them and onto independent contractors, and by allowing Arman and Mark Gabaee more time to resolve the issues. Mark Gabaee directly participated in these discussions with his brother and Shepos regarding "running interference" on maintenance issues.

**E.    Arman Gabaee Tried to Purchase a House for Shepos**

88. Through their companies, Arman and Mark Gabaee were redeveloping the Hawthorne Mall, located in Hawthorne, California. In or around 2016, they sought a contract by which the County would lease space at the Hawthorne Mall for

703136.13

24

the Department of Social Services or other County departments.  As drafted, the proposed lease anticipated a term of 10 years and payments to Arman and Mark Gabaee in the form of rent and tenant improvements, reimbursable by the County, in excess of $45 million.

89.    To secure this lease, in or around December 2016, Arman Gabaee attempted to bribe Shepos with the purchase of a residential property in Northern California for Shepos' personal use, in addition to the monthly payments he was already giving Shepos.

90.    Specifically, Arman Gabaee offered to purchase for Shepos a property on Barnes Road in Santa Rosa, California, listed at $1,199,000;  Gabaee also offered to purchase another Santa Rosa property for Shepos, on Annadel Heights Drive, originally listed at $1,199,000.  Gabaee made offers on the Annadel Heights Drive property with the intention of purchasing it for Shepos.  Arman Gabaee was arrested by the FBI prior to being able to complete the purchase.

### F.    Shepos and Arman Gabaee Plead Guilty to Federal Crimes Related to the Gabaee Defendants' Bribery Scheme

91.    As a result of the aforementioned conduct, Shepos and Arman Gabaee were both charged with and pleaded guilty to federal crimes.  Shepos was charged with false statements to a government agent in violation of 18 U.S.C. § 1001(a)(2) and subscribing to false tax returns in violation of 26 U.S.C. § 7206(1).  *See* Plea Agreement for Defendant Thomas M. Shepos, *United States of America v. Shepos*, No. CR 18-569-GW, Dkt. No. 9 (filed Sept. 5, 2018), which was accepted by the District Court for the Central District of California on November 19, 2018 (*see* Minutes – Change of Plea, *Shepos*, Dkt. No. 27 (entered Nov. 19, 2018)).  Shepos' November 19, 2018 plea agreement is attached hereto as **Exhibit 1**.

92.    Arman Gabaee was charged with federal program bribery in violation of 18 U.S.C. § 666(a)(2).  *See* Plea Agreement for Defendant Arman Gabaee, *United States of America v. Gabaee*, No. CR 18-331-GW, Dkt. No. 240 (filed Apr. 26,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

2022), which was accepted by the District Court for the Central District of California on May 2, 2022 (*see* Minutes – Change of Plea, *Gabaee*, Dkt. No. 243 (entered May 2, 2022)).  Arman Gabaee's May 2, 2022 plea agreement is attached hereto as **Exhibit 2**.

93.     On December 15, 2022, Arman Gabaee was committed to the custody of the Bureau of Prisons to be imprisoned for a term of 48 months for this misconduct.  He is still serving his time.

94.     On January 23, 2023, Shepos was sentenced to 24 months of probation for, among other things, lying to the FBI about the foregoing misconduct.

### G.     The Tainted Gabaee Contracts

95.     The decades-long bribery scheme with Shepos undertaken by Arman Gabaee, Mark Gabaee, and the other Gabaee Defendants tainted the contracts between the Gabaee Defendants and the County in which Shepos participated (the "Gabaee Contracts"), as well as the payments and proceeds the Gabaee Defendants and Shepos received in connection with the Gabaee Contracts.

96.     As set forth in detail below, each of the Gabaee Contracts was signed during the period when Shepos and Arman Gabaee, Mark Gabaee, and the other Gabaee Defendants were engaged in the foregoing bribery scheme.  The tainted Gabaee Contracts, each of which is incorporated herein, are outlined below:

### (i)     3220 Rosemead Boulevard, Building A, Suite No. 2A

97.     On or about November 4, 1997, the County and M&A Gabaee entered into a lease agreement for 3220 Rosemead Boulevard, Building A, Suite No. 2A in El Monte, California (Lease No. 71124).  The County used this space to house the District Attorney.

98.     Under the lease agreement, the County agreed to pay monthly rent of $5,500—totaling $462,000 over its seven-year term.  At all times, the County made monthly payments as they were due under the lease.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

FIRST AMENDED COMPLAINT-IN-INTERVENTION

99.    On or about September 7, 1999, the County and M&A Gabaee entered into Amendment No. 1 to the lease agreement.  The amendment increased the square footage of space rented at the property, thereby increasing the monthly rent to $11,567—totaling additional payments in excess of $376,154.

100.    This amendment was signed during the period when Arman Gabaee was bribing Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants.  By this time, at a minimum, Arman Gabaee was paying for Shepos' travel, including trips to Las Vegas, as evidenced by the May 1999 trip to the shopping center convention in Las Vegas, which was paid for by Arman Gabaee. Amendment No. 1 was signed by Mark Gabaee on behalf of Sancam as General Partner of M&A Gabaee.

101.    Section 23.S of the lease agreement, which term was renewed by virtue of Amendment No. 1, contains an express acknowledgment that County employees are forbidden from soliciting consideration "in any form" from landlords and that the lease agreement would be immediately terminable "if it is found that consideration, in any form, was offered or given by Lessor, either directly or through an intermediary, to any County officer, employee or agent with the intent of securing the Agreement or securing favorable treatment with respect to the award, amendment or extension of the Agreement or the making of any determinations with respect to the Lessor's performance pursuant to the Agreement."

102.    Shepos was involved with negotiating and securing approval of Amendment No. 1 to the Lease.

103.    The amended lease was in effect from September 7, 1999 to April 19, 2005.  During this period, the County paid monthly rent to M&A Gabaee.

104.    Had the County known Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease amendment and other preferential treatment of the Gabaee Defendants, the County would never have entered the amendment to the lease or made rent payments thereunder.

703136.13

27

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

### (ii)    3220 Rosemead Boulevard, Building G

105.    On or about January 15, 2002, the County and M&A Gabaee entered into a lease agreement for 3220 Rosemead Boulevard, Building G in El Monte, California (Lease No. L-0793).  The County used this space to house the District Attorney.

106.    Under the lease agreement, the County agreed to pay a monthly rent of $2,485—totaling $89,460 over its three-year term.  At all times, the County made monthly payments as they were due under the lease.

107.    Shepos was involved with negotiating and securing approval of this lease, and the lease agreement was signed during the period when Arman Gabaee was making bribe payments to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants.  The lease agreement was signed by Mark Gabaee on behalf of Sancam as General Partner of M&A Gabaee.

108.    Section 26 of the lease agreement contains an express acknowledgment by M&A Gabaee that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give, either[] directly or through an intermediary, consideration in any form, to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

109.    On or about April 19, 2005, the County and Town Investments entered into a lease agreement for 3220 Rosemead Boulevard in El Monte, California (Lease No. 75257).  This lease agreement extended the terms of the previous two leases (Lease Nos. 71124 and L-0793), merged the two agreements into a single lease agreement, and increased the County's monthly rent by $1,953 per month.  The lease agreement was signed by Mark Gabaee on behalf of Sancam as Managing Member of Town Investments.

110.    Under the new lease agreement (Lease No. 75257), the County agreed to pay a monthly rent of $16,611.75—totaling $996,705 over its five-year term.

703136.13

28

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

111.  On or about July 6, 2010, the County and Town Investments entered into Amendment No. 1 to the lease agreement (Lease No. 75257).  The amendment extended the term of the lease for five years and set a monthly rent at $18,588.92, with yearly increases to rent—totaling payments in excess of $1,115,335.  The amendment was signed by Mark Gabaee on behalf of Town Investments.  At all times, the County made monthly payments as they were due under the new lease.

112.  The lease agreement and its amendments were signed during the period when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants, including travel and construction funding on Shepos' Bel Air home.  And Shepos was instrumental in negotiating and securing approval of this lease.

113.  For example, Shepos authored a Board letter stating "**IT IS RECOMMENDED THAT YOUR BOARD**" take three specific actions: (i) "Approve and instruct the Chairman to sign the attached lease with Town Investments (Landlord)"; (ii) "Find that the lease renewal is categorically exempt from the California Environmental Quality Act (CEQA)"; and (iii) "Approve the project and authorize the Chief Administrative Office (CAO) and DA to implement the project."

114.  Shepos also obtained the Board's approval for Amendment No. 1 to the lease, authoring a Board letter with the "recommendation" that the Board find the lease exempt from CEQA and "[a]pprove and instruct the Chair to sign the lease amendment with Town Investment [sic] LLC (Lessor)."

115.  Section 28 of the lease agreement contains an express acknowledgment by Town Investments that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give, either[] directly or through an intermediary, consideration in any form, to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the lease."

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

29

116. The lease agreement and its amendments were in effect from January 15, 2002 until July 5, 2015. During this period, the County paid monthly rent to Town Investments.

117. Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating the lease documents, Shepos' recommendations for Board approval, and other preferential treatment of the Gabaee Defendants, the County would never have entered into the lease or the amendment, nor would it have made payments thereunder.

### (iii)   3220 Rosemead Boulevard, Building A

118. On or about May 5, 1998, the County and M&A Gabaee entered into a lease agreement for 3220 Rosemead Boulevard, Building A in El Monte, California (Lease No. 71378). The County used this space to house the Department of Public Social Services. The lease was signed by Mark Gabaee on behalf of Sancam as General Partner of M&A Gabaee,

119. Under the lease agreement, the County agreed to pay a monthly rent of $20,435—totaling $2,452,200 over its ten-year term. At all times, the County made monthly payments as they were due under the lease.

120. On or about August 5, 2008, the County, at Shepos' recommendation, exercised an option to renew the lease for a five-year term at a monthly rent of $26,418—totaling approximately $1.6 million over its five-year term.

121. On or about July 30, 2013, the County and Town Investments entered into Amendment No. 1 to the lease agreement. The amendment extended the term of the lease for five years and set a monthly rent at $28,328, with yearly increases to rent—totaling payments in excess of $1,699,680. Amendment No. 1 was signed by Mark Gabaee on behalf of Town Investments.

122. The 2008 lease renewal option and the 2013 amendment were signed during the period when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants—travel, extravagant gifts,

703136.13

30

FIRST AMENDED COMPLAINT-IN-INTERVENTION

construction on Shepos' home, and monthly cash payments.  And Shepos was instrumental in negotiating and securing approval of this lease.

123.   For example, Shepos authored the Board letter recommending approval of the lease and that the Board take four specific actions: (i) "Find that the project is exempt from the California Environmental Quality Act (CEQA)"; (ii) "Approve a ten-year lease with M&A Gabaee"; (iii) "Authorize the Director of Internal Services Department (ISD) to acquire a telephone system for the facility"; and (iv) "Approve the project and authorize the Chief Administrative Officer to implement the project."

124.   Shepos also authored the Board letter recommending the exercise of the five-year renewal option, recommending that the Board: (i) "Find that the lease renewal is categorically exempt from California Environmental Quality Act (CEQA)"; and "Exercise the option to renew the lease for a five-year term with Town Investment, LLC."  Additionally, Shepos authored the Board Letter recommending the adoption of Amendment No. 1, further extending the lease term by five years, specifically recommending that the Board: (i) "Approve and instruct the Chairman to sign an amendment for a five-year extension of the lease with Town Investments, LLC" and (ii) "Authorize the Chief Executive Office and the Director of Public Social Services to implement the project upon Board approval."

125.   Shepos also authored a memorandum directing the Rent/Budget Administration to commence rent payments pursuant to the lease, as well as payments for the cost of electricity used during the tenancy.

126.   The lease was in effect from May 5, 1998 until August 4, 2018.  During this period, the County paid monthly rent to Town Investments.

127.   Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating the lease documents, Shepos' recommendations for Board approval, and other preferential treatment of the Gabaee

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

FIRST AMENDED COMPLAINT-IN-INTERVENTION

Defendants, the County would never have exercised the 2008 lease renewal option or entered the 2013 amendment, nor would it have made payments thereunder.

### (iv)   3216 Rosemead Boulevard

128.   On or about September 7, 1999, the County and M&A Gabaee entered into a lease agreement for 3216 Rosemead Boulevard in El Monte, California (Lease No. 72387).  The County used this space to house the Department of Public Social Services.  The lease was signed by Mark Gabaee on behalf of Sancam as General Partner of M&A Gabaee.

129.   Under the lease agreement, the County agreed to pay a monthly rent of $54,386.80—totaling $6.5 million over its ten-year term.  At all times, the County made monthly payments as they were due under the lease.

130.   On or about July 13, 2010, the County, at Shepos' recommendation, exercised an option to renew the lease for a five-year term at a monthly rent of $70,433—totaling approximately $4.2 million over its five-year term.

131.   On or about November 15, 2016, the County and M&A Gabaee entered into Amendment No. 1 to the lease agreement.  The amendment extended the term of the lease for five years and set a monthly rent at $77,396.60, with yearly increases to rent—totaling payments in excess of $4.6 million.  Amendment No. 1 was signed by Mark Gabaee on behalf of M&A Gabaee.

132.   The lease agreement in 1999, the exercise of the renewal option in 2010, and Amendment No. 1 in 2016 were all signed during periods when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants—travel, extravagant gifts, construction on Shepos' home, and monthly cash payments.

133.   Section 29 of the lease agreement contains an express acknowledgment by M&A Gabaee that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give, either[] directly or through an intermediary, consideration in any form, to a County officer,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

employee or agent for the purpose of securing favorable treatment with respect to the award of the lease."

134. Shepos was instrumental in negotiating and securing this lease. For example, Shepos authored the Board letter stating "**IT IS RECOMMENDED THAT YOUR BOARD**" take five specific actions: (i) "Approve and instruct the Chairman to sign a ten year full service lease with M&A Gabaee"; (ii) "Approve and instruct the Chairman to sign Amendment No. 1 to Lease No. 71124, with Lessor for office space located at 3220 Rosemead Boulevard, Suite B"; "Authorize the Director of the Internal Services Department (ISD) to acquire a telephone system for DPSS and relocate the telephone system for the DA"; (iii) "find that the project will not have a significant effect on the environment, and find that the Negative Declaration reflects the independent judgment of the County and approve the Negative Declaration"; and (iv) "Approve the projects and authorize the CAO and ISD to implement the projects."

135. Shepos also authored the Board letter setting forth his recommendation that the Board exercise the five-year renewal option, stating "**IT IS RECOMMENDED THAT YOUR BOARD**" take two specific actions: (i) "Find that the lease renewal is categorically exempt from the California Environmental Quality Act"; and (ii) "Exercise the option to renew the lease for a five-year term with Town Investment, LLC."

136. The lease was in effect from September 7, 1999 until November 30, 2021. During this period, the County paid monthly rent to M&A Gabaee.

137. Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating the lease documents, Shepos' recommendations for Board approval, and other preferential treatment of the Gabaee Defendants, the County would never have entered the lease, exercised the 2010 renewal option, or entered the 2016 amendment, nor would it have made payments thereunder.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

### (v)    9107 Wilshire Boulevard

138.    On or about March 23, 2016, the County and Oakshire entered into a lease agreement for 9107 Wilshire Boulevard in Los Angeles, California (Lease No. L-1244).  The County used this space to house the Department of Mental Health, which provides critical mental health services such as assessments, case management, crisis intervention, medication support, peer support, and other rehabilitative services.

139.    Under this lease, the County agreed to pay a monthly rent of $24,000, plus $12,960 per month, for a period of sixty days—totaling payments of $73,920. After the initial sixty-day term, the County continued to occupy the premises until June 2019 as a holdover tenant.  During this period, the County made monthly payments as they were due.

140.    This lease agreement was signed during the period when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants—travel, extravagant gifts, construction on Shepos' home, and monthly cash payments.  The lease was signed by Arman Gabaee on behalf of Wilhurst as Managing Member of Oakshire.

141.    Section 32 of the lease agreement contains an express acknowledgment by Oakshire that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give, either directly or through an intermediary, consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

142.    The lease was in effect from March 23, 2016 to June 9, 2019.  During this period, the County paid monthly rent to Oakshire.

143.    Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease, and his

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

FIRST AMENDED COMPLAINT-IN-INTERVENTION

other preferential treatment of the Gabaee Defendants, the County would never have entered the lease or made payments thereunder.

### (vi)    12000 Hawthorne Boulevard

144.   On or about September 25, 2000, the County and M&A Gabaee entered into a lease agreement for 12000 Hawthorne Boulevard in Hawthorne, California (Lease No. 73655).  The County used this space to house the Department of Public Social Services.

145.   Under the lease agreement, the County agreed to pay a monthly rent of $232,743—totaling $27.9 million over its ten-year term.  At all times, the County made monthly payments as they were due under the lease.

146.   The lease also provided the County the option to occupy a secondary premises for an additional $35,650 per month.

147.   On or about January 13, 2004, the County and M&A Gabaee entered into a Memorandum of Acceptance of Expansion Space, whereby the County took possession of the secondary premises (4300 West 12th Street) as of December 1, 2003, resulting in additional payments of approximately $2.9 million over the remainder of the lease term.

148.   On or about July 5, 2011, the County and M&A Gabaee entered into Amendment No. 1 to the lease agreement.  The amendment extended the term of the lease for five years and set a monthly rent at $273,722, with yearly increases— totaling payments in excess of $16.4 million.

149.   The lease agreement in 2000, the Memorandum of Acceptance of Expansion Space in 2004, and Amendment No. 1 in 2011 were signed during periods when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants— travel, extravagant gifts, construction on Shepos' home, and monthly cash payments.  The lease agreement, the Memorandum of Acceptance of Expansion of Space, and Amendment No. 1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

were all signed by Mark Gabaee on behalf of Sancam as General Partner of M&A Gabaee.

150.    Section 23.R of the lease agreement contains an express acknowledgment by M&A Gabaee that County employees are forbidden from soliciting consideration "in any form" from landlords and that the lease agreement would be immediately terminable if consideration "was offered or given by Lessor, either directly or through an intermediary, to any County officer, employee or agent with the intent of securing the Agreement or securing favorable treatment with respect to the award, amendment or extension of the Agreement or the making of any determinations with respect to the Lessor's performance pursuant to the Agreement."

151.    Shepos was instrumental in negotiating and securing approval of the lease, its amendment, and the Memorandum of Acceptance of Expansion Space.  He authored a Board letter stating, "**IT IS RECOMMENDED THAT YOUR BOARD**," among other things, "Approve and instruct the Mayor, Los Angeles County, to sign the attached ten-year lease with M & A Gabaee (Lessor)."  He also authored a letter stating his "recommendation [] to exercise an option to renew the lease term for an additional five-year period . . ."

152.    The lease was in effect from September 25, 2000 until August 31, 2017.  During this period, the County paid monthly rent to M&A Gabaee.

153.    Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease, Shepos' recommendations for Board approval, and other preferential treatment of the Gabaee Defendants, the County would never have entered the lease, Amendment No. 1, or the Memorandum of Acceptance of Expansion Space, nor would it have made payments thereunder.

### (vii)   532 E. Colorado Boulevard

154.    On or about May 18, 1999, the County and M&A Gabaee entered into a

lease agreement for 532 E. Colorado Boulevard in Pasadena, California (Lease No. 72116). The County used this space to house the Department of Children and Family Services, which provides critical services to children and families in crisis—responding to the immediate needs of children at risk of abuse and neglect, providing support to keep families together, and promoting child safety and well-being.

155. Under the lease agreement, the County agreed to pay monthly rent of $116,631—totaling $14 million over its ten-year term. At all times, the County made monthly payments as they were due under the lease.

156. The lease also provided the County the option to occupy a secondary premises for an additional $35,650 per month.

157. On or about February 16, 2010, the County, at Shepos' recommendation, exercised an option to renew the lease for a five-year term with Greenoak as the counterparty, at a monthly rent of $33,418—totaling approximately $2 million over its five-year term.

158. On or about December 8, 2015, the County and M&A Gabaee entered into Amendment No. 1 to the lease agreement. The amendment extended the term of the lease for five years and set a monthly rent at $176,811.62, with yearly rent increases—totaling payments in excess of $10.6 million.

159. The lease agreement in 1999, the 2010 renewal option, and Amendment No. 1 in 2015, were signed during periods when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants— travel, extravagant gifts, construction on Shepos' home, and monthly cash payments. The lease agreement and Amendment No. 1 were both signed by Mark Gabaee on behalf of Sancam as the General Partner of M&A Gabaee.

160. Section 22.R of the lease agreement contains an express acknowledgment by M&A Gabaee that County employees are forbidden from soliciting consideration "in any form" from landlords and that the lease agreement

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

would be immediately terminable if consideration "was offered or given by Lessor, either directly or through an intermediary, to any County officer, employee or agent with the intent of securing the Agreement or securing favorable treatment with respect to the award, amendment or extension of the Agreement or the making of any determinations with respect to the Lessor's performance pursuant to the Agreement."

161.   Shepos authored the Board letter recommending approval of the five-year lease renewal, stating, "**IT IS RECOMMENDED THAT YOUR BOARD**" take two specific actions: (i) "Find that the lease renewal is categorically exempt from the California Environmental Quality Act pursuant to Class 1, of the Environmental Document Reporting Procedures and Guidelines"; and (ii) "Exercise the option to renew the lease for a five-year term with Greenoaks Investments, LLC (Lessor)."

162.   Shepos also authored the Board letter recommending approval of Amendment 1 in 2015, stating, "**IT IS RECOMMENDED THAT THE BOARD**" take three specific actions: (i) "Find that the proposed lease amendment is categorically exempt from the provisions of the California Environmental Quality Act"; (ii) "Approve and instruct the Chairwoman to sign the five-year lease amendment with M&A Gabaee"; and (iii) "Authorize the Chief Executive Officer and the Director of Children and Family Services to implement the lease amendment."

163.   Shepos also authored a memorandum directing commencement of rent payments under the original lease, which was adopted at Shepos' recommendation.

164.   The lease was in effect from May 18, 1999 until December 31, 2020. During this period, the County paid monthly rent to M&A Gabaee.

165.   Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease documents, Shepos' recommendations for Board approval, and other preferential

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

treatment of the Gabaee Defendants, the County would never have entered the lease, the renewal option or Amendment No. 1, nor would it have made payments thereunder.

### (viii)  15531 Ventura Boulevard

166.   On or about July 28, 1992, the County and M&A Gabaee entered into a lease agreement for 15531 Ventura Boulevard in Sherman Oaks, California (Lease No. 66261).  The County used this space to house the District Attorney and Department of Child Support Services, which enforces child support and medical support orders, establishes parentage, and collects and disburses support payments.

167.   Under the lease agreement, the County agreed to pay a monthly rent of $80,692—totaling $9.7 million over its ten-year term.  At all times, the County made monthly payments as they were due under the lease.

168.   On or about October 1, 2002, the County and M&A Gabaee entered into Amendment No. 2 to the lease agreement.  The amendment extended the term of the lease for five years and set a monthly rent at $94,286.29—totaling payments in excess of $5.6 million.

169.   On or about December 18, 2007, the County and M&A Gabaee entered into Amendment No. 3 to the lease agreement.  The amendment extended the term of the lease for five years and set a monthly rent at $111,837.15, providing for annual increases in rent—totaling payments in excess of $6.7 million.

170.   On or about April 2, 2013, the County and M&A Gabaee entered into Amendment No. 4 to the lease agreement.  The amendment extended the term of the lease for five years and set a monthly rent at $125,257.59, providing for annual increases in rent—totaling payments in excess of $7.5 million.

171.   Amendment No. 2 in 2002, Amendment No. 3 in 2007, and Amendment No. 4 in 2013 were signed during periods when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants— travel, extravagant gifts, construction on Shepos' home, and monthly

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

cash payments.  Amendment No. 2 was signed by Mark and Arman Gabaee on behalf of M&A Gabaee.  Amendment Nos. 3 and 4 were signed by Mark Gabaee on behalf of Sancam as General Partner of M&A Gabaee.

172.   Shepos was directly involved in negotiating and securing the lease amendments outlined above.  For example, Shepos directed a subordinate to author a Board letter recommending approval of Amendment No. 2, and Shepos himself authored Board letters recommending approval of Amendment Nos. 3 and 4.  In the Board letter recommending Amendment No. 3, Shepos stated: "**IT IS RECOMMENDED THAT YOUR BOARD**" take two specific actions: (i) "Approve Amendment No. 3 to renew the lease for a five-year term with M&A Gabaee, L.P."; and (ii) "Find that this Amendment No. 3 is exempt from the provisions of the California Environmental Quality Act (CEQA)."  Shepos made nearly identical recommendations with respect to Amendment No. 4.

173.   The lease was in effect from July 28, 1992 until November 7, 2015.  During this period, the County paid monthly rent to M&A Gabaee.

174.   Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease amendments, Shepos' recommendations for Board approval, and other preferential treatment of the Gabaee Defendants, the County would not have entered Amendment Nos. 2, 3, or 4, nor would it have made payments thereunder.

### (ix)    2910 West Beverly Boulevard

175.   On or about March 14, 1969, the County entered into a lease agreement for 2910 West Beverly Boulevard in Los Angeles, California (Lease No. 14714) with non-party the Oswin Company.

176.   Oppidan acquired the subject property at 2910 West Beverly Boulevard in or around October 2000.

177.   On or about February 20, 2007, the County and Oppidan entered into Amendment No. 4 to the lease agreement.  The amendment extended the term of the

lease for five years and set a monthly rent at $66,815 per month, providing for annual increases in rent—totaling payments in excess of $4 million.  At all times, the County made monthly payments as they were due under the lease.

178.  Shepos authored a Board letter recommending that the Board "Approve and instruct the Chairman to sign the attached Amendment No. 4 with OPPIDAN, LLC, to extend the term of Lease No. 14714 for a five-year period . . . ."

179.  Amendment No. 4 in 2007 was signed during a period when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants—travel, extravagant gifts, and renovations on Shepos' home.  Indeed, the County signed Amendment No. 4 approximately one month after the Gabaees reimbursed Shepos for nearly $15,000 in Dodgers tickets.  Amendment No. 4 was signed by Mark Gabaee on behalf of Sancam as Managing Member of Oppidan.

180.  The lease was in effect until November 30, 2011.  From the time the County entered Amendment No. 4 in February 2006 until November 30, 2011, the County paid monthly rent to Oppidan.

181.  Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease amendment, Shepos' recommendations for Board approval, and other preferential treatment of the Gabaee Defendants, the County would not have entered Amendment No. 4, nor would it have made payments thereunder.

### (x)  3303 North Broadway Street

182.  On or about October 4, 2016, the County and Oppidan entered into a lease agreement for 3303 North Broadway Street in Los Angeles, California (Lease No. 78530).  The County used this space to house the Department of Mental Health.

183.  Under the lease agreement, the County agreed to pay a monthly rent of $129,487.93—totaling $23.3 million over its fifteen-year term.  At all times, the County made monthly payments as they were due under the lease.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

41

184.   In or about February 2020, Oppidan assigned "all of its right, title and interest" in the foregoing lease to Maple19.

185.   Section 32.2 of the lease agreement contains an express acknowledgment by Oppidan that landlords "shall not offer or give, either directly or through an intermediary, consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

186.   This lease agreement was signed during a period when Arman Gabaee was paying bribes to Shepos on behalf of himself, Mark Gabaee, and the other Gabaee Defendants— travel, extravagant gifts, renovations on Shepos' home, and monthly cash payments.  The lease was signed by Mark Gabaee on behalf of Sancam as Managing Member of Oppidan.

187.   As Oppidan's successor-in-interest, Maple19 is liable for Oppidan's misconduct and assumed Oppidan's obligations and representations under the lease.

188.   Shepos was instrumental in negotiating and securing approval of this lease.  For example, he authored a Board letter stating, "**IT IS RECOMMENDED THAT THE BOARD**," among other things, "Approve and instruct the Chair to sign the lease with OPPIDAN, LLC (Landlord)."

189.   The County entered the lease on October 4, 2016 and had a fifteen-year term.  The County paid monthly rent to Oppidan and/or Maple19 when due pursuant to the terms of the lease.

190.   Had the County known that Arman Gabaee was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease documents, Shepos' recommendations for Board approval, and other preferential treatment of the Gabaee Defendants, the County would never have entered this lease, nor would it have made payments thereunder.

*        *        *

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

191.   Shepos' financial interest renders each of the Gabaee Contracts void. As set forth above, Shepos was deeply involved in the making of each of the Gabaee Contracts.  Due to his ongoing receipt of gifts, money, travel, and in-kind benefits from the Gabaee Defendants and his expectation that such benefits would continue, Shepos had an improper financial interest in each of the Gabaee Contracts. Accordingly, the Gabaee Contracts were unlawful and are void under Government Code sections 1090 and 87100.

**H.      Shepos and the Gabaee Defendants Conceal the Bribery Scheme**

192.   Shepos, Arman Gabaee, and Mark Gabaee mutually agreed to take steps (and did take steps) to conceal the bribery scheme.  Specifically, Arman Gabaee and Shepos met in person to discuss their scheme, rather than put anything in writing.  Shepos hid the cash he received from Gluck, his then-wife.  Shepos did not report on his Statement of Economic Interest Form 700s, or through any other means that could have provided the County with visibility into the scheme, the cash or gifts he received.[3]  Additionally, Arman and Mark Gabaee utilized their companies and employees to serve as intermediaries to funnel bribes to Shepos, further concealing the illicit payments.

193.   In their leases with the County, as outlined above, the Gabaee Defendants also represented and affirmed their understanding that County employees like Shepos are prohibited from having any financial interest in County leases, and that landlords are prohibited from giving County employees like Shepos

---

[3] A Statement of Economic Interest Form 700 is a state form on which state and local government officials publicly disclose their personal assets and income that may be materially affected by their official acts. Agency employees, including some public officials who are designated in a conflict of interest code, are required to disclose certain financial interests according to the disclosure categories assigned to that position in their agency's conflict of interest code.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

43

any consideration in exchange for favorable treatment.  The County relied on these representations and confirmations from the Gabaee Defendants.

194.   The County could not have discovered, and did not discover, the Gabaee Defendants' misconduct until approximately July 7, 2017, at the earliest, when Gluck informed the County's Office of County Investigations ("OCI") about the Gabaee Defendants' potential involvement in Shepos' bribery schemes.

195.   Prior to July 7, 2017, the County had not received and did not possess evidence that the Gabaee Defendants had engaged in a bribery scheme with Shepos. Such evidence was uncovered as a result of the County's own investigation following conversations with Gluck in 2017.  Further, as a result of the Gabaee Defendants' express misrepresentations and concealment of their bribery scheme from the County, the County does not know, and has been unable to discover through reasonable investigation, the full scope of each Defendant's misconduct, including, but not limited to, any and all facts not set forth in Shepos' and Arman Gabaee's Plea Agreements.

196.   In any event, on or about December 9, 2019, the County entered into a tolling agreement with Shepos and the Gabaee Defendants, which provides that "[a]ny Statute of Limitations that would bar any of the Parties from pursuing claims against each other, or any of them, shall be tolled until 90 days after the sentencing of [Shepos or Gabaee], whichever sentencing occurs later."

197.   The foregoing tolling agreement was not terminated at any point prior to filing this First Amended Complaint-in-Intervention.

### III.    The Visco Defendants' Scheme

#### A.    The Visco Defendants

198.   Defendant Frank A. Visco ("Visco") is a successful businessman and real estate owner based in Lancaster, California.  At all times relevant hereto, Visco is and was an individual residing in the County.

199.   Defendant Visco Financial Inc. ("Visco Financial") is a California

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

corporation with its principal place of business at 44824 Cedar Avenue, Lancaster, CA 93534.  Visco is the CEO of Visco Financial.

200.   Defendant Fraber Properties II, LLC ("Fraber Properties II") is a California limited liability company with its principal place of business at 44824 Cedar Avenue, Lancaster, CA 93534.  Visco is the manager of Fraber Properties II, which also does business as Fraber II LLC.

201.   Where applicable, Visco, Visco Financial, and Fraber Properties II are collectively referred to herein as the "Visco Defendants."

202.   By virtue of his roles as CEO and manager, and the fact Visco signed leases and contracts with the County on behalf of Visco Financial and Fraber Properties II, Visco owns, controls, and/or directs the actions of Visco Financial and Fraber Properties II which, in doing the acts alleged herein, acted at his direction and/or with his permission, knowledge, consent, or ratification.

203.   In the alternative, by virtue of his roles and ownership interests in the foregoing companies, and the fact that Visco signed leases and contracts on their behalf, Visco was an alter ego of Visco Financial and Fraber Properties II; Visco dominated and controlled Visco Financial and Fraber Properties II; a unity of interest and ownership existed between Visco and Visco Financial and Fraber Properties II (which also share a principal place of business); Visco Financial and Fraber Properties II were mere shells and conduits for Visco's affairs; Visco Financial and Fraber Properties II were inadequately capitalized; Visco Financial and Fraber Properties II failed to abide by the formalities of corporate existence; and Visco used Visco Financial and Fraber Properties II's assets as his own and, in doing the things alleged herein, acted with such a unity of interest that the separate personalities of these corporate entities do not in reality exist and honoring their separate identities would bring about an inequitable result.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

204. Like the Gabaee Defendants, the Visco Defendants, who own and operate various buildings in Lancaster, California and other areas within the County, participated in and profited from bribes to Shepos, as alleged in detail below.

**B.    Shepos' Improper Relationship with Visco**

205. Shepos has had a close personal relationship with Visco since the late 1990s, soon after Shepos began working for the County. For decades, Visco sought improper assistance from Shepos in conducting the Visco Defendants' real estate business with the County, in exchange for cash, gifts, and other things of value.

206. At all relevant times, Visco knew Shepos was a high-ranking County employee with influence over County leasing decisions. That is precisely why he bribed Shepos—so that Shepos could exert his influence to benefit the Visco Defendants.

207. According to Gluck, who had first-hand knowledge about Shepos' activities during their marriage, Shepos spent "an inordinate amount of time" with Visco. Visco frequently called Shepos on the weekends and, on one occasion, Gluck observed Visco visiting the Bel Air property that she and Shepos were renovating. On another occasion, Shepos borrowed Gluck's car and told her that he needed it to drive Visco and others to look at some real estate.

208. According to Gluck, when she and Shepos took weekend trips to Las Vegas, Visco was often there and would pay for them to have expensive dinners. During one trip to Las Vegas, Gluck observed Shepos and Visco gambling together in a high-limit room.

209. Shepos and Visco regularly traveled together, gambled together, and attended events and parties together. For example, Shepos and Visco attended a golf tournament together in September 2007. They vacationed together in Las Vegas in 2008, Palm Springs in 2009, and Santa Barbara in 2010. Shepos and Visco gambled together at Agua Caliente casino in Palm Springs at least four or five times over the course of several years.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

46

210.  Shepos also took out a $1 million dollar life insurance policy for his daughter from an insurance company owned by Visco.

211.  Shepos and Visco's close personal relationship was well known by others in the Lancaster business community, and Shepos leveraged the relationship to offer favors to other business and property owners in the Lancaster area.  For example, in October 2008, Antelope Valley Equipment & Truck Parts ("Antelope Valley Equipment") was having problems obtaining approvals from the City of Lancaster for its property.  It was no secret that, as a wealthy developer in Lancaster, Visco had relationships and influence with powerful government officials.  Knowing that Shepos had access and influence with Visco, a representative from Antelope Valley Equipment emailed Shepos at his personal email account and asked if Shepos could contact Visco to intervene with the Mayor of Lancaster on the company's behalf.  Shepos replied that he would "contact Visco tomorrow."

212.  Shepos and Visco's relationship was not an innocent or innocuous friendship.  From the onset, Shepos knew that Visco was a wealthy real estate developer, and Visco knew that Shepos was a high-ranking County employee with influence over County leasing decisions.  The foundation of their relationship was how they could benefit from each other based on their respective positions.

213.  Shepos served as the County agent in connection with numerous lucrative leases with Visco, and they spoke and met on a regular basis.  Shepos was supposed to represent the County in these transactions and act in its best interest, but, instead, he regularly referred to Visco as his "client."

214.  For years, Shepos went to Lancaster every Wednesday to meet with Visco.  Shepos accidentally called Gluck during one of his meetings with Visco and inadvertently left a recording of their conversation on her voicemail.  Gluck heard Visco say "no bid" to Shepos—an obvious direction to circumvent the County's contract bidding process.  She also heard Shepos and Visco discussing cash

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

payments, and Shepos suggesting making payments in the name of Visco's secretary's daughter, to which Visco replied, "get the family out."

215.    Visco also introduced Shepos to Gregory Hanes, another developer who played a key role in the bribery scheme.  (See *infra* Section IV.)  As set forth in detail below, on Visco's referral, Shepos immediately negotiated another County lease with Hanes at a property adjacent to Visco's properties in Lancaster.  Every Wednesday, while the property was being renovated, Visco met with Shepos and Hanes to discuss County business over lunch prepared by Hanes' personal chef.

### C.    Shepos' Romantic Relationship with Visco's Longtime Associate, Michele Lantz

216.    In or around 2012, Shepos also developed a romantic relationship with one of Visco's longtime associates, Michele Lantz ("Lantz").  At this time and for the several years that followed, Shepos had significant influence and decision-making authority over Visco's County contracts.

217.    Lantz is an "Advisory Representative" for Visco Financial.  She has worked with Visco since the late 1990s, when Shepos first met both Visco and Lantz.

218.    Shepos and Lantz have been in a romantic relationship for over ten years and currently live together.  They have attended parties together at Visco's residence on multiple occasions.

219.    In or around July 2014, Shepos and Lantz vacationed at the Ritz-Carlton in Saint Thomas.  In July 2015, Lantz gave Shepos Dodgers tickets.  Shepos and Lantz also traveled together to Nashville in April 2016, and Los Cabos, Mexico, in May 2017.  Throughout this time, Shepos had wide-ranging authority over Visco's leases with the County, and Lantz remained a close associate of Visco.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

48

### D.   Visco Gave Shepos Cash Payments and Gifts in Exchange for Preferential Treatment on County Leases and Projects

220.   The relationship between Shepos and Visco was mutually beneficial. Shepos steered County business to Visco in exchange for cash payments, gifts, and additional benefits.  Beginning in the late 1990s, Visco began paying for Shepos during their travels and gambling trips.  Visco also gave Shepos cash payments.  For example, in or around November 2008, Visco gave Shepos $27,500 in cash.  In or around November 2009, Visco gave Shepos $18,500 in cash.

221.   In December 2009, Visco reserved a room at a high-end Santa Barbara resort for Shepos' family in honor of Shepos' 60th birthday.  An invoice from the resort, reflecting Shepos' January 2010 stay, indicated that Visco covered approximately $5,000 in charges, including spa services.

222.   In or around 2012, Visco also gave Shepos frequent flyer miles so Shepos could upgrade a flight to New Orleans.

223.   According to Gluck, when she discovered Shepos and Visco had an improper relationship, she told Shepos to call Visco.  Shepos called Visco in Gluck's presence, stating, "Frank, she knows! She knows!"

224.   Visco gave Shepos cash and other benefits to ensure that Shepos would funnel County business to the Visco Defendants and give them preferential treatment with respect to existing County leases.

225.   In exchange for cash payments and gifts, Shepos made efforts to ensure the Visco Defendants were awarded County contracts.  From 2004 to 2016, Shepos authored at least ten Board letters and related correspondence recommending Visco for various projects.  In all, Shepos authored and signed more than 100 memoranda approving and requesting payments to the Visco Defendants of more than $5 million, as a result of the bribes Visco paid him.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## E.    The Tainted Visco Contracts

226.    The decades-long bribery scheme with Shepos undertaken by Visco and the other Visco Defendants tainted the contracts between the Visco Defendants and the County in which Shepos participated (the "Visco Contracts"), as well as the payments and proceeds the Visco Defendants and Shepos received in connection with the Visco Contracts.

227.    As set forth in detail below, the Visco Contracts were signed during the period when the Visco Defendants and Shepos were engaged in the foregoing scheme.  The tainted Visco Contracts, each of which is incorporated by reference herein, are outlined below:

### (i)    335 & 349 East Avenue K-6

228.    Since 1987, the County has leased property from Visco, in his personal capacity, located at 335 and 349 East Avenue K-6 in Lancaster, California (Lease No. 58046).  The County used this property to house departments that provide critical services to its citizens, including: the Department of Public Social Services, the Department of Public Works, the Department of Children and Family Services, the Department of Mental Health, and the Antelope Valley Health Center (which operates under the Department of Health Services).

229.    In November 1987, the County entered into a Donation Agreement whereby Visco would donate the property under Lease No. 58046 to the County 25 years after the lease commenced, in exchange for a plaque commemorating Visco (Donation Agreement No. 58048).

230.    After Shepos and Visco developed an improper relationship, Shepos became involved in this lease.  Shepos negotiated and oversaw the making of amendments to the lease and Donation Agreement.  On or about October 19, 2004, the County and Visco entered into Amendment No. 2 to Lease No. 58046. Amendment No. 2 to the lease shortened the lease period by several months and authorized tenant improvements for DPSS up to $1,530,000, payable by the County

to Visco as additional rent.  Shepos was the County's work letter representative in connection with these tenant improvements.

231.   Shepos authored the Board letter recommending Amendment No. 2 to the lease.  The Board letter stated, "**IT IS RECOMMENDED THAT YOUR BOARD**: "Approve and instruct the Chairman to sign the Amendment No. 2 with Frank A. Visco (Lessor) to shorten the term of Lease No. 58046 and Donation Agreement No. 58048," and "Authorize the CAO and DPSS to reimburse the Lessor for Tenant Improvements (TI) in an amount not to exceed $1,530,000[.]"

232.   On or about October 19, 2004, the County and Visco also entered into Amendment No. 1 to the Donation Agreement No. 58048, which moved up the date by which Visco would transfer the property to the County to align with the lease termination date.

233.   Amendment No. 2 to Lease 58046 and Amendment No. 1 to Donation Agreement No. 58048 were signed by Visco during the period where Shepos and Visco were participating in the bribery scheme, as alleged in detail above.

234.   The County paid monthly rent to Visco on this lease from November 3, 1987 to December 16, 2013, when ownership transferred to the County.  All of the County's payments to Visco from October 2004 to December 2013 were tainted by Shepos' and Visco's bribery scheme.

235.   Had the County known Visco was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing these amendments and other preferential treatment of the Visco Defendants, the County would not have entered into Amendment No. 2 to Lease 58046 or Amendment No. 1 to the Donation Agreement No. 58048, and it would not have made rent payments thereunder.

### (ii)   251 East Avenue K-6

236.   On or about September 10, 1991, the County and Visco, in his personal capacity, entered into a lease for 251 East Avenue K-6 in Lancaster, California

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

(Lease No. 65436).  The County used the space to house the Office of the Assessor and the Department of Mental Health.

237.   On or about April 8, 2008, the County and Visco entered into Amendment No. 1 to this lease authorizing payments to Visco of up to $250,000 in tenant improvements and basic structural maintenance for the property.  Shepos controlled this project and participated in the negotiation and making of this amendment.  He also prepared a recommendation that the Board authorize and approve the amendment.

238.   Specifically, Shepos' Board letter recommended the authorization of "$250,000,000 in expenditures" used for TI.  Shepos recommended that the Board "[f]ind that this Lease Amendment No. 1 is exempt from the provisions of California Environmental Quality Act (CEQA), and "[a]pprove and instruct the Chair to sign the attached Amendment No. 1 with Frank A. Visco (Lessor)."

239.   Approximately seven months after the County and Visco entered into Amendment No. 1, and in exchange for Shepos' assistance therewith, Visco paid Shepos $27,500 in cash.

240.   The County paid Visco monthly rent under this lease until it expired in February 2017.  The County's payments to Visco from April 2008 to February 2017 were tainted by the bribery scheme.

241.   Had the County known that Visco was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the amendment, Shepos' recommendation for Board approval and other preferential treatment of the Visco Defendants, the County would not have entered into Amendment No. 1, nor would it have made payments thereunder.

### (iii)    335-337 East Avenue K-10

242.   On or about May 30, 2006, the County and Visco, in his personal capacity, entered into a lease agreement for 335-337 East Avenue K-10 in Lancaster, California (Lease No. 75678).  The County used this space to house

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

departments that provide critical services to its residents: the Department of Public Social Services, the Department of Agricultural Commissioner/Weights and Measures, the Department of Military and Veterans Affairs, and the Housing Authority.

243. Under this lease, the County agreed to pay Visco monthly rent of $43,859.60—totaling approximately $8 million over the fifteen-year term. At all times, the County made monthly payments as they were due under the lease.

244. Section 31(b) of the lease contains an express acknowledgement by Visco that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give [] consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease." Visco signed this during the period when he was paying Shepos bribes, as alleged in detail above.

245. Shepos was instrumental in negotiating and securing approval of this lease. Among other things, he: recommended that the Board approve the lease, prepared an Initial Study and Negative Declaration pursuant to CEQA determining that the project would not significantly affect the environment, and represented the County as the counterparty to Visco in connection with $1.5 million in County-funded improvements on the property.

246. Specifically, Shepos authored a Board letter recommending that the Board "[a]pprove and instruct the Mayor to sign the attached 15-year lease with Frank. A Visco, Landlord" and authorize the Chief Administrative Office "to reimburse the landlord and acquire substitute financing for furniture systems for DPSS at a cost not to exceed $600,000[.]"

247. On or about December 8, 2009, approximately one month after Visco paid Shepos $18,500 in cash in exchange for Shepos' assistance, the County and Visco entered into Amendment No. 1 to the lease. This amendment expanded the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

space occupied by the County by 3,126 square feet and increased the County's rent payments by over $1 million.

248.   Shepos was heavily involved in negotiating and securing Amendment No. 1.  For example, he recommended that the Board "find that the project will not have a significant effect on the environment" and "[a]pprove and instruct the Chair to sign Amendment No. 1 to Lease No. 75678 with Frank A. Visco (Landlord) for the occupancy of 3,126 rentable square feet of office space[.]"

249.   From January 1, 2007 to May 29, 2021, the County made monthly rental payments pursuant to this lease.

250.   Had the County known that Visco was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease and amendment, Shepos' recommendations for Board approval, and other preferential treatment of the Visco Defendants, the County would never have entered the lease or Amendment No. 1, nor would it have made payments thereunder.

### (iv)   The Castaic Library

251.   In or around January 2008, the County entered into a lease agreement for 27971 Sloan Canyon Road in Castaic, California with a series of entities as to whom the successor-in-interest is non-party Castaic FCG (Lease No. 76453).  This property houses the Castaic Library (a branch of the Los Angeles County Library), which provides library services to over 3.4 million County residents in a service area extending over 3,000 square miles.

252.   Section 31(b) of the lease contains an express acknowledgment that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give [] consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

253.   The County's lease with Castaic FCG was later amended to provide for tenant improvements, payable by the County to Castaic FCG, in an amount of up to

$1,968,120. The contract authorized an administrative fee of 3% on the tenant improvements.

254. In or around January 2013, Castaic FCG transferred its right to perform these tenant improvements, and its concomitant right to payment, to Visco Financial, whose CEO was Visco. This assignment required approval by the County and was orchestrated by Shepos. Shepos recommended to the Board that Visco Financial be awarded the contract for the tenant improvements. In doing so, Shepos circumvented a competitive bidding process. Visco Financial was not a licensed contractor and subsequently subcontracted the work to Sawyer Construction & Associates. At the time Shepos made this recommendation to the Board, he was taking bribes from Visco and had been doing so for years.

255. Shepos was also responsible for approving requests for payment for tenant improvements under the contract with Visco Financial. In December 2014, Shepos authored at least ten memoranda to the County's Section Head for Rent/Budget Administration, directing the County to "make a lump sum payment" to Visco personally for tenant improvements. The amounts Shepos approved repeatedly exceeded what was permitted under the contract or what had been authorized by the Board. For example, although the contract only permitted tenant improvements of up to $1,968,120, Shepos arranged for payments to Visco Financial totaling $2,542,449—an excess of over $570,000. Further, although the contract only permitted payment for telephone, data, and low-voltage system implementation of up to $200,000, Shepos arranged for payments to Visco Financial totaling $448,056—more than double what the contract allowed. And although the contract only permitted a 3% administrative fee for tenant improvements, Visco Financial submitted 12% in fees (over $300,000) for approval. Shepos approved the 12% fee when he had no authority to do so. Shepos also approved fees based on services that did not qualify for payment under the contract.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

256. The County paid these fees directly to Visco personally, sending the payments to his P.O. box in Lancaster.

257. At the time Visco's fees were approved by the County, Shepos was taking bribes from Visco and had been doing so for years.

258. Had the County known that Visco was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the assignment, Shepos' recommendation for Board approval, Shepos' approval of inflated invoices, and other preferential treatment of the Visco Defendants, the County would not have approved Visco Financial for the improvement project or made any payments to Visco Financial in connection with the assignment.

### (v) 43423 Division Street

259. On or about May 21, 2013, the County and Fraber II, LLC (also known as Fraber Properties II, of which Visco is the manager) entered into a lease agreement for 43423 Division Street in Lancaster, California (Lease No. 77946). Visco signed the lease on behalf of Fraber II, LLC. The County used this space to house the County's Probation Department.

260. The lease had a monthly rent of $24,150, totaling approximately $2.3 million over an eight-year term. At all times, the County made monthly payments as they were due under the lease.

261. The lease was in effect from May 21, 2013 until May 20, 2021. The County paid Fraber II, LLC monthly rent through May 20, 2021.

262. Section 31(b) of the lease contains an express acknowledgment by Fraber II that County officers and employees may not solicit consideration "in any form" from a landlord to secure favorable treatment for the landlord. Under the same provision, Fraber II, LLC agreed that it "shall not offer or give [] consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease." At the time the lease was signed, Visco had been paying bribes to Shepos for years.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

263. Shepos was instrumental in the making of this contract and provided Visco with non-public County information in order to make it happen. Specifically, he told Visco the County needed a space for its Probation Department in Lancaster and asked if Visco knew anyone who might be willing to do a deal and work with the City of Lancaster. A few weeks later, Visco and Shepos made an arrangement for the County to lease Visco's property. Shepos was the County's agent with respect to the lease transaction.

264. Shepos also authored a Board letter recommending approval of the lease with Visco. Specifically, the Board letter recommended that the Board "find that the project will not have a significant effect on the environment," and "[a]pprove and instruct the chairman to sign the eight-year lease with Fraber II, LLC…for the occupancy of 13,800 rentable square feet of office space and 52 parking spaces[.]" Shepos also authored the Negative Declaration to the Board determining that "the project will not have a significant effect on the environment." Shepos recommended the Board approve the lease because he had received and was continuing to receive cash and other benefits from Visco.

265. Additionally, Shepos served as the County's representative for the Work Letter supplementing the lease that approved tenant improvements in the amount of $1,035,000 payable to Fraber II, LLC.

266. Had the County known that Visco was paying bribes to Shepos in exchange for Shepos' help in negotiating and securing the lease, Shepos' recommendation for Board approval and other preferential treatment of the Visco Defendants, the County would not have entered the lease and the tenant improvement work contract, nor would it have made payments thereunder.

*     *     *

267. Shepos' financial interest renders each of the Visco Contracts void. As set forth above, Shepos was deeply involved in the making of each of the Visco Contracts. Due to his ongoing receipt of gifts, money, travel, and in-kind benefits

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

from the Visco Defendants and his expectation that such benefits would continue, Shepos had an improper financial interest in each of the Visco Contracts. Accordingly, the Visco Contracts were unlawful and are void under Government Code sections 1090 and 87100.

### F. Shepos and the Visco Defendants Conceal the Bribery Scheme

268. Shepos and Visco mutually agreed to take steps (and did take steps) to conceal the bribery scheme. They met in person to discuss their scheme, rather than putting anything in writing. Shepos hid Visco's cash bribes from Gluck, his then-wife. Shepos did not report the cash or gifts he received from Visco on his Form 700s, or through any other means that could have provided the County with visibility into the scheme. The County could not have discovered, and did not discover, the Visco Defendants' misconduct until approximately July 7, 2017, at the earliest, when Gluck informed OCI about Shepos' potential involvement in bribery schemes involving County landlords.

269. In their leases with the County, as outlined above, the Visco Defendants also represented and affirmed their understanding that County employees like Shepos are prohibited from having any financial interest in County leases, and that landlords are prohibited from giving County employees like Shepos any consideration in exchange for favorable treatment. The County relied on these representations and confirmations from the Visco Defendants.

270. Prior to July 7, 2017, the County had not received and did not possess evidence that the Visco Defendants had engaged in a bribery scheme with Shepos. Such evidence was uncovered as a result of the County's own investigation conducted following conversations with Gluck in 2017. Further, as a result of the Visco Defendants' express misrepresentations and concealment of their bribery scheme from the County, the County does not know, and has been unable to discover through reasonable investigation, the full scope of each Defendant's

703136.13

FIRST AMENDED COMPLAINT-IN-INTERVENTION

misconduct, including, but not limited to, any and all facts not set forth in Shepos' Plea Agreement.

271.   In any event, on or about March 26, 2020, the County and the Visco Defendants entered into a tolling agreement which provides that "any statutes of limitation or other applicable statutory, contractual or common law time limitations that may be applicable to" the parties' respective claims "arising from or related to contracts, lease agreements or transactions" between the Visco Defendants and the County "shall be tolled and preserved . . . indefinitely, until such time as any Party terminates the Tolling Agreement."

272.   The foregoing tolling agreement was not terminated at any point prior to filing this First Amended Complaint-in-Intervention.

## IV.   The Hanes Defendants' Scheme

### A.   The Hanes Defendants

273.   Defendant Gregory Hanes ("Hanes") is, and at all times relevant hereto was, an individual residing in the County.

274.   Defendant 300 K-6, LLC ("300 K-6") is a California limited liability company with its principal place of business at 43903 Division Street, Lancaster, CA 93535.  Hanes is its managing member.

275.   Defendant 43917 Division Street, LLC ("43917 Division") is a California limited liability company with its principal place of business at 43903 Division Street, Lancaster, CA 93535.  Hanes is its managing member.

276.   Hanes owns, controls, and/or directs the actions of 300 K-6 and 43917 Division which, in doing the acts alleged herein, acted at his direction and/or with his permission, knowledge, consent, or ratification.

277.   In the alternative, based on his roles and management of 300 K-6 and 43917 Division, Hanes was an alter ego of 300 K-6 and 43917 Division; Hanes dominated and controlled 300 K-6 and 43917 Division; a unity of interest and ownership existed between Hanes and 300 K-6 and 43917 Division (which share a

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

principal place of business); 300 K-6 and 43917 Division were mere shells and conduits for Hanes' affairs; 300 K-6 and 43917 Division were inadequately capitalized; 300 K-6 and 43917 Division failed to abide by the formalities of corporate existence; and Hanes used 300 K-6 and 43917 Division's assets as his own and, in doing the things alleged herein, acted with such a unity of interest that the separate personalities of these corporate entities do not in reality exist and honoring their separate identities would bring about an inequitable result.

278. Where applicable, Hanes, 300 K-6, and 43917 Division are referred to collectively as the "Hanes Defendants."

279. The Hanes Defendants, who own and operate various buildings in Lancaster, California, participated in and profited from bribes to Shepos, as alleged in detail below.

**B.    Shepos Had a Close Personal Relationship with Hanes**

280. As set forth above, Shepos and Defendant Visco have a decades-long close personal relationship. In or around 2010, after Shepos had assisted Visco in obtaining multiple lucrative County leases, Visco introduced Shepos to his long-time associate Gregory Hanes, another wealthy developer in Lancaster.

281. Hanes owned and controlled multiple companies, including a construction business, Hanes & Associates, Inc., and several commercial properties in Lancaster. At all relevant times, Hanes was fully aware that Shepos was a high-ranking County employee with influence over County leasing decisions.

282. Shepos and Hanes quickly developed a close friendship. Shepos told Hanes about his divorce and family problems, as well as his relationship with Lantz. Hanes described Shepos as "a good friend" with an "extraordinary personality."

283. Shepos visited Hanes at his home, and Hanes invited Shepos to vacation with him and his son on a cross-country road trip. Shepos accepted the invitation, flew to New Orleans to meet them, and stayed as a guest in Hanes' son's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

60

hotel room—first in New Orleans, then in Memphis, and then in St. Louis. Hanes paid for the hotels and meals on this trip.

### C. Hanes Helped Shepos Launder Money to Conceal His Bribery Schemes in Exchange for Preferential Treatment on Lucrative County Leases

284. Like his relationship with Visco, Shepos' relationship with Hanes was mutually beneficial. As a high-level official in the Lease Acquisition Section of the County's Real Estate Division, Shepos steered lucrative County leases and tenant improvement projects to Hanes. In exchange, Hanes helped Shepos conceal his bribery schemes with third parties by, among other things, storing large sums of cash for Shepos.

285. For example, on one occasion, Shepos gave Hanes $128,000 in cash and asked him to store it in his safe. When Hanes asked where the money came from, Shepos told him that it was a "real estate commission" and that he needed to hide it from his then-wife, Gluck. Shepos later admitted in his plea agreement that he had "arranged to receive improper kickbacks from real estate commissions on properties leased by the County." (Ex. 1 at 15.) Hanes agreed and stored the cash from Shepos' real estate commission kickbacks in his office safe in a bank bag with Shepos' name and the amount of money listed on the outside.

286. When Shepos needed money, he would notify Hanes and come to Hanes' office to make a "withdrawal." When Shepos had more cash he needed to hide, he would give it to Hanes, who would add it to Shepos' bag in his safe.

287. Whenever Shepos would deposit or withdraw cash, Hanes would document it and adjust the total listed on the outside of Shepos' bank bag. On one occasion, Shepos told Hanes that he needed $8,000 from the safe to take Lantz, his girlfriend and Visco's close associate, on a cruise.

288. Hanes is referred to as "Individual A" in Shepos' plea agreement, in which Shepos admitted to giving Hanes cash to store for him on multiple occasions,

including approximately $150,000 on one occasion, and between $25,000 and $40,000 on another.

289. When asked why he agreed to store the cash Shepos was receiving as a "real estate commission," Hanes told the County that it was a "favor."

290. But Hanes did more than just store Shepos' bribe payments for him. Hanes also helped launder Shepos' money to assist Shepos in concealing his bribery schemes.

291. For example, on multiple occasions, and at Shepos' direction, Hanes cashed $25,000 checks from a third party who was making payments to Shepos as part of a separate scheme not at issue in this action. The third party would write the checks to Hanes (or his companies) with falsified memo lines, and Hanes would cash the checks and place the cash into Shepos' bank bag in his safe.

292. On one occasion, Shepos needed a cashier's check to purchase a car for his daughter. So, rather than simply place the cash in his safe for Shepos, Hanes deposited the check from the third party into his own account at US Bank and used the funds to purchase a cashier's check for Shepos. Hanes admitted to the County that nobody else had access to his US Bank account and that he signed the withdrawal slip for the cashier's check. In his plea agreement, Shepos also admitted that he used the cashier's check to purchase his daughter's car, and the source of the funds was third-party bribes. (*See* Ex. 1 at 15-16.)

**D.    The Tainted Hanes Contracts**

293. Shepos' scheme with Hanes tainted the contracts between the Hanes Defendants and the County in which Shepos participated (the "Hanes Contracts"), as well as the payments and proceeds the Hanes Defendants and Shepos received in connection with the Hanes Contracts.

294. Shepos negotiated the Hanes Contracts on behalf of the County and recommended that the Board approve the Hanes Contracts, all of which were signed during the period when the Hanes Defendants and Shepos were engaged in the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

foregoing scheme.  Shepos also acted as the County's agent in overseeing and approving millions of dollars in renovations and tenant improvements on the properties after the Hanes Contracts were executed.  The tainted Hanes Contracts, each of which is incorporated by reference herein, are outlined below:

### (i)    300 East Avenue K-6

295.   Through his company, 300 K-6, Hanes owned a building adjacent to Visco's properties on East Avenue K-6 in Lancaster.  Immediately after Visco introduced them, Shepos began negotiating directly with Hanes to lease the property for the Department of Children and Family Services ("DCFS").

296.   In or around January 2010, Shepos prepared an Initial Study and Negative Declaration pursuant to CEQA determining that the lease project would not significantly affect the environment.  The Initial Study, which was posted publicly on January 15, 2010, states that it was "prepared by Thomas Shepos of the Los Angeles County Chief Executive Office, Real Estate Division," and "completed on January 14, 2010."  The Negative Declaration, which was also completed on January 14, 2010, and posted publicly on January 15, 2010, lists Shepos as the Real Property Agent.

297.   Shepos then authored a Board letter, which was submitted to the Board on March 30, 2010, stating "**IT IS RECOMMENDED THAT YOUR BOARD**" take several specific actions, including: (i) find "that there is no substantial evidence that the project will have a significant effect on the  environment"; (ii) "find that the Negative Declaration reflects the independent  judgment and analysis of the Board and adopt the Negative Declaration"; (iii) "[a]pprove and instruct the Chair to sign the lease with Gregory Hanes (Landlord) for 11,000 rentable square feet of office space located at 300 East Avenue K-6, Lancaster, for [DCFS] at a maximum annual first year rent of $592,680," which included annual base rent of $262,680 and reimbursement of lump sum payments of $55,000 for tenant improvements and $270,000 for furniture expenses; and (iv) authorize the landlord, "at the discretion of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

the Chief Executive Officer, to acquire telephone, data and low voltage systems for [DCFS] at a cost not to exceed $300,000," reimbursable by the County in addition to other tenant improvements.

298.    On or about March 30, 2010, the Board adopted Shepos' recommendations, and the County entered into a lease agreement with Hanes, in his personal capacity, for 300 East Avenue K-6 in Lancaster, California (Lease No. 77260), under which the County agreed to pay a base monthly rent of $21,890 for a period of five years—totaling payments of approximately $1.3 million.  At all times, the County made monthly rent payments as they were due under the lease.

299.    As Shepos recommended, the lease also authorized reimbursement of up to $55,000 for tenant improvements, and up to $270,000 in furniture expenses.

300.    Shepos was the primary County employee who oversaw all of the tenant improvements, and he dealt directly with Hanes.  Shepos and Hanes spoke daily, and every Wednesday, Shepos visited the property.  Shepos often spent the entire day with Hanes, and Visco would meet with them for lunch prepared by Hanes' chef.

301.    During the first year of the lease, the County reimbursed Hanes for tenant improvements and furniture expenses pursuant to the terms of the lease that Sheps negotiated on its behalf, in addition to hundreds of thousands of dollars in additional tenant improvements above those authorized by the lease.  These additional tenant improvements were reimbursed at Shepos' direction.

302.    On November 8, 2010, Shepos authored a memorandum directing the County's Rent/Budget Administration Section to "reimburse landlord Gregory Hanes in the amount of $52,946 for the over standard Tenant Improvements for 300 East Avenue K-6."

303.    On June 21, 2011, Shepos authored a memorandum informing the County's Rent/Budget Administration Section that additional "expenses ha[d] been reconciled and Tl reimbursement payments shall commence."  It further directed

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

that "[f]urniture expenses in the amount of $281,234.76 shall be reimbursed over 60 months at an amortization rate of 8%, resulting in a monthly reimbursement payment of $5,702.43" and therefore "[t]he total monthly payment shall increase to $27,592.43 by combining the reimbursement payment of $5,702.43 with the monthly base rental payment of $21,890.00." The memorandum further stated that "A LUMP SUM PAYMENT MAY BE REQUIRED FOR PAYMENTS IN ARREARS."

304. On June 21, 2011, Shepos authored a memorandum directing the County's Rent/Budget Administration Section to "make a lump sum payment to pay off Tenant Improvements in the amount of $251,895.56." The memorandum included a note stating "[h]old check for Thomas Shepos, Real Property Agent."

305. Shepos subsequently negotiated to amend the lease with Hanes, and he authored a letter recommending that the Board approve the amendment. Specifically, the letter, which was submitted to the Board on October 30, 2012, stated "**IT IS RECOMMENDED THAT THE BOARD**" take three specific actions, including: (i) "[a]pprove and instruct the Chairman to sign the lease amendment with Gregory Hanes (Landlord), for [DCFS] to add approximately 35,000 rentable square feet of space to the 11,000 rentable square feet square space of existing space located at 300 East Avenue K-6, Lancaster, at an annual first year base rent of $1,076,400, plus first year payment of $1,400,000 reimbursement for additional tenant improvements, furniture, and change order allowances via lump sum, or amortized at 332,660 annually over a five-year period"; (ii) "[f]ind that the lease amendment is categorically exempt from the provisions of the California Environmental Quality Act"; and (iii) authorize the landlord, "at the discretion of the Chief Executive Officer, to acquire telephone systems for [DCFS] at a cost not to exceed $1,200,000," reimbursable by the County in addition to other tenant improvements.

306. On or about October 30, 2012, the Board adopted Shepos'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

65

FIRST AMENDED COMPLAINT-IN-INTERVENTION

recommendations, and the County and Hanes entered into Amendment No. 1 to the lease. The amendment expanded the scope of the lease to a secondary premises of 35,000 additional square feet and extended the lease term through October 14, 2020 at a monthly rent of $89,700—totaling in excess of $8 million. The amendment also authorized reimbursement of $1.4 million in additional tenant improvements, as Shepos recommended.

307. As with the initial lease, Shepos acted as the County's agent in overseeing the tenant improvements on the additional space, and he authored numerous memoranda directing the County to make reimbursement payments to Hanes.

308. On April 15, 2013, Shepos authored a memorandum that directed the County's Rent/Budget Administration Section to "make a lump sum payment to pay off furniture in the amount of $1,095,140.45," and again included a note stating "[h]old check for Thomas Shepos, Real Property Agent."

309. On May 9, 2013, Shepos authored three memoranda to the County's Rent/Budget Administration Section:

a. The first memorandum directed the County's Rent/Budget Administration Section to "make a lump sum payment to pay off Tenant Improvements . . . in the amount of $307,213.34." This memorandum also included a note stating "[h]old check for Thomas Shepos, Real Property Agent."

b. The second memorandum directed the County's Rent/Budget Administration Section to "make a lump sum payment to pay off CCTV System (Security) . . . in the amount of $39,850.75." Again, the memorandum included a note stating "[h]old check for Thomas Shepos, Real Property Agent."

c. The third memorandum advised the County's Rent/Budget Administration Section that "Rental Payments shall be increased to $89,700.00 pursuant to the DCFS expansion as approved by the Board of Supervisors on October 30, 2012." Notably, this expansion and rent increase was approved

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

pursuant to the Board recommendation letter authored by Shepos on October 30, 2012, as alleged in detail above.

310. On July 11, 2013, Shepos authored yet another a memorandum directing the County's Rent/Budget Administration Section to "make a lump sum payment to pay off Tenant Improvements in the amount of $2,500.00."

311. Shepos subsequently negotiated to further amend the lease with Hanes, and he authored a letter recommending that the Board approve the second amendment. Specifically, the letter, which was submitted to the Board on November 1, 2016, stated "**IT IS RECOMMENDED THAT THE BOARD**" take three specific actions, including: (i) "[a]pprove and instruct the Chairman to sign the lease amendment with Gregory Hanes (Landlord), for [DCFS] at 300 East Avenue K-6, Lancaster, to extend the normal working hours by one hour to start at 6:00 a.m. and allow the County to reimburse the Landlord for after-hours heating ventilation and air conditioning at the rate of $45.00 per hour as additional rent"; (ii) "[f]ind that the proposed lease amendment is categorically exempt from the provisions of the California Environmental Quality Act"; and (iii) "[a]uthorize and direct the Chief Executive Officer, or her designee, to execute any other ancillary documentation necessary to effectuate the lease amendment, and authorize the Chief Executive Officer and the Director of [DCFS] to take actions necessary and appropriate to implement the project."

312. On or about November 1, 2016, the Board adopted Shepos' recommendations, and the County and 300 K-6 entered into Amendment No. 2 to the lease. The Landlord's Work Letter attached to Amendment No. 2 authorized $1,190,000 in additional tenant improvements and listed Shepos as the County's Work Letter Representative.

313. On December 22, 2016, Shepos authored a memorandum directing the County's Rent/Budget Administration Section to make a lump sum payment in the amount of $23,850.00 to reimburse 300 K-6 "for after-hours HVAC for June

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

through October 2016."

314.    Section 31(b) of the lease agreement contains an express acknowledgment by Hanes that County employees are forbidden from soliciting consideration "in any form" from a landlord "with the implication, suggestion or statement that the landlord's provision of the consideration may secure more favorable treatment for the landlord in the award of the Lease or that landlord's failure to provide such consideration may negatively affect the County's consideration of the landlord's offer to lease."  It further provides that "[a] landlord shall not offer or give, either directly or through an intermediary, consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

315.    Neither Amendment No. 1 nor Amendment No. 2 altered or invalidated Hanes' express acknowledgment in section 31(b), which was reaffirmed by Hanes through his execution of both amendments.

316.    The lease and both amendments were signed during the period when the Hanes Defendants were participating in Shepos' bribery scheme—storing and laundering money for Shepos in exchange for lucrative County contracts, as set forth above.

317.    As alleged in detail above, Shepos negotiated the lease and its amendments, authored the Board letters recommending approval of the five-year lease and its amendments, oversaw the tenant improvements, and authored numerous memoranda directing the County's Rent/Budget Administration Section to make rent and reimbursement payments under this lease.

318.    Had the County known that Hanes was storing and laundering cash for Shepos in exchange for Shepos' help in negotiating and securing the lease and amendments, Shepos' recommendations for Board approval, and other preferential treatment of the Hanes Defendants, the County would not have entered the lease, Amendment No. 1, or Amendment No. 2, nor would it have made payments

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

thereunder.

### (ii)   43917 North Division Street

319.   After successfully orchestrating the lease for DCFS at 300 East Avenue K-6, Shepos then offered for lease by the County another property Hanes owned, through his entity 43917 Division, which Hanes was using at the time as his office for Hanes & Associates.

320.   On or about June 16, 2015, the County and 43917 Division entered into a lease agreement for 43917 North Division Street in Lancaster, California (Lease No. 78386).  The County used the space to house the County's Probation Department.

321.   Under this lease, the County agreed to pay a base monthly rent of $27,125—totaling in excess of $2.6 million over its eight-year term.  The base monthly rent payments were also subject to annual CPI adjustments of up to 4%.  Additionally, the lease provided for tenant improvements in the amount of $1,085,000, with a change order allowance of $77,500, as well as $475,000 for telephone, data, and low voltage systems, all reimbursable by the County.

322.   At all times, the County made monthly rent payments as they were due under the lease terms Shepos negotiated, including increased rent payments pursuant to the provision requiring annual CPI adjustments.  Specifically, pursuant to Section 5 of the lease, the County's rent payments increased to: (i) $27,840.03 on September 1, 2017; (ii) $28,916.38 on September 1, 2018; (iii) $29,774.55 on September 1, 2019; (iv) $30,374.97 on September 1, 2020; (v) $31,459.97 on September 1, 2021; and (vi) $32,544.97 on September 1, 2022.

323.   The County also made numerous reimbursement payments to 43917 Division pursuant to the terms of the lease and memoranda authored or approved by Shepos directing such payments.

324.   For example, on February 9, 2016, Shepos directed another CEO-RED employee, Scott Garrett, to author a memorandum directing the County's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

Rent/Budget Administration Section to make a lump sum progress payment of $171,098.48 as reimbursement for low voltage costs pursuant to the lease.

325.   On April 29, 2016, Shepos approved another memorandum directing the County's Rent/Budget Administration Section to make a lump sum progress payment of $260,943.84 as reimbursement for additional tenant improvements pursuant to the lease.  Over the next few months, the County made additional lump sum progress payments of $241,524.35 (on June 2, 2016) and $485,500.82 (on July 7, 2016) as reimbursement for further tenant improvements.  On July 6, 2016, the County also made a payment of $193,020.85 as reimbursement for low voltage costs pursuant to the lease.

326.   Similarly, on September 22, 2016, Shepos approved a memorandum directing the County's Rent/Budget Administration Section to make a lump sum progress payment of $174,449.74 to reimburse additional tenant improvements pursuant to the lease.

327.   On July 18, 2017, Shepos also authored a memorandum directing the County's Rent/Budget Administration Section to make a payment of $5,576.52 as reimbursement for low voltage costs pursuant to the lease.

328.   Section 31(b) of the lease contains an express acknowledgment by 43917 Division that County officers and employees may not solicit consideration "in any form" from a landlord to secure favorable treatment for the landlord.  Under the same provision, 43917 Division agreed that it "shall not offer or give [] consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

329.   Shepos negotiated the lease on behalf of the County, and he directed or approved hundreds of thousands of dollars in reimbursement payments under the lease, all during the period when the Hanes Defendants were participating in Shepos' bribery scheme, as set forth above.

330.   Had the County known that Hanes was storing and laundering cash for

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Shepos in exchange for Shepos' help in negotiating and securing the lease and other preferential treatment of the Hanes Defendants, the County would not have entered the lease, nor would it have made payments thereunder.

*       *       *

331.   Shepos' financial interest renders each of the Hanes Contracts void.  As set forth above, Shepos was deeply involved in the making of each of the Hanes Contracts.  Due to his ongoing receipt of financial benefits from the Hanes Defendants—storing and laundering illicit bribes and other cash—and his expectation that such benefits would continue, Shepos had an improper financial interest in each of the Hanes Contracts.  Accordingly, the Hanes Contracts were unlawful and are void under Government Code sections 1090 and 87100.

### E.  Shepos and the Hanes Defendants Conceal Their Bribery Scheme and Money Laundering from The County

332.   As alleged above, Hanes is referred to as "Individual A" in Shepos' Plea Agreement.  Shepos and the Hanes Defendants mutually agreed to take steps (and did take steps) to conceal the bribery scheme and their money laundering. Shepos never disclosed to the County that he had a personal financial relationship with Hanes, or that Hanes was assisting him by funneling bribe payments to him from other County contractors.

333.   In their leases with the County, as outlined above, the Hanes Defendants also represented and affirmed their understanding that County employees like Shepos are prohibited from having any financial interest in County leases, and that landlords are prohibited from giving County employees like Shepos any consideration in exchange for favorable treatment.  The County relied on these representations and confirmations from the Hanes Defendants.

334.   The County could not have discovered, and did not discover, that Hanes was "Individual A," or that he and the other Hanes Defendants were willing participants in the scheme, until it uncovered Hanes' identity through its own

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

71

confidential investigation in or about July 2021.

335.    Further, as a result of the Hanes Defendants' express misrepresentations and concealment of their bribery scheme from the County, the County does not know, and has been unable to discover through reasonable investigation, the full scope of each Defendant's misconduct, including, but not limited to, any and all facts not set forth in Shepos' Plea Agreement.

## V.    The Abbey Defendants' Scheme

### A.    The Abbey Defendants

336.    Defendant Donald G. Abbey ("Abbey") is, and at all times relevant hereto was, an individual residing in the County.

337.    Defendant AP-Sierra LLC ("AP-Sierra") is a Delaware limited liability company with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840.  Abbey is AP-Sierra's CEO.

338.    Defendant AP-Palmdale LLC ("AP-Palmdale") was a California limited liability company with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840.  Abbey is AP-Palmdale's CEO.

339.    Defendant AP-Palmdale Place LLC ("AP-Palmdale Place") is a Delaware limited liability company with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840.  Abbey is its CEO and agent for service of process.  AP-Palmdale Place is the successor-in-interest to AP-Palmdale.[4]

340.    Defendant DGA-Properties LLC ("DGA-Properties") is a Delaware limited liability company with its principal place of business at 12447 Lewis Street,

_____

[4] In their Motion to Dismiss the County's CII, the Abbey Defendants contended that AP-Palmdale Place LLC was erroneously sued as AP-Palmdale LLC.  As set forth in their Motion to Dismiss [Dkt 360-1, at 1, n.1], AP-Palmdale LLC was the contracting party to the 2323 East Palmdale Boulevard lease.  The County added AP-Palmdale Place as a defendant in this First Amended Complaint-in-Intervention because it assumed ownership of the property in or around 2018.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

FIRST AMENDED COMPLAINT-IN-INTERVENTION

Suite 203, Garden Grove, CA 92840.  DGA-Properties is AP-Sierra's and AP-Palmdale's managing member.  Abbey is DGA-Properties' CEO.

341.  Defendant DGA-Properties II, LLC ("DGA-Properties II") is a Delaware limited liability company with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840.  Abbey is the CEO of DGA-Properties II.

342.  Defendant Abbey-Properties LLC ("Abbey-Properties") was a California limited liability company and, as of December 23, 2021, is a Delaware limited liability company with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840.  Abbey is its manager and agent for service of process.  Abbey signed the company's registration forms with the California Secretary of State in July 1996.

343.  Defendant Abbey-Properties II LLC ("Abbey-Properties II") was a California limited liability company and, as of January 10, 2022, is a Delaware limited liability company with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840.  Abbey is its agent for service of process.  Abbey-Properties II is managed by "The Abbey Companies LLC."  The Abbey Companies LLC was a California limited liability company and, as of January 24, 2022, is a Delaware limited liability company with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840.  Abbey is The Abbey Companies LLC's manager and agent for service of process.

344.  Defendant CDCF III Pacific Commerce Plaza, LLC ("CDCF III") is a Delaware limited liability company with its principal place of business at 515 S. Flower Street, 44th Floor, Los Angeles, CA 90071.  CDCF III is successor-in-interest to AP-Commerce Plaza, LLC ("AP-Commerce"), which was a Delaware limited liability company with its principal place of business at 14770 E. Firestone Boulevard, # 206, La Mirada, CA 90638.  Abbey was the CEO of AP-Commerce.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

73

345. Defendant Nittany Lion Landscaping, Inc. ("Nittany") is a corporation organized under the laws of California with its principal place of business at 12447 Lewis Street, Suite 203, Garden Grove, CA 92840. Nittany also does business as NL Services, Inc. ("NL Services"). Abbey owns Nittany dba NL Services, Inc.

346. Where applicable, Abbey, AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany are referred to collectively as the "Abbey Defendants."

347. Due to Abbey's roles, management, and/or ownership of each of the entity Abbey Defendants, as detailed above, Abbey owns, controls, and/or directs the actions of AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany which, in doing the acts alleged herein, acted at Abbey's direction and/or with his permission, knowledge, consent, or ratification.

348. In the alternative, based on Abbey's roles, management, and/or ownership of each of the entity Abbey Defendants, as detailed above, Abbey was an alter ego of AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany; Abbey dominated and controlled AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany; a unity of interest and ownership existed between Abbey and AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany (most

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

FIRST AMENDED COMPLAINT-IN-INTERVENTION

of which share a principal place of address); AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany were mere shells and conduits for Abbey's affairs; AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany were inadequately capitalized; AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany failed to abide by the formalities of corporate existence; and Abbey used AP-Sierra, AP-Palmdale (to which AP-Palmdale Place is a successor in interest), DGA-Properties, DGA-Properties II, Abbey-Properties, Abbey-Properties II, AP-Commerce (to which CDCF III is a successor-in-interest), and Nittany's assets as his own and, in doing the things alleged herein, acted with such a unity of interest that the separate personalities of these corporate entities do not in reality exist and honoring their separate identities would bring about an inequitable result.

349.  The Abbey Defendants, who own and operate various buildings within the County, participated in and profited from bribes to Shepos, as alleged in detail below.

**B.    The Abbey Defendants Provide Shepos with Free Home Renovations in Exchange for County Business**

350.  Abbey is a real estate magnate who owns and operates various buildings within the County and had several leases with the County.

351.  Shepos and Abbey met in or around the early 2000's.  They immediately bonded over their shared alma mater, Penn State University.  After their first meeting, Shepos asked Abbey if he were interested in doing business with the County.

FIRST AMENDED COMPLAINT-IN-INTERVENTION

352.   At all relevant times, Abbey was fully aware that Shepos was a high-ranking County employee with influence over County leasing decisions.

353.   The Abbey Defendants entered into three leases with the County, in 2004, 2006, and 2007 respectively.  Shepos played an instrumental role in securing Board approval of these leases and amendments thereto, as set forth in detail below.  In exchange, the Abbey Defendants bribed Shepos with free renovations to his home in Bel Air.  In connection with the renovations, the Abbey Defendants also gave Shepos a Home Depot credit card billed to NL Services, Abbey's contracting company.

354.   In August 2005, approximately one year after Shepos authored a Board letter recommending approval of the first lease with the Abbey Defendants, Shepos signed a $476,500 contract with Nittany dba NL Services for renovations to his Bel Air home.  The proposal was submitted by Sam Aldrich, the President of NL Services.  Abbey owned Nittany dba NL Services and is identified via internet searches as the Chairman of its Board.

355.   Abbey caused NL Services to enter into this contract to provide Shepos with a huge financial benefit in exchange for Shepos steering County business to the Abbey Defendants.  According to Gluck, who owned and lived in the Bel Air home with Shepos, she and Shepos did not pay for these expensive renovations.

356.   Abbey and Shepos went to great lengths to conceal these bribes.  In February 2006, NL Services issued a phony invoice to Shepos for $29,021.08 for landscaping and HVAC supplies, as well as $25,000 for "CME Windows and Doors."  Based on records discovered by the Relator, NL Services had previously given Shepos a check for $25,000 made out to CME Windows & Doors.  Meaning, NL Services paid for the new doors and windows that it had invoiced to Shepos.  And there were no invoices for the hundreds of thousands of dollars in labor.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

76

FIRST AMENDED COMPLAINT-IN-INTERVENTION

## C. The Tainted Abbey Contracts

357. This years-long bribery scheme tainted the contracts between the Abbey Defendants and the County in which Shepos participated (the "Abbey Contracts"), as well as the payments and proceeds the Abbey Defendants and Shepos received in connection with the Abbey Contracts.

358. The Abbey Contracts were signed during the period when Abbey and Shepos were engaged in the scheme to provide Shepos with free home renovations in exchange for County business. The tainted Abbey Contracts, each of which is incorporated by reference herein, are outlined below:

### (i) 39959 Sierra Highway

359. On or about May 18, 2004, the County and AP-Sierra entered into a lease agreement for 39959 Sierra Highway in Palmdale, California (Lease No. 74876). The County used this space to house the Department of Children and Family Services. Before the County began to occupy the space, the County and Abbey signed a work letter, pursuant to which Abbey would provide tenant improvements to the property before the County moved in. Per the work letter, the tenant representative was Shepos, and the landlord representative was Abbey.

360. The lease commenced on March 1, 2005 and set a monthly rent of $71,775, with bi-annual rent increases over ten years—totaling payments to AP-Sierra of approximately $9.1 million (including $2.4 million in County-funded tenant improvements). The lease also provided for the County to purchase $1.5 million in furniture from AP-Sierra. Abbey-Properties executed the lease on behalf of DGA-Properties which, in turn, executed the lease on behalf of AP-Sierra. Shepos represented the County as the real property agent on this lease.

361. Shepos was instrumental in negotiating and securing approval of this lease. Among other things, he authored the Board letter recommending approval of the lease, prepared an Initial Study and Negative Declaration pursuant to CEQA determining that the project would not significantly affect the environment, and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

represented the County as the counterparty to Abbey in connection with County-funded improvements on the property.

362. Specifically, the Board letter recommended that the Board "[a]pprove and instruct the Chairman to sign the attached ten-year lease and addendum with AP-Sierra LLC, Landlord, for the occupancy of 49,500 rentable square feet of office space," and "[a]uthorize the Chief Administrative Office (CAO) to acquire financing for furniture systems for DCFS at a cost not to exceed $1,500,000[.]"

363. Section 32(b) of the lease contains an express acknowledgement by AP-Sierra that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give [] consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

364. Abbey entered into the lease with the intent to pay Shepos bribes in exchange for the business opportunity with the County. The Abbey Defendants performed free renovations on Shepos' home in exchange for Shepos' help in negotiating and securing approval of the lease and any amendments thereto.

365. On or about February 3, 2015, the County and AP-Sierra entered into an amendment to the lease. The amendment extended the term of the lease for a period of five years and increased the monthly rent to $79,200 for the first year; $81,180 for the second year; $83,160 for the third year; $85,140 for the fourth year and $87,120 for the fifth year—totaling approximately $5 million over the full term. At all times, the County made monthly payments as they were due under the lease.

366. Abbey-Properties executed the amendment on behalf of DGA-Properties which, in turn, executed the lease on behalf of AP-Sierra. Abbey signed the amendment.

367. Had the County known Abbey and the entity Abbey Defendants were bribing Shepos in exchange for Shepos' help in negotiating and securing the lease and amendment, Shepos' recommendations for Board approval, and other

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

78

preferential treatment of the Abbey Defendants, the County would never have entered the lease or amendment, nor would it have made payments thereunder.

### (ii)   2323 East Palmdale Boulevard

368.   On or about October 10, 2006, the County and AP-Palmdale entered into a lease agreement for 2323 East Palmdale Boulevard in Palmdale, California (Lease No. 75892).  The County used this space to house the Department of Mental Health.  Abbey-Properties executed the lease on behalf of DGA-Properties which, in turn, executed the lease on behalf of AP-Palmdale.

369.   Before the County began to occupy the space, the County and Abbey signed a work letter, pursuant to which Abbey would provide tenant improvements to the property before the County moved in.  Per the work letter, the tenant representative was Shepos, and the landlord representative was Abbey.

370.   Under this lease, the County agreed to pay AP-Palmdale a base monthly rent of $14,808 with fixed periodic rent increases during its term, a one-time payment of over $100,000 for tenant improvements, and $350,000 in furniture—totaling payments to AP-Palmdale of over $2.3 million over the ten-year term.

371.   The lease was in effect for ten years (until October 2016), during which time the County paid AP-Palmdale monthly rent as it was due, along with the $100,000 for tenant improvements and $350,000 in furniture costs.  After the initial term, the County continued to occupy the property until April 2020 as a holdover tenant, and as of February 2018, paid rent to AP-Palmdale Place, AP-Palmdale's successor-in-interest.

372.   Shepos was instrumental in negotiating and securing approval of this lease.  Among other things, he authored a Board letter recommending approval of the lease, prepared an Initial Study and Negative Declaration pursuant to CEQA determining that the project would not significantly affect the environment, and represented the County as the counterparty to AP-Palmdale in connection with

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

County-funded improvements on the property.  Shepos did this because he had received, and was continuing to receive, hundreds of thousands of dollars in free renovations of his Bel Air residence from Abbey.  The Board letter specifically recommended that the Board "[a]pprove and instruct the Mayor to sign the attached ten-year lease with AP-Palmdale, LLC, Landlord, for the occupancy of 9,255 rentable square feet of office space…plus a one-time payment of $107,550 for additional Tenant Improvements (TI) and $350,000 for furniture."  The Board letter attached the Negative Declaration Shepos authored finding that "the project will not have a significant effect on the environment[.]"

373.   Section 32(b) of the 2323 East Palmdale Boulevard lease contains an express acknowledgment that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give [] consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

374.   The lease was signed by the Abbey Defendants at the time Abbey was bribing Shepos in exchange for Shepos' influence on County leases.

375.   Had the County known Abbey and the entity Abbey Defendants were bribing Shepos in exchange for Shepos' help in negotiating and securing the lease, Shepos' recommendations for Board approval and other preferential treatment of the Abbey Defendants, the County would not have entered the lease, nor would it have made payments thereunder.

### (iii)   5701 South Eastern Avenue

376.   On or about August 21, 2007, the County and AP-Commerce (to which Defendant CDCF III is the successor-in-interest) entered into a lease agreement for 5701 South Eastern Avenue in Commerce, California (Lease No. 76324).  The County used this space to house the Department of Child Support Services.

377.   Abbey-Properties II executed the lease on behalf of AP-Commerce. Abbey signed the lease on behalf of Abbey-Properties II.

703136.13

80

FIRST AMENDED COMPLAINT-IN-INTERVENTION

378.   Under this lease, the County agreed to pay a base rent of $131,430 per month for the first year, with annual rent increases over the seven-year term—totaling approximately $12 million in rent payments.  At all times, the County made monthly rent payments under the lease as they were due.

379.   Like the County's other leases, Section 31(b) of the 5701 South Eastern Avenue lease contains an express acknowledgment that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give [] consideration in any form to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease."

380.   Shepos was instrumental in negotiating and securing approval of the lease.  Among other things, he was the County point-person with CBRE, the commercial agent, and he oversaw rent payment and space adjustments for the property.  Shepos did these things in exchange for the hundreds of thousands of dollars in home renovations Abbey provided him.  Abbey signed the lease knowing that it was procured as a result of his bribery.

381.   The original lease was in effect from August 21, 2007 to August 20, 2014, during which time the County paid monthly rent as it was due.

382.   On or about July 13, 2010, the County and AP-Commerce entered into the First Amendment to the lease, reducing the size of the rented premises by 3,111 square feet and reducing the rent proportionately.

383.   From August 2014 to March 2018, the County leased the property on a month-to-month holdover basis, paying over $6 million in rent.

384.   On July 11, 2014, Shepos authored a memorandum to the County Section Head, Rent/Budget Administration providing notice that the monthly rental payments "will continue on a month-to-month holdover effective August 21, 2014" at a monthly rate of $149,108.83.

385.   On or about March 20, 2018, the County and CDCF III entered into a Second Amendment to Lease, extending its term by a period of seven years at a monthly rent of $54,584.20, with annual rent increases of up to 3%—totaling payments to CDCF III in an amount of at least $4.6 million.

386.   Had the County known Abbey and the entity Abbey Defendants were bribing Shepos in exchange for Shepos' help in negotiating and securing the lease and other preferential treatment of the Abbey Defendants, the County would not have entered the lease or amendments thereto, nor would it have made payments thereunder.

\*      \*      \*

387.   Shepos' financial interest renders each of the Abbey Contracts void. As set forth above, Shepos was deeply involved in the making of each of the Abbey Contracts.  Due to his ongoing receipt of in-kind benefits from the Abbey Defendants and his expectation that such benefits would continue, Shepos had an improper financial interest in each of the Abbey Contracts.  Accordingly, the Abbey Contracts were unlawful and are void under Government Code sections 1090 and 87100.

**D.      Shepos and the Abbey Defendants Conceal the Bribery Scheme**

388.   Shepos and Abbey mutually agreed to take steps (and did take steps) to conceal the bribery scheme.  Instead of paying Shepos directly, Abbey paid him by funding renovations to Shepos' home using Abbey's contracting and landscaping company, Nittany dba NL Services.  Abbey invoiced Shepos to make the transaction appear legitimate; however, Abbey had no intent to collect the money from Shepos. Shepos never disclosed to the County that he had engaged one of Abbey's companies to perform renovations to his residence.  The County could not have discovered, and did not discover, the Abbey Defendants' misconduct until

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

82

approximately July 7, 2017, at the earliest, when Gluck informed OCI about Shepos' potential involvement in bribery schemes involving County landlords.

389.   In their leases with the County, as outlined above, the Abbey Defendants also represented and affirmed their understanding that County employees like Shepos are prohibited from having any financial interest in County leases, and that landlords are prohibited from giving County employees like Shepos any consideration in exchange for favorable treatment.  The County relied on these representations and confirmations from the Abbey Defendants.

390.   Prior to July 7, 2017, the County had not received and did not possess evidence that the Abbey Defendants had engaged in a bribery scheme with Shepos. Such evidence was uncovered as a result of the County's own investigation conducted following conversations with Gluck in 2017.  Further, as a result of the Abbey Defendants' express misrepresentations and concealment of their bribery scheme from the County, the County does not know, and has been unable to discover through reasonable investigation, the full scope of each Defendant's misconduct, including, but not limited to, any and all facts not set forth in Shepos' Plea Agreement.

## VI.    The Neman Defendants' Scheme

### A.    The Neman Defendants

391.   Defendant Leon Neman is, and at all times relevant hereto was, an individual residing in the County.

392.   Defendant Yoel Neman is, and at all times relevant hereto was, an individual residing in the County.

393.   Defendant John Neman (together with Leon Neman and Yoel Neman, the "Nemans") is, and at all times relevant hereto was, an individual residing in the County.

394.   Defendant Neman Brothers and Associates, Inc. ("Neman Brothers") is a California corporation with its principal place of business at 1525 S. Broadway

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

Street, Los Angeles, CA 90015.  Defendant Yoel Neman is CEO, CFO, and Secretary.  Yoel, Leon, and John Neman are all directors of Neman Brothers.

395.   Defendant Legend Real Estate Management, Inc. ("Legend Real Estate") is a California corporation with its principal place of business at 1525 S. Broadway Street, Los Angeles, CA 90015.  Legend Real Estate is a property management company that offers leasing and development services.  Leon Neman is Legend Real Estate's CEO and CFO.  Yoel Neman is its Secretary.

396.   Defendant Vertigo Real Estate Holdings, LP ("Vertigo") is a California limited partnership with its principal place of business at 1525 S. Broadway Street, Los Angeles, CA 90015.  Legend Real Estate is Vertigo's general partner.  Leon Neman is Vertigo's agent for service of process.

397.   Where applicable, the Nemans, Neman Brothers, Legend Real Estate, and Vertigo are referred to collectively as the "Neman Defendants."

398.   Based on their roles as executives, officers, and directors of the entity Neman Defendants, as detailed above, the Nemans own, control, and/or direct the actions of Neman Brothers, Legend Real Estate, and Vertigo which, in doing the acts alleged herein, acted at the Nemans' direction and/or with the Nemans' permission, knowledge, consent, or ratification.

399.   In the alternative, by virtue of their roles as executives, officers, and directors of each of the entity Neman Defendants, as detailed above, the Nemans were alter egos of Neman Brothers, Legend Real Estate, and Vertigo; the Nemans dominated and controlled Neman Brothers, Legend Real Estate, and Vertigo; a unity of interest and ownership existed between the Nemans and Neman Brothers, Legend Real Estate, and Vertigo (which all share a principal place of business); Neman Brothers, Legend Real Estate, and Vertigo were mere shells and conduits for the Nemans' affairs; Neman Brothers, Legend Real Estate, and Vertigo were inadequately capitalized; Neman Brothers, Legend Real Estate, and Vertigo failed to abide by the formalities of corporate existence; and the Nemans used Neman

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

84

Brothers, Legend Real Estate, and Vertigo's assets as their own and, in doing the things alleged herein, acted with such a unity of interest that the separate personalities of these corporate entities do not in reality exist and honoring their separate identities would bring about an inequitable result.

**B.      The Neman Defendants Bribe Shepos with Cash and Checks**

400.   The Neman Defendants, who own and operate various commercial buildings within the County, participated in and profited from a similar scheme with Shepos in exchange for bribes, as alleged in detail below.

401.   At all times, the Neman Defendants knew Shepos had significant influence and decision-making authority over County contracts.  For years, they paid Shepos in cash and checks—both to Shepos directly and to his company, CT Management—in exchange for non-public County information and securing a lucrative lease with the County in Palmdale.

402.   The payments to Shepos included the following: In 1998, Neman Brothers paid Shepos $4,058.  In 1999, Neman Brothers paid Shepos $4,541.93.  In 2001, Neman Brothers paid Shepos $2,945.  In 2006, Vertigo paid Shepos $5,000 via his company CT Management.  And in 2010, Vertigo paid Shepos another $5,000 via CT Management.  Gluck discovered these payments from the Neman Defendants to Shepos and CT Management on Form 1099s issued to Shepos.

403.   On June 1, 2010, Shepos emailed Leon Neman from his personal AOL email address, instructing Leon Neman to "make any commissions payable to CT Management as has been done in the past."

404.   Based on information from the Relator, on or about September 1, 2010, Shepos also deposited a check from Legend Real Estate in the amount of $5,000 made payable to CT Management in his bank account.  The check was signed by Leon Neman.

405.   At the time of filing this First Amended Complaint-in-Intervention, the County is aware of at least $26,545 in payments to Shepos by the Neman

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Defendants. There was no legitimate business purpose for any of these payments. To the contrary, the Neman Defendants paid Shepos with the intent of bribing him in exchange for non-public information about the County's leasing needs and securing a valuable County lease, as set forth below.

### C.   The Tainted Neman Lease: 1529 East Palmdale Boulevard

406.   On or about October 20, 1999, the County and John Neman, Leon Neman, and Yoel Neman, in their personal capacities, entered into a lease agreement, incorporated by reference herein, for 1529 East Palmdale Boulevard in Palmdale, California (Lease No. 72555) (the "Neman Lease"). The County used this space to house the Department of Mental Health and the Sheriff's Department.

407.   Shepos was instrumental in negotiating and securing approval of the lease. When the County needed a site to house the Department of Mental Health, Shepos steered the business to the Nemans, who had been unsuccessful in renting out their Palmdale space. Shepos also authored the Board letter recommending approval of the lease. Specifically, the Board letter recommended that the Board "[a]pprove and instruct the Chairman to sign the attached ten year lease with John Neman, Yoel Neman and Leon Neman (Lessors), for 7,656 rentable square feet of office space," and "find that the project will not have a significant effect on the environment[.]"

408.   Under this lease, the County agreed to pay a monthly rent of $11,848.75 for a period of ten years—totaling payments of approximately $1.4 million. The lease had two five-year renewal options. Shepos was the real property agent associated with the lease.

409.   In June 2010, the County renewed the lease for a five-year term. Shepos authored the Board letter recommending that the Board "[e]xercise the option to renew the lease for a five-year term with John Neman, Leon Neman, and Yoel Neman (Lessors) for 9,479 rentable square feet of office space and 28 parking spaces[.]"

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

703136.13

86

FIRST AMENDED COMPLAINT-IN-INTERVENTION

410.    After the initial 10-year term and the first five-year renewal term, the County exercised its second option to renew the lease for another five years, under the same terms and conditions, with the rent adjusted pursuant to the CPI Index.

411.    When the second renewal term lapsed, the County continued to occupy the premises until September 30, 2023 as a holdover tenant.  During this period, the County made monthly rental payments as they were due.

412.    In exchange for Shepos' assistance in securing the Neman Lease, the Nemans bribed Shepos and gave him kickbacks in the form of cash payments between 1998 and 2010.  As set forth above, the Neman Defendants were paying Shepos thousands of dollars both during the time when they negotiated the lease with the County and for years thereafter.

413.    Section 31(b) of the 1529 East Palmdale lease agreement contains an express acknowledgment that County employees are forbidden from soliciting consideration "in any form" from landlords and that landlords "shall not offer or give, either[] directly or through an intermediary, consideration, in any form, to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the lease."  John, Leon, and Yoel Neman each signed the lease knowing that they were in violation of this provision by secretly paying bribes to Shepos.

414.    This scheme tainted the Neman Lease, as well as the payments and proceeds the Neman Defendants and Shepos received in connection with the lease.

415.    Had the County known the Neman Defendants were bribing Shepos and paying him kickbacks in exchange for Shepos' help in negotiating and securing the lease, Shepos' recommendations for Board approval, and other preferential treatment of the Neman Defendants, the County would never have entered the Neman Lease, nor would it have made payments thereunder.

416.    Shepos' financial interest renders the Neman Lease void.  As set forth above, Shepos was deeply involved in the making of the lease.  Due to his ongoing

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

receipt of cash, bribes and kickbacks from the Neman Defendants and his expectation that such benefits would continue, Shepos had an improper financial interest in the lease.  Accordingly, the Neman Lease was unlawful and is void under Government Code sections 1090 and 87100.

**D.     Shepos and The Neman Defendants Conceal the Bribery Scheme**

417.   Shepos and the Neman Defendants mutually agreed to take steps (and did take steps) to conceal the bribery scheme.  For example, Shepos used his personal business, CT Management, to shield bribery payments and kickbacks. When recommending the Palmdale lease to the County, Shepos did not disclose that he was receiving payments from the Nemans, who would act as the County's landlords, or the entity Neman Defendants.  The County could not have discovered, and did not discover, the Neman Defendants' misconduct until approximately July 7, 2017, at the earliest, when Gluck informed OCI about Shepos' potential involvement in bribery schemes involving County landlords.

418.   In the Neman Lease, as outlined above, the Nemans also represented and affirmed their understanding that County employees like Shepos are prohibited from having any financial interest in County leases, and that landlords are prohibited from giving County employees like Shepos any consideration in exchange for favorable treatment.  The County relied on these representations and confirmations from the Nemans.

419.   Prior to July 7, 2017, the County had not received and did not possess evidence that the Neman Defendants had engaged in a bribery scheme with Shepos. Such evidence was uncovered as a result of the County's own investigation conducted following conversations with Gluck in 2017.  Further, as a result of the Neman Defendants' express misrepresentations and concealment of their bribery scheme from the County, the County does not know, and has been unable to discover through reasonable investigation, the full scope of each Defendant's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

misconduct, including, but not limited to, any and all facts not set forth in Shepos' Plea Agreement.

420.   In any event, on or about March 30, 2020, the County and the Neman Defendants entered into a tolling agreement which provides that "any statutes of limitation or other applicable statutory, contractual or common law time limitations that may be applicable to" the parties' respective claims "arising from or related to contracts, lease agreements or transactions" between the Neman Defendants and the County "shall be tolled and preserved . . . indefinitely, until such time as any Party terminates the Tolling Agreement."

421.   The foregoing tolling agreement was not terminated at any point prior to the filing of this First Amended Complaint-in-Intervention.

## FIRST CLAIM FOR RELIEF

### *Violation of California Government Code Sections 1090 and 1092*

**(By the County against Shepos, the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 1 - 100)**

422.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

423.   Government Code section 1090(a) ("Section 1090") provides that "[m]embers of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by anybody or board of which they are members."

424.   Government Code section 1092(a) ("Section 1092") provides that "[e]very contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein."

425.   Contracts in which County employees have a financial interest are void if those employees participate in the making of the contract.  Participation in the making of the contract includes, but is not limited to, preliminary discussions,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

negotiations, compromises, reasoning, planning, drawing of plans and specifications, solicitation of bids, and the exercise of influence to affect the outcome of the foregoing.

426.    Any and all proceeds derived from a contract voided under these statutes must be disgorged.  When a contract is void under these statutes, disgorgement is automatic.

**Gabaee Defendants**

427.    As a result of the scheme alleged herein involving Shepos and the Gabaee Defendants who had contracts with the County, or their affiliates, successors, or assignees, and the individuals who controlled or directed those contracting parties, each of the Gabaee Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

428.    The County and the Gabaee Defendants are parties to the Gabaee Contracts.

429.    Shepos participated in the making of the Gabaee Contracts, as alleged herein.

430.    Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them.  Specifically, and without limitation, Shepos received, and expected to continue receiving, gifts, money, travel, spa treatments, and other in-kind benefits from the Gabaee Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Gabaee Contracts, through which the Gabaee Defendants received millions of dollars in public funds.

431.    As a result of the Gabaee Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Gabaee Contracts, and Shepos' resulting financial interest therein, the Gabaee Contracts were made in violation of Section 1090 and thus are void under Section 1092.

432. The County alleges that the foregoing violations of Section 1090 were knowing and willful.

433. The Gabaee Defendants' violations of Section 1090 caused damages to the County by diverting public funds from Plaintiff to the benefit of the Gabaee Defendants. The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Gabaee Defendants and all proceeds the Gabaee Defendants derived in connection with the Gabaee Contracts.

**Visco Defendants**

434. As a result of the scheme alleged herein involving Shepos and the Visco Defendants who had contracts with the County, or their affiliates, successors, or assignees, and the individuals who controlled or directed those contracting parties, each of the Visco Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

435. The County and the Visco Defendants are parties to the Visco Contracts.

436. Shepos participated in the making of the Visco Contracts, as alleged herein.

437. Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them. Specifically, and without limitation, Shepos received, and expected to continue receiving, paid vacations, gambling trips, cash, and other in-kind benefits from the Visco Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Visco Contracts, through which the Visco Defendants received millions of dollars in public funds.

438. As a result of the Visco Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Visco Contracts, and

FIRST AMENDED COMPLAINT-IN-INTERVENTION

Shepos' resulting financial interest therein, the Visco Contracts were made in violation of Section 1090 and thus are void under Section 1092.

439. The County alleges that the foregoing violations of Section 1090 were knowing and willful.

440. The Visco Defendants' violations of Section 1090 caused damages to the County by diverting public funds from Plaintiff to the benefit of the Visco Defendants. The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to Visco Defendants and all proceeds the Visco Defendants derived in connection with the Visco Contracts.

**Hanes Defendants**

441. As a result of the scheme alleged herein involving Shepos and the Hanes Defendants who had contracts with the County, or their affiliates, successors, or assignees, and the individuals who controlled or directed those contracting parties, each of the Hanes Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

442. The County and the Hanes Defendants are parties to the Hanes Contracts.

443. Shepos participated in the making of the Hanes Contracts, as alleged herein.

444. Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them. Specifically, and without limitation, Shepos received, and expected to continue receiving, valuable assistance in storing, hiding, and laundering illicit bribes and cash, and other in-kind benefits from the Hanes Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Hanes Contracts, through which the Hanes Defendants received millions of dollars in public funds.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

92

445.   As a result of the Hanes Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Hanes Contracts, and Shepos' resulting financial interest therein, the Hanes Contracts were made in violation of Section 1090 and thus are void under Section 1092.

446.   The County alleges that the foregoing violations of Section 1090 were knowing and willful.

447.   The Hanes Defendants' violations of Section 1090 caused damages to the County by diverting public funds from Plaintiff to the benefit of the Hanes Defendants.  The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Hanes Defendants and all proceeds that the Hanes Defendants derived in connection with the Hanes Contracts.

**Abbey Defendants**

448.   As a result of the scheme alleged herein involving Shepos and the Abbey Defendants who had contracts with the County, or their affiliates, successors, or assignees, and the individuals who controlled or directed those contracting parties, each of the Abbey Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

449.   The County and the Abbey Defendants are parties to the Abbey Contracts.

450.   Shepos participated in the making of the Abbey Contracts, as alleged herein.

451.   Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them.  Specifically, and without limitation, Shepos received, and expected to continue receiving, free home renovations and other in-kind benefits from the Abbey Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Abbey Contracts, through which the Abbey Defendants received millions of dollars in public funds.

703136.13

93

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

452.    As a result of the Abbey Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Abbey Contracts, and Shepos' resulting financial interest therein, the Abbey Contracts were made in violation of Section 1090 and thus are void under Section 1092.

453.    The County alleges that the foregoing violations of Section 1090 were knowing and willful.

454.    The Abbey Defendants' violations of Section 1090 caused damages to the County by diverting public funds from Plaintiff to the benefit of the Abbey Defendants.  The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Abbey Defendants and all proceeds the Abbey Defendants derived in connection with the Abbey Contracts.

**Neman Defendants**

455.    As a result of the scheme alleged herein involving Shepos and the Neman Defendants who entered the Neman Lease, or their affiliates, successors, or assignees, the Neman Lease is void, and all proceeds paid thereunder by the County must be returned to the County.

456.    The County and the Neman Defendants are parties to the Neman Lease.

457.    Shepos participated in the making of the Neman Lease, as alleged herein.

458.    Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them.  Specifically, and without limitation, Shepos received, and expected to continue receiving, cash and checks from the Neman Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Neman Lease, through which the Neman Defendants received millions of dollars in public funds.

459.    As a result of the Neman Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Neman

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Lease, and Shepos' resulting financial interest therein, the Neman Lease was made in violation of Section 1090 and thus is void under Section 1092.

460.   The County alleges that the foregoing violations of Section 1090 were knowing and willful.

461.   The Neman Defendants' violations of Section 1090 caused damages to the County by diverting public funds from Plaintiff to the benefit of the Neman Defendants.  The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Neman Defendants and all proceeds the Neman Defendants derived in connection with the Neman Lease.

## SECOND CLAIM FOR RELIEF

*Violation of California Government Code Sections 87100 & 91003*

**(By the County against Shepos, the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 1 - 100)**

462.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

463.   Government Code section 87100 ("Section 87100") provides that "[a] public official at any level of state or local government shall not make, participate in making, or in any way attempt to use the public official's official position to influence a governmental decision in which the official knows or has reason to know the official has a financial interest."

464.   Government Code section 91003(b) ("Section 91003") provides that "[i]f it is ultimately determined that a violation has occurred and that the official action might not otherwise have been taken or approved, the court may set the official action aside as void.  The official actions covered by this subsection include, but are not limited to, orders, permits, resolutions, and contracts . . . ."

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

465. Contracts in which County employees have a financial interest are void if those employees participate in or attempt to use their position to influence the making of the contract. Such conduct includes, but is not limited to, preliminary discussions, negotiations, compromises, reasoning, planning, drawing of plans and specifications, solicitation of bids, and the exercise of influence to affect the outcome of the foregoing.

466. Any and all proceeds derived from a contract voided under these statutes must be disgorged. When a contract is void under these contracts, the disgorgement remedy is automatic.

467. Under Government Code section 87103, in pertinent part, "[a] public official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official, a member of the official's immediate family, or . . . (c) Any source of income . . . aggregating five hundred dollars ($500) or more in value provided or promised to, received by, the public official within 12 months prior to the time when the decision is made."

**Gabaee Defendants**

468. As a result of the scheme alleged herein involving Shepos and the Gabaee Defendants, Shepos had a financial interest in each of the Gabaee Contracts, as a result of which each of the Gabaee Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

469. The County and the Gabaee Defendants are parties to the Gabaee Contracts.

470. Shepos participated in the making of the Gabaee Contracts, as alleged herein.

471. In doing the acts alleged herein, the Gabaee Defendants acted at Arman and Mark Gabaees' direction and/or with their permission, knowledge, consent, or ratification.

703136.13

96

FIRST AMENDED COMPLAINT-IN-INTERVENTION

472.    Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them.  Specifically, and without limitation, Shepos received, and expected to continue receiving, gifts, money, travel, spa treatments, and other in-kind benefits from the Gabaee Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Gabaee Contracts, through which the Gabaee Defendants received millions of dollars in public funds.

473.    As a result of the Gabaee Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Gabaee Contracts, and Shepos' resulting financial interest therein, the Gabaee Contracts were made in violation of Section 87100 and thus are void under Section 91003.

474.    The County alleges that the foregoing violations were knowing and willful.

475.    The foregoing violations caused damages to the County by diverting public funds from Plaintiff to the benefit of the Gabaee Defendants.  The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to Gabaee Defendants and all proceeds the Gabaee Defendants derived in connection with the Gabaee Contracts.

**Visco Defendants**

476.    As a result of the scheme alleged herein involving Shepos and the Visco Defendants, Shepos had a financial interest in each of the Visco Contracts, as a result of which each of the Visco Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

477.    The County and the Visco Defendants are parties to the Visco Contracts.

478.    Shepos participated in the making of the Visco Contracts, as alleged herein.

703136.13

97

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

479.   In doing the acts alleged herein, the Visco Defendants acted at Visco's direction and/or with his permission, knowledge, consent, or ratification.

480.   Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them.  Specifically, and without limitation, Shepos received, and expected to continue receiving, paid vacations, gambling trips, cash, and other in-kind benefits from the Visco Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Visco Contracts, through which the Visco Defendants received millions of dollars in public funds.

481.   As a result of the Visco Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Visco Contracts, and Shepos' resulting financial interest therein, the Visco Contracts were made in violation of Section 87100 and thus are void under Section 91003.

482.   The County alleges that the foregoing violations were knowing and willful.

483.   The foregoing violations caused damages to the County by diverting public funds from Plaintiff to the benefit of the Visco Defendants.  The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Visco Defendants and all proceeds the Visco Defendants derived in connection with the Visco Contracts.

**Hanes Defendants**

484.   As a result of the scheme alleged herein involving Shepos and the Hanes Defendants, Shepos had a financial interest in each of the Hanes Contracts, as a result of which each of the Hanes Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

485.   The County and the Hanes Defendants are parties to the Hanes Contracts.

FIRST AMENDED COMPLAINT-IN-INTERVENTION

486. Shepos participated in the making of the Hanes Contracts, as alleged herein.

487. In doing the acts alleged herein, the Hanes Defendants acted at Hanes' direction and/or with his permission, knowledge, consent, or ratification.

488. Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them. Specifically, and without limitation, Shepos received, and expected to continue receiving, valuable assistance in storing, hiding, and laundering illicit bribes and cash, and other in-kind benefits from the Hanes Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Hanes Contracts, through which the Hanes Defendants received millions of dollars in public funds.

489. As a result of the Hanes Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Hanes Contracts, and Shepos' resulting financial interest therein, the Hanes Contracts were made in violation of Section 87100 and thus are void under Section 91003.

490. The County alleges that the foregoing violations were knowing and willful.

491. The foregoing violations caused damages to the County by diverting public funds from Plaintiff to the benefit of the Hanes Defendants. The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Hanes Defendants and all proceeds the Hanes Defendants derived in connection with the Hanes Contracts.

**Abbey Defendants**

492. As a result of the scheme alleged herein involving Shepos and the Abbey Defendants, Shepos had a financial interest in each of the Abbey Contracts, as a result of which each of the Abbey Contracts is void, and all proceeds paid thereunder by the County must be returned to the County.

493.   The County and the Abbey Defendants are parties to the Abbey Contracts.

494.   Shepos participated in the making of the Abbey Contracts, as alleged herein.

495.   In doing the acts alleged herein, the Abbey Defendants acted at Abbey's direction and/or with his permission, knowledge, consent, or ratification.

496.   Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them.  Specifically, and without limitation, Shepos received, and expected to continue receiving, free home renovations and other in-kind benefits from the Abbey Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Abbey Contracts, through which the Abbey Defendants received millions of dollars in public funds.

497.   As a result of the Abbey Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Abbey Contracts, and Shepos' resulting financial interest therein, the Abbey Contracts were made in violation of Section 87100 and thus are void under Section 91003.

498.   The County alleges that the foregoing violations were knowing and willful.

499.   The foregoing violations caused damages to the County by diverting public funds from Plaintiff to the benefit of the Abbey Defendants.  The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Abbey Defendants and all proceeds the Abbey Defendants derived in connection with the Abbey Contracts.

**Neman Defendants**

500.   As a result of the scheme alleged herein involving Shepos and the Neman Defendants, Shepos had a financial interest in the Neman Lease, as a result

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

100

FIRST AMENDED COMPLAINT-IN-INTERVENTION

of which each the Neman Lease is void, and all proceeds paid thereunder by the County must be returned to the County.

501. The County and the Neman Defendants are parties to the Neman Lease.

502. Shepos participated in the making of the Neman Lease, as alleged herein.

503. In doing the acts alleged herein, the Neman Defendants acted at the Nemans' direction and/or with their permission, knowledge, consent, or ratification.

504. Shepos had a cognizable financial interest in the tainted contracts at the time he participated in making them. Specifically, and without limitation, Shepos received, and expected to continue receiving, cash and checks from the Neman Defendants in connection with, in exchange for, and in order to procure Shepos' participation in making the Neman Lease, through which the Neman Defendants received millions of dollars in public funds.

505. As a result of the Neman Defendants' gifts, payments, bribes, kickbacks, and other in-kind benefits to Shepos in connection with the Neman Lease, and Shepos' resulting financial interest therein, the Neman Lease was made in violation of Section 87100 and thus is void under Section 91003.

506. The County alleges that the foregoing violations were knowing and willful.

507. The foregoing violations caused damages to the County by diverting public funds from Plaintiff to the benefit of the Neman Defendants. The County seeks an award of damages in an amount that will be proven at trial, but which is in the millions of dollars, including disgorgement of all payments to the Neman Defendants and all proceeds the Neman Defendants derived in connection with the Neman Lease.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

101

FIRST AMENDED COMPLAINT-IN-INTERVENTION

# THIRD CLAIM FOR RELIEF

*Violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(1)*

**(By the County against Shepos, the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 1 - 100)**

508.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

509.   As relevant here, the CFCA provides for the award of damages and civil penalties for, among other acts, knowingly presenting or causing to be presented a false or fraudulent claim for payment or approval in violation of California Government Code section 12651(a)(1).

510.   This is a claim for treble damages, civil penalties, and costs brought by the County under the CFCA, California Government Code section 12650 *et seq.*

**Gabaee Defendants**

511.   All of the Gabaee Contracts were obtained through false statements and/or fraudulent conduct, namely the Gabaee Defendants' bribery of Shepos.

512.   As a result of the underlying bribery scheme, all payments requested and/or received by the Gabaee Defendants pursuant to the Gabaee Contracts—many including state subvened funds—constitute false claims.

513.   As alleged above, the Gabaee Defendants affirmatively misrepresented and expressly certified to the County that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Gabaee Contracts.  These representations were false when made and remained false throughout the contract approval process.

514.   As used herein, the term "knew" means to have actual knowledge of information, acting in deliberate ignorance of information, or acting in reckless disregard of information.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

515.   The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

516.   The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew that their express certifications that they had not provided consideration "in any form" to any public official were false.

517.   The Gabaee Defendants likewise knew the bribery scheme, and their misrepresentations and false certifications about the bribery scheme, were material to the County's award and execution of the Gabaee Contracts and its payment of funds thereunder.

518.   Shepos knowingly accepted bribes from the Gabaee Defendants in exchange for, among other things: (i) providing them with non-public County information relating to the County's leasing needs and bids, (ii) using his influence to ensure the Gabaee Contract proposals prevailed over their competitors and that the Board adopted such proposals, (iii) imposing contract terms that were beneficial to the Gabaee Defendants, (iv) approving exorbitant and unwarranted expenses and invoices to the County's detriment, and (v) intervening to ensure that disputes with the County or its agencies were resolved on terms favorable to the Gabaee Defendants.

519.   The Gabaee Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Gabaee Defendants, having the natural tendency to influence and/or being capable of influencing County action.

Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Gabaee Defendants' fraud.

520.   Had the County known of the Gabaee Defendants' bribery scheme, or that the Gabaee Defendants' certifications and express representations in the Gabaee Contracts were false, the County would never have executed the Gabaee Contracts or made payments to the Gabaee Defendants thereunder, as all of the foregoing Gabaee Contracts are unlawful and void *ab initio* and in their entirety pursuant to Sections 1090 and 1092.

521.   By their terms, the Gabaee Contracts called for payments from the County to the Gabaee Defendants.

522.   As a result of the Gabaee Defendants' fraudulent conduct, the County has paid the Gabaee Defendants millions of dollars in County funds pursuant to the Gabaee Contracts, in violation of the CFCA, by virtue of their bribery schemes involving Shepos.

523.   The County sustained damages because of the Gabaee Defendants' acts, in amounts to be proven at trial, including, but not limited to: (1) all amounts paid by the County to the Gabaee Defendants pursuant to the Gabaee Contracts, and (2) finding alternative spaces to lease for County departments.

524.   In doing the acts alleged herein, the Gabaee Defendants acted at Arman and Mark Gabaees' direction and/or with their permission, knowledge, consent, or ratification.

**Visco Defendants**

525.   All of the Visco Contracts were obtained through false statements and/or fraudulent conduct, namely the Visco Defendants' bribery of Shepos.

526.   As a result of the underlying bribery scheme, all payments requested and/or received by the Visco Defendants pursuant to the Visco Contracts—many including state subvened funds—constitute false claims.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

527.   As alleged above, the Visco Defendants affirmatively misrepresented and expressly certified to the County that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Visco Contracts.  These representations were false when made and remained false throughout the contract approval process.

528.   The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

529.   The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew that their express certifications that they had not provided consideration "in any form" to any public official were false.

530.   The Visco Defendants likewise knew the bribery scheme, and their misrepresentations and false certifications about the bribery scheme, were material to the County's award and execution of the Visco Contracts and its payment of funds thereunder.

531.   Shepos knowingly accepted bribes from the Visco Defendants in exchange for, among other things: (i) providing them with non-public County information relating to the County's leasing needs and bids, (ii) using his influence to ensure the Visco Contract proposals prevailed over their competitors and that the Board adopted such proposals, and (iii) approving exorbitant and unwarranted expenses and invoices to the County's detriment.

532.   The Visco Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Visco Defendants, having the

natural tendency to influence and/or being capable of influencing County action. Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Visco Defendants' fraud.

533.    Had the County known of the Visco Defendants' bribery scheme, or that the Visco Defendants' certifications and express representations in the Visco Contracts were false, the County would never have executed the Visco Contracts or made payments to the Visco Defendants thereunder, as all of the foregoing Visco Contracts are unlawful and void *ab initio* and in their entirety pursuant to Sections 1090 and 1092.

534.    By their terms, the Visco Contracts called for payments from the County to the Visco Defendants.

535.    As a result of Visco Defendants' fraudulent conduct, the County has paid the Visco Defendants millions of dollars in County funds pursuant to the Visco Contracts, in violation of the CFCA, by virtue of their bribery schemes involving Shepos.

536.    The County sustained damages because of the Visco Defendants' acts, in amounts to be proven at trial, including, but not limited to: (1) all amounts paid by the County to the Visco Defendants pursuant to the Visco Contracts, and (2) finding alternative spaces to lease for County departments.

537.    In doing the acts alleged herein, the Visco Defendants acted at Visco's direction and/or with his permission, knowledge, consent, or ratification.

**Hanes Defendants**

538.    All of the Hanes Contracts were obtained through false statements and/or fraudulent conduct, namely the Hanes Defendants' bribery of Shepos.

539.    As a result of the underlying bribery scheme, all payments requested and/or received by the Hanes Defendants pursuant to the Hanes Contracts—many including state subvened funds—constitute false claims.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

106

FIRST AMENDED COMPLAINT-IN-INTERVENTION

540.   As alleged above, the Hanes Defendants affirmatively misrepresented and expressly certified to the County that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Hanes contracts.  These representations were false when made and remained false throughout the contract approval process.

541.   The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

542.   The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew that their express certifications that they had not provided consideration "in any form" to any public official were false.

543.   The Hanes Defendants likewise knew the bribery scheme, and their misrepresentations and false certifications about the bribery scheme, were material to the County's award and execution of the Hanes Contracts and its payment of funds thereunder.

544.   Shepos knowingly accepted bribes from the Hanes Defendants in exchange for, among other things: (i) providing them with non-public County information relating to the County's leasing needs and bids, (ii) using his influence to ensure the Hanes Contract proposals prevailed over their competitors and that the Board adopted such proposals, and (iii) approving exorbitant and unwarranted expenses and invoices to the County's detriment.

545.   The Hanes Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Hanes Defendants, having the

natural tendency to influence and/or being capable of influencing County action. Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Hanes Defendants' fraud.

546.   Had the County known of the Hanes Defendants' bribery scheme, or that the Hanes Defendants' certifications and express representations in the Hanes Contracts were false, the County would never have executed the Hanes Contracts or made payments to the Hanes Defendants thereunder, as all of the foregoing Hanes Contracts are unlawful and void *ab initio* and in their entirety pursuant to Sections 1090 and 1092.

547.   By their terms, the Hanes Contracts called for payments from the County to the Hanes Defendants.

548.   As a result of Hanes Defendants' fraudulent conduct, the County has paid the Hanes Defendants millions of dollars in County funds pursuant to the Hanes Contracts, in violation of the CFCA, by virtue of their bribery schemes involving Shepos.

549.   The County sustained damages because of the Hanes Defendants' acts, in amounts to be proven at trial, including, but not limited to: (1) all amounts paid by the County to the Hanes Defendants pursuant to the Hanes Contracts, and (2) finding alternative spaces to lease for County departments.

550.   In doing the acts alleged herein, the Hanes Defendants acted at Hanes' direction and/or with his permission, knowledge, consent, or ratification.

**Abbey Defendants**

551.   All of the Abbey Contracts were obtained through false statements and/or fraudulent conduct, namely the Abbey Defendants' bribery of Shepos.

552.   As a result of the underlying bribery scheme, all payments requested and/or received by the Abbey Defendants pursuant to the Abbey Contracts—many including state subvened funds—constitute false claims.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

553.  As alleged above, the Abbey Defendants affirmatively misrepresented and expressly certified to the County that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Abbey Contracts.  These representations were false when made and remained false throughout the contract approval process.

554.  The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

555.  The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew that their express certifications that they had not provided consideration "in any form" to any public official were false.

556.  The Abbey Defendants likewise knew the bribery scheme, and their misrepresentations and false certifications about the bribery scheme, were material to the County's award and execution of the Abbey Contracts and its payment of funds thereunder.

557.  Shepos knowingly accepted bribes from the Abbey Defendants and in exchange for, among other things: (i) providing them with non-public County information relating to the County's leasing needs and bids, and (ii) using his influence to ensure the Abbey Contract proposals prevailed over their competitors and that the Board adopted such proposals.

558.  The Abbey Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Abbey Defendants, having the natural tendency to influence and/or being capable of influencing County action.

703136.13

109

Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Abbey Defendants' fraud.

559.    Had the County known of the bribery scheme, or that the Abbey Defendants' certifications and express representations in the Abbey Contracts were false, the County would never have executed the Abbey Contracts or made payments to the Abbey Defendants thereunder, as all of the foregoing Abbey Contracts are unlawful and void *ab initio* and in their entirety pursuant to Sections 1090 and 1092.

560.    By their terms, the Abbey Contracts called for payments from the County to the Abbey Defendants.

561.    As a result of Abbey Defendants' fraudulent conduct, the County has paid the Abbey Defendants millions of dollars in County funds pursuant to the Abbey Contracts, in violation of the CFCA, by virtue of their bribery schemes involving Shepos.

562.    The County sustained damages because of the Abbey Defendants' acts, in amounts to be proven at trial, including, but not limited to: (1) all amounts paid by the County to the Abbey Defendants pursuant to the Abbey Contracts, and (2) finding alternative spaces to lease for County departments.

563.    In doing the acts alleged herein, the Abbey Defendants acted at Abbey's direction and/or with his permission, knowledge, consent, or ratification.

**Neman Defendants**

564.    The Neman Lease was obtained through false statements and/or fraudulent conduct, namely the Neman Defendants' bribery of Shepos.

565.    As a result of the underlying bribery scheme, all payments requested and/or received by the Neman Defendants pursuant to the Neman Lease—many including state subvened funds—constitute false claims.

566.    As alleged above, the Neman Defendants affirmatively misrepresented and expressly certified to the County that they had not given any public official,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

703136.13

110

FIRST AMENDED COMPLAINT-IN-INTERVENTION

including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Neman Lease.  These representations were false when made and remained false throughout the contract approval process.

567.   The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

568.   The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew that their express certifications that they had not provided consideration "in any form" to any public official were false.

569.   The Neman Defendants likewise knew the bribery scheme, and their misrepresentations and false certifications about the bribery scheme, were material to the County's award and execution of the Neman Lease and its payment of funds thereunder.

570.   Shepos knowingly accepted bribes from the Neman Defendants in exchange for, among other things: (i) providing them with non-public County information relating to the County's leasing needs and bids, and (ii) using his influence to ensure the Neman Lease proposal prevailed over its competitors and that the Board adopted the proposal.

571.   The Neman Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Neman Defendants, having the natural tendency to influence and/or being capable of influencing County action. Plaintiff would not have approved the Neman Lease had it known of the Neman Defendants' fraud.

703136.13

111

572.   Had the County known of the Neman Defendants' bribery scheme, or that the Neman Defendants' certifications and express representations in the Lease were false, the County would never have executed the Lease or made payments to the Neman Defendants thereunder, as the Lease is unlawful and void *ab initio* and in its entirety pursuant to Sections 1090 and 1092.

573.   By its terms, the Neman Lease called for payments from the County to the Neman Defendants.

574.   As a result of Neman Defendants' fraudulent conduct, the County has paid the Neman Defendants millions of dollars in County funds pursuant to the Neman Lease, in violation of the CFCA, by virtue of their bribery schemes involving Shepos.

575.   The County sustained damages because of the Neman Defendants' acts, in amounts to be proven at trial, including, but not limited to: (1) all amounts paid by the County to the Neman Defendants pursuant to the Neman Lease, and (2) finding alternative spaces to lease for County departments.

576.   In doing the acts alleged herein, the Neman Defendants acted at the Nemans' direction and/or with their permission, knowledge, consent, or ratification.

## FOURTH CLAIM FOR RELIEF

*Violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(2)*

**(By the County against Shepos, the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 1 - 100)**

577.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

578.   As relevant here, the CFCA provides for the award of damages and civil penalties for, among other acts, knowingly making, using, or causing to be made or used a false record or statement material to a false or fraudulent claim in violation of California Government Code section 12651(a)(2).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

112

FIRST AMENDED COMPLAINT-IN-INTERVENTION

579. This is a claim for treble damages, civil penalties, and costs brought by the County under the CFCA, California Government Code section 12650 *et seq.*

**Gabaee Defendants**

580. By entering into the Gabaee Contracts with the County, the Gabaee Defendants each certified expressly and by implication to the County that the Gabaee Contracts complied with applicable law and did not involve any conflicts of interest.

581. The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, each expressly certified to the County, among other things, that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Gabaee Contracts. These representations were false when made and remained false throughout the Gabaee Contract approval process.

582. As a result of the underlying bribery scheme, all payments requested and/or received by the Gabaee Defendants pursuant to the Gabaee Contracts constitute false claims because the Gabaee Defendants misrepresented and falsely certified to the County that, among other things, the bidding process was fair and the Gabaee Contracts were lawful.

583. As used herein, the term "knew" means to have actual knowledge of information, acting in deliberate ignorance of information, or acting in reckless disregard of information.

584. The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos. In the alternative, the Gabaee Defendants were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

585.   The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew their bribery scheme rendered the bidding process unfair and unlawful and that their express certifications that they had not provided consideration "in any form" to any public official were false.

586.   The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, likewise knew their false claims, records, and statements were material to the County's award and execution of the Gabaee Contracts and its payment of funds thereunder.

587.   Shepos knowingly accepted bribes from the Gabaee Defendants in exchange for, among other things: (i) providing the Gabaee Defendants with non-public County information relating to the County's leasing needs and bids, (ii) using his influence to ensure the Gabaee Contract proposals prevailed over their competitors and that the Board adopted such proposals, (iii) imposing contract terms that were beneficial to the Gabaee Defendants, (iv) approving exorbitant and unwarranted expenses and invoices to the County's detriment, and (v) intervening to ensure that disputes with the County or its agencies were resolved on terms favorable to the Gabaee Defendants.

588.   The Gabaee Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Gabaee Defendants, having the natural tendency to influence and/or were capable of influencing County action. Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Gabaee Defendants' fraud.

589.   Had the County known of the bribery scheme, or that the Gabaee Defendants' certifications and express representations in the Gabaee Contracts were false, the County would never have executed the Gabaee Contracts or made

114

FIRST AMENDED COMPLAINT-IN-INTERVENTION

payments to the Gabaee Defendants thereunder, as all of the foregoing Gabaee Contracts are unlawful and void *ab initio* in their entirety pursuant to Section 1090.

590.   By their terms, the Gabaee Contracts called for payments from the County to the Gabaee Defendants.

591.   As a result of the Gabaee Defendants' fraudulent conduct, the County has paid the Gabaee Defendants millions of dollars, in County funds pursuant to the Gabaee Contracts, in violation of the CFCA, by virtue of their bribery scheme involving Shepos.

592.   The County sustained damages because of the Gabaee Defendants' acts, in amounts to be proven at trial, including, but not limited to, all amounts paid by the County to the Gabaee Defendants pursuant to the Gabaee Contracts.

**Visco Defendants**

593.   By entering into the Visco Contracts with the County, the Visco Defendants each certified expressly and by implication to the County that the Visco Contracts complied with applicable law and did not involve any conflicts of interest.

594.   The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, each expressly certified to the County, among other things, that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Visco Contracts.  These representations were false when made and remained false throughout the Visco Contract approval process.

595.   As a result of the underlying bribery scheme, all payments requested and/or received by the Visco Defendants pursuant to the Visco Contracts constitute false claims because the Visco Defendants misrepresented and falsely certified to the County that, among other things, the bidding process was fair and the Visco Contracts were lawful.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

115

FIRST AMENDED COMPLAINT-IN-INTERVENTION

596. The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos. In the alternative, the Visco Defendants were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

597. The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew their bribery scheme rendered the bidding process unfair and unlawful and their express certifications that they had not provided consideration "in any form" to any public official were false.

598. The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, likewise knew their false claims, records, and statements were material to the County's award and execution of the Visco Contracts and its payment of funds thereunder.

599. Shepos knowingly accepted bribes from the Visco Defendants in exchange for, among other things: (i) providing the Visco Defendants with non-public County information relating to the County's leasing needs and bids, (ii) using his influence to ensure the Visco Contract proposals prevailed over their competitors and that the Board adopted such proposals, and (iii) approving exorbitant and unwarranted expenses and invoices to the County's detriment.

600. The Visco Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Visco Defendants, having the natural tendency to influence and/or were capable of influencing County action. Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Visco Defendants' fraud.

601. Had the County known of the bribery scheme, or that the Visco Defendants' certifications and express representations in the Visco Contracts were

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

703136.13

116

FIRST AMENDED COMPLAINT-IN-INTERVENTION

false, the County would never have executed the Visco Contracts or made payments to the Visco Defendants thereunder, as all of the foregoing Visco Contracts are unlawful and void *ab initio* in their entirety pursuant to Section 1090.

602. By their terms, the Visco Contracts called for payments from the County to the Visco Defendants.

603. As a result of the Visco Defendants' fraudulent conduct, the County has paid the Visco Defendants millions of dollars in County funds pursuant to the Visco Contracts, in violation of the CFCA, by virtue of their bribery scheme involving Shepos.

604. The County sustained damages because of the Visco Defendants' acts, in amounts to be proven at trial, including, but not limited to, all amounts paid by the County to the Visco Defendants pursuant to the Visco Contracts.

**Hanes Defendants**

605. By entering into the Hanes Contracts with the County, the Hanes Defendants each certified expressly and by implication to the County that the Hanes Contracts complied with applicable law and did not involve any conflicts of interest.

606. The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, each expressly certified to the County, among other things, that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Hanes Contracts. These representations were false when made and remained false throughout the Hanes Contract approval process.

607. As a result of the underlying bribery scheme, all payments requested and/or received by the Hanes Defendants pursuant to the Hanes Contracts constitute false claims because the Hanes Defendants misrepresented and falsely certified to the County that, among other things, the bidding process was fair and the Hanes Contracts were lawful.

703136.13

117

FIRST AMENDED COMPLAINT-IN-INTERVENTION

608.    The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Hanes Defendants were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

609.    The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew their bribery scheme rendered the bidding process unfair and unlawful and that their express certifications that they had not provided consideration "in any form" to any public official were false.

610.    The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, likewise knew their false claims, records, and statements were material to the County's award and execution of the Hanes Contracts and its payment of funds thereunder.

611.    Shepos knowingly accepted bribes from the Hanes Defendants in exchange for, among other things: (i) providing the Hanes Defendants with non-public County information relating to the County's leasing needs and bids, (ii) using his influence to ensure the Hanes Contract proposals prevailed over their competitors and that the Board adopted such proposals, and (iii) approving exorbitant and unwarranted expenses and invoices to the County's detriment.

612.    The Hanes Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Hanes Defendants, having the natural tendency to influence and/or were capable of influencing County action. Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Hanes Defendants' fraud.

613.    Had the County known of the bribery scheme, or that the Hanes Defendants' certifications and express representations in the Hanes Contracts were

703136.13

118

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

false, the County would never have executed the Hanes Contracts or made payments to the Hanes Defendants thereunder, as all of the foregoing Hanes Contracts are unlawful and void *ab initio* in their entirety pursuant to Section 1090.

614.   By their terms, the Hanes Contracts called for payments from the County to the Hanes Defendants.

615.   As a result of the Hanes Defendants' fraudulent conduct, the County has paid the Hanes Defendants millions of dollars in County funds pursuant to the Hanes Contracts, in violation of the CFCA, by virtue of their bribery scheme involving Shepos.

616.   The County sustained damages because of the Hanes Defendants' acts, in amounts to be proven at trial, including, but not limited to, all amounts paid by the County to the Hanes Defendants pursuant to the Hanes Contracts.

**Abbey Defendants**

617.   By entering into the Abbey Contracts with the County, the Abbey Defendants each certified expressly and by implication to the County that the Abbey Contracts complied with applicable law and did not involve any conflicts of interest.

618.   The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, each expressly certified to the County, among other things, that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Abbey Contracts.  These representations were false when made and remained false throughout the Abbey Contract approval process.

619.   As a result of the underlying bribery scheme, all payments requested and/or received by the Abbey Defendants pursuant to the Abbey Contracts constitute false claims because the Abbey Defendants misrepresented and falsely certified to the County that, among other things, the bidding process was fair and the Abbey Contracts were lawful.

620.    The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Abbey Defendants were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

621.    The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew their bribery scheme rendered the bidding process unfair and unlawful and that their express certifications that they had not provided consideration "in any form" to any public official were false.

622.    The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, likewise knew their false claims, records, and statements were material to the County's award and execution of the Abbey Contracts and its payment of funds thereunder.

623.    Shepos knowingly accepted bribes from the Abbey Defendants in exchange for, among other things: (i) providing the Abbey Defendants with non-public County information relating to the County's leasing needs and bids, and (ii) using his influence to ensure the Abbey Contract proposals prevailed over their competitors and that the Board adopted such proposals.

624.    The Abbey Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Abbey Defendants, having the natural tendency to influence and/or were capable of influencing County action. Plaintiff would not have approved any of these contracts, amendments, or invoices had it known of the Abbey Defendants' fraud.

625.    Had the County known of the bribery scheme, or that the Abbey Defendants' certifications and express representations in the Abbey Contracts were false, the County would never have executed the Abbey Contracts or made

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

payments to the Abbey Defendants thereunder, as all of the foregoing Abbey Contracts are unlawful and void *ab initio* in their entirety pursuant to Section 1090.

626.   By their terms, the Abbey Contracts called for payments from the County to the Abbey Defendants.

627.   As a result of the Abbey Defendants' fraudulent conduct, the County has paid the Abbey Defendants millions of dollars in County funds pursuant to the Abbey Contracts, in violation of the CFCA, by virtue of their bribery scheme involving Shepos.

628.   The County sustained damages because of the Abbey Defendants' acts, in amounts to be proven at trial, including, but not limited to, all amounts paid by the County to the Abbey Defendants pursuant to the Abbey Contracts.

**Neman Defendants**

629.   By entering into the Neman Lease with the County, the Neman Defendants each certified expressly and by implication to the County that the Neman Lease complied with applicable law and did not involve any conflicts of interest.

630.   The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, each expressly certified to the County, among other things, that they had not given any public official, including Shepos, consideration "in any form" for the purpose of securing favorable treatment with respect to the award of the Neman Lease.  These representations were false when made and remained false throughout the Neman Lease approval process.

631.   As a result of the underlying bribery scheme, all payments requested and/or received by the Neman Defendants pursuant to the Neman Lease constitute false claims because the Neman Defendants misrepresented and falsely certified to the County that, among other things, the bidding process was fair and the Neman Lease was lawful.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

121

632.    The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly gave bribes to Shepos.  In the alternative, the Neman Defendants were deliberately ignorant of the bribery scheme and/or acted in reckless disregard of the bribery scheme.

633.    The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, also knew their bribery scheme rendered the bidding process unfair and unlawful and that their express certifications that they had not provided consideration "in any form" to any public official were false.

634.    The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, likewise knew their false claims, records, and statements were material to the County's award and execution of the Neman Lease and its payment of funds thereunder.

635.    Shepos knowingly accepted bribes from the Neman Defendants in exchange for, among other things: (i) providing the Neman Defendants with non-public County information relating to the County's leasing needs and bids, and (ii) using his influence to ensure the Neman Lease proposal prevailed over its competitors and that the Board adopted the proposal.

636.    The Neman Defendants' false and/or fraudulent claims were material to the County's decisions to contract with and pay the Neman Defendants, having the natural tendency to influence and/or were capable of influencing County action. Plaintiff would not have approved the Neman Lease, had it known of the Neman Defendants' fraud.

637.    Had the County known of the bribery scheme, or that the Neman Defendants' certifications and express representations in the Neman Lease were false, the County would never have executed the Neman Lease or made payments to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

the Neman Defendants thereunder, as the foregoing Neman Lease is unlawful and void *ab initio* in its entirety pursuant to Section 1090.

638.   By its term, the Neman Lease called for payments from the County to the Neman Defendants.

639.   As a result of the Neman Defendants' fraudulent conduct, the County has paid the Neman Defendants millions of dollars in County funds pursuant to the Neman Lease, in violation of the CFCA, by virtue of their bribery scheme involving Shepos.

640.   The County sustained damages because of the Neman Defendants' acts, in amounts to be proven at trial, including, but not limited to, all amounts paid by the County to the Neman Defendants pursuant to the Neman Lease.

## FIFTH CLAIM FOR RELIEF

### *Violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(3)*

### (By the County against all Defendants)

641.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

642.   As relevant here, the CFCA provides for the award of damages and civil penalties for, among other acts, conspiring to commit a violation of the CFCA in violation of California Government Code section 12651(a)(3).

643.   This is a claim for treble damages, civil penalties, and costs brought by the County under the CFCA, California Government Code section 12650 *et seq.*

**Gabaee Defendants**

644.   Shepos, on the one hand, and the Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, on the other hand, agreed between them to commit the unlawful acts alleged herein with the objective of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

703136.13

123

FIRST AMENDED COMPLAINT-IN-INTERVENTION

securing approval of the Gabaee Contracts that, by virtue of the unlawful bribery scheme alleged herein, were unlawful and injurious to Plaintiff.

645.   The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, agreed to provide bribes to Shepos, and Shepos agreed to accept bribes from the Gabaee Defendants in exchange for providing non-public County information and other assistance to fraudulently obtain the Gabaee Contracts, pursuant to which the County would pay the Gabaee Defendants millions of dollars in taxpayer funds.

646.   As a result of the foregoing, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Gabaee Defendants pursuant to the Gabaee Contracts.

**Visco Defendants**

647.   Shepos, on the one hand, and the Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, on the other hand, agreed between them to commit the unlawful acts alleged herein with the objective of securing approval of the Visco Contracts that, by virtue of the unlawful bribery scheme alleged herein, were unlawful and injurious to Plaintiff.

648.   The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, agreed to provide bribes to Shepos, and Shepos agreed to accept bribes from the Visco Defendants in exchange for providing non-public County information and other assistance to fraudulently obtain the Visco Contracts, pursuant to which the County would pay the Visco Defendants millions of dollars in taxpayer funds.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

649.   As a result of the foregoing, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Visco Defendants pursuant to the Visco Contracts.

**Hanes Defendants**

650.   Shepos, on the one hand, and the Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, on the other hand, agreed between them to commit the unlawful acts alleged herein with the objective of securing approval of the Hanes Contracts that, by virtue of the unlawful bribery scheme alleged herein, were unlawful and injurious to Plaintiff.

651.   The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, agreed to provide bribes to Shepos, and Shepos agreed to accept bribes from the Hanes Defendants in exchange for providing non-public County information and other assistance to fraudulently obtain the Hanes Contracts, pursuant to which the County would pay the Hanes Defendants millions of dollars in taxpayer funds.

652.   Hanes also conspired with Shepos by agreeing to serve as a conduit for bribe payments from the Gabaee, Visco, Neman, and Abbey Defendants and by assisting Shepos in hiding the bribe payments they exchanged for the purpose of causing the County to pay out millions of dollars in taxpayer funds under the fraudulent Contracts.

653.   As a result of the foregoing, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Hanes Defendants pursuant to the Hanes Contracts.

**Abbey Defendants**

654.   Shepos, on the one hand, and the Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

corporate Defendants who contracted with the County, on the other hand, agreed between them to commit the unlawful acts alleged herein with the objective of securing approval of the Abbey Contracts that, by virtue of the unlawful bribery scheme alleged herein, were unlawful and injurious to Plaintiff.

655.    The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, agreed to provide bribes to Shepos, and Shepos agreed to accept bribes from the Abbey Defendants in exchange for providing non-public County information and other assistance to fraudulently obtain the Abbey Contracts, pursuant to which the County would pay the Abbey Defendants millions of dollars in taxpayer funds.

656.    As a result of the foregoing conspiracy, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Abbey Defendants pursuant to the Abbey Contracts.

**Neman Defendants**

657.    Shepos, on the one hand, and the Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, on the other hand, agreed between them to commit the unlawful acts alleged herein with the objective of securing approval of the Neman Lease that, by virtue of the unlawful bribery scheme alleged herein, was unlawful and injurious to Plaintiff.

658.    The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, agreed to provide bribes to Shepos, and Shepos agreed to accept bribes from the Neman Defendants in exchange for providing non-public County information and other assistance to fraudulently obtain the Neman Lease, pursuant to which the County would pay the Neman Defendants millions of dollars in taxpayer funds.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

FIRST AMENDED COMPLAINT-IN-INTERVENTION

659.   As a result of the foregoing conspiracy, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Neman Defendants pursuant to the Neman Lease.

## SIXTH CLAIM FOR RELIEF

### *Violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(8)*

**(By the County against the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 1 - 150)**

660.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

661.   As relevant here, the CFCA provides for the award of damages and civil penalties for, among other acts, benefitting from an inadvertent submission of a false claim, subsequently discovering the falsity of the claim, and then failing to disclose the false claim to the County within a reasonable time after discovery, in violation of California Government Code section 12651(a)(8).

662.   This is a claim for treble damages, civil penalties, and costs brought by the County under the CFCA, California Government Code section 12650 *et seq*.

**Gabaee Defendants**

663.   To the extent any of the Gabaee Defendants did not knowingly participate in the bribery scheme with Shepos, each of these Defendants directly benefitted from an inadvertent submission of a false claim to the County, as each received payments under the Gabaee Contracts that were the direct result of the underlying bribery scheme.

664.   The Gabaee Defendants subsequently discovered the falsity of such claims.  At the latest, the Gabaee Defendants should have discovered the falsity of the aforementioned claims at or around the time Shepos' Plea Agreement was filed on September 5, 2018.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

703136.13

127

665. To date, the Gabaee Defendants have all failed to disclose the falsity of these claims to the County.

666. As a result of Shepos' and the Gabaee Defendants' inadvertent benefit from and failure to disclose the aforementioned false claims, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Gabaee Defendants pursuant to the Gabaee Contracts.

**Visco Defendants**

667. To the extent any of the Visco Defendants did not knowingly participate in the bribery scheme with Shepos, each of these Defendants directly benefitted from an inadvertent submission of a false claim to the County, as each received payments under the Visco Contracts that were the direct result of the underlying bribery scheme.

668. The Visco Defendants subsequently discovered the falsity of such claims. At the latest, the Visco Defendants should have discovered the falsity of the aforementioned claims at or around the time Shepos' Plea Agreement was filed on September 5, 2018.

669. To date, the Visco Defendants have all failed to disclose the falsity of these claims to the County.

670. As a result of Shepos' and the Visco Defendants' inadvertent benefit from and failure to disclose the aforementioned false claims, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Visco Defendants pursuant to the Visco Contracts.

**Hanes Defendants**

671. To the extent any of the Hanes Defendants did not knowingly participate in the bribery scheme with Shepos, each of these Defendants directly benefitted from an inadvertent submission of a false claim to the County, as each

703136.13

128

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

received payments under the Hanes Contracts that were the direct result of the underlying bribery scheme.

672. The Hanes Defendants subsequently discovered the falsity of such claims. At the latest, the Hanes Defendants should have discovered the falsity of the aforementioned claims at or around the time Shepos' Plea Agreement was filed on September 5, 2018.

673. To date, the Hanes Defendants have all failed to disclose the falsity of these claims to the County.

674. As a result of Shepos' and the Hanes Defendants' inadvertent benefit from and failure to disclose the aforementioned false claims, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Hanes Defendants pursuant to the Hanes Contracts.

**Abbey Defendants**

675. To the extent any of the Abbey Defendants did not knowingly participate in the bribery scheme with Shepos, each of these Defendants directly benefitted from an inadvertent submission of a false claim to the County, as each received payments under the Abbey Contracts that were the direct result of the underlying bribery scheme.

676. The Abbey Defendants subsequently discovered the falsity of such claims. At the latest, the Abbey Defendants should have discovered the falsity of the aforementioned claims at or around the time Shepos' Plea Agreement was filed on September 5, 2018.

677. To date, the Abbey Defendants have all failed to disclose the falsity of these claims to the County.

678. As a result of Shepos' and the Abbey Defendants' inadvertent benefit from and failure to disclose the aforementioned false claims, the County sustained damages in an amount to be determined at trial, including, but not limited to, all

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

amounts paid by the County to the Abbey Defendants pursuant to the Abbey Contracts.

**Neman Defendants**

679.   To the extent any of the Neman Defendants did not knowingly participate in the bribery scheme with Shepos, each of these Defendants directly benefitted from an inadvertent submission of a false claim to the County, as each received payments under the Neman Lease that were the direct result of the underlying bribery scheme.

680.   The Neman Defendants subsequently discovered the falsity of such claims.  At the latest, the Neman Defendants should have discovered the falsity of the aforementioned claims at or around the time Shepos' Plea Agreement was filed on September 5, 2018.

681.   To date, the Neman Defendants have all failed to disclose the falsity of these claims to the County.

682.   As a result of Shepos' and the Neman Defendants' inadvertent benefit from and failure to disclose the aforementioned false claims, the County sustained damages in an amount to be determined at trial, including, but not limited to, all amounts paid by the County to the Neman Defendants pursuant to the Neman Lease.

**SEVENTH CLAIM FOR RELIEF**

*Violation of California's Unfair Competition Law,*

*Cal. Bus. & Prof. Code § 17200 et seq.*

**(by the County against the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 51 - 150)**

683.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

684.   Pursuant to California Business and Professions Code sections 17204 and 17206, the County is authorized to bring a civil action for the assessment and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

recovery of restitution and civil penalties for each violation of the Unfair Competition Law, Business and Professions Code sections 17200 to 17210.

685.   The Unfair Competition Law, California Business and Professions Code section 17200 *et seq.*, prohibits any person from engaging in unfair competition as that term is defined in California Business and Professions Code section 17200, which includes any "unlawful, unfair or fraudulent business act or practice," "unfair, deceptive, untrue or misleading advertising," and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the California Business and Professions Code.

**Gabaee Defendants**

686.   The Gabaee Defendants have engaged in acts or practices, as alleged herein, that are unlawful, unfair, or fraudulent and which constitute unfair competition within the meaning of section 17200 of the Business and Professions Code.  These acts or practices include, but are not limited to, the following:

a)   Engaging in the underlying bribery scheme to make and procure County contracts in violation of California Government Code sections 1090, 1092, 87100 and 91003;

b)   Presenting to the County false and/or fraudulent claims for payment in violation of California Government Code section 12651(a)(1);

c)   Making and/or using false records or statements that are material to false or fraudulent claims for payments submitted to the County in violation of California Government Code section 12651(a)(2);

d)   Conspiring to violate the aforementioned sections of the California False Claims Act in violation of California Government Code section 12651(a)(3);

e)   Benefiting from the inadvertent submission of false claims for payment to the County, subsequently discovering the falsity of the claims, and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

131

FIRST AMENDED COMPLAINT-IN-INTERVENTION

failing to disclose the falsity of such claims as required by California Government Code section 12651(a)(8); and/or

f)      Preventing, by their bribery scheme and unfair practices, other, honest businesspersons within the County from competing for County leases.

687.   As a result of the Gabaee Defendants' unlawful, fraudulent, unfair, and deceptive business practices, the County has suffered an injury in fact and lost money in an amount to be determined at trial.

688.   Pursuant to California Business and Professions Code sections 17203 and 17204, the County is entitled to the money and property the Gabaee Defendants acquired as a result of their unfair practices.

**Visco Defendants**

689.   The Visco Defendants have engaged in acts or practices, as alleged herein, that are unlawful, unfair, or fraudulent and which constitute unfair competition within the meaning of section 17200 of the Business and Professions Code.  These acts or practices include, but are not limited to, the following:

a)      Engaging in the underlying bribery scheme to make and procure the Visco Contracts in violation of California Government Code sections 1090, 1092, 87100 and 91003;

b)      Presenting to the County false and/or fraudulent claims for payment in violation of California Government Code section 12651(a)(1);

c)      Making and/or using false records or statements that are material to false or fraudulent claims for payments submitted to the County in violation of California Government Code section 12651(a)(2);

d)      Conspiring to violate the aforementioned sections of the California False Claims Act in violation of California Government Code section 12651(a)(3);

e)      Benefiting from the inadvertent submission of false claims for payment to the County, subsequently discovering the falsity of the claims, and

132

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

failing to disclose the falsity of such claims as required by California Government Code section 12651(a)(8); and/or

f)      Preventing, by their bribery scheme and unfair practices, other, honest businesspersons within the County from competing for County leases.

690.   As a result of the Visco Defendants' unlawful, fraudulent, unfair, and deceptive business practices, the County has suffered an injury in fact and lost money in an amount to be determined at trial.

691.   Pursuant to California Business and Professions Code sections 17203 and 17204, the County is entitled to the money and property the Visco Defendants acquired as a result of their unfair practices.

**Hanes Defendants**

692.   The Hanes Defendants have engaged in acts or practices, as alleged herein, that are unlawful, unfair, or fraudulent and which constitute unfair competition within the meaning of section 17200 of the Business and Professions Code.  These acts or practices include, but are not limited to, the following:

a)      Engaging in the underlying bribery scheme to make and procure the Hanes Contracts in violation of California Government Code sections 1090, 1092, 87100 and 91003;

b)      Presenting to the County false and/or fraudulent claims for payment in violation of California Government Code section 12651(a)(1);

c)      Making and/or using false records or statements that are material to false or fraudulent claims for payments submitted to the County in violation of California Government Code section 12651(a)(2);

d)      Conspiring to violate the aforementioned sections of the California False Claims Act in violation of California Government Code section 12651(a)(3);

e)      Benefiting from the inadvertent submission of false claims for payment to the County, subsequently discovering the falsity of the claims, and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

failing to disclose the falsity of such claims as required by California Government Code section 12651(a)(8); and/or

      f)     Preventing, by their bribery scheme and unfair practices, other, honest businesspersons within the County from competing for County leases.

693.   As a result of the Hanes Defendants' unlawful, fraudulent, unfair, and deceptive business practices, the County has suffered an injury in fact and lost money in an amount to be determined at trial.

694.   Pursuant to California Business and Professions Code sections 17203 and 17204, the County is entitled to the money and property the Hanes Defendants acquired as a result of their unfair practices.

**Abbey Defendants**

695.   The Abbey Defendants have engaged in acts or practices, as alleged herein, that are unlawful, unfair, or fraudulent and which constitute unfair competition within the meaning of section 17200 of the Business and Professions Code.  These acts or practices include, but are not limited to, the following:

      a)     Engaging in the underlying bribery schemes to make and procure the Abbey Contracts in violation of California Government Code sect sections 1090, 1092, 87100 and 91003;

      b)     Presenting to the County false and/or fraudulent claims for payment in violation of California Government Code section 12651(a)(1);

      c)     Making and/or using false records or statements that are material to false or fraudulent claims for payments submitted to the County in violation of California Government Code section 12651(a)(2);

      d)     Conspiring to violate the aforementioned sections of the California False Claims Act in violation of California Government Code section 12651(a)(3);

      e)     Benefiting from the inadvertent submission of false claims for payment to the County, subsequently discovering the falsity of the claims, and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

failing to disclose the falsity of such claims as required by California Government Code section 12651(a)(8); and/or

f)      Preventing, by their bribery scheme and unfair practices, other, honest businesspersons within the County from competing for County leases.

696.   As a result of the Abbey Defendants' unlawful, fraudulent, unfair, and deceptive business practices, the County has suffered an injury in fact and lost money in an amount to be determined at trial.

697.   Pursuant to California Business and Professions Code sections 17203 and 17204, the County is entitled to the money and property the Abbey Defendants acquired as a result of their unfair practices.

**Neman Defendants**

698.   The Neman Defendants have engaged in acts or practices, as alleged herein, that are unlawful, unfair, or fraudulent and which constitute unfair competition within the meaning of section 17200 of the Business and Professions Code.  These acts or practices include, but are not limited to, the following:

a)      Engaging in the underlying bribery schemes to make and procure the Neman Lease in violation of California Government Code sections 1090, 1092, 87100 and 91003;

b)      Presenting to the County false and/or fraudulent claims for payment in violation of California Government Code section 12651(a)(1);

c)      Making and/or using false records or statements that are material to false or fraudulent claims for payments submitted to the County in violation of California Government Code section 12651(a)(2);

d)      Conspiring to violate the aforementioned sections of the California False Claims Act in violation of California Government Code section 12651(a)(3);

e)      Benefiting from the inadvertent submission of false claims for payment to the County, subsequently discovering the falsity of the claims, and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

135

failing to disclose the falsity of such claims as required by California Government Code section 12651(a)(8); and/or

f)      Preventing, by their bribery scheme and unfair practices, other, honest businesspersons within the County from competing for County leases.

699.   As a result of the Neman Defendants' unlawful, fraudulent, unfair, and deceptive business practices, the County has suffered an injury in fact and lost money in an amount to be determined at trial.

700.   Pursuant to California Business and Professions Code sections 17203 and 17204, the County is entitled to the money and property the Neman Defendants acquired as a result of their unfair practices.

## EIGHTH CLAIM FOR RELIEF

### *Fraud*

### (By the County against all Defendants)

701.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

**Gabaee Defendants**

702.   Shepos facilitated and/or approved County contracts with and payments to the Gabaee Defendants while concealing his improper financial interests in the Gabaee Contracts and receipt of payments as a result of the bribery scheme.

703.   During period they were bribing Shepos, the Gabaee Defendants, by and through the individual Defendants who owned managed, directed, or controlled the corporate Defendants who contracted with the County, repeatedly represented to the County, verbally, in writing, and through their course of conduct, that they were leasing their property and performing work as required under the Gabaee Contracts for and on behalf of the County and to advance legitimate objectives of the County.

704.   Additionally, by entering into the Gabaee Contracts with the County, the Gabaee Defendants, by and through the individual Defendants who owned,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

136

managed, directed, or controlled the corporate Defendants who contracted with the County, each expressly certified to the County that the Gabaee Contracts complied with applicable law and did not involve conflicts of interest.

705.   As a result of their involvement in the bribery schemes, the Gabaee Defendants' representations were false.

706.   The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew these representations and certifications were false and intended that the County would rely on their misrepresentations and false certifications to pay them millions of dollars under the fraudulently obtained Gabaee Contracts.

707.   Additionally, Shepos and the Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly, and by mutual agreement among them, concealed material information concerning their bribery scheme from the County and did so in order to continue to misappropriate funds for their own personal use and the use of their co-conspirators.

708.   The County reasonably relied on Shepos' and the Gabaee Defendants' representations and omissions in entering into the fraudulent Gabaee Contracts and in paying millions of dollars to the Gabaee Defendants under the fraudulently obtained Gabaee Contracts.

709.   As a result of the County's reasonable reliance on the above express and implied misrepresentations by Shepos and the Gabaee Defendants, and the County's reasonable reliance on the fraudulent concealment of the bribery scheme, the County has been damaged in the amount of millions of dollars in public funds that have been diverted and lost or stolen.

710.   The Gabaee Defendants' conduct in making the above misrepresentations and intentionally concealing material facts from the County was

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

intentional, malicious, oppressive, and fraudulent, and was intended to vex, harass, and harm the County such that the County is entitled to an award of punitive damages against each of the Gabaee Defendants in an amount to be determined at trial.

711. Additionally, the wrongful acts described in this First Amended Complaint-in-Intervention by the Gabaee Defendants, and each of them, involving the misuse and misappropriation of public funds, as well as concealment of the Gabaee Defendants' bribery scheme, were done in furtherance of a conspiracy to defraud and cheat the County.

712. In doing the acts alleged herein pursuant to their conspiracy, the Gabaee Defendants acted willfully and with the intent to cause injury to the County. The Gabaee Defendants acted with fraud, malice, oppression, and in conscious disregard of the County's rights, and acted to vex, harass, and harm the County. As a result, the County is entitled to an award of punitive damages and exemplary damages in an amount to be determined at trial.

**Visco Defendants**

713. Shepos facilitated and/or approved County contracts with and payments to the Visco Defendants while concealing his improper financial interests in the Visco Contracts and receipt of payments as a result of the bribery scheme.

714. During period they were bribing Shepos, the Visco Defendants, by and through the individual Defendants who owned managed, directed, or controlled the corporate Defendants who contracted with the County, repeatedly represented to the County, verbally, in writing, and through their course of conduct, that they were leasing their property and performing work as required under the Visco Contracts for and on behalf of the County and to advance legitimate objectives of the County.

715. Additionally, by entering into the Visco Contracts with the County, the Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

each expressly certified to the County that the Visco Contracts complied with applicable law and did not involve conflicts of interest.

716. As a result of their involvement in the bribery schemes, the Visco Defendants' representations were false.

717. The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew these representations and certifications were false and intended that the County would rely on their misrepresentations and false certifications to pay them millions of dollars under the fraudulently obtained Visco Contracts.

718. Additionally, the Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly, and by mutual agreement among them, concealed material information concerning their bribery scheme from the County and did so in order to continue to misappropriate funds for their own personal use and the use of their co-conspirators.

719. The County reasonably relied on Shepos' and the Visco Defendants' representations and omissions in entering into the fraudulent Visco Contracts and in paying millions of dollars to the Visco Defendants under the fraudulently obtained Visco Contracts.

720. As a result of the County's reasonable reliance on the above express and implied misrepresentations by Shepos and the Visco Defendants, and the County's reasonable reliance on the fraudulent concealment of the bribery scheme, the County has been damaged in the amount of millions of dollars in public funds that have been diverted and lost or stolen.

721. The Visco Defendants' conduct in making the above misrepresentations and intentionally concealing material facts from the County was intentional, malicious, oppressive, and fraudulent, and was intended to vex, harass,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

and harm the County such that the County is entitled to an award of punitive damages against each of the Visco Defendants in an amount to be determined at trial.

722.   Additionally, the wrongful acts described in this First Amended Complaint-in-Intervention by the Visco Defendants, and each of them, involving the misuse and misappropriation of public funds, as well as concealment of the Visco Defendants' bribery scheme, were done in furtherance of a conspiracy to defraud and cheat the County.

723.   In doing the acts alleged herein pursuant to their conspiracy, the Visco Defendants acted willfully and with the intent to cause injury to the County.  The Visco Defendants acted with fraud, malice, oppression, and in conscious disregard of the County's rights, and acted to vex, harass, and harm the County.  As a result, the County is entitled to an award of punitive damages and exemplary damages in an amount to be determined at trial.

**Hanes Defendants**

724.   Shepos facilitated and/or approved County contracts with and payments to the Hanes Defendants while concealing his improper financial interests in the Hanes Contracts and receipt of payments as a result of the bribery scheme.

725.   During the period they were bribing Shepos, the Hanes Defendants, by and through the individual Defendants who owned managed, directed, or controlled, the corporate Defendants who contracted with the County, repeatedly represented to the County, verbally, in writing, and through their course of conduct, that they were leasing their property and performing work as required under the Hanes Contracts for and on behalf of the County and to advance legitimate objectives of the County.

726.   Additionally, by entering into the Hanes Contracts with the County, the Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

140

FIRST AMENDED COMPLAINT-IN-INTERVENTION

each expressly certified to the County that the Hanes Contracts complied with applicable law and did not involve conflicts of interest.

727. As a result of their involvement in the bribery schemes, the Hanes Defendants' representations were false.

728. The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew these representations and certifications were false and intended that the County would rely on their misrepresentations and false certifications to pay them millions of dollars under the fraudulently obtained Hanes Contracts.

729. Additionally, Shepos and the Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly, and by mutual agreement among them, concealed material information concerning their bribery scheme from the County and did so in order to continue to misappropriate funds for their own personal use and the use by their co-conspirators.

730. The County reasonably relied on Shepos' and the Hanes Defendants' representations and omissions in entering into the fraudulent Hanes Contracts and in paying millions of dollars to the Hanes Defendants under the fraudulently obtained Hanes Contracts.

731. As a result of the County's reasonable reliance on the above express and implied misrepresentations by Shepos and the Hanes Defendants, and the County's reasonable reliance on the fraudulent concealment of the bribery scheme, the County has been damaged in the amount of millions of dollars in public funds that have been diverted and lost or stolen.

732. The Hanes Defendants' conduct in making the above misrepresentations and intentionally concealing material facts from the County was intentional, malicious, oppressive, and fraudulent, and was intended to vex, harass,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

and harm the County such that the County is entitled to an award of punitive damages against each of the Hanes Defendants in an amount to be determined at trial.

733.   Additionally, the wrongful acts described in this First Amended Complaint-in-Intervention by the Hanes Defendants, and each of them, involving the misuse and misappropriation of public funds, as well as concealment of the Hanes Defendants' bribery scheme, were done in furtherance of a conspiracy to defraud and cheat the County.

734.   In doing the acts alleged herein pursuant to their conspiracy, the Hanes Defendants acted willfully and with the intent to cause injury to the County.  The Hanes Defendants acted with fraud, malice, oppression, and in conscious disregard of the County's rights, and acted to vex, harass, and harm the County.  As a result, the County is entitled to an award of punitive damages and exemplary damages in an amount to be determined at trial.

**Abbey Defendants**

735.   Shepos facilitated and/or approved County contracts with and payments to the Abbey Defendants while concealing his improper financial interests in the Abbey Contracts and receipt of payments as a result of the bribery scheme.

736.   During the period they were bribing Shepos, the Abbey Defendants, by and through the individual Defendants who owned managed, directed, or controlled, the corporate Defendants who contracted with the County, repeatedly represented to the County, verbally, in writing, and through their course of conduct, that they were leasing their property and performing work as required under the Abbey Contracts for and on behalf of the County and to advance legitimate objectives of the County.

737.   Additionally, by entering into the Abbey Contracts with the County, the Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

each expressly certified to the County that the Abbey Contracts complied with applicable law and did not involve conflicts of interest.

738. As a result of their involvement in the bribery schemes, the Abbey Defendants' representations were false.

739. The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew that these representations and certifications were false and intended that the County would rely on their misrepresentations and false certifications to pay them millions of dollars under the fraudulently obtained Abbey Contracts.

740. Additionally, Shepos and the Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly, and by mutual agreement among them, concealed material information concerning their bribery scheme from the County and did so in order to continue to misappropriate funds for their own personal use and the use of their co-conspirators.

741. The County reasonably relied on Shepos' and the Abbey Defendants' representations and omissions in entering into the fraudulent Abbey Contracts and in paying millions of dollars to the Abbey Defendants under the fraudulently obtained Abbey Contracts.

742. As a result of the County's reasonable reliance on the above express and implied misrepresentations by Shepos and the Abbey Defendants, and the County's reasonable reliance on the fraudulent concealment of the bribery scheme, the County has been damaged in the amount of millions of dollars in public funds that have been diverted and lost or stolen.

743. The Abbey Defendants' conduct in making the above misrepresentations and intentionally concealing material facts from the County was intentional, malicious, oppressive, and fraudulent, and was intended to vex, harass,

and harm the County such that the County is entitled to an award of punitive damages against each of the Abbey Defendants in an amount to be determined at trial.

744.    Additionally, the wrongful acts described in this First Amended Complaint-in-Intervention by the Abbey Defendants, and each of them, involving the misuse and misappropriation of public funds, as well as concealment of the Abbey Defendants' bribery scheme, were done in furtherance of a conspiracy to defraud and cheat the County.

745.    In doing the acts alleged herein pursuant to their conspiracy, the Abbey Defendants acted willfully and with the intent to cause injury to the County.  The Abbey Defendants acted with fraud, malice, oppression, and in conscious disregard of the County's rights, and acted to vex, harass, and harm the County.  As a result, the County is entitled to an award of punitive damages and exemplary damages in an amount to be determined at trial.

**Neman Defendants**

746.    Shepos facilitated and/or approved the Neman Lease with and payments to the Neman Defendants while concealing his improper financial interests in the Neman Lease and receipt of payments as a result of the bribery scheme.

747.    During the period they were bribing Shepos, the Neman Defendants, by and through the individual Defendants who owned managed, directed, or controlled, the corporate Defendants who contracted with the County, repeatedly represented to the County, verbally, in writing, and through their course of conduct, that they were leasing their property and performing work as required under the Neman Lease for and on behalf of the County and to advance legitimate objectives of the County.

748.    Additionally, by entering into the Neman Lease with the County, the Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

144

County, each expressly certified to the County that the Neman Lease complied with applicable law and did not involve conflicts of interest.

749. As a result of their involvement in the bribery schemes, the Neman Defendants representations were false.

750. The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew that these representations and certifications were false and intended that the County would rely on their misrepresentations and false certifications to pay them millions of dollars under the fraudulently obtained Neman Lease.

751. Additionally, Shepos and the Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knowingly, and by mutual agreement among them, concealed material information concerning their bribery scheme from the County and did so in order to continue to misappropriate funds for their own personal use and for the use by their coconspirators.

752. The County reasonably relied on Shepos' and the Neman Defendants' representations and omissions in entering into the fraudulent Neman Lease and in paying millions of dollars to the Neman Defendants under the fraudulently obtained Neman Lease.

753. As a result of the County's reasonable reliance on the above express and implied misrepresentations by Shepos and the Neman Defendants, and the County's reasonable reliance on the their fraudulent concealment of the bribery scheme, the County has been damaged in the amount of millions of dollars in public funds that have been diverted and lost or stolen.

754. The Neman Defendants' conduct in making the above misrepresentations and intentionally concealing material facts from the County was intentional, malicious, oppressive, and fraudulent, and was intended to vex, harass

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

and harm the County such that the County is entitled to an award of punitive damages against each of the Neman Defendants in an amount to be determined at trial.

755.   Additionally, the wrongful acts described in this First Amended Complaint-in-Intervention by the Neman Defendants, and each of them, involving the misuse and misappropriation of public funds, as well as concealment of the Neman Defendants' bribery scheme, were done in furtherance of a conspiracy to defraud and cheat the County.

756.   In doing the acts alleged herein pursuant to their conspiracy, the Neman Defendants acted willfully and with the intent to cause injury to the County.  The Neman Defendants acted with fraud, malice, oppression, and in conscious disregard of the County's rights, and acted to vex, harass and harm the County.  As a result, the County is entitled to an award of punitive damages and exemplary damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### *Unjust Enrichment/Restitution*

**(By the County against the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 1 - 150)**

757.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

**Gabaee Defendants**

758.   The Gabaee Defendants have unjustly received benefits at the expense of the County.

759.   As a result of the underlying bribery scheme, the Gabaee Defendants received payments pursuant to the Gabaee Contracts that were improperly steered to them, approved as a result of the underlying bribery scheme, and void as a matter of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

law given the Gabaee Defendants' violations of California Government Code sections 1090 and 1092.

760.    Therefore, as a result of their actions, the Gabaee Defendants have been unjustly enriched in the form of millions of dollars paid to them by the County.

761.    The County has suffered actual harm, including, but not limited to, all payments made to the Gabaee Defendants under the tainted and fraudulent Gabaee Contracts.

762.    Accordingly, the County seeks judgment against the Gabaee Defendants, and each of them, ordering the return of all such monies paid to them and by which they were unjustly enriched at the expense of the County.

**Visco Defendants**

763.    The Visco Defendants have unjustly received benefits at the expense of the County.

764.    As a result of the underlying bribery scheme, the Visco Defendants received payments pursuant to the Visco Contracts that were improperly steered to them, approved as a result of the underlying bribery scheme, and void as a matter of law given the Visco Defendants' violations of California Government Code sections 1090 and 1092.

765.    Therefore, as a result of their actions, the Visco Defendants have been unjustly enriched in the form of millions of dollars paid to them by the County.

766.    The County has suffered actual harm, including, but not limited to, all payments made to the Visco Defendants under the tainted and fraudulent Visco Contracts.

767.    Accordingly, the County seeks judgment against the Visco Defendants, and each of them, ordering the return of all such monies paid to them and by which they were unjustly enriched at the expense of the County.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**Hanes Defendants**

768.   The Hanes Defendants have unjustly received benefits at the expense of the County.

769.   As a result of the underlying bribery scheme, the Hanes Defendants received payments pursuant to the Hanes Contracts that were improperly steered to them, approved as a result of the underlying bribery scheme, and void as a matter of law given the Hanes Defendants' violations of California Government Code sections 1090 and 1092.

770.   Therefore, as a result of their actions, the Hanes Defendants have been unjustly enriched in the form of millions of dollars paid to them by the County.

771.   The County has suffered actual harm, including, but not limited to, all payments made to the Hanes Defendants under the tainted and fraudulent Hanes Contracts.

772.   Accordingly, the County seeks judgment against the Hanes Defendants, and each of them, ordering the return of all such monies paid to them and by which they were unjustly enriched at the expense of the County.

**Abbey Defendants**

773.   The Abbey Defendants have unjustly received benefits at the expense of the County.

774.   As a result of the underlying bribery scheme, the Abbey Defendants received payments pursuant to the Abbey Contracts that were improperly steered to them, approved as a result of the underlying bribery scheme, and void as a matter of law given the Abbey Defendants' violations of California Government Code sections 1090 and 1092.

775.   Therefore, as a result of their actions, the Abbey Defendants have been unjustly enriched in the form of millions of dollars paid to them by the County.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

148

FIRST AMENDED COMPLAINT-IN-INTERVENTION

776.   The County has suffered actual harm, including, but not limited to, all payments made to the Abbey Defendants under the tainted and fraudulent Abbey Contracts.

777.   Accordingly, the County seeks judgment against the Abbey Defendants, and each of them, ordering the return of all such monies paid to them and by which they were unjustly enriched at the expense of the County.

**Neman Defendants**

778.   The Neman Defendants have unjustly received benefits at the expense of the County.

779.   As a result of the underlying bribery scheme, the Neman Defendants received payments pursuant to the Neman Lease that was improperly steered to them, approved as a result of the underlying bribery scheme, and void as a matter of law given the Neman Defendants' violations of California Government Code sections 1090 and 1092.

780.   Therefore, as a result of their actions, the Neman Defendants have been unjustly enriched in the form of millions of dollars paid to them by the County.

781.   The County has suffered actual harm, including, but not limited to, all payments made to the Neman Defendants under the tainted and fraudulent Neman Lease.

782.   Accordingly, the County seeks judgment against the Neman Defendants, and each of them, ordering the return of all such monies paid to them and by which they were unjustly enriched at the expense of the County.

## TENTH CLAIM FOR RELIEF

### *Breach of Fiduciary Duty*

### (By the County against Shepos and DOES 1 - 50)

783.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

149

784.   Defendant Shepos, as an officer or employee of the County, was charged with holding and preserving a public trust and owed a fiduciary duty to the County.  This duty involves acting with the utmost good faith in the best interest of the County, with undivided loyalty and allegiance, in the faithful execution of the public trust confided in them.

785.   Defendant Shepos, as an officer or employee of the County, violated the public trust and breached his fiduciary duty to the County when he benefitted himself by diverting funds derived from the County's operations.  Specifically, Shepos accepted bribes in exchange for disclosing non-public information and undertaking other acts in his official capacities as set forth above.

786.   These actions were intended to divert County funds to the Gabaee, Visco, Hanes, Abbey, and Neman Defendants.  The funds diverted by Shepos were at all times public monies and were diverted without the authorization, knowledge, or consent of the County.

787.   The County suffered damages, in an amount to be proven at trial, as a result of said Shepos' violation of the public trust and violation of his fiduciary duty.

## ELEVENTH CLAIM FOR RELIEF

### *Aiding and Abetting Breach of Fiduciary Duty*

**(By the County against the Gabaee Defendants, Visco Defendants, Hanes Defendants, Abbey Defendants, Neman Defendants, and DOES 1 - 150)**

788.   The County repeats, realleges, and incorporates each and every foregoing and subsequent allegation contained in this First Amended Complaint-in-Intervention, and further alleges as follows:

789.   Defendant Shepos, as an officer or employee of the County, violated the public trust and breached his fiduciary duty to the County when he benefitted himself by diverting funds derived from the County's operations.

703136.13

150

FIRST AMENDED COMPLAINT-IN-INTERVENTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**Gabaee Defendants**

790.    The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew Shepos had a fiduciary duty to the County and made a conscious decision to participate in assisting him in breaching that duty.

791.    The Gabaee Defendants gave substantial assistance and/or encouragement to Shepos through their respective roles in facilitating the bribery scheme which resulted in the diversion of public funds and a breach of Shepos' fiduciary duty to the County.

792.    The Gabaee Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, specifically intended to facilitate Shepos' wrongful conduct and breach of fiduciary duty.

793.    The Gabaee Defendants' conduct was a substantial factor in causing harm to the County.

794.    The County suffered damages, in an amount to be proven at trial, as a result of the Gabaee Defendants aiding and abetting Shepos in his breach of the public trust and violation of his fiduciary duty.

795.    The County suffered damages, in an amount to be proven at trial, as a result of the Gabaee Defendants aiding and abetting Shepos in his breach of the public trust and violation of his fiduciary duty.

**Visco Defendants**

796.    The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew Shepos had a fiduciary duty to the County and made a conscious decision to participate in assisting him in breaching that duty.

797.    The Visco Defendants gave substantial assistance and/or encouragement to Shepos through their respective roles in facilitating the bribery

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

scheme which resulted in the diversion of public funds and a breach of Shepos' fiduciary duty to the County.

798. The Visco Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, specifically intended to facilitate Shepos' wrongful conduct and breach of fiduciary duty.

799. The Visco Defendants' conduct was a substantial factor in causing harm to the County.

800. The County suffered damages, in an amount to be proven at trial, as a result of the Visco Defendants aiding and abetting Shepos in his breach of the public trust and violation of his fiduciary duty.

**Hanes Defendants**

801. The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew Shepos had a fiduciary duty to the County and made a conscious decision to participate in assisting him in breaching that duty.

802. The Hanes Defendants gave substantial assistance and/or encouragement to Shepos through their respective roles in facilitating the bribery scheme which resulted in the diversion of public funds and a breach of Shepos' fiduciary duty to the County.

803. The Hanes Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, specifically intended to facilitate Shepos' wrongful conduct and breach of fiduciary duty.

804. The Hanes Defendants' conduct was a substantial factor in causing harm to the County.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

805. The County suffered damages, in an amount to be proven at trial, as a result of the Hanes Defendants aiding and abetting Shepos in his breach of his public trust and violation of his fiduciary duty.

**Abbey Defendants**

806. The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew Shepos had a fiduciary duty to the County and made a conscious decision to participate in assisting him in breaching that duty.

807. The Abbey Defendants gave substantial assistance and/or encouragement to Shepos through their respective roles in facilitating the bribery schemes which resulted in the diversion of public funds and a breach of Shepos' fiduciary duty to the County.

808. The Abbey Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, specifically intended to facilitate Shepos' wrongful conduct and breach of fiduciary duty.

809. The Abbey Defendants' conduct was a substantial factor in causing harm to the County.

810. The County suffered damages, in an amount to be proven at trial, as a result of the Abbey Defendants aiding and abetting Shepos in his breach of the public trust and violation of his fiduciary duty.

**Neman Defendants**

811. The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, knew Shepos had a fiduciary duty to the County and made a conscious decision to participate in assisting him in breaching that duty.

812. The Neman Defendants gave substantial assistance and/or encouragement to Shepos through their respective roles in facilitating the bribery

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

schemes which resulted in the diversion of public funds and a breach of Shepos' fiduciary duty to the County.

813.   The Neman Defendants, by and through the individual Defendants who owned, managed, directed, or controlled the corporate Defendants who contracted with the County, specifically intended to facilitate Shepos' wrongful conduct and breach of fiduciary duty.

814.   The Neman Defendants' conduct was a substantial factor in causing harm to the County.

815.   The County suffered damages, in an amount to be proven at trial, as a result of the Neman Defendants aiding and abetting Shepos in his breach of the public trust and violation of his fiduciary duty.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for judgment against Defendants as follows:

(1)   For disgorgement of funds paid under the Gabaee Contracts, Visco Contracts, Hanes Contracts, Abbey Contracts, and Neman Lease according to proof at trial;

(2)   For disgorgement of all other proceeds Defendants derived in connection with the Gabaee Contracts, Visco Contracts, Hanes Contracts, Abbey Contracts, and Neman Lease;

(3)   Pursuant to Government Code section 12651(a), three times the amount of damages the County sustained because of Defendants' actions in violation of the CFCA, in an amount to be determined at trial;

(4)   Pursuant to Government Code section 12651(a), the maximum allowed civil penalty for each violation of the CFCA, in an amount to be determined at trial;

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

(5) Pursuant to Business and Professions Code section 17206, the maximum allowed civil penalty for each unlawful, unfair or fraudulent business act or practice;

(6) Punitive and exemplary damages according to proof at trial;

(7) Consequential damages;

(8) Restitution;

(9) Pre- and post-judgment interest at the maximum legal rate;

(10) The costs of bringing this suit, including reasonable attorneys' fees, costs and expenses incurred herein; and

(11) Such other and further relief that the Court deems just and proper.

DATED: November 15, 2024          MILLER BARONDESS, LLP


By: _____/ s / Casey B. Sypek_____
        CASEY B. SYPEK
        Attorneys for Plaintiff
        COUNTY OF LOS ANGELES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

703136.13

155

FIRST AMENDED COMPLAINT-IN-INTERVENTION

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiff the County of Los Angeles hereby demands a trial by jury as to all issues raised in this First Amended Complaint-in-Intervention that are triable to a jury.

DATED:  November 15, 2024       MILLER BARONDESS, LLP


By:    */ s / Casey B. Sypek*
        CASEY B. SYPEK
        Attorneys for Plaintiff
        COUNTY OF LOS ANGELES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400