# EXHIBIT 2

Exhibit 2
Page 187

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164770)
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-6077/4443/8452
     Facsimile:  (213) 894-7631
     E-mail:     ruth.pinkel@usdoj.gov
                 lindsey.dotson@usdoj.gov
                 thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-331-GW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ARMAN GABAEE |
| v. | |
| ARMAN GABAEE,<br> aka "Arman Gabay," | |
| Defendant. | |

1.    This constitutes the plea agreement between defendant ARMAN GABAEE ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

///

///

Exhibit 2
Page 188

DEFENDANT'S OBLIGATIONS

2.  Defendant agrees to:

    a.  At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count Four of the indictment in <u>United States v. Arman Gabaee</u>, CR No. 18-331-GW, which charges defendant with Federal Program Bribery in violation of 18 U.S.C. § 666(a)(2).

    b.  Not contest the Factual Basis agreed to in this agreement.

    c.  Abide by all agreements regarding sentencing contained in this agreement.

    d.  Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

    e.  Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

    f.  Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

    g.  Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

    h.  Pay the applicable fine, which the parties agree is at least $1,149,000, at or before the time of sentencing.

    i.  Make restitution, if applicable, at or before the time of sentencing, and not seek the discharge of any restitution

2

Exhibit 2
Page 189

1  obligation, in whole or in part, in any present or future bankruptcy
2  proceeding.

3                    THE USAO'S OBLIGATIONS

4      3.   The USAO agrees to:

5          a.   Not contest the Factual Basis agreed to in this
6  agreement.

7          b.   Abide by all agreements regarding sentencing contained
8  in this agreement.

9          c.   At the time of sentencing, move to dismiss the
10  remaining counts of the indictment as against defendant.  Defendant
11  agrees, however, that at the time of sentencing the Court may
12  consider any dismissed charges in determining the applicable
13  Sentencing Guidelines range, the propriety and extent of any
14  departure from that range, and the sentence to be imposed.

15          d.   Provided that defendant demonstrates an acceptance of
16  responsibility for the charged offense as defined in U.S.S.G. §
17  3E1.1, including as further explained in its application notes and in
18  particular Note 1(A), up to and including at the time of sentencing,
19  recommend a two-level reduction in the applicable Sentencing
20  Guidelines offense level, pursuant to U.S.S.G. § 3E1.1(a).

21                    NATURE OF THE OFFENSE

22      4.   Defendant understands that for defendant to be guilty of
23  the crime charged in Count Four, that is, Federal Program Bribery in
24  violation of 18 U.S.C. § 666(a)(2), the following must be true:

25          a.   Defendant corruptly gave, offered, or agreed to give
26  something of value to a person;

27          b.   Defendant intended to influence or reward an agent of
28  a local government -- here, the County of Los Angeles -- in

3

Exhibit 2
Page 190

connection with any business, transaction, or series of transactions

of that local government involving anything of value of $5,000 or

more; and

c.   The County of Los Angeles received, in any one year

period, benefits in excess of $10,000 under a Federal program

involving a grant, contract, subsidy, loan, guarantee, insurance, or

other form of Federal assistance.

<u>PENALTIES AND RESTITUTION</u>

5.   Defendant understands that the statutory maximum sentence

that the Court can impose for a violation of 18 U.S.C. § 666(a)(2)

is: 10 years' imprisonment; a three-year period of supervised

release; a fine of $250,000 or twice the gross gain or gross loss

resulting from the offense, whichever is greatest; and a mandatory

special assessment of $100.

6.   Defendant understands that defendant will be required to

pay full restitution to the victim of the offense to which defendant

is pleading guilty.  Defendant agrees that, in return for the USAO's

compliance with its obligations under this agreement, the Court may

order restitution to persons other than the victim of the offense to

which defendant is pleading guilty and in amounts greater than those

alleged in the count to which defendant is pleading guilty.  In

particular, defendant agrees that the Court may order restitution to

any victim of any of the following for any losses suffered by that

victim as a result: (a) any relevant conduct, as defined in U.S.S.G.

§ 1B1.3, in connection with the offense to which defendant is

pleading guilty; and (b) any counts dismissed pursuant to this

agreement as well as all relevant conduct, as defined in U.S.S.G.

§ 1B1.3, in connection with those counts.

4

Exhibit 2
Page 191

7.     Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

8.     Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.     Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

5

Exhibit 2
Page 192

1      10.  Defendant understands that, if defendant is not a United

2  States citizen, the felony conviction in this case may subject

3  defendant to: removal, also known as deportation, which may, under

4  some circumstances, be mandatory; denial of citizenship; and denial

5  of admission to the United States in the future.  The Court cannot,

6  and defendant's attorney also may not be able to, advise defendant

7  fully regarding the immigration consequences of the felony conviction

8  in this case.  Defendant understands that unexpected immigration

9  consequences will not serve as grounds to withdraw defendant's guilty

10  plea.

11                  FACTUAL BASIS

12      11.  Defendant admits that defendant is, in fact, guilty of the

13  offense to which defendant is agreeing to plead guilty.  Defendant

14  and the USAO agree to the statement of facts provided below and agree

15  that this statement of facts is sufficient to support a plea of

16  guilty to the charge described in this agreement and to establish the

17  Sentencing Guidelines factors set forth in paragraph 13 below but is

18  not meant to be a complete recitation of all facts relevant to the

19  underlying criminal conduct or all facts known to either party that

20  relate to that conduct.

21  **Background**

22      At all times relevant to the charges in the indictment,

23  defendant was a real estate developer who conducted business with the

24  County of Los Angeles ("County").  He was the co-managing partner and

25  co-founder of the Charles Company, a real estate development firm

26  that developed and maintained commercial and residential real estate

27  projects.  Defendant was also a partner of the California limited

28  partnership M&A Gabaee, among other entities.  Defendant's business

6

Exhibit 2
Page 193

activities included obtaining contracts with the County, whereby the County would lease property owned by defendant, often through one of his companies.

Cooperating Witness 1 ("CW1") was a public official employed by the County in the Real Estate Division. CW1's duties involved negotiating leases between private building and property owners and various County departments. CW1 was also able to request and receive proposals from private real estate developers, like defendant, who wanted to lease their buildings to County departments. Once a property was identified for a County department in need of space, CW1 was able to negotiate lease terms and draft lease agreements for the County and private property owners, or direct others to do so. Based on CW1's level of seniority, CW1 had significant autonomy to contractually bind the County. In particular, CW1 had authority to negotiate contract terms on behalf of the County, although final contract approval lay with the Board of Supervisors, and CW1 had authority to approve, with others, change orders on contracts.

The County was a local government that received, every calendar year between 2010 and 2017, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance. In fact, multiple County departments or agencies, including but not limited to the Department of Public Social Services ("DPSS"), received Federal assistance that exceeded $10,000 every calendar year between 2010 and 2017.

**Monthly Bribe Payments**

Beginning in or about 2010 or 2011, and continuing until on or about April 11, 2017, defendant paid CW1 bribes and kickbacks of

7

Exhibit 2
Page 194

approximately $1,000 about every month, in exchange for, among other things: (a) CW1 providing non-public County information to defendant; (b) CW1 resolving issues between defendant and County departments or agencies on terms favorable to defendant; and (c) CW1 helping to secure County leases for defendant and negotiating terms in those leases that were beneficial to defendant.

On or about the following dates, during recorded meetings, defendant paid CW1 the following cash bribes and kickbacks:

| DATE | AMOUNT OF CASH BRIBE AND KICKBACK |
|------|-----------------------------------|
| December 20, 2016 | $1,500 |
| December 30, 2016 | $1,500 |
| January 27, 2017 | $1,000 |
| March 1, 2017 | $1,000 |
| March 31, 2017 | $900 |
| April 11, 2017 | $100 |

**Hawthorne Mall and DPSS Lease**

One of the County leases defendant sought was for the Hawthorne Mall, aka the "Hawthorne Plaza" or "Hawthorne Plaza Shopping Center," located in Hawthorne, California. Through one of his companies, defendant owned and was redeveloping the Hawthorne Mall. Beginning in or around 2016, defendant sought a contract through which the County would lease space from defendant for DPSS and other County departments or agencies in the Hawthorne Mall (the "DPSS Lease"). As drafted, the DPSS Lease anticipated a term of 10 years and payments to defendant, in the form of rent and tenant improvements reimbursable by the County, in excess of $45 million.

8

Exhibit 2
Page 195

1   To secure that DPSS Lease, beginning in or about, but no later
2   than, December 2016 and continuing until on or about April 25, 2017,
3   defendant attempted to bribe, and did bribe, CW1 with (a) the monthly
4   cash bribe payments and (b) the purchase of a residential property in
5   Northern California for CW1's use.  In exchange for these bribes,
6   defendant sought to have CW1 perform various official acts related to
7   the DPSS Lease including, among other things: (a) CW1 exerting
8   pressure on County departments to complete and submit Space Request
9   Evaluations ("SREs"), an official request for office space that would
10  have allowed CW1 to begin more formal lease negotiations with
11  defendant; (b) CW1 pretending to publically engage in the normal
12  County bidding process for County leases, but in fact, promising
13  defendant that CW1 would give defendant favorable treatment to ensure
14  that defendant received the DPSS Lease; (c) CW1 exerting pressure on
15  a subordinate employee ("County Employee 1") in the Real Estate
16  Division to draft the DPSS Lease for defendant, and to do so
17  expeditiously and no later than August 2017; (d) CW1 using CW1's
18  influence to pressure County Employee 1 to draft the DPSS Lease in
19  such a way that it "looked good on paper," meaning that it did not
20  appear suspect or raise concerns; (e) CW1 using CW1's influence to
21  pressure DPSS to agree to the terms in the DPSS Lease; and (f) CW1
22  ultimately obtaining the signed DPSS Lease for defendant.

23      To uphold his end of the quid pro quo arrangement, defendant
24  first offered to purchase for CW1 a property on Barnes Road in Santa
25  Rosa, California, listed at $1,199,000, but the property was already
26  in escrow.  Thereafter, defendant offered to buy CW1 a property on
27  Annadel Heights Drive in Santa Rosa, which was originally listed for
28  $1,199,000 but later reduced to $1,095,000.  In April 2017, defendant

9

**Exhibit 2**
**Page 196**

1  made two purchase offers on the Annadel Heights Drive property -- the

2  first offer was for $1,035,000, and the second offer was for

3  $1,065,000.  Defendant intended to purchase the Annadel Heights Drive

4  property for CW1; however, he rescinded his second purchase offer

5  hours after he made it, because FBI agents had approached and

6  informed him that the FBI was aware of his bribes to CW1.

7                              SENTENCING FACTORS

8       12.  Defendant understands that in determining defendant's

9  sentence the Court is required to calculate the applicable Sentencing

10 Guidelines range and to consider that range, possible departures

11 under the Sentencing Guidelines, and the other sentencing factors set

12 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

13 Sentencing Guidelines are advisory only, that defendant cannot have

14 any expectation of receiving a sentence within the calculated

15 Sentencing Guidelines range, and that after considering the

16 Sentencing Guidelines and the other § 3553(a) factors, the Court will

17 be free to exercise its discretion to impose any sentence it finds

18 appropriate up to the maximum set by statute for the crime of

19 conviction.

20      13.  Defendant and the USAO agree to the following applicable

21 Sentencing Guidelines factors:

22    Base Offense Level:              12      [U.S.S.G. § 2C1.1(a)(2)]

23    Specific Offense
      Characteristics
24

25     -More Than One Bribe:          +2      [U.S.S.G. § 2C1.1(b)(1)]

26     -Value of the Bribe:           +14     [U.S.S.G. §§ 2C1.1(b)(2),
                                                2B1.1(b)(1)(H)]
27 Defendant and the USAO reserve the right to argue that additional

28 specific offense characteristics, adjustments, and departures under

                                 10

Exhibit 2
Page 197

the Sentencing Guidelines are appropriate.  For example, the USAO will argue that the following specific offense characteristic applies: a four-level increase for bribing an official in a high-level decision making or sensitive position under U.S.S.G. § 2C1.1(b)(3).

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.    The right to persist in a plea of not guilty.

     b.    The right to a speedy and public trial by jury.

     c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.    The right to confront and cross-examine witnesses against defendant.

11

Exhibit 2
Page 198

1         f.    The right to testify and to present evidence in

2 opposition to the charges, including the right to compel the

3 attendance of witnesses to testify.

4         g.    The right not to be compelled to testify, and, if

5 defendant chose not to testify or present evidence, to have that

6 choice not be used against defendant.

7         h.    Any and all rights to pursue any affirmative defenses,

8 Fourth Amendment or Fifth Amendment claims, and other pretrial

9 motions that have been filed or could be filed.

10                 <u>WAIVER OF APPEAL OF CONVICTION</u>

11    17.   Defendant understands that, with the exception of an appeal

12 based on a claim that defendant's guilty plea was involuntary, by

13 pleading guilty defendant is waiving and giving up any right to

14 appeal defendant's conviction on the offense to which defendant is

15 pleading guilty.  Defendant understands that this waiver includes,

16 but is not limited to, arguments that the statute to which defendant

17 is pleading guilty is unconstitutional, and any and all claims that

18 the statement of facts provided herein is insufficient to support

19 defendant's plea of guilty.

20        <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21    18.   Defendant agrees that, provided the Court imposes a total

22 term of imprisonment on all counts of conviction of no more than 108

23 months, defendant gives up the right to appeal all of the following:

24 (a) the procedures and calculations used to determine and impose any

25 portion of the sentence; (b) the term of imprisonment imposed by the

26 Court; (c) the fine imposed by the Court, provided it is within the

27 statutory maximum; (d) to the extent permitted by law, the

28 constitutionality or legality of defendant's sentence, provided it is

12

Exhibit 2
Page 199

within the statutory maximum; (e) the amount and terms of any
restitution order; (f) the term of probation or supervised release
imposed by the Court, provided it is within the statutory maximum;
and (g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in General
Order 20-04 of this Court; the drug testing conditions mandated by 18
U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment of no less than 87
months, the USAO gives up its right to appeal any portion of the
sentence, with the exception that the USAO reserves the right to
appeal the following: the amount of a fine ordered if that amount is
less than $1,149,000.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.  Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty plea on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy

13

Exhibit 2
Page 200

1   trial claim with respect to any such action, except to the extent

2   that such defenses existed as of the date of defendant's signing this

3   agreement.

4   <u>EFFECTIVE DATE OF AGREEMENT</u>

5   21.   This agreement is effective upon signature and execution of

6   all required certifications by defendant, defendant's counsel, and an

7   Assistant United States Attorney.

8   <u>BREACH OF AGREEMENT</u>

9   22.   Defendant agrees that if defendant, at any time after the

10  signature of this agreement and execution of all required

11  certifications by defendant, defendant's counsel, and an Assistant

12  United States Attorney, knowingly violates or fails to perform any of

13  defendant's obligations under this agreement ("a breach"), the USAO

14  may declare this agreement breached.  All of defendant's obligations

15  are material, a single breach of this agreement is sufficient for the

16  USAO to declare a breach, and defendant shall not be deemed to have

17  cured a breach without the express agreement of the USAO in writing.

18  If the USAO declares this agreement breached, and the Court finds

19  such a breach to have occurred, then: (a) if defendant has previously

20  entered a guilty plea pursuant to this agreement, defendant will not

21  be able to withdraw the guilty plea, and (b) the USAO will be

22  relieved of all its obligations under this agreement.

23  23.   Following the Court's finding of a knowing breach of this

24  agreement by defendant, should the USAO choose to pursue any charge

25  that was either dismissed or not filed as a result of this agreement,

26  then:

27

28

14

**Exhibit 2**
**Page 201**

1          a.   Defendant agrees that any applicable statute of

2   limitations is tolled between the date of defendant's signing of this

3   agreement and the filing commencing any such action.

4          b.   Defendant waives and gives up all defenses based on

5   the statute of limitations, any claim of pre-indictment delay, or any

6   speedy trial claim with respect to any such action, except to the

7   extent that such defenses existed as of the date of defendant's

8   signing this agreement.

9          c.   Defendant agrees that: (i) any statements made by

10  defendant, under oath, at the guilty plea hearing (if such a hearing

11  occurred prior to the breach); (ii) the agreed to factual basis

12  statement in this agreement; and (iii) any evidence derived from such

13  statements, shall be admissible against defendant in any such action

14  against defendant, and defendant waives and gives up any claim under

15  the United States Constitution, any statute, Rule 410 of the Federal

16  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

17  Procedure, or any other federal rule, that the statements or any

18  evidence derived from the statements should be suppressed or are

19  inadmissible.

20          COURT AND UNITED STATES PROBATION

21          AND PRETRIAL SERVICES OFFICE NOT PARTIES

22  24.  Defendant understands that the Court and the United States

23  Probation and Pretrial Services Office are not parties to this

24  agreement and need not accept any of the USAO's sentencing

25  recommendations or the parties' agreements to facts or sentencing

26  factors.

27  25.  Defendant understands that both defendant and the USAO are

28  free to: (a) supplement the facts by supplying relevant information

15

Exhibit 2
Page 202

1     to the United States Probation and Pretrial Services Office and the

2     Court, (b) correct any and all factual misstatements relating to the

3     Court's Sentencing Guidelines calculations and determination of

4     sentence, and (c) argue on appeal and collateral review that the

5     Court's Sentencing Guidelines calculations and the sentence it

6     chooses to impose are not error, although each party agrees to

7     maintain its view that the calculations in paragraph 13 are

8     consistent with the facts of this case.  This paragraph permits both

9     the USAO and defendant to submit full and complete factual

10    information to the United States Probation and Pretrial Services

11    Office and the Court, even if that factual information may be viewed

12    as inconsistent with the Factual Basis and Sentencing Factors agreed

13    to in this agreement.

14        26.  Defendant understands that even if the Court ignores any

15    sentencing recommendation, finds facts or reaches conclusions

16    different from those agreed to, and/or imposes any sentence up to the

17    maximum established by statute, defendant cannot, for that reason,

18    withdraw defendant's guilty plea, and defendant will remain bound to

19    fulfill all defendant's obligations under this agreement.  Defendant

20    understands that no one -- not the prosecutor, defendant's attorney,

21    or the Court -- can make a binding prediction or promise regarding

22    the sentence defendant will receive, except that it will be within

23    the statutory maximum.

24                   <u>NO ADDITIONAL AGREEMENTS</u>

25        27.  Defendant understands that, except as set forth herein,

26    there are no promises, understandings, or agreements between the USAO

27    and defendant or defendant's attorney, and that no additional

28

16

Exhibit 2
Page 203

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4      28.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 TRACY L. WILKISON
   United States Attorney

11

12                                      April 26, 2022

13 _____          _____
   RUTH C. PINKEL                              Date
   LINDSEY GREER DOTSON
14 THOMAS F. RYBARCZYK
   Assistant United States Attorneys

15

16 _____          _____
   ARMAN GABAEE                                Date
17 Defendant

18

19 _____          _____
   MARC A. AGNIFILO                            Date
20 Attorney for Defendant ARMAN GABAEE

21 ///

22 ///

23 ///

24

25

26

27

28

                 17

**Exhibit 2**
**Page 204**

1   promise, understanding, or agreement may be entered into unless in a

2   writing signed by all parties or on the record in court.

3                PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4        28.  The parties agree that this agreement will be considered

5   part of the record of defendant's guilty plea hearing as if the

6   entire agreement had been read into the record of the proceeding.

7   AGREED AND ACCEPTED

8   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
9   CALIFORNIA

10  TRACY L. WILKISON
    United States Attorney

11

12  _____          _____
    RUTH C. PINKEL                        Date
13  LINDSEY GREER DOTSON
    THOMAS F. RYBARCZYK
14  Assistant United States Attorneys

15                                        4/26/2022
                                          _____
16  _____          Date
    ARMAN GABAEE
17  Defendant

18  _____          April 26, 2022
    MARC A. AGNIFILO                      _____
19  Attorney for Defendant ARMAN GABAEE   Date

20

21  ///

22  ///

23  ///

24

25

26

27

28

                            17

Exhibit 2
Page 205

1              CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I understand

5   the terms of this agreement, and I voluntarily agree to those terms.

6   I have discussed the evidence with my attorney, and my attorney has

7   advised me of my rights, of possible pretrial motions that might be

8   filed, of possible defenses that might be asserted either prior to or

9   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19                                          4/26/2022

20  ARMAN GABAEE                            Date
    Defendant

21

22  ///

23  ///

24  ///

25

26

27

28

                        18

**Exhibit 2**
**Page 206**

1   <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2       I am defendant ARMAN GABAEE's attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of his rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the Factual Basis set

14  forth in this agreement is sufficient to support my client's entry of

15  a guilty plea pursuant to this agreement.

16

17  MARC A. AGNIFILO                    Date: April 26, 2022
    Attorney for Defendant ARMAN GABAEE

18

19

20

21

22

23

24

25

26

27

28

19

**Exhibit 2**
**Page 207**