Kevin J. Leichter, Esq.  (SBN 154143)
Andrew E. Hewitt, Esq. (SBN 314504)
THE LEICHTER FIRM, APC
10203 Santa Monica Boulevard
Fourth Floor
Los Angeles, California 90067
Tel: 310.229.0000
Email: kleichter@theleichterfirm.com
Email: ahewitt@theleichterfirm.com
Attorneys for Defendants Mark Gabaee,
The Charles Company, Inc., Oakshire, LLC,
Excel Property Management Services, Inc., Willhurst, Inc.,
Town Investments, LLC, Sancam, Inc., M&A Gabaee LP,
Greenoak Investments, LLC, Maple19 LP, Urban Grove19, LLC,
Oppidan LLC, Loma Vista LLC, Noble Investments LLC,
The Charles Company Partnership, Corsair, LLC and Endure LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

THE COUNTY OF LOS ANGELES,
THE STATE OF CALIFORNIA and
THE UNITED STATE OF AMERICA
*ex rel.* KAREN GLUCK,

                    Plaintiffs,

          v.

THOMAS SHEPOS et al.,

                    Defendants.

AND RELATED COMPLAINT IN
INTERVENTION.

**Case No. 2:19-cv-01773-PA-MAA
(Hon. Percy Anderson)**

**GABAY DEFENDANTS' NOTICE
OF MOTION AND MOTION FOR
SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT AS TO
RELATOR AND INTERVENOR'S
COMPLAINTS; MEMORANDUM
OF POINTS AND AUTHORITIES**

[*Filed concurrently herewith: (1)
Statement of Undisputed Material Facts;
(2) Declaration of Kevin J. Leichter; (3)
Declaration of Mark Gabay; and (4)
Compendium of Evidence*]
Hearing: March 16, 2026
Time:    1:30 p.m.
Ctrm:    9A
Complaint Filed: March 11, 2019
Trial Date:         April 28, 2026

*THE LEICHTER FIRM*
*A PROFESSIONAL CORPORATION*

---

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 16, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9A of the above-captioned Court located at 350 West First Street, Los Angeles, California 90012, Defendants Mark Gabay, Charles Company Partnership, Excel Property Management Services, Inc., Oakshire, LLC, Wilhurst, Inc., Town Investments, LLC, Sancam Inc., M&A Gabaee, LP, Greenoak Investments, LLC, Maple19, LP, Urban Grove19, LLC, Oppidan, LLC, The Charles Company, Inc., Loma Vista, LLC, Noble Investments, LP, and Endure Investments LLC (the "Gabay Defendants") will, and hereby do, move the Court for summary judgment, or partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, on all of the claims in Relator Karen Gluck's ("Relator" or "Gluck") Third Amended Complaint (the "TAC") and Intervenor the County of Los Angeles's (the "County" or "Intervenor") First Amended Complaint-in-Intervention (the "FACII") such that judgment should be entered in the Gabay Defendants' favor and against Relator and Intervenor.  This Motion is made on the grounds that there is no reasonable dispute as to any material fact such that, as a matter of law, Relator and Intervenor's claims fail because neither can prove their claims, and their claims are time-barred.

This Motion is made following a conference of counsel pursuant to Central District Local Rule 7-3, which took place via remote video conferencing on January 23, 2026.

The Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Statement of Undisputed Material Facts, the concurrently filed declarations of Kevin J. Leichter and Mark Gabay, the Compendium of Evidence, and upon such other pleadings, papers, and argument as may be presented to the Court prior to, at, or following the hearing on this matter.

Dated: February 2, 2026

THE LEICHTER FIRM,
A Professional Corporation

By:___/s/Kevin J. Leichter_____
KEVIN J. LEICHTER
ANDREW E. HEWITT
Attorneys for Defendants
Mark Gabaee, The Charles
Company, Inc., Oakshire, LLC,
Excel Property Management
Services, Inc., Willhurst, Inc.,
Town Investments, LLC,
Sancam, Inc., M&A Gabaee LP,
Greenoak Investments, LLC,
Maple19 LP, Urban Grove19,
LLC, Oppidan LLC, Loma Vista
LLC, Noble Investments LLC,
The Charles Company
Partnership, Corsair, LLC;
Corsair, LLC and Endure LLC

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF FACTS ...................................................... 3

      A.    SUMMARY OF THE LEASES AT ISSUE ...................... 3

      B.    GABAY DEFENDANTS' BACKGROUND ..................... 6

      C.    THE COUNTY'S LEASING PROCEDURES ................. 6

      D.    SHEPOS'S BACKGROUND ....................................... 7

      E.    SHEPOS'S RELATIONSHIP WITH THE GABAY
            DEFENDANTS ......................................................... 8

      F.    GLUCK, THE FEDERAL GOVERNMENT, AND
            THE COUNTY'S INVESTIGATIVE EFFORTS ........... 9

III.  SUMMARY JUDGMENT STANDARD .................................. 11

IV.   SUMMARY JUDGMENT SHOULD BE ENTERED IN THE
      GABAY DEFENDANTS' FAVOR ........................................ 11

      A.    THE CONFLICT OF INTEREST CLAIMS (CLAIMS
            1 AND 2) FAIL ...................................................... 11

            1.    The County cannot show that Shepos had a
                  financial interest in the leases at issue. ............... 14

            2.    The Conflict of Interest Claims are untimely. ...... 17

      B.    THE FALSE CLAIMS ACT CLAIMS FAIL
            (COUNTY CLAIMS 3-6; RELATOR CLAIMS 1-3) ...... 18

            1.    Neither the County nor Relator can prove that
                  the Gabay Defendants presented any false claims
                  for payment or approval or failed to disclose a
                  false claim. ..................................................... 19

            2.    Neither Relator nor the County can demonstrate
                  the materiality of payment of the "false claims." ... 22

            3.    The conspiracy claims fail. .............................. 24

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

i

4.    The FCA and CFCA claims are time-barred. ................... 26

C.    THE COUNTY'S UNFAIR COMPETITION CLAIM
FAILS ...................................................................... 29

D.    THE COUNTY'S COMMON LAW FRAUD CLAIM
FAILS ...................................................................... 29

1.    There are no material facts to support a fraud
claim .................................................................. 29

2.    The Fraud claim is time-barred. ........................... 30

E.    THE UNJUST ENRICHMENT CLAIM FAILS ........................... 30

F.    THE AIDING AND ABETTING BREACH OF
FIDUCIARY DUTY CLAIM FAILS ............................... 31

G.    NEITHER THE COUNTY NOR THE RELATOR
CAN SUSTAIN THEIR ALTER EGO CLAIMS ........................ 32

V.    CONCLUSION ........................................................ 33

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

# TABLE OF AUTHORITIES

## Cases

*Alexander v. South Carolina State Conference of the NAACP*, 602 U.S. 1, 36 (2024)................................................................................................... 23

*Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (2014)........................................................................................ 31

*Avila v. Bank of Am.*, No. 17-cv-222-HSG, 2017 WL 4168534, at *5 (N.D. Cal. Sept. 20, 2017) ........................................................................ 29

*Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680–81 (9th Cir. 1985)................... 16

*Breakzone Billiards v. City of Torrance*, 81 Cal. App. 4th 1205, 1230–1231 (2000)....................................................................................................... 14

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)..................................................................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .............................................. 11

*Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir.1952) ......................................................................................................... 31

*Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000)............................................................................................................... 29

*Dickenson v. Haga*, 2019 WL 416720, at *3 (C.D. Cal. Jan. 31, 2019)................. 33

*Eden Twp. Healthcare Dist. v. Sutter Health*, 202 Cal. App. 4th 208, 228 (2011)....................................................................................................... 14, 16

*Goldilocks Corp. of S. California v. Ramkabir Motor Inn Inc.*, 26 F. App'x 693, 696 (9th Cir. 2002) ..................................................................... 29

*Hausauer v. City of Mesa*, 2020 WL 2735970, at *3 (D. Ariz. May 26, 2020)........................................................................................................... 33

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1108 (D. Haw. 2021) ............................................................. 18, 25

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1118 (D. Haw. 2021) ...................................................................... 25

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

*Hotchkiss v. Moran* (1930) 109 Cal. App. 321, 323 .................................. 14

*Hyatt v. Northrop Corp.*, 883 F. Supp. 484, 488 (C.D.Cal. 1995) ....................... 27

*In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072,
    at *41 (C.D. Cal. July 31, 2012) .......................................... 33

*In re AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (2013) ............................ 25

*In re Valley Health System*, 429 B.R. 692, 718-19 (C.D.Cal. Bankr.
    2010) ................................................................... 14

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) ......................... 27, 30

*Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) ................................. 29

*Leslie G. v. Perry & Assocs.*, 43 Cal. App. 4th 472, 483 (1996) .......................... 15

*Lexin v. Superior Ct.*, 47 Cal. 4th 1050, 1074 (2010) ................................. 12

*Marin County v. Dufficy*, 144 Cal. App. 2d 30, 34, 36 (1956) ............................. 12

*Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793
    (2003) ................................................................... 30

*Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 645 (2010) ............................. 27

*Moore v. Navarro*, 2004 WL 783104, at *3 (N.D.Cal. Mar. 31, 2004) ................... 27

*Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014) ................. 31

*O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1466–67 (9th
    Cir.1986) ................................................................. 15

*Payless Shoesource, Inc. v. Joye*, Case No. 2:12-cv-00517-MCE-DAD,
    2014 WL 466260, at *8 (E.D. Cal. Feb. 5, 2014) .......................... 24

*People v. Honig*, 48 Cal. App. 4th 289, 333 (1996) ................................. 13, 14

*People v. Vallerga*, 67 Cal. App. 3d 847, 867, fn. 5 (1977) ......................... 14

*Plaza Freeway Ltd. Partnership v. First Mountain Bank*, 81 Cal. App.
    4th 616, 628 (2000) ...................................................... 24

*Rothschild v. Tyco Internat. (US), Inc.*, 83 Cal. App. 4th 488, 494
    (2000) ................................................................... 18

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

*See Villains, Inc. v. American Economy Ins. Co.*, 870 F. Supp. 2d 792, 796 (N.D.Cal. 2012) ...................................................................... 25

*Snyder v. United States*, 603 U.S. 1, 11 (2024)......................................... 16

*Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) .................................................................................................. 11

*U.S. ex rel. Condie v. Board of Regents of University of California*, 1993 WL 740185, at *3 (N.D.Cal. Sept. 7, 1993) ......................... 27

*U.S. v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980).............. 26, 32

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1091 (N.D. Cal. 2014) .......................................................... 31

*United States ex rel. Berg v. Honeywell Int'l, Inc.*, 740 F. App'x 535, 538 (9th Cir. 2018)....................................................................... 24

*United States ex rel. Jordan v. Northrop Grumman Corporation*, 2002 WL 35628747, at *4 (C.D.Cal. Aug. 5, 2002)............................. 28

*United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 & n.53 (3d Cir. 2017)............................................................................... 25

*United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018) .................................................................................... 19

*United States ex rel. Woodruff v. Hawaii Pac. Health*, 560 F. Supp. 2d 988, 1004 (D. Haw. 2008) ........................................................... 25

*United States v. Aerojet Rocketdyne Holdings, Inc.*, 381 F. Supp. 3d 1240, 1249 (E.D.Cal. 2019).......................................................... 26

*United States v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 810 (N.D. Cal. 2014) .................................................................................................. 33

*Universal Health Services, Inc. v. U.S.*, 579 U.S. 176, 196 (2016) ("*Escobar*")...................................................................... 21, 22, 24

## Statutes

31 U.S.C. § 3729(a)(1)(A) ........................................................................ 18

GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

31 U.S.C. § 3729(a)(1)(B) .......................................................................... 18

31 U.S.C. § 3729(a)(1)(C) ..................................................................... 18, 25

31 U.S.C. § 3731(b) ................................................................................... 26

Cal. Bus. & Prof. Code § 17200 ............................................................... 29

Cal. Bus. & Prof. Code § 17203 ............................................................... 29

Cal. Code Civ. Proc. § 338(d) ................................................................... 30

Cal. Gov't Code § 12651(a)(1)–(3); (8) ................................................... 18

Cal. Gov't Code § 12651(a)(3) ................................................................. 25

Cal. Gov't Code § 12654(a) ..................................................................... 26

Cal. Gov't Code § 91011 .......................................................................... 17

Cal. Gov't. Code § 1090(a) ....................................................................... 11

Cal. Gov't. Code § 1092 ........................................................................... 12

Cal. Gov't. Code § 1092(b) ...................................................................... 17

Cal. Gov't. Code § 24000 ......................................................................... 12

Gov't Code Section 87100 ........................................................................ 13

Gov't Code Section 91003(b) ................................................................... 13

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................. 11

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Recklessly invoking a variety of untenable legal theories, the County and Relator seek to void eight leases that were entered into between the County and certain of the Gabay Entities over the last thirty-four years.  Their goal is to recover from the landlords (and their affiliates, and their principals, jointly and severally) hundreds of millions of dollars in rent paid over decades for space that various County departments gladly and willingly solicited, leased and occupied without incident, renewing and extending leases over and over – *even as they were investigating and filing this lawsuit*.

In asserting these theories, the County and Relator ignore the fact that the rent for *every lease* was at or below market *according to the County itself*, that the other terms of the leases were *100% dictated by the County* with no room for discretionary decisionmaking or negotiation, and that the County's Board of Supervisors made every decision, and did so solely in reliance on carefully vetted Board Letters that the County admits were *completely truthful and contained no false information*; and yet, the gravamen of the suit is that a County employee with *no decisionmaking authority at all*, who was only involved in *some* of the lease approvals, whose sole involvement in procuring leases was authoring truthful letters to Board members with accurate facts upon which they based their decisions, whose alleged "lease acquisitions" were mostly the exercise of *renewal options on fixed terms* that were set long before, and *who wasn't even a County employee throughout the period*, was "financially interested" in all of the leases because *outside the leases* he accepted cash and other gifts from various parties, and traveled with them to Las Vegas to gamble and attend industry conventions.

Yet, this is the basis on which the County contends that it is entitled to a windfall in the form of decades of free rent because it wants to declare the Leases

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

void, assert that each rent payment was somehow a "claim" against the County that was "false" and must be returned.

The infirmity of these claims cannot be disputed.

It is undisputed that each of the leases was approved by the County Board of Supervisors, and that, as a matter of law, they were the only decisionmaker as to any of the Leases with the authority to bind the County.  It is undisputed that the Gabay Defendants constructed all the required tenant improvements requested by the County with respect to each lease.  No claim is made that the Gabay Landlords were ever in breach of any of their obligations.  And, it is undisputed that the County occupied each of the premises, receiving quiet enjoyment and paying in return the agreed rent to the Gabay Defendants under the agreed terms of each of the leases.  So what is the County's basis to void these leases and claw back decades worth of rent payments?  The County claims that a County employee, Thomas Shepos ("Shepos") had a close personal relationship with many outside vendors, received gifts of cash and free work on his house, and that these were bribes to "steer" unfavorable leases to the Gabay Defendants.

However, the County has no evidence to prove its claim.  The County has not identified any act taken by Shepos to "steer" a lease to the Gabay Defendants, or, for that matter, in any way manipulate the decisionmaking process of the independent Board of Supervisors.  The County has not identified any evidence demonstrating that Shepos was bribed *at all*, let alone bribed to "steer" any lease to the Gabay Defendants.  The County has presented no evidence that any of these leases was unfavorable to the County in any way whatsoever, or that the "Board Letters" that contained the information upon which the Board made its leasing decisions were in any way incorrect – indeed, the County has admitted under oath that the Board Letters contained no false information.

The various legal claims asserted – avoidance of contracts under Section 1090, state and federal false claims act claims, common law fraud, and statutory and

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

unfair competition, as well as the hodgepodge of alter ego and conspiracy claims that attach themselves like remoras to overpled civil actions like this one. The bottom line is that these legal doctrines have strict elements, discussed thoroughly below, and the Plaintiffs struggle to find facts to meet them is a profound failure.

Finally, the case is not only logically overpled; it is temporally overbroad as well, attempting to reach back decades in the face of clear limitations periods that bar the claims that the County and Relator, in their zeal to achieve a billion-dollar windfall, have brought today.

Summary judgment is appropriate here.

## II.    STATEMENT OF FACTS

### A. SUMMARY OF THE LEASES AT ISSUE

| Property Address | Lease Date | Lease Amendment(s) | Date Terminated | Purpose for Amendment(s) |
|---|---|---|---|---|
| 15531 Ventura Boulevard, Encino California 91436 (the "Ventura Lease") | July 28, 1992 | October 1, 2002; December 18, 2007; April 2, 2013 | November 24, 2015 | Extend the term per renewal options, and add new options to renew with CPI increases. |
| 3220 Rosemead Boulevard, El Monte, California, Suite No. 2A, Lease No. 71124 (the "Rosemead 2A Lease") | November 12, 1997 | September 7, 1999 | April 19, 2005 merged into other lease. | Expand the premises to include more square feet. |
| 3220 Rosemead Boulevard, El Monte, California, | April 19, 2005 | July 6, 2010 | July 17, 2021 | Extend term of lease. |

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

| | | | | |
|---|---|---|---|---|
| Suite No. 2A and Building E, Lease No. 75257 (the "Rosemead Lease") | | | | |
| 3220 Rosemead Boulevard, El Monte California, Building A, Lease No. 71378, ("Rosemead A Lease") | May 5, 1998 | July 30, 2013 | March 31, 2023 | Extend the term. |
| 532 East Colorado Boulevard, Pasadena, California, Lease No. 72116 (the "Colorado Lease"). | May 18, 1999 | February 23, 2010; December 8, 2015 | October 31, 2024 | Exercise renewal option to extend term and obtain additional renewal option |
| 2910 West Beverly Boulevard, Los Angeles, California 90057, Lease No. 14651 (the "Beverly Lease"). | March 14, 1969 (by prior owner – property acquired 1/1/2000 subject to existing Beverly Lease.) | August 22, 1995; October 29, 1996; December 21, 1999; February 6, 2006. | September 20, 2011. | Extend term and add renewal options. |
| 3216 Rosemead Boulevard, El Monte, California, | September 7, 1999 | July 13, 2010; December 4, 2014; November 15, 2016 | June 30, 2023 | Exercise renewal option to extend term of the lease and obtain |

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | | | |
|---|---|---|---|---|
| Building B, Lease No. 72387 (the "Rosemead B Lease") | | | | additional renewal options. |
| 12000 Hawthorne Boulevard, Hawthorne, California, Lease No. 73655, (the "Hawthorne Lease"). | September 25, 2000 but approved on September 25, 2001 | August 1, 2002; July 5, 2011. | November 28, 2022. | Add additional parking spaces; Extend term, acquire more space, and acquire new renewal options; |
| 8107 Wilshire Boulevard, Beverly Hills, California 90210, Lease No. L-1244, (the "Wilshire Lease"). | March 23, 2016 | | June 1, 2016 | |
| 3303-3331 North Broadway Street, Los Angeles, California, Lease No. 78530, (the "Broadway Lease") | October 4, 2016 | | Remains today. | |

(SUMF Nos. 19-139).

Each of the Gabay Leases, including the Amendments, was adopted and approved by the County Board of Supervisors in strict accordance with the County's established leasing procedures. (SUMF Nos. 146-47). Each of the Gabay Leases was at or below market at the time it was approved and adopted. (*Id.*). The Board of Supervisors makes its decisions based on the information contained in "Board

Letters" prepared and vetted by numerous county staff.  (SUMF Nos. 146-148).  None of the Board Letters that was provided to the Board of Supervisors in connection with any of the Gabay Leases contained any misstatements, misrepresentations, or false statements.  (SUMF No. 148).  In discovery, the County was unable to identify any other suitable space that was rejected in favor of a Gabay Lease.  (SUMF No. 180).  In discovery, the County was unable to link any of its purported "bribes" to any of the Gabay Leases, or provide any evidence that Shepos had a "financial interest" in any of the Gabay Leases.  (SUMF Nos. 170-72).

### B. GABAY DEFENDANTS' BACKGROUND

In 1975, Mark Gabay and his brother, Arman Gabay ("Arman") founded the Charles Company Partnership to acquire, through entities, distressed residential, commercial and industrial properties, redevelop them and then either lease or sell the properties.  (SUMF No. 1).  When a decision was made to lease the properties, the tenants could be private companies, public companies, governmental agencies and departments, small businesses, and individuals.  (SUMF No. 17.).  The Gabay Defendants comprise various entities that have responsibility for the various parts of their business, from property management to redevelopment to ownership and management of the properties themselves.  (SUMF No. 18).

### C. THE COUNTY'S LEASING PROCEDURES

Every Gabay Lease involving the County followed a specific and established process for its approval and adoption.  (SUMF No. 146).  First, the County department needing space (such as the District Attorney, or Department of Mental Health) would submit a Space Evaluation Request form ("SER") that would detail the size, location and parking needs of the department.  (SUMF No. 146).  Then, a County Real Property Agent from its Real Estate Division would perform market research, publish a Request for Space in public periodicals (and, later, on the internet) and contact landlords directly to see if they had any interest.  (*Id*.).  Once landlords were identified with space that was suitable and available, the County's

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

Agent would then discuss the rental rate, tenant improvement budget, and term of the lease in order to have the landlord present its best deal possible for the County – its bid. (*Id.*). As to the remaining lease terms, the leases were always required to be done on the County's standard form of lease, without change. (*Id.*).

Once the Landlord agreed to the material terms, the County was expressly not bound unless and until the Lease was formally approved and adopted by the County Board of Supervisors. Before reaching the Board, the proposed lease terms had to first be presented to and approved by the Real Property Agent's direct supervisor, the real estate department's supervisor, County Counsel, and (for larger leases) the Real Estate Management Commission. (*Id.*). In this process, the information that was needed for approval would be set forth in a report and draft board letter which accompanied each lease and which set forth the material terms of the lease and an analysis of competing space for each level of approval. (*Id.*). That Board Letter, when approved by this line of bureaucrats, would be presented to the Board and the Board would make its decision on that basis.

Only once a lease was approved did rents become due; no rent was paid on leases that were not duly approved. (SUMF No. 149).

### D. SHEPOS'S BACKGROUND

Defendant Thomas Shepos ("Shepos") was hired by the County on February 23, 1998 as a Real Property Agent II. (SUMF No. 140). Neither at the time he was hired, nor any time thereafter, did Shepos have any authority to bind the County to any lease. (SUMF No. 144). That authority is, and was, solely vested in the County Board of Supervisors. (SUMF No. 145). Eventually, Shepos worked his way through the County ranks and became a Chief Program Specialist in the Real Estate Division. (SUMF Nos. 141-143).

In 1996, Shepos married Relator Karen Gluck ("Gluck"). (SUMF No. 152). He and Gluck were married until they separated and commenced divorce proceedings on June 16, 2011. (TAC at ¶83).

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

During their marriage, Shepos and Gluck purchased a home on at 1330 Roscomare Road, Los Angeles, California 90077 (the "Roscomare Property") in 2003.  (SUMF No. 153).  In 2009, Shepos and Gluck sold the Roscomare Property and Gluck profited from that sale.  (SUMF No. 155).

### E. SHEPOS'S RELATIONSHIP WITH THE GABAY DEFENDANTS

In or about 1999, after Shepos began his employment with the County, the County and Relator allege that Shepos developed a personal relationship with Arman.  (FACII at ¶¶69, 72; TAC at ¶170).

Shepos was "held out" as a representative of TCC in 1999 for the International Council of Shopping Centers Spring Convention, but neither the County nor Gluck could verify whether this had in fact occurred.  (SUMF Nos. 171-72).  Both Plaintiffs allege that this was an act of "bribery and kickback."

The County and Relator both allege that Shepos received free construction on the Roscomare Property, and this is another "bribery and kickback" event.  (FACII at ¶¶77-83; TAC at ¶¶148-157, 184-188).  In discovery, neither the County nor Gluck could verify that the Gabay Defendants ever improperly paid for construction on the Roscomare Property.  (SUMF No. 154).  In questioning by the County and others, Shepos testified that he personally paid each of the contractors who worked on the Roscomare Property.  (*Id*.).  In discovery, the County was unable to identify any work performed on the Roscomare Property that was either paid for or reimbursed by the County.  (SUMF No. 154).  Yet, this is claimed as an instance of "bribery and kickback."

In December 2008, as they did for many tenants (and as other landlords do), TCC provided food and beverage for the County's real estate department's holiday lunch.  (SUMF No. 150).  Shepos testified that the County employees were made aware of who provided the lunch.  (SUMF No. 151).  The County's 30(b)(6) representative attested to the purported illegality of the lunch, testifying that many

1  employees objected and declined to eat the food due to the fact that the lunch was

2  obviously an improper payment.  At least 50 persons, according to the County, were

3  witness to this purported illegality.  (*Id*.).

4       Both the County and Relator allege that Arman Gabay provided Shepos with

5  cash "bribes and kickbacks" beginning either in 2010 or 2011 and continuing until

6  April 11, 2017.  (FACII at ¶84; TAC at ¶189).  However, neither could present

7  evidence that Arman's brother Mark Gabay, or the other Gabay Entities, were

8  involved in any way, and Arman has consistently stated that the gifts he made were

9  of his own money, and were made without the knowledge of his brothers or others at

10  TCC and its affiliates.  (SUMF Nos. 165-68, 170-72, 175).  Nor could the County

11  identify what non-public County information Shepos provided to the Gabay

12  Defendants, what Shepos's financial interest was in each of the Gabay Leases, let

13  alone whether he, in fact, had a financial interest in any of the Gabay Leases.  (*Id*.).

14  ## F.  GLUCK, THE FEDERAL GOVERNMENT, AND THE

15  ## COUNTY'S INVESTIGATIVE EFFORTS

16       In or around March 2010, Gluck allegedly discovered an improper

17  relationship between Shepos and Defendant Frank Visco ("Visco").  (SUMF No.

18  156).  Gluck forced Shepos to inform his superiors at the County of his relationship

19  with Visco, which he did.  (*Id*.).  The County took no investigative steps or

20  corrective actions at this time.  (*Id*.).

21       In December 2012, after separating and engaging in hotly contested divorce

22  proceedings with Shepos, Gluck claims to have discovered a trove of documents in

23  the storage unit she shared with Shepos that established the alleged bribery/kickback

24  scheme.  (SUMF No. 157).  Crucially, **Gluck told AUSA Renee Katzenstein, of**

25  **the U.S Attorney's Office's Public Corruption Unit, of her discovery in April of**

26  **2014.**  (SUMF No. 158).  This is the date of the government's inquiry knowledge.

27       In March of 2015, the FBI took several of Gluck's boxes as part of their

28  investigation into Shepos and others.  (SUMF No. 159).  On November 16, 2016,

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

9

the FBI interviewed Shepos.  (SUMF No. 162).  Thereafter, Shepos entered into a cooperator's plea with the FBI, based on *tax charges*, and agreed to wear a wire.  (SUMF No. 163).  In addition, Shepos also gave proffers and answered questions that were posed to him by the FBI, including those about Mark Gabay and the Gabay Entities.  (SUMF No. 164).

In or around April 2016, the County received a tip from Susan Holman that Shepos may have had an improper relationship with Visco.  (SUMF No. 160).  The County began investigating on September 27, 2016.  (SUMF No. 161).  As a result of the investigation, Shepos "retired" from the County in August 2017.  (SUMF No. 169).  Thereafter, the County's office of investigations prepared a report of misconduct, on or about September 20, 2017, which detailed the evidence of misconduct involving Shepos.  (SUMF No. 170).  The County was unable to locate any misconduct outside of what was identified in that report.  (SUMF No. 171).  And, the County was unable to tie any of the evidence of misconduct to any of the specific Gabay Leases.  (SUMF No. 172).

In the absence of evidence of bribery, the government sought to create it; Shepos was set up with a wire and told to solicit a bribe.  On May 10, 2018, Arman Gabay was indicted for federal program bribery because he agreed to help Shepos buy a house, while seeking the procurement of a new lease for the Hawthorne Mall.  (SUMF No. 173).  Mark Gabay was not indicted by the Federal Government nor was he aware of any of Arman's dealings with Shepos.  (SUMF Nos. 174-175).  The proposed new lease for the Hawthorne Mall never was approved or adopted and no rent was ever paid.

On April 26, 2022, Arman pled guilty to one count of program bribery.  (SUMF No. 181).  Shepos pled guilty to one count of lying to a federal agent and one count of ascribing a false tax return on July 27, 2018.  (SUMF No. 182).  On June 11, 2024, Shepos entered into a cooperation agreement with the County and Gluck.  (SUMF No. 183).

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he plain language of [Rule 56] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Where, as here, the plaintiff bears the burden of proof on its claim, the defendant may prove the "absence of a genuine issue of material fact" merely by "pointing out to the district court . . . that there is an absence of evidence to support the [plaintiff's] case." *Celotex Corp.*, 477 U.S. at 325.

### IV.   SUMMARY JUDGMENT SHOULD BE ENTERED IN THE GABAY DEFENDANTS' FAVOR

#### A. THE CONFLICT OF INTEREST CLAIMS (CLAIMS 1 AND 2) FAIL

California Government ("Cal. Gov't Code") Section 1090 is a conflict of interest statute that codifies long-standing common-law prohibitions against government officials making transactions in which they have a financial interest. In relevant part, it states:

> (a) Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members.

Cal. Gov't. Code § 1090(a).

Section 1090 is merely prohibitory; Section 1092 is a remedial provision for a limited class of violations of Section 1090. It provides, in relevant part:

> (a) Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein. No such contract may be avoided because of the interest of an officer therein unless the contract is made in the official capacity of the officer, or by a board or body of which he or she is a member.

Cal. Gov't. Code § 1092. The first sentence is broad; but the second sentence restricts application of this remedy only to cases where the contract is "made in the official capacity of the officer, or a board or body of which he or she is a member." An employee is not an officer. *See* Cal. Gov't. Code § 24000 (setting forth the list of officers of a county); *see also Marin County v. Dufficy*, 144 Cal. App. 2d 30, 34, 36 (1956) (holding that county physician employed by the county was not an officer under Government Code section 1090 and 1092).

To determine whether Section 1090 has been violated, a court must identify (1) whether the defendant government officials or employees "made" a contract "in their official capacities," (2) whether the defendants had a cognizable "financial interest in that contract," and (3) (if raised as an affirmative defense) whether the cognizable interest falls within any one of section 1091's or section 1091.5's exceptions for remote or minimal interests. *Lexin v. Superior Ct.*, 47 Cal. 4th 1050, 1074 (2010), as modified (Apr. 22, 2010) (also noting that Section 1090 and its

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

related provisions of the Political Reform Act[1] are to be read and applied consistently).[2]

The County seeks to void each and every lease entered into between the County and the Gabay Entities – even the ones entered into before Shepos was hired – on the basis that each of these contracts is "tainted" due to some pervasive bribery scheme involving Shepos and Arman. (*See* FACII at ¶¶95-191). The Gabay Defendants concede that Shepos was involved in leasing in his capacity as a County official (not an officer) with respect to *some* of the amendments and leases at issue. They do not concede that he was "financially interested" in any leases, even if the County and Relator are correct that Arman paid the "bribes" they allege. And they do not concede that there were ever, at any time, better options for the County in terms of leasing, because the Gabay Entities always presented the most competitive bids, most of which were below market. And they do not concede that the drastic remedies sought – voiding or every lease, and return of all rent paid – are even remotely applicable here.

---

[1] Gov't Code Section 87100, part of the Political Reform Act of 1974, states:

A public official at any level of state or local government shall not make, participate in making, or in any way attempt to use the public official's official position to influence a governmental decision in which the official knows or has reason to know the official has a financial interest.

Gov't Code Section 91003(b) states in relevant part:

[i]f it is ultimately determined that a violation has occurred and that the official action might not otherwise have been taken or approved, the court may set the official action aside as void. The official actions covered by this subsection include, but are not limited to, orders, permits, resolutions, and contracts . . . .

[2] "Section 1090 and section 87100 of the [Political Reform Act] are two of the most important statutes in California addressing the problem of conflict of interest by public officials and employees. They both deal with a relatively small class of people, public officers and employees, and share the same purpose or objective, the prevention of conflicts of interests, and hence can fairly be said to be in pari materia." (citing *People v. Honig*, 48 Cal.App.4th at p. 327 (1982) [interpretation of what constitutes a financial interest under § 1090 and the Political Reform Act should be consistent].) .

## 1. **The County cannot show that Shepos had a financial interest in the leases at issue.**

"'[A]n official has a financial interest in a contract of he might profit from it.' … California courts have long recognized that an impermissible conflict of interest arises when a public official on behalf of a public entity participates in making a contract with another entity at which the public official is employed or in which the public official owns an interest." *In re Valley Health System*, 429 B.R. 692, 718-19 (C.D.Cal. Bankr. 2010) (quoting *People v. Honig*, 48 Cal. App. 4th 289, 333 (1996)). "T[he] statutory prong of the conflict of interest doctrine requires that the official have some interest in the outcome, whether direct or indirect. Where the interest is *remote and speculative*, no conflict of interest is held to be presented under the statute." *Breakzone Billiards v. City of Torrance*, 81 Cal. App. 4th 1205, 1230–1231 (2000). "This has been the rule since *Hotchkiss v. Moran* (1930) 109 Cal. App. 321, 323, in which the court rejected a claim that a conflict of interest existed from the facts that a council member who participated in a questioned transaction was the manager of a business in which a stockholder of the company receiving a contract from the city was also a stockholder." *Id.* (emphasis added).

"It is also well established that to be prohibited under section 1090, the public official's financial interest **must be related to the contract**: 'The interest proscribed by Government Code section 1090 is an interest *in the contract*. The purpose of the prohibition is to prevent a situation where a public official would stand to gain or lose something *with respect to the making of a contract* over which in his official capacity he could exercise some influence.'" *Eden Twp. Healthcare Dist. v. Sutter Health*, 202 Cal. App. 4th 208, 228 (2011) (emphasis added by *Eden* court) (citing *People v. Vallerga*, 67 Cal. App. 3d 847, 867, fn. 5 (1977) (fee earned for consulting services prior to the execution of the contract would not constitute a conflict as the evidence supported an inference defendant was to be paid for those services whether or not the contract was consummated).

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

Here, the County has failed to demonstrate or prove that Shepos had a financial interest in any of the Leases at issue.  First, it is undisputed that Shepos was never an employee or equity holder in any of the Gabay Defendants.  (SUMF No. 177).  Nor is Shepos an officer, but rather an employee.  Thus, Shepos did not have any direct profit participation in any of the Leases at issue.

Second, and more importantly, the County has failed to tie a single alleged benefit provided to Shepos by the Gabay Defendants to any of the Leases.  At best, the County can prove that Shepos and Arman were friends.  But that's where it ends.  Shepos testified that he was never provided anything of value in connection with any of the Leases.  (SUMF Nos. 29, 33, 36, 43, 46, 50, 53, 59, 63, 71, 76, 80, 95, 99, 102, 105, 108, 117, 119, 124, 130, 136).  He confirmed that he was never asked to provide, nor did provide, non-public County information to the Gabay Defendants in connection with any of the Leases.  (*Id*.).  The County's designee on the topic of the County's investigation, Bryan Bell, could not specifically tie any of the alleged benefits Shepos received to any of the Gabay Defendants' Leases.  (SUMF Nos. 171-172).  At best he claimed that there was some sort of "grooming" or appearance of impropriety without ever establishing if, there was, in fact an improper relationship that gave Shepos a financial interest in any of the Leases.  The County's own interrogatory responses fail to identify Shepos's financial interest in any of the Leases.  (SUMF No. 172).  This sort of innuendo is insufficient to defeat summary judgment.  *See O.S.C. Corp. v. Apple Computer, Inc*., 792 F.2d 1464, 1466–67 (9th Cir.1986) ("We scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit 'a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy"); *Leslie G. v. Perry & Assocs*., 43 Cal. App. 4th 472, 483 (1996) ("[The court] will not [] draw inferences from thin air. Where, as here, the plaintiff seeks to prove an essential element of her case by circumstantial evidence, she cannot recover merely by showing that the inferences she draws from those circumstances are consistent

with her theory. Instead, she must show that the inferences favorable to her are **more reasonable or probable than those against her**") (emphasis added).

Third, six of the eight Gabay Leases were in place before Shepos was ever even allegedly provided a thing of value by anyone.  (SUMF Nos. 19-139).  Thus, to the extent that any of the allegations of construction work, dodger tickets, food, travel or cash payments postdate the Leases, then Shepos could not have had a financial interest in them at the time of the making of the contract.  *See Eden Twp. Healthcare Dist.*, 202 Cal. App. 4th at 228 ("The purpose of the prohibition is to prevent a situation where a public official would stand to gain or lose something *with respect to the making of a contract* over which in his official capacity he could exercise some influence").  Thus, to the extent that Shepos received anything of value ***after*** the Leases were entered into and, if the County could somehow tie a thing of value to that Lease, then, at best, this is a gratuity and not an interest in the contract, which the Supreme Court has expressly held to be legal.  *See Snyder v. United States*, 603 U.S. 1, 11 (2024) (it is not a crime for state and local officials to accept gratuities for their past official acts; a bribe is a payment that *precedes* the official act).

With respect to the eighth Lease, the County has failed to demonstrate any financial interest that Shepos may have had in the Lease.  In fact, the Lease was negotiated and approved while Shepos was under investigation by both the County and the Federal Government.  (SUMF Nos. 135, 162).  Certainly, had Shepos received an improper benefit under the Leases, either the County or the FBI would have known about it since Shepos was cooperating with the FBI at this time.  (*Id*.).

Therefore, the County has failed to demonstrate that Shepos has a financial interest in any of the Leases at issue in the TAC or FACII such that Section 1090 applies.  *See Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680–81 (9th Cir. 1985) ("A party opposing summary judgment is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth. The district court must

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

therefore undertake some initial scrutiny of the inferences that could be reasonably drawn from the evidence. A reasonable inference is one which 'support[s] a viable legal theory which by necessary implication cannot be supported by "only threadbare conclusory statements instead of 'significant probative evidence.'") (italics in original; citations omitted).

Accordingly, the conflict of interest claims must be dismissed.

## 2. **The Conflict of Interest Claims are untimely.**

California Government Code section 1092(b) provides that "[a]n action under this section shall be commenced within four years after the plaintiff has discovered, or in the exercise of reasonable care should have discovered, a violation described in subdivision (a)." Cal. Gov't. Code § 1092(b); Cal. Gov't Code § 91011.

Here, the County's Conflict of Interest claims are untimely. The County claims that Shepos obtained an improper interest when the Gabay Defendants provided food for 50 County employees in 2008. (SUMF 150-151). Apparently, many of those employees objected to receiving the food for their holiday party from the Gabay Defendants that Shepos had arranged for and formally reported their objection. (*Id*.). The County's own representative testified that providing food was an improper benefit, and that this was known to at least 50 county officers and employees. (SUMF No. 151). Thus, the County was on inquiry notice as of 2008 that an improper relationship between the Gabay Defendants and Shepos may have existed and took no action to investigate. To the extent that the County's later investigation uncovered the alleged misconduct on which this case is based, it's clear that an earlier investigation would have done so as well. The County, apparently, took no investigative action until September 27, 2016. (SUMF No. 161). The County's date of discovery, therefore, is ***not*** July 7, 2017 as the County claims (FACII at ¶194), but instead at the latest was December 23, 2008, the date of the holiday lunch that made 50 employees "financially interested" in the Gabay Leases.

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

1  Accordingly, the claims are time-barred.

2  **B. THE FALSE CLAIMS ACT CLAIMS FAIL (COUNTY CLAIMS**

3     **3-6; RELATOR CLAIMS 1-3)**

4  The Federal False Claims Act makes liable any person who:

5  - knowingly presents, or causes to be presented, a false or

6     fraudulent claim for payment or approval (31 U.S.C. § 3729(a)(1)(A);

7  - knowingly makes, uses, or causes to be made or used, a false record or

8     statement material to a false or fraudulent claim;" (31 U.S.C. §

9     3729(a)(1)(B)); or who

10  - conspires to commit a violation of subparagraph (A), (B), (D), (E), (F),

11     or (G) (31 U.S.C. § 3729(a)(1)(C)).

12  The California False Claims Act ("CFCA") was enacted in 1987, patterned on

13  the federal FCA, 31 U.S.C. §§ 3729, *et seq.*; *Rothschild v. Tyco Internat. (US), Inc.*,

14  83 Cal. App. 4th 488, 494 (2000).  Similar to the Federal Act, it imposes liability on

15  any person who: (1) "[k]nowingly presents or causes to be presented a false or

16  fraudulent claim for payment or approval"; (2) "[k]nowingly makes, uses, or causes

17  to be made or used a false record or statement material to a false or fraudulent

18  claim"; (3) "[c]onspires to commit a [CFCA] violation"; or (8) "Is a beneficiary of

19  an inadvertent submission of a false claim, subsequently discovers the falsity of the

20  claim, and fails to disclose the false claim to the state or the political subdivision

21  within a reasonable time after discovery of the false claim."  Cal. Gov't Code §

22  12651(a)(1)–(3); (8).

23  The Ninth Circuit has articulated four elements for a successful FCA cause of

24  action: "(1) a false statement or fraudulent course of conduct, (2) made with

25  scienter, (3) that was material, causing (4) the government to pay out money or

26  forfeit moneys due.'" *Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512

27  F. Supp. 3d 1096, 1108 (D. Haw. 2021) (quoting *United States ex rel. Rose v.*

28

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

*Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018)).  Neither the County nor Relator has can meet their burden to sustain a claim under the False Claims Act.

## 1. <u>Neither the County nor Relator can prove that the Gabay Defendants presented any false claims for payment or approval or failed to disclose a false claim.</u>

The County in the FACII nakedly alleges that "[a]ll of the Gabaee Contracts were obtained through false statements and/or fraudulent conduct, namely the Gabaee Defendants' bribery of Shepos. As a result of the underlying bribery scheme, all payments requested and/or received by the Gabaee Defendants pursuant to the Gabaee Contracts – many including state subvened funds – constitute false claims."  (FACII at ¶¶511-12).

Similarly, the Relator in the TAC alleges that "Defendants presented false and fraudulent claims in not only obtaining leases and related contracts from the County, but also each time Defendants submitted invoices pursuant to an existing lease or contract."  (TAC at ¶527).

These generalized boilerplate allegations are bereft of evidence.  After a year of discovery, the County cannot produce a single "claim" upon which to base these theories.  The leases are not "claims."  The payment of rent is not a "claim."  The leases are not "false."  The rent is not "false."  The County actually occupied and used the space in question, and received it at or below market.  The Landlord Entities fully performed all their obligations under the leases; how can their passive acceptance of rent be deemed a "false claim?"  To consider the matter is to reject it wholesale.

Each of the Leases was negotiated and included terms for the monthly payment of rent and the County made all rent payments pursuant to each of those leases while inhabiting the space.  (SUMF Nos. 19-139).  The County would not commence rental payments until the County inhabited the premises.  (SUMF No. 149).  Thus, neither the County nor Relator has presented any evidence whatsoever

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

that the payment of rent actually constituted a false claim, considering the payment was made squarely in line with the County's contractual obligations, and the County cannot point to any breach by any leasing entity. (SUMF Nos. 19-139). There is nothing false or fraudulent about the Gabay Defendants receiving the contractually negotiated rent payment from the County pursuant to the Leases. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim. **'[T]he [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment**.' As we have said, '[A]n actual false claim is' the *sine qua non* of a[n FCA] violation'" (Internal citations omitted; emphasis added).

The same is true for the construction payments regarding the Hawthorne Mall. (TAC at ¶¶184-188). Neither the County nor Gluck has put forth any evidence demonstrating that the Gabay Defendants were reimbursed by the County for any of the invoices purporting to relate to the Roscomare Property but appear labeled as Hawthorne. (SUMF No. 154). There is no evidence of any "claim" being made or paid.

To the extent that the County and Relator are claiming that the Leases themselves are the false claim, that fares no better. First, a lease is not a "claim," and no case has been located that even suggests such a thing.

Second, in tacit recognition of the thin ice upon which these claims skate, the County and Relator rely on the presence of a clause (in some of the leases) allowing a lease to be terminated (*not* rescinded) if improper "consideration" is given:

> County may, by written notice to Lessor immediately terminate the right of the Lessor to proceed under this Lease and Agreement if it is found that consideration, in any form, was offered or given by Lessor, either directly or through an intermediary, to any County officer, employee or agent *with the intent of securing the Agreement or*

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

> **securing favorable treatment** with respect to the award, amendment or extension of the agreement or the making of any determinations with respect to the Lessor's performance pursuant to the Agreement.

(SUMF Nos. 19-139; FACII at ¶¶101, 108, 115, 133, 141, 150, 160; TAC at ¶¶203, 212, 217, 234, 243, 252, 263, 275, 305).  This termination right transforms today's suit into a breach of contract claim and not a false act claim.  *See Universal Health Services, Inc. v. U.S.*, 579 U.S. 176, 196 (2016) ("*Escobar*") ("We emphasize, however, that the False Claims Act **is not** a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations").  Here, the County contractually agreed to a termination remedy, but attempts to access the False Claims Acts as an end run around what it agreed to.  This is not appropriate; and even more so because there is no evidence of the "consideration" that is referenced in the County's clause.

Shepos testified at length that he was never provided a thing of value in connection with any of the Leases, let alone for the purpose of providing favorable treatment.  (SUMF Nos. 29, 33, 36, 43, 46, 50, 53, 59, 63, 71, 76, 80, 95, 99, 102, 105, 108, 117, 119, 124, 130, 136).

Second, the County's own 30(b)(6) designee, a professional investigator, was unable to point to any "item" or "items" of value Shepos was given in connection with securing favorable treatment on any  particular Lease.  (SUMF No. 172)  He could only "imagine" that that was the case, conceding he could not point to any specific evidence despite repeated questioning.  (*Id*.).  This is not evidence sufficient to overcome summary judgment.

Third, Relator Gluck offers nothing further.  She testified that she had no personal knowledge whatsoever of any misconduct, but believed that there must be based upon the records she had found in the storage locker.  (SUMF No. 178).

Accordingly, neither the County nor Relator can offer sufficient evidence to demonstrate that a dispute of material fact exists as to whether the lease payments or

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

the Leases themselves constitute a false claim and whether the Gabay Defendants had any duty to disclose anything after Shepos and Arman pled guilty.

## 2. **Neither Relator nor the County can demonstrate the materiality of payment of the "false claims."**

The County and Relator have to burden of proving the materiality of the false claim. They cannot do so.

The Supreme Court has set forth the materiality standard in *Escobar* as follows:

> The materiality standard is demanding. The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial. … [¶] In sum, when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Escobar*, 579 U.S. at 194-95 (citations omitted).

Here, neither the County nor Gluck can identify any evidence of materiality whatever the claims is supposed to be – the rent payments or the Leases. Both claim

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

1   that but for the "bribes," the County would not have entered into the Leases and

2   made the rent payments.  (FACII at ¶¶104, 117, 127, 137, 143, 153, 165, 174, 181,

3   190; TAC at ¶¶208, 224, 237, 248, 256, 268, 281, 292, 301, 312).  But where is their

4   *evidence*?

5       The County's own representative testified at length regarding how the leasing

6   process works at the County.  (SUMF No. 146).  In fact, there is a flow chart

7   produced by the County which illustrates this process.  (*Id.*).  Shepos testified that

8   each of the Leases followed this process.  (*Id.*).  Each of the Leases was reviewed

9   and approved by the Real Estate Management Commission and the County Board of

10  Supervisors.  (*Id.*).  However, the County has failed to produce any documents or

11  communications involving the County Board of Supervisors relating to any of these

12  Leases despite their own investigator testifying that Shepos was in communication

13  with Supervisors and their deputies.  (SUMF Nos. 176, 179).  Thus, the failure to

14  present evidence requires the inference that the evidence is not favorable – *i.e.,* that

15  the Supervisors evaluated each of these Leases and determined that each of the

16  Leases were on the terms that were most favorable to the County and in the

17  County's best interest. *See Alexander v. South Carolina State Conference of the*

18  *NAACP*, 602 U.S. 1, 36 (2024) ("a factfinder may draw an adverse inference when a

19  party fails to produce highly probative evidence that it could readily obtain if in fact

20  such evidence exists").  Nor has the County demonstrated the alternative options

21  available to it that would have met the County's space needs at the time each of the

22  Leases were approved.  (SUMF No. 180).  The County didn't even bother to look as

23  part of its investigation.  (*Id.*).  This alone defeats any argument of materiality.

24      It is further damaging to the Relator and County's position that the alleged

25  "bribes" to Shepos were material is the fact that, after the alleged scheme came to

26  light in April of 2016, leading to Shepos's "retirement" in August 2017, the County

27  remained as a tenant in six of the Leases, paying rent according to the previously

28  negotiated Lease terms; indeed, the County is still a paying tenant on one of the

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Leases to this very day.  (SUMF Nos. 56, 66-67, 81-83, 109-111, 126-127, 137-139).

Thus, whether the County and Relator want to call it "consideration," a "false claim," or a "bribe," or "kickback," or a "financial interest," it doesn't matter:  it must not have been material considering that the County elected to stay in the premises with respect to six of the eight leases and to pay the rent at the alleged "tainted terms" for years after discovering its claim, and even after filing suit.  *See United States ex rel. Berg v. Honeywell Int'l, Inc*., 740 F. App'x 535, 538 (9th Cir. 2018) (quoting *Escobar*, 579 U.S. at 195) ("if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material").

Additionally, the County *signed estoppel certificates* in connection with the Leases.  (SUMF Nos. 37, 55, 65, 73, 82, 110, 121, 138).  Therefore, the County is estopped from denying the terms of those Leases such that they cannot be the basis of a false claim.  *See Plaza Freeway Ltd. Partnership v. First Mountain Bank*, 81 Cal. App. 4th 616, 628 (2000) ("In signing and delivering the estoppel certificate, defendant [tenant] is estopped from contradicting the facts, including the termination date, contained therein"); *Payless Shoesource, Inc. v. Joye*, Case No. 2:12-cv-00517-MCE-DAD, 2014 WL 466260, at *8 (E.D. Cal. Feb. 5, 2014) ("By their very nature, estoppel certificates look to the course of performance [and] the signer is certifying the course of performance has not produced any defaults") (citation omitted).  Clearly, if the alleged "bribes" were material, then the County would have never signed estoppel certificates certifying that there have been no defaults.

In the absence of this materiality element, the False Claims Act claims must fail.

### 3.  <u>The conspiracy claims fail.</u>

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

The FCA and CFCA imposes liability on any person or entity who conspires to violate them.  31 U.S.C. § 3729(a)(1)(C); Cal. Gov't Code § 12651(a)(3).  In order to allege a conspiracy claim under the CFCA, "a plaintiff must allege the following elements: '(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct.'"  *In re AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (2013).  However, a conspiracy claim does not lie where there is no false claim in the first instance.  *See Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1118 (D. Haw. 2021) (dismissing conspiracy claim "because the court has found no violations of the FCA in the first instance—there can be no conspiracy to violate the FCA if no false and material claims were submitted"); *United States ex rel. Woodruff v. Hawaii Pac. Health*, 560 F. Supp. 2d 988, 1004 (D. Haw. 2008) ("Because the court concludes that Defendants did not submit false claims ... Plaintiffs' conspiracy claim fails"); *United States ex rel. Petras v. Simparel, Inc*., 857 F.3d 497, 507 & n.53 (3d Cir. 2017) ("Our explanation of why the District Court was correct in dismissing the FCA claim applies with equal force to the dismissal of [relator's] conspiracy claim").

Here, neither the County nor the Relator can put forth evidence demonstrating that the Gabay Defendants entered into a conspiracy to bribe Shepos in exchange for County Leases such that the County was harmed.  In fact, the evidence demonstrates the opposite.  Shepos testified that Mark Gabay was not involved.  (SUMF Nos. 164-168).  Mark Gabay had no idea that Arman was giving anything of value to Shepos at any time and Arman's actions were not authorized on the part of the Gabay Defendants.  (SUMF No. 175).

Furthermore, it is legally impossible for the Gabay Defendants to conspire with each other.  *See Villains, Inc. v. American Economy Ins. Co.*, 870 F. Supp. 2d 792, 796 (N.D.Cal. 2012) ("just as a principal cannot conspire with itself, a principal cannot aid and abet itself"); *United States v. Aerojet Rocketdyne Holdings, Inc.*, 381

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

F. Supp. 3d 1240, 1249 (E.D.Cal. 2019) ("a corporation, as a matter of law, 'cannot conspire with its own employees or agents'").

Most importantly, though, the County's investigator/designee was unable to tie any misconduct to the Gabay Defendants other than his "imagining" that it was the case. (SUMF Nos. 171-172). And, neither Arman nor Shepos's plea agreement state that Arman's actions were taken on behalf of the Gabay Defendants. (SUMF Nos. 181-182). Thus, the County's entire position relies on innuendo and guilt by association, neither of which are permissible to defeat summary judgment. *See U.S. v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980) ("there can be no conviction for guilt by association, and it is clear that mere association with members of a conspiracy, the existence of an opportunity to join a conspiracy, or simple knowledge, approval of, or acquiescence in the object or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator").

Accordingly, the conspiracy claims fail.

### 4. The FCA and CFCA claims are time-barred.

Section 3731(b) of Title 31 of the United States Code governing the timeliness of a FCA claim provides that "[a] civil action under section 3730 may not be brought – (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last." 31 U.S.C. § 3731(b); *see also* Cal. Gov't Code § 12654(a) (setting forth same 6, 3, and 10 year limitations periods).

"The six-year limitations period begins running upon submission of the allegedly false claim, because a violation of the False Claims Act occurs upon the 'knowing presentation of a claim that is either fraudulent or simply false.'" *Moore*

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*v. Navarro*, 2004 WL 783104, at *3 (N.D. Cal. Mar. 31, 2004); *see also U.S. ex rel. Condie v. Board of Regents of University of California*, 1993 WL 740185, at *3 (N.D. Cal. Sept. 7, 1993) ("the operative date for the statute to run is when the initial claims were filed").  It applies to non-governmental plaintiffs as well.  *See Hyatt v. Northrop Corp.*, 883 F. Supp. 484, 488 fn.6 (C.D. Cal. 1995) ("if Plaintiff indeed steps into the shoes of the government for purposes of the applicable statute of limitations, the three year tolling period would begin to run when plaintiff himself received knowledge of the material facts upon which the lawsuit is based").

"'Fraud is deemed to be discovered … when, in the exercise of reasonable diligence, it could have been discovered.'"  *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 645 (2010); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) ("[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her...[s]o long as a suspicion exists it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her").

Here, the Relator and the County's CFCA claims are time-barred.  ***First***, any claim relating to a Lease or amendment signed before March 11, 2009, or relating to any rents paid prior to that time, is completely barred by the 10-year statute of repose.  This would remove the Ventura, Rosemead, Colorado, Beverly, or Hawthorne leases, and any payments thereunder, from this suit.  (SUMF Nos. 9-139).

***Second***, by its own assertions and admission, the County was on notice of improper conduct in 2008 when the Gabay Defendants provided a holiday lunch to the County CEO-RED employees for their holiday party, which the County's 30(b)(6) designee identified as being a patently improper Act; if so, it was a patently improper act that was known to 50 employees of the Real Estate Division.  And the County has admitted that County employees knew the food was from the Gabay Defendants and even claim that County employees objected on the grounds that it

**THE LEICHTER FIRM**
A PROFESSIONAL CORPORATION

1  was improper for the Gabay Defendants to be providing food.  (SUMF Nos. 150-

2  151).  And yet, the County took no action to investigate.  Today, they are charged

3  with everything that such an investigation would reveal – which is everything in this

4  lawsuit that is claimed to be a basis of liability.  The CFCA claims must fail

5  completely for this reason.

6          Inquiry notice is also clearly established because the County knew as of 2010

7  when Shepos informed his supervisor Carlos Marquez that "Ms. Gluck demanded he

8  no longer work on projects with Visco," and "while Mr. Marquez was on the

9  phone," Shepos begged Ms. Gluck to be able to work with Visco just a few more

10  months.  (TAC, ¶ 57).  Ms. Gluck confirmed this interaction in her deposition.

11  (SUMF No. 156).  Thus, the County should have investigated Shepos's relationships

12  with the various landlords in 2010 when it was received notice of a potential

13  impropriety.  Instead, the County filed suit on November 9, 2023, which is far more

14  than three years after the County should have discovered the claims.

15          **Third**, for her part, Relator had inquiry, if not full, notice of the claims in

16  2012 when she began reviewing the documents discovered in the storage unit.

17  (TAC at ¶¶86-93).   Crucially, in 2014, she disclosed her suspicions to *the U.S.*

18  *Attorney's* **Public Corruption Unit, specifically AUSA Renee Katzenstein**.  (SUMF

19  Nos. 156-159); *United States ex rel. Jordan v. Northrop Grumman Corporation*,

20  2002 WL 35628747, at *4 (C.D. Cal. Aug. 5, 2002) (for FCA purposes, "the

21  relevant official is one withing [*sic*] the Department of Justice").  Thus, Relator's

22  suit is untimely, having been brought on March 11, 2019, more than five years after

23  making her claims known to the Public Corruption Unit.

24          Accordingly, the FCA and CFCA claims are time-barred such that any Lease

25  or amendment entered into prior to March 11, 2016  cannot form the basis of any

26  FCA or CFCA claim.

27

28

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

## C. THE COUNTY'S UNFAIR COMPETITION CLAIM FAILS

California's unfair competition statute ("UCL") allows a person to bring suit to enjoin any business act or practice that is unfair, unlawful or fraudulent.  Cal. Bus. & Prof. Code §§ 17200; 17203.  "A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices.  It is not an all-purpose substitute for a tort or contract action."  *Cortez v. Purolator Air Filtration Prod. Co*., 23 Cal. 4th 163, 173 (2000).  To the extent the County's other claims are insufficient, so too are its UCL claim which derives from those other failed claims.  *Avila v. Bank of Am*., No. 17-cv-222-HSG, 2017 WL 4168534, at *5 (N.D. Cal. Sept. 20, 2017) (dismissing UCL claim to the extent it is derivative of other claim dismissed in same order).

Here, the unfair competition claim is completely derivative of the County's other claims alleged herein.  Thus, the UCL claim fails for the same reason as the conflict of interest and CFCA claims.  Accordingly, judgment should be entered in the Gabay Defendants' favor on this claim.

## D. THE COUNTY'S COMMON LAW FRAUD CLAIM FAILS

### 1. <u>There are no material facts to support a fraud claim.</u>

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e*., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Lazar v. Superior Ct*., 12 Cal. 4th 631, 638 (1996).  To establish liability for common law fraud, the County must demonstrate that the Government relied upon the misrepresentations and suffered damages as a result of that reliance.  *Goldilocks Corp. of S. California v. Ramkabir Motor Inn Inc*., 26 F. App'x 693, 696 (9th Cir. 2002).

There is absolutely no evidence that (a) a misrepresentation was made, (b) that was knowingly false, (c) with the intent to indue the County to enter into the

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

Leases, (d) that the County relied upon, (e) such that the County was harmed. Quite the opposite. The County's own investigator testified that the investigation did not yield any false statements in any of the Board Letters authored by Shepos that were submitted to the Board of Supervisors for evaluation. (SUMF No. 148). Shepos testified that each of the Leases he negotiated he believed was in the County's best interest. (SUMF No. 147). Each of the Leases traversed every level of the lease approval process before being approved by the Board of Supervisors. (SUMF No. 146). And, how was the County harmed since each of the Leases, per the County's own approved Board Letters was at or below market? (SUMF No. 147).

Accordingly, the fraud claim fails.

### 2. The Fraud claim is time-barred.

The statute of limitations for a fraud claim is three years. Cal. Code Civ. Proc. § 338(d). And, "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her...[s]o long as a suspicion exists it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at 1110-11.

For the same reasons that the CFCA claims are untimely, so too are the fraud claims. The main difference here is that the County cannot point to any misrepresentation such the Gabay Defendants can pinpoint an exact start date. In any event, the County should have known of potential misconduct as of December 2008 or March 2010.

Accordingly, the fraud claims are time-barred.

### E. THE UNJUST ENRICHMENT CLAIM FAILS

There is no cause of action for unjust enrichment in California, it is a remedy. *See Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment"); *see also United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v.*

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

*Teikoku Pharma USA, Inc*., 74 F. Supp. 3d 1052, 1091 (N.D. Cal. 2014) (dismissing unjust enrichment claim with prejudice because it does not exist as an independent claim).  Thus, this claim must be dismissed since it is not actionable.

But even if it was actionable, how have the Gabay Defendants been unjustly enriched?  The Gabay Defendants provided the County the space in accordance with the terms of the Leases and the County occupied the space that it contracted for.  *See Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir.1952) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected").  Thus, it is an act of contortion to understand how the Gabay Defendants were unjustly enriched since each party received exactly what they contracted for.

Accordingly, the unjust enrichment claim fails.

## F.  THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM FAILS

To plead a claim for aiding and abetting, a plaintiff must plead: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff.  *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014).  "Some cases suggest a complaint must allege a fifth element--that the aider and abettor had the specific intent to facilitate the wrongful conduct."  *Id*.  The first step is identifying precisely the breach of fiduciary duty at issue.  *Id*.

The statute of limitations for aiding and abetting breach of fiduciary duty is three years at the outset.  *See Am. Master Lease LLC v. Idanta Partners, Ltd*., 225 Cal. App. 4th 1451, 1479 (2014).

Here, the County has failed to put forth any evidence that Shepos ever breached his fiduciary duties to the County, let alone that the Gabay Defendants

intended to, and did, assist him in doing so.  The County's own investigator was unable to tie the Gabay Defendants to any improper conduct in connection with Shepos.  (SUMF Nos. 171-172).  Shepos testified that there wasn't anything improper in connection with any of the Leases.  (SUMF Nos. 29, 33, 36, 43, 46, 50, 53, 59, 63, 71, 76, 80, 95, 99, 102, 105, 108, 117, 119, 124, 130, 136).  All the County attempts to do is hang their hat on Arman's plea agreement, which cannot form the basis for liability against the Gabay Defendants.  *See Melchor-Lopez*, 627 F.2d at 891.

Even if the County could somehow put forth evidence demonstrating that the Gabay Defendants aided and abetted Shepos's breach of fiduciary duty, the County cannot show that the County suffered any harm as a result.  Each of the Leases was at or below market.  (SUMF No. 147).  Each of the Leases was approved by the County Board of Supervisors after traversing the approval process.  (*Id*.).  And, prior to the commencement of rent, the County inspected each of the properties to ensure that their needs were met.  (SUMF No. 149).  Thus, the County cannot prove that it was harmed by any of the Leases at issue.

Finally, the County's claims are time-barred.  As discussed above, the County should have known or investigated any potential misconduct involving the Gabay Defendants in December 2008, when the Gabay Defendants provided food for the County's holiday party.  (SUMF Nos. 150-151).  Instead, the County did nothing.

Accordingly, the aiding and abetting claim fails.  Judgment should be entered in the Gabay Defendants' favor.

## G. NEITHER THE COUNTY NOR THE RELATOR CAN SUSTAIN THEIR ALTER EGO CLAIMS

Both the County and Relator make the naked assertion that the Gabay Defendants are the *alter egos* of one another and that the acts alleged in the FACII and TAC were done with the knowledge and consent of the other Gabay Defendants.  (FACII at ¶¶66-67; TAC at ¶¶315-316).  But neither the County nor

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

Relator have provided evidence supporting these conclusory allegations of agency and *alter ego*, which is the County's burden to do. *See e.g., United States v. Kiewit Pac. Co*., 41 F. Supp. 3d 796, 810 (N.D. Cal. 2014) (finding threadbare allegation that individual was "was aware of, and acted in furtherance of, the activities" of other defendants were insufficient to allege individual's personal involvement in the alleged false claim"); *Hausauer v. City of Mesa*, 2020 WL 2735970, at \*3 (D. Ariz. May 26, 2020) (dismissing complaint which "lumps [defendants] together as a collective whole…without specifically alleging each one's role and conduct); *Dickenson v. Haga*, 2019 WL 416720, at \*3 (C.D. Cal. Jan. 31, 2019) ("Absent specific allegations identifying what actions each defendant took against Plaintiff and how such actions violated Plaintiff's rights, the Complaint fails to provide Defendants with fair notice of Plaintiff's claims or the grounds upon which they rest"); *In re Am. Apparel, Inc. S'holder Derivative Litig*., 2012 WL 9506072, at \*41 (C.D. Cal. July 31, 2012) (dismissing complaint that repeatedly referred "to defendants collectively, without differentiation").

Accordingly, the *alter ego* claims must be dismissed.

## V.   CONCLUSION

For the reasons stated above, the Gabay Defendants respectfully request that the Court grant the Motion and enter Judgment in the Gabay Defendants' favor on each of the County's and Relator's claims.

Dated: February 2, 2026

THE LEICHTER FIRM,
A Professional Corporation


By:   */s/Kevin J. Leichter*
KEVIN J. LEICHTER
ANDREW E. HEWITT
Attorneys for Defendants
Mark Gabaee, The Charles
Company, Inc., Oakshire, LLC,

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Excel Property Management
Services, Inc., Willhurst, Inc.,
Town Investments, LLC,
Sancam, Inc., M&A Gabaee LP,
Greenoak Investments, LLC,
Maple19 LP, Urban Grove19,
LLC, Oppidan LLC, Loma Vista
LLC, Noble Investments LLC,
The Charles Company
Partnership, Corsair, LLC;
Corsair, LLC and Endure LLC

**GABAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Gabay Defendants, certifies that this brief complies with the Court's January 6, 2026 Scheduling Order (as contemplated by L.R. 11-6.1), permitting summary judgment memorandums in this matter to be 35 pages or less.

/s/ *Kevin J. Leichter*
Kevin J. Leichter

THE LEICHTER FIRM
A PROFESSIONAL CORPORATION