Michael S. Devereux  (SBN 225240)
9440 Santa Monica Blvd, Suite 301
Beverly Hills, California  90210
Telephone: (424) 600-8584
Email: mike@wex.law

Attorneys for DEFENDANT, ARMAN GABAEE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THE COUNTY OF LOS ANGELES, THE STATE OF CALIFORNIA and THE UNITED STATE OF AMERICA *ex rel.* KAREN GLUCK,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS SHEPOS, et al.,<br><br>Defendants. | **Case No. 2:19-cv-01773-PA-MAA**<br><br>DEFENDANT ARMAN GABAEE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT **(Hon. Percy Anderson)**<br><br>Hearing: March 16, 2026<br>Time:     1:30 p.m.<br>Ctrm:     9A |

MICHAEL DEVEREUX, ESQ.

## I. INTRODUCTION

Plaintiffs' opposition relies on broad accusations and plea characterizations to convert alleged wrongdoing into automatic civil liability across decades of County leases, but it fails to establish the contract-specific elements required under Government Code § 1090 or the demanding materiality showing required by the FCA and CFCA. Plaintiffs still do not identify a specific lease linked to a contemporaneous quid pro quo or any admissible evidence that payments were conditioned on execution of a particular lease. The undisputed record also confirms

1

no actual monetary injury was established in the criminal matter and no restitution was awarded to the County, which undercuts Plaintiffs' theories of materiality and damages. Summary judgment should be granted.

## II. PLAINTIFFS IDENTIFY NO SPECIFIC LEASE TIED TO A CONTEMPORANEOUS QUID PRO QUO, THUS CANNOT ESTABLISH LIABILITY UNDER GOVERNMENT CODE § 1090

### A. Plaintiffs Have Not Shown a Contract-Specific Financial Interest

Plaintiffs argue that Shepos received benefits over time and therefore "every Gabay Lease is tainted." That is not the statutory test.

Section 1090 prohibits public officials from being financially interested in contracts made in their official capacity. Cal. Gov't Code § 1090(a). Plaintiffs correctly describe the statute as strict. But strict liability does not eliminate threshold elements. The statute still requires:

1. A financial interest in the contract at issue;

2. Participation in making that contract;

3. The interest to exist at the time the contract was made.

*Thomson v. Call*, 38 Cal. 3d 633, 646–48 (1985).

Plaintiffs refused or failed to identify:

1. A specific lease tied to a specific payment;

2. A contemporaneous agreement conditioning execution of that lease;

3. Evidence that lease approval depended on compensation.

MICHAEL DEVEREUX, ESQ.

2

MICHAEL DEVEREUX, ESQ.

They offer narrative continuity of misconduct – duration and inference. The statute requires contractual nexus.

The fact that benefits may have been provided at various points in time does not establish that each lease was made while the official was financially interested in that contract. Section 1090 does not impose perpetual disability based on generalized misconduct. Absent contract-specific proof, the claim fails.

### B. Shepos Was Not a Contract-Maker; Independent County Approvals Break Plaintiffs' Causal Chain

Final contract formation rested with the Board of Supervisors; leases required independent review by County Counsel and multilayer departmental approvals. Participation under § 1090 requires involvement in the making of the contract—not mere recommendation.

Here, leases required:

1. Independent review by County Counsel,

2. Multi-layer departmental approval,

3. Final authorization by the Board of Supervisors.

Plaintiffs describe Shepos as a "critical gatekeeping role." A "gatekeeper" is not a contracting authority. The Board—not Shepos—made the contracts.

Final contract formation rested with the Board. Plaintiffs do not—and cannot—establish that Shepos possessed unilateral authority to bind the County.

Without authority to make the contract, § 1090 liability cannot attach. Strict liability does not expand the definition of "making" the contract.

### C. Voidness Does Not Excuse Plaintiffs From Proving the Elements

Plaintiffs repeatedly invoke automatic voidness and disgorgement, arguing that once § 1090 applies, disgorgement is "automatic." That principle presupposes a proven violation. However, remedy follows violation, it does not create one. Section 1090 is strict, once triggered.  It is not self-triggering.

It does not relieve Plaintiffs of demonstrating:

1.  A financial interest in a specific contract;

2.  Participation in making the contract;

3.  Temporal alignment between interest and contract formation.

They have not done so. Strict liability is not a substitute for proof.

### III. PLAINTIFFS CANNOT SATISFY FCA MATERIALITY

### A. Materiality Is "Demanding"

Under *Universal Health Services v. Escobar*, 579 U.S. 176, 194 (2016), materiality is "demanding." It is not satisfied by the mere existence of a violation.

Plaintiffs must show:

1. The alleged misrepresentation was material to payment; and

2. The government would have refused payment had it known the truth.

They have no such evidence.

MICHAEL DEVEREUX, ESQ.

MICHAEL DEVEREUX, ESQ.

### B. The County Approved and Paid the Leases After Multi-Level Review

The leases were:

1. Reviewed,

2. Approved,

3. Executed,

4. And paid for years.

Plaintiffs assert that the County would not have entered into the leases if it had known of misconduct. That is conjecture. Materiality requires evidence of actual payment decision impact. There is none.

### C. The Sentencing Record Confirms No Actual Monetary Injury and No Restitution to the County

The Court may take judicial notice of the sentencing transcript and criminal judgment in *United States v. Gabaee*. Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). (See Request for Judicial Notice, Exs. A–B.)[1]

---

[1] Plaintiffs may argue that the sentencing transcript and judgment are "irrelevant" or that criminal restitution standards differ from civil damages. That misses the point. Defendant does not seek preclusive effect or adoption of factual findings. Judicial notice is requested solely for the existence and contents of official court records—an uncontroversial application of Rule 201. See *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The relevance is straightforward: restitution under the MVRA requires proof of actual pecuniary loss by a preponderance of the evidence, 18 U.S.C. § 3664(e), and the absence of such an award—coupled with the sentencing court's express statement that it did not see evidence of actual

(continued...)

At sentencing — the burden was a preponderance of the evidence—the County appeared and argued financial harm. It sought recognition as a victim.

Yet the Court stated: "But again, there is no — I didn't see the evidence of the actual monetary injury." (Ex. A at 29:27–30.) The Court further clarified that the sentencing guideline calculation was driven by the amount of the bribe—not damages to the County. (Ex. A at 29:12–15.)

Further, the Court declined to award restitution to the County. (Ex. B.)

That is not collateral estoppel. It is reality. Plaintiffs now claim:

1. $156 million in rental payments as injury

2. Recovery of all payments

But the sentencing record demonstrates that actual economic loss was not established even under a lower standard. This severely undercuts materiality.

**D. The Absence of Restitution Undercuts FCA/CFCA Materiality and Damages Theory**

Under the Mandatory Victims Restitution Act, restitution is mandatory where a victim suffers provable pecuniary loss directly caused by the offense. 18 U.S.C. § 3663A(a)(1), (c)(1)(B).

---

monetary injury—directly bears on Plaintiffs' current assertion of obvious and automatic economic harm. Defendant relies on these records not to bind this Court, but to illuminate the evidentiary record.

MICHAEL DEVEREUX, ESQ.

Restitution depends on proof of actual loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

Here, the County appeared and argued harm. If the County suffered quantifiable economic loss caused by the offense conduct, restitution would have followed upon proof under that standard.  The Court did not find evidence of actual monetary injury.  Restitution was not awarded.

Plaintiffs now assert that over $156 million in lease payments constitute injury.  If those payments constituted provable pecuniary loss directly caused by the offense, restitution would have followed upon proof by a preponderance of the evidence. But when presented with the opportunity—and incentive—to establish pecuniary loss under a lower evidentiary burden, they did not do so to the sentencing court's satisfaction.

This Court is not being asked to give preclusive effect to the criminal proceeding. The point is narrower and more direct:

Plaintiffs' present theory depends on the premise that economic injury is obvious, automatic, and inherent in the existence of bribery. The sentencing record demonstrates otherwise. Even under a preponderance standard, actual monetary injury was not established, and restitution was not awarded.

Now, in a civil action governed by Rule 56, Plaintiffs seek to:

- Treat every lease payment as injury;

- Avoid proving overpayment;

- Avoid proving market distortion;

- Avoid proving economic loss.

The sentencing record exposes the weakness of that theory. The absence of restitution does not decide this case. That reality bears directly on materiality. Under *Escobar*, materiality turns on whether the alleged misconduct affected the government's payment decision. 579 U.S. at 194–95. Where payment continued and no pecuniary loss was proven, Plaintiffs cannot convert allegation into materiality.

They must prove that the County paid money it would not otherwise have paid. They have not done so. Plaintiffs cannot transform unproven loss into presumed civil damages.

### E. Plaintiffs' "No Loss Required" Argument Avoids Escobar

Plaintiffs argue FCA penalties do not require proof of monetary harm. That is beside the point. Materiality still requires proof that the alleged falsity was capable of influencing payment. Without evidence of economic impact—or evidence the County would have refused payment—the FCA claim fails.

MICHAEL DEVEREUX, ESQ.

## IV. PLAINTIFFS' THEORY COLLAPSES WHEN ELEMENTS ARE APPLIED

Plaintiffs attempt to Plaintiffs attempt to use criminal conduct to bypass statutory analysis. Section 1090 requires contract-specific financial interest and participation. The FCA requires materiality. Neither is established.

## V. PLAINTIFFS CANNOT ESTABLISH CONTRACT-SPECIFIC CONFLICT, CONTRACT-MAKING BY SHEPOS, FCA MATERIALITY, OR COUNTY ECONOMIC INJURY

After full discovery, Plaintiffs cannot establish:

1. A contract-specific financial interest under § 1090;

2. That Shepos legally made the leases;

3. That the alleged misconduct was material to payment;

4. That the County suffered proven monetary injury.

The sentencing court did not see evidence of actual monetary injury. Restitution was not awarded. Speculation does not defeat summary judgment.

## VI. SPECULATION CANNOT DEFEAT SUMMARY JUDGMENT

Rule 56 requires more than conjecture; Plaintiffs cannot rely on speculation about what the County might have done to avoid summary judgment. Their conjecture is especially untenable in light of the no-loss observation at sentencing and the absence of a restitution award. Plaintiffs' attempt to transform an alleged scheme into strict, contract-wide civil liability without contract-specific proof cannot create a triable issue.

**VII. CONCLUSION**

This case cannot proceed on indignation. Section 1090 is not self-triggering. The FCA is not punitive absent materiality. Even under a preponderance standard in a criminal proceeding, monetary injury was not established, and restitution was not awarded. Plaintiffs cannot meet their burden under Rule 56. Defendant Arman Gabaee respectfully requests that the Court grant summary judgment in his favor on all claims.

Dated: March 2, 2026

By: *Michael S. Devereux*

Michael S. Devereux
Attorney for Defendant
ARMAN GABAEE

MICHAEL DEVEREUX, ESQ.

10